UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                        :

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., DISNEY ENTERPRISES, INC., CBS BROADCASTING INC., CBS STUDIOS INC., NBCUNIVERSAL MEDIA, LLC, NBC STUDIOS, LLC, UNIVERSAL NETWORK TELEVISION, LLC, TELEMUNDO NETWORK GROUP LLC, WNJU-TV BROADCASTING LLC, | : <br> : <br> : <br> : <br> :    12 Civ. 1540 (AJN) <br> :      **ECF CASE** <br> : <br> : |
|        Plaintiffs, | :      **COMPLAINT** <br> : |
|                v. | : <br> : |
| AEREO, INC., | : <br> : |
|        Defendant. | : |

------------------------------------------------------------------------X

      Plaintiffs American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS

Broadcasting Inc., CBS Studios Inc., NBCUniversal Media LLC., NBC Studios, LLC, Universal

Network Television, LLC, Telemundo Network Group LLC and WNJU-TV Broadcasting LLC

(collectively, "plaintiffs"), by their attorneys, complain and allege against defendant Aereo, Inc.

("Aereo") as follows:

### <u>NATURE OF THE ACTION</u>

      1.     This copyright infringement action arises out of Aereo's unauthorized

retransmission of plaintiffs' over-the-air television broadcast programming to the public for a

fee.  Aereo has no rights, under any license, statute or case law, to any of the copyrighted

programming that is the basis of its subscription-only Internet service.  Aereo just helps itself –

without permission and on a round-the-clock, daily basis – to programs created, owned and

broadcast by plaintiffs.  Although other distributors, including cable and satellite operators and

telephone companies, pay to retransmit the same programming, Aereo's business is based on

circumventing the carefully balanced distribution system mandated by Congress. That is infringement.

2.     Aereo uses its antenna facilities to receive television broadcasts in the New York City market, transcodes them from their digital broadcast format into a different compression format for retransmission over the Internet, then streams the programming to the public over the Internet. Beginning March 14, 2012, subscribers can receive any of plaintiffs' over-the-air television programming in the New York City market by paying Aereo $12 a month. Aereo will retransmit that programming, from its web-based platform, to the subscribers' Internet-connected devices, including personal computers, and mobile devices like laptops, tablets and smartphones. Aereo subscribers will be able to watch the programming at the same time it airs and/or have Aereo record the programming for later viewing.

3.     The Copyright Act sets out, in detail, the limited ways in which secondary transmissions of television programs may be made without infringing the rights of copyright owners like plaintiffs. Aereo fits none of those carefully delineated exceptions. Instead, Aereo seeks to avoid liability by using the fiction of purportedly assigning each subscriber his or her own miniature "antenna" for the duration of the retransmitted broadcast that Aereo streams to the subscriber. According to Aereo, this makes its retransmissions "private," not public, no matter how many antennas it offers or how many of its subscribers simultaneously use these antennas to view plaintiffs' broadcasts. *See* Bamboom, Enabling Lawful Consumer Viewing Choice, *available at* http://static.arstechnica.com/Bamboom_LawfulViewingChoice_4-11-1.pdf. Playing on this fictitious "rental" of the antenna to each subscriber, Aereo then points to the subscribers as if they were solely responsible for the retransmission, with Aereo having nothing to do with the process.

4.      Aereo is wrong and its miniature antenna scheme is an artifice.  In offering its services, Aereo performs a work "publicly" within the meaning of the Copyright Act.  Aereo is fully engaged in, and responsible for, every step of the process of retransmitting over-the-air broadcast programs over the Internet to members of the public – *i.e.*, its subscribers:

- Aereo installed a system that receives and retransmits broadcast programming. Aereo houses the "antennas" used in its system in arrays it maintains in the New York City area.  This unlicensed system has no purpose other than to simultaneously receive, retransmit and record over-the-air television broadcasts.

- Although Aereo purports to associate an individual antenna, for a limited period, with a particular subscriber, that does not make the resulting retransmission private. The use of any device or process to retransmit a performance or display of a work embodied in a broadcast signal to members of the public is defined in the Copyright Act as performing a work "publicly."

- According to Aereo, it does not "rent" a particular antenna to a particular subscriber for the duration of the subscription relationship.  Rather, Aereo assigns and reassigns its antennas indiscriminately among its subscribers who have logged in to the Aereo service to receive a broadcast retransmission at a given point in time.

- Each step along the entire retransmission path, not just that of "turning on the antenna," is relevant for purposes of whether the retransmissions are being made to the public.  Aereo's receipt, conversion and simultaneous retransmission and recording of the over-the-air broadcasts to multiple subscribers renders its conduct infringing.

5.      As described by its own press releases, Aereo's service to the end user is similar to and competes with cable or satellite operators and telephone companies that also retransmit broadcast programming to their subscribers, except that Aereo's service is unlawful.  It does not pay, under either a privately negotiated or compulsory license, for the right to retransmit that content.  Copyright law requires either that Aereo fit within narrow statutory exceptions that authorize such retransmissions or negotiate licenses with copyright owners.  Aereo does neither.

6.      Unless restrained by this Court, plaintiffs' loss of control over the transmission of their copyrighted programming, Aereo's usurpation of plaintiffs' opportunities to license content

over new media and the other unlawful conduct contemplated by Aereo threaten plaintiffs with substantial irremediable losses.

7.     Accordingly, plaintiffs respectfully request that the Court preliminarily and permanently enjoin Aereo's unlawful conduct and, as plaintiffs are permitted to elect, award actual damages or statutory damages pursuant to the Copyright Act.

## JURISDICTION AND VENUE

8.     This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, because the action arises under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

9.     This Court has personal jurisdiction over Aereo pursuant to N.Y.C.P.L.R §§ 301 and 302, because, on information and belief, Aereo is registered to do business in the State of New York and/or conduct business within the State of New York, including this District, and because a substantial part of the events or omissions giving rise to the claims herein occurred within this District.

10.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1400(a), because Aereo captures the signals of, and programming transmitted by, broadcast television stations in this District – including stations owned and signals and programming transmitted by plaintiffs – and most of the plaintiffs are headquartered or have offices in this District and are injured in this District.

## THE PARTIES

11.     Plaintiff American Broadcasting Companies, Inc. ("ABC") is a Delaware corporation with its principal place of business at 77 West 66th Street, New York, New York, and does business as the ABC Television Network and as WABC-TV.  ABC actively is engaged in the production and distribution of television programs and other copyrighted works, including

programs ABC transmits to numerous broadcast television stations that it owns and operates, and other stations that are affiliated with its ABC Television Network, in the United States.  ABC grants these stations the right to broadcast programming within their communities of license. The FCC has licensed ABC to operate the television station identified by the call letters WABC-TV ("WABC"), the signal of which is broadcast to viewers over-the-air in the New York City market.  Cable systems, satellite services and other multichannel video programming distributors also make WABC transmissions available to their subscribers, upon negotiating for the right to do so, under Section 325 of the Communications Act, 47 U.S.C. § 325.

12.     Plaintiff Disney Enterprises, Inc. ("DEI") is a Delaware corporation with its principal place of business at 500 S. Buena Vista Street, Burbank, California.  DEI actively is engaged in the licensing of its copyrighted properties, and certain of its affiliates are engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

13.     Plaintiff CBS Broadcasting Inc. ("CBS") is a New York corporation with its principal place of business at 51 West 52nd Street, New York, New York.  CBS actively is engaged in the production and distribution of television programs and other copyrighted works, including programs CBS transmits to numerous broadcast television stations in the United States that are affiliated with its CBS Television Network, including stations that it owns and operates. CBS grants these stations the right to broadcast programming within their communities of license.  The FCC has licensed CBS to operate the television station identified by the call letters WCBS-TV ("WCBS"), the signal of which is broadcast to viewers in the New York City market. Cable systems, satellite services and other multichannel video programming distributors also

make WCBS transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

14.     Plaintiff CBS Studios Inc. ("CBS Studios") is a Delaware corporation with its principal place of business at 51 West 52nd Street, New York, New York.  CBS Studios actively is engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

15.     Plaintiff NBCUniversal Media LLC ("NBCUniversal") is a Delaware limited liability company with its principal place of business at 30 Rockefeller Plaza, New York, New York.  NBCUniversal is actively engaged, among other things, in the production and distribution of television programs and other copyrighted works, including programs NBCUniversal transmits to broadcast television stations in the United States that it owns and operates, and numerous other stations that are affiliated with the NBC Television Network, which is also owned and operated by NBCUniversal.  NBCUniversal grants these stations the right to broadcast programming within their communities of license.  The FCC has licensed NBCUniversal to operate the television station identified by the call letters WNBC-TV ("WNBC"), the signal of which is broadcast to viewers over-the-air in the New York City market.  Cable systems, satellite services and other multichannel video programming distributors also make WNBC transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.  NBCUniversal also licenses its copyrighted works to various media outlets in the United States and elsewhere.

16.     Plaintiff NBC Studios, LLC ("NBC Studios") is a New York limited liability company, with its principal place of business at 100 Universal City Plaza, Universal City,

California, and is a wholly-owned subsidiary of plaintiff NBCUniversal.  NBC Studios is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

17.     Plaintiff Universal Network Television, LLC ("UNT") is a Delaware limited liability company with its principal place of business at 100 Universal City Plaza, Universal City, California, and is a wholly-owned subsidiary of plaintiff NBCUniversal.  UNT is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

18.     Plaintiff Telemundo Network Group LLC ("Telemundo") is a Delaware limited liability company with its principal place of business at 2290 West 8th Avenue, Hialeah, Florida, and is a wholly-owned subsidiary of plaintiff NBCUniversal.  Telemundo is, among other things, actively engaged in the production and licensed distribution of Spanish-language television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the Telemundo Network and distributed elsewhere in the world.

19.     Plaintiff WNJU-TV Broadcasting LLC ("WNJU-TV") is a Delaware corporation with its principal place of business at 2290 West 8th Avenue, Hialeah, Florida, and is a wholly-owned subsidiary of plaintiff NBCUniversal.  The FCC has licensed WNJU-TV to operate the television station identified by the call letters WNJU-TV ("WNJU"), a Spanish-language broadcasting station whose signal is broadcast to viewers over-the-air in the New York City market.  Cable systems, satellite services and other multichannel video programming distributors

also make WNJU transmissions available to their subscribers upon negotiating for the right to do

so under Section 325 of the Communications Act, 47 U.S.C. § 325.

20.     On information and belief, defendant Aereo is incorporated under the laws of the

State of New York with its principal place of business at 37-18 Northern Boulevard, Long Island

City, New York.

## NATURE OF AEREO'S UNLAWFUL CONDUCT

21.     Aereo has publicly announced it will offer to the public a commercial, for-profit

service that allows Aereo subscribers to view, on any Internet-connected device, including

smartphones, tablets and personal computers, retransmissions of "[a]ll the broadcasts -- NBC,

ABC, CBS, PBS, FOX, CW & over 20 local channels" serving the New York, New York

market. *See* Exhibit 1 (website screenshot from aereo.com).  Beginning March 14, 2012, for $12

a month, subscribers will be able to watch the retransmission of any of these broadcasts "live"

over the Internet and/or have Aereo record up to 40 hours of broadcast programming for later

viewing on Internet-connected devices – something Aereo represents as its "cloud"-based DVR

system.

22.     Aereo initially plans to offer this service in the New York City area, but, on

information and belief, unless enjoined, plans to expand its offerings to other geographic areas in

the near future.

23.     Aereo purports to make available to each paying subscriber a miniature antenna.

The antenna is available for the duration of the particular retransmission and/or recording as

requested by a subscriber.  This is Aereo's "rental."  Aereo masses large numbers of these

antennas in arrays at what are essentially "antenna farms."

24.     On information and belief, when subscribers log in to Aereo to view live

broadcasts on their Internet-connected devices, Aereo takes several steps.  First, Aereo purports

to tune a given antenna to the over-the-air broadcast identified by the subscriber.  In fact, once up

and running, Aereo will effectively be providing a service capable of capturing and

retransmitting **all** over-the-air programming in the New York City television broadcast market.

Second, with its antennas, Aereo captures the over-the-air digital broadcasts and routes the

broadcast signals to its processing center.  Third, it digitally transcodes, converts and compresses

the programs so they can be retransmitted through the Internet to its subscribers.  Fourth, it

simultaneously retransmits those programs, as converted, over the Internet to all subscribers who

have requested them, all of whom are capable of viewing the programs simultaneously from their

Internet-connected devices by accessing Aereo's proprietary, web-based platform.  As Aereo

puts it in the FAQ section of its web site:

> When you become an Aereo member and log in, you are assigned
> a miniaturized, private, remote antenna and DVR.  Aereo offers
> technology to give consumers access to their antenna and DVR via
> a web browser and supported internet-enabled device.  Once
> you've connected to your antenna, you can use the Aereo platform
> to access all major broadcast networks live in HD and use your
> remote DVR to set recordings and watch your favorite shows when
> you want.

*See* Exhibit 2 (print out of FAQ section of Aereo website).  Simply stated, it is Aereo and its

system, to which the user has access only through the subscription-based Aereo website service,

that retransmits and publicly performs plaintiffs' programming.

25.     Aereo has no authorization or consent from plaintiffs or, upon information and

belief, any other party, to retransmit plaintiffs' copyrighted programming over the Internet, or,

for that matter, to exercise any of plaintiffs' exclusive copyright rights.

26.     Until recently, Aereo's service was not available to the public.  Instead, it was

limited to a small, "invitation only" experimental group.  Even during this limited "beta" test,

however, Aereo was on notice of the copyright issues raised by its activities.  Nevertheless, it

refused to explain its retransmission technology and processes in any detail.

27.     Aereo recently announced it will make its infringing subscription service widely

available to the public on March 14, 2012.  This makes court intervention necessary to protect

plaintiffs' valuable intellectual property rights from Aereo's wholesale acts of infringement.

## COUNT ONE
## COPYRIGHT INFRINGEMENT

28.     Plaintiffs hereby incorporate by reference and reallege each and every allegation

of paragraphs 1 through 27 above.

29.     Plaintiffs are the legal or beneficial owners of the copyrights in numerous

programs that have been, or will be, exhibited over broadcast television stations and a variety of

other media outlets.  A non-exhaustive list of such television programs, identifying

representative examples of programs in which plaintiffs own the pertinent copyright interests, is

set forth in Exhibit 3 ("TV Program(s)").

30.     Each TV Program is an original audiovisual work that has been or will be fixed in

a tangible medium of expression and constitutes copyrightable subject matter within the meaning

of Section 102 of the Copyright Act, 17 U.S.C. § 102.  Each such TV Program has been or will

be registered with the United States Copyright Office.  Copyright registration certificates or other

documentation demonstrating compliance with Sections 408(f) and 411 of the Copyright Act, 17

U.S.C. §§ 408(f) and 411, and implementing Copyright Office regulations, corresponding to the

TV Programs listed in Exhibit 3, are attached as Exhibits 4 to 36.

31.     Each TV Program has been created or licensed for exhibition by plaintiffs.  As

part of Aereo's unauthorized service, Aereo will retransmit, by streaming or otherwise

transmitting over the Internet, and will reproduce, each TV Program and numerous other works in which plaintiffs own copyrights.

32.     Under Section 106 of the Copyright Act, 17 U.S.C. § 106, plaintiffs own the exclusive rights, among others, to reproduce in copies their copyrighted works, to distribute copies to the public of their copyrighted works, to publicly perform their copyrighted works, to publicly display their copyrighted works and to make derivative works based upon their copyrighted works.

33.     Under Section 106 of the Copyright Act, 17 U.S.C. § 106, plaintiffs also own the exclusive rights to authorize others to exercise the rights set forth in paragraph 32.

34.     In offering its service, Aereo either has exercised or will exercise (or has authorized or will authorize others to exercise) one or more of plaintiffs' exclusive rights set forth in paragraph 32 respecting the TV Programs and other works in which plaintiffs own copyrights.

35.     Neither the plaintiffs nor any other person authorized by plaintiffs has granted any license, permission or authorization to Aereo to exercise any of the rights set forth in paragraph 32 or to authorize others to exercise such rights, respecting the TV Programs or any other works in which plaintiffs own copyrights.

36.     Aereo has committed and will commit each act of copyright infringement with the knowledge that it was not authorized to exercise any of the rights (or authorize others to exercise any of the rights) set forth in paragraph 32 respecting the TV Programs and other works in which plaintiffs own copyrights.  Aereo's conduct thus has constituted and will constitute willful copyright infringement.

11

37.     As a result of Aereo's willful copyright infringement, plaintiffs have been, are being and will be irreparably harmed.

38.     Unless restrained by the Court, Aereo will continue to engage in such willful copyright infringement.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court enter judgment in plaintiffs' favor and against Aereo as follows:

A.     Issue a preliminary and permanent injunction enjoining and restraining Aereo and its officers, agents, servants, and employees and all those in active concert or participation with them, from infringing plaintiffs' exclusive rights under the Copyright Act by offering the Aereo service and engaging in the conduct described above;

B.     Award plaintiffs their damages proven or statutory damages elected, costs and reasonable attorneys' fees in accordance with 17 U.S.C. §§ 504 and 505 and other applicable law; and

C.     Award such other and further relief as the Court shall deem just and appropriate.

Respectfully submitted,

By: /s/ Bruce P. Keller
        Bruce P. Keller
        (bpkeller@debevoise.com)
        Michael R. Potenza
        (mpotenza@debevoise.com)
        DEBEVOISE & PLIMPTON LLP
        919 Third Avenue
        New York, New York 10022
        (212) 909-6000

        *Counsel for Plaintiffs*

Dated:  March 1, 2012