# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

WPIX, Inc., WNET.ORG
AMERICAN BROADCASTING COMPANIES, INC.,
DISNEY ENTERPRISES, INC.,
CBS BROADCASTING INC.,
CBS STUDIOS INC.
THE CW TELEVISION STATIONS, INC.,
NBC UNIVERSAL, INC.,
NBC STUDIOS, INC.,
UNIVERSAL NETWORK TELEVISION, LLC,
TELEMUNDO NETWORK GROUP LLC,
NBC TELEMUNDO LICENSE COMPANY,
OFFICE OF THE COMMISSIONER OF BASEBALL,
MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P.,   :   1:10-cv-07415-NRB
COX MEDIA GROUP, INC.,
FISHER BROADCASTING-SEATTLE TV, L.L.C.,
TWENTIETH CENTURY FOX FILM CORPORATION,
FOX TELEVISION STATIONS, INC.,
TRIBUNE TELEVISION HOLDINGS,INC.,
TRIBUNE TELEVISION NORTHWEST, INC.,
THE UNIVISION NETWORK LIMITED PARTNERSHIP,
TELEFUTURA NEYWORK,
WGBH EDUCATIONAL FOUNDATION,
THIRTEEN,
And PUBLIC BROADCASTING SERVICE

      Plaintiffs,

      v.

IVI, INC. and TODD WEAVER,

      Defendants.

------------------------------------------------------------------X

## **DECLARATION OF BENJAMIN N. PYNE**

I, Benjamin N. Pyne, hereby declare as follows:

1. The matters set forth below are based upon my personal knowledge, my review of the books and records of American Broadcasting Companies, Inc. ("ABC") or its affiliates, or information provided to me in my capacity as President-Global Distribution of Disney Media Networks and, if called to testify, I could and would competently testify thereto.

2. I am submitting this Declaration in support of plaintiffs' motion to preliminarily enjoin defendants ivi, Inc. and Todd Weaver (collectively, "ivi") from continuing to retransmit plaintiffs' broadcast television stations and the copyrighted programming on those stations via their website ivi.com.

3. I am responsible for the domestic and international distribution and sales of television and motion picture content owned, distributed or broadcast by ABC and its affiliates. This includes feature films, television series, children's programming, made-for-TV movies, miniseries, news, TV animation and direct-to video content -- and their distribution to all platforms. I have held this position for more than three years, and have been employed by ABC and its affiliates for approximately 19 years.

4. It is my understanding that on or about September 13, 2010, ivi began offering online access to programming broadcast by several New York City and Seattle, Washington broadcast television stations, including programming licensed and copyrighted by ABC and Disney Enterprises, Inc. (DEI) and programming licensed, copyrighted or transmitted by ABC-owned television stations and other affiliated stations of the ABC Television Network (the "Network").

2

5. ivi does not have a license from ABC, DEI or any of their affiliates to stream on the Internet any of ABC's or DEI's copyrighted programming.

6. I believe that ivi's operations, if permitted to continue for even for a short period, threaten immediate and irreparable harm to ABC's and DEI's businesses and that of other broadcasters, content owners and owners of TV stations.

7. In addition to causing significant monetary losses that would be very difficult to measure, ivi, by taking content produced and licensed by others and streaming that content worldwide, threatens well-established business models that enable the television industry to operate and produce the high quality content consumers want to receive through a variety of distribution channels. ivi's unauthorized streaming of ABC's and DEI's copyrighted material compromises ABC's and DEI's ability to generate revenue from that content, diminishes its value to those that license it, and threatens relationships with third party licensors.

8. Licenses for television and movie content generally contain geographic limitations, time limitations and/or restrictions on mode of distribution. By taking without consent the content others can pay tens or hundreds of millions of dollars to license, and using that content without the restrictions to which licensees commonly agree, ivi is causing harm to our distribution models and jeopardizing ABC's relationships with licensors of such content. ivi's operations are causing, and if left unchecked will continue to cause, tremendous damage. A few examples are described below.

9. ABC transmits programs to numerous broadcast television stations that it owns and to independently owned stations affiliated with the Network. ABC grants these stations a "first call" to broadcast over the air Network programming within their "community of

3

license" -- a term defined by the Federal Communications Commission as a station's area of operation -- simultaneously with ABC's transmission of the Network schedule in that station's time zone. By operating concurrently with those stations that have a license from ABC to broadcast its programming in their community of license, ivi is harming ABC's relationship with the stations.

10. Ivi is also disrupting program scheduling on which broadcasters rely and on which distribution agreements are based. For example, ABC has a license from the Federal Communications Commission to operate the television station identified by the call letters WABC-TV ("WABC"), the signal of which is broadcast to viewers over-the-air on channel 7 in the New York City market. By transmitting WABC's programming to markets in other time zones, ivi is making that content available earlier than it appears on ABC Television Network affiliated stations in those other markets (e.g., ivi makes programs broadcast on WABC in New York available to a West Coast audience three hours earlier than scheduled and available on local stations). If ivi were allowed to continue doing so, it would cause harm by, among other things, undercutting the ability of ABC and local stations to sell advertising in the local markets. The lost revenue would be substantial and difficult to quantify. This premature transmission of programming in a local market would also damage ABC's relationship with local stations.

11. Similarly, cable systems, satellite services and other multichannel video programming distributors ("MVPDs") pay significant sums (often including fees calculated on a per subscriber basis) for the right to retransmit television and motion picture content to their subscribers. ivi's unauthorized retransmission of this content to subscribers of MVPDs, if permitted to continue, will almost certainly reduce the value of this content to the MVPDs

4

and therefore the amount they are willing to pay for the first right to retransmit that content. The potential harm to ABC would be significant and very difficult to measure.

12. Legitimate Internet services are another area negatively impacted by ivi's unauthorized and unrestricted operations. For example, Apple pays for the right to make ABC and DEI content available for download, ivi does not. Similarly, ABC makes certain of its content available on ABC.com and Hulu.com, but typically the day following the Network broadcast so not to disrupt other broadcast distribution models. ivi's taking of this content and then streaming it without restriction are a threat to these business models and the relationships that underlie them

13. What an advertiser pays is often determined by the number of viewers and their demographic profile. By attracting viewers away from those that play by the rules, advertising revenue for ABC and other broadcasters will go down. Also, if measuring agencies are not able to, or choose not to, measure the number of viewers on ivi, the number of viewers watching a program will be underestimated, resulting in additional lost advertising revenue.

14. It is my understanding that ivi is available outside the United States. The television and motion picture content of DEI, ABC or their affiliates is licensed in nearly 200 markets around the world. Revenue from the licensing of this content in foreign markets is significant and threatened by ivi. ivi's operation will reduce the value of that content to foreign distributors of broadcast programming, harm our relationships with those distributors, and reduce the revenue we will be able to obtain from licensing that content.

15. While one could not accurately measure the economic harm to ABC, DEI and others in the television industry that would result from ivi's continued operation, that harm would be enormous and irreparable. If not enjoined, ivi will disrupt the economic models that have provided the incentives to legitimate and lawfully operating companies to invest billions of dollars to produce and distribute television and motion picture content.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of October 2010, at Cannes, France.

_____
Benjamin N. Pyne

6