# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

WPIX, INC., WNET.ORG, AMERICAN
BROADCASTING COMPANIES, INC., DISNEY
ENTERPRISES, INC., CBS BROADCASTING INC.,
CBS STUDIOS INC., THE CW TELEVISION
STATIONS INC., NBC UNIVERSAL, INC., NBC
STUDIOS, INC., UNIVERSAL NETWORK
TELEVISION, LLC, TELEMUNDO NETWORK GROUP
LLC., NBC TELEMUNDO LICENSE COMPANY,
OFFICE OF THE COMMISSIONER OF BASEBALL,
MLB ADVANCED MEDIA, L.P., COX MEDIA GROUP,
INC., FISHER BROADCASTING-SEATTLE TV, L.L.C.,
TWENTIETH CENTURY FOX FILM CORPORATION,
FOX TELEVISION STATIONS, INC., TRIBUNE
TELEVISION HOLDINGS, INC., TRIBUNE
TELEVISION NORTHWEST, INC., UNIVISION
TELEVISION GROUP, INC., THE UNIVISION
NETWORK LIMITED PARTNERSHIP, TELEFUTURA
NETWORK, WGBH EDUCATIONAL FOUNDATION,
THIRTEEN, and PUBLIC BROADCASTING SERVICE,

     Plaintiffs,

     v.                                                                                                  10 Civ. 07415-NRB

IVI, INC. and TODD WEAVER,

     Defendants.
------------------------------------------------------------X

**DECLARATION OF ERIC MEYROWITZ
IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER
AND/OR PRELIMINARY INJUNCTION**

1

I, Eric Meyrowitz, do hereby declare and state:

1. I am Vice President and General Manager of WPIX, Inc. ("WPIX"), a plaintiff in this action. I make this declaration based on my personal knowledge and my knowledge of the television industry, in which I have worked for 18 years. If called upon to do so, I could and would testify competently to the matters set forth herein.

2. WPIX is a television broadcast station in New York City. WPIX has presented news, sports and entertainment programming to viewers in the New York area since 1948 and is currently the CW Network affiliate in the New York market. Cable systems, satellite services and other multichannel video programming distributors make WPIX's over-the-air broadcast transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act.

3. WPIX brought this action against ivi, Inc. and its chief executive, Todd Weaver, ("Defendants") in order to put a stop to: (a) Defendants' streaming WPIX broadcasts worldwide over the Internet for commercial profit, without the permission of WPIX or its parent corporation, Tribune Broadcasting Company; and (b) Defendants' streaming to New York viewers the broadcast signals of out-of-market television stations that show programming that WPIX has the exclusive right to broadcast in the New York area. Defendants' unlawful retransmission of these broadcast signals causes WPIX serious and irreparable harm on a continuing basis. I make this declaration to provide the Court evidence of that irreparable harm.

**Defendants' Service Dilutes Exclusive Broadcast Rights for which Local Broadcasters Negotiate and Pay**

4. Much of WPIX's programming consists of CW network shows (including "Gossip Girl," "America's Next Top Model," and "Smallville"), syndicated shows (including "Family Guy," "Two and a Half Men," "Friends," "Jerry Springer" and "Inside Edition"), and

2

sports broadcasts (including New York Mets baseball games). The station negotiates for exclusive rights to broadcast this programming in the New York market. Because New York is the largest television market in the United States, WPIX pays very substantial sums to acquire those rights, and attempts to recoup its costs by selling commercial advertising in the programs.

5. Network and syndicated programs -- including new CW Network series and three newly acquired syndicated programs on WPIX, "Curb Your Enthusiasm," "Entourage" and "The New Adventures of Old Christine" -- typically begin their new seasons during the month of September. The first several weeks after these shows debut are critical to their financial and ratings success, because viewers establish viewing habits at this time of year. This period, therefore, largely determines the station's ability to derive advertising revenues from the programs for the balance of the broadcast season and often beyond, because syndicated program agreements typically run for more than one year. The intrusion of out-of-market broadcast signals that Defendants stream into the New York market is thus occurring at precisely the time of year when it has the potential to cause the maximum damage to WPIX.

6. If Defendants are permitted to retransmit into New York the signals of stations from other markets that carry the same network, syndicated and sports programming, WPIX will suffer irreparable harm from the loss or dilution of exclusive broadcasting rights for which the station bargained and paid. The FCC recognized the importance of protecting broadcasters against this type of harm when it adopted its syndicated exclusivity and network non-duplication rules, which are designed to protect local television stations with exclusive broadcast rights from program duplication by imported signals carried by cable and satellite distributors in a station's market. WPIX does not receive such protection when Defendants transmit broadcast stations from distant markets over their Internet-based service.

3

7. If viewers watch network or syndicated shows like "The Vampire Diaries" or "Two and a Half Men" on a signal imported from another market into New York over ivi's website, they will be less likely to watch them on WPIX. As a result, WPIX will lose viewers and our ratings will decrease. If ratings decrease, WPIX will not be able to charge the same prices for advertising that we would receive if we had the exclusive ability (for which we bargained and paid) to broadcast the programming in the New York market. As a result, WPIX's advertising revenues will decrease, thereby reducing the resources WPIX has to acquire quality programs and to produce local news. Ultimately, the loss of revenues could jeopardize both WPIX's financial position and our ability to serve our audience in New York, Connecticut and New Jersey, which would suffer immeasurable harm as a result of inevitable cutbacks in the quality of entertainment and sports programming and the award-winning news coverage WPIX presents.

8. Defendants' website also facilitates time shifting, which harms local television stations like WPIX by providing opportunities for viewers to watch programming to which the station holds exclusive local broadcast rights outside the time slots that WPIX sets and for which it sells advertising. For example, if a viewer missed "America's Next Top Model" at 8:00 p.m. on WPIX, the same show would be available at 11:00 p.m. local time on a station imported from the West Coast. Conversely, the availability of WPIX's signal provides opportunities for viewers to watch programming earlier than the times scheduled by local network affiliates in the Mountain and Pacific time zones. When Defendants, as planned, begin retransmitting stations from additional cities and other time zones, there will be further opportunities to divert viewers from local stations, with the resulting reductions in ratings and revenues described above.

9. Although the commercial announcements in WPIX programming are carried on Defendants' service, the national audience measurement service, The Nielsen Company, does not count such viewing in WPIX's reported audience ratings. WPIX therefore will not receive credit for local viewing of WPIX's signal via Defendants' service, or for duplicating broadcasts that Defendants' service imports into the New York market. Further, WPIX advertisers would not pay for any viewing of WPIX's signal outside the New York area. Distant viewing of our advertising would not produce any compensating value to WPIX.

**Advances In Technology Increase The Harm Defendants' Website Inflicts On Broadcasters**

10. Advances in consumer technology will only exacerbate the harm to broadcasters. The current generation of commercially available large-screen television sets is being built with broadband connections that enable viewers to browse the Internet, as an alternative to watching broadcast or cable networks. This feature will allow users of Defendants' service to watch stations imported from other markets in their living rooms and bedrooms, in the same way they are used to watching WPIX and other local stations – except that viewers will be watching imported programming that only WPIX is lawfully entitled to broadcast in New York. In other words, ivi will not simply be a service for people sitting at computers. Modern television receivers will make it even easier for ivi's duplicating transmissions to compete unfairly with local broadcasts, and to harm WPIX and similarly situated local broadcasters.

11. Defendants have indicated that they plan to launch mobile applications that will enable users to view streaming broadcasts from ivi.tv on mobile devices such as smart phones and portable digital "tablets" such as iPads. This will further exacerbate the problem of providing New Yorkers with unauthorized access to imported broadcasts that duplicate programming that WPIX or other local broadcasters have the exclusive right to transmit in this

market, resulting in fewer viewers, lower ratings and reduced advertising revenues for local broadcasters like WPIX.

### Defendants' Unauthorized Transmission of Imported Broadcast Signals May Affect Local Broadcasters' Negotiations With MVPDs

12. WPIX and its parent company currently are in retransmission consent negotiations with certain multichannel video programming distributors ("MVPDs") (*e.g.*, cable and satellite television providers) that do business in the New York market, to authorize retransmission of WPIX broadcasts. If ivi.tv and similar services are allowed to stream out-of-market broadcasts of duplicating programming into the New York market, thereby reducing WPIX's viewership, it may seriously impact those negotiations. In addition, MVPDs may be less willing to compensate WPIX and other local broadcasters if their customer base is eroded by services like Defendants' website, or if services like ivi.tv are permitted to take for free the programming for which local broadcasters ask MVPDs to compensate them.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 7 day of October, 2010, at New York, New York.

Eric Meyrowitz

6