C3DJABCM                        Motions

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   -------------------------------x

3   AMERICAN BROADCASTING
    COMPANIES, INC., et al.,
4
                    Plaintiffs,
5
             v.                              12 Civ. 1540 AJN
6
    AEREO, INC.,
7
                    Defendant.
8
    -------------------------------x
9

10

11

12                                          March 13, 2012
                                            3:43 p.m.
13

14

15

16   Before:

17                    HON. ALISON J. NATHAN,

18                                          District Judge

19

20

21

22

23

24

25

C3DJABCM                         Motions

1          (In open court)

2          (Case called)

3          THE COURT:  Please be seated.

4          As you say, there is a parallel matter with a motion

5     to consolidate pending in front of Judge Marrero.  He has not

6     acted on that yet.  I have attempted to contact him today and

7     was unable to reach him.  He has got some family matters to

8     attend to, but I will see what he wants to do with that.

9          I don't know how that impacts what we need to do

10    today, which I gather is to set a schedule, but why don't I

11    hear from you, Mr. Keller.  To tell you what I have before me,

12    I reviewed the complaint, and then I have a letter from -- am I

13    saying it right, AEREO?

14         And then I have an answer as of today which I have

15    briefly seen and a letter indicating AEREO's views as to an

16    appropriate schedule, seeking to move to final disposition.

17    But, Mr. Keller, I don't believe I have your views on specific

18    process going forward.  So why don't you start situating me any

19    way that you like and then turning to the process.

20         MR. KELLER:  Maybe because you raised the scheduling

21    issue first, I'll address that although if I can get a couple

22    of seconds to talk to you about our view of the matters, I

23    would like to do that, too, not too much because we are early

24    in the case.  We need a preliminary injunction.  Our position

25    is there is irreparable harm that will ensue as of tomorrow

C3DJABCM                          Motions

1   when AEREO publicly launches its service, which as I think you

2   know, will capture over-the-air television signals as they are

3   broadcast, process them and then transmit them or retransmit

4   those broadcasts over the internet to AEREO subscribers.

5           THE COURT:  Just to be clear, you face irreparable

6   harm tomorrow, but you have not filed a motion for preliminary

7   injunction?

8           MR. KELLER:  We have yet to file a motion for

9   preliminary injunction.  The only reason you don't have that in

10  front of you, I picked up the phone and contacted Chambers to

11  see what the court would like to do by way of a schedule.  I

12  read your rules.  I know know how you like to hold preliminary

13  injunction hearings.

14          Rather than unilaterally move for something, I thought

15  it would be good to contact Chambers, come down and talk to you

16  about what we think a sensible schedule is, taking into account

17  the court's own schedule.  We are prepared to move, but we

18  think -- and I don't think there is any disagreement on this

19  piece of what --

20          THE COURT:  Just so we have clarity on the record,

21  when did you contact Chambers?

22          MR. KELLER:  We called Chambers last Friday, your

23  Honor.

24          THE COURT:  Last Friday, which was March 9th you

25  contacted Chambers?  So five days before irreparable harm?

C3DJABCM                         Motions

1          MR. KELLER:  Five days before the launch for sure and

2     upon the launch, we think we are really going to be facing

3     irreparable harm that would be a prerequisite to you issuing

4     the relief we seek.  The reason we don't think anything of

5     significance has happened before then is all the cases that say

6     if a defendant or potential defendant says they're test

7     marketing something, things aren't really imminent.

8          When they publicly announced this defendant announced

9     it was going to actually launch its service, that's when things

10    really become imminent.  They announced they were going to

11    publicly launch in the middle of February, and our complaint

12    was on file I think 10 to 12 days thereafter.

13         It was a week after that that we contacted Chambers to

14    say let's talk about this so we can proceed in the most

15    expeditious manner.  We think we have actually accomplished

16    quite a bit because I don't think, as I was about to say, that

17    there is any disagreement that some evidentiary record will be

18    useful to you in coming up with your ruling on our preliminary

19    injunction motion.

20         We think this is the type of case where facts matter,

21    and there may be disputes about facts.  There may not be

22    disputes about facts.  We don't know because we still don't

23    know how it is that AEREO actually processes the television

24    signals that it takes and streams across the internet.  It

25    could do so in a variety of ways.

C3DJABCM                          Motions

They have been opaque about that until now.  We think
that a limited evidentiary record and expedited discovery on
that so we can lay it out before you is the way to go.  It will
be the most useful, and I think everybody one agrees with that.

I received a copy of the letter that you received
yesterday, and I understand their position to be we don't
oppose expedited discovery as long as it is in connection with
an expedited summary judgment hearing.  They may have a grounds
for moving for summary judgment, your Honor.  I don't know.
There may be disputed facts.  There may not be.

I do know this:  We're not willing to wait four months
for a hearing that the court will first undertake to think
about whether summary judgment should issue.  We do suffer
irreparable harm from what we claim to be a very obvious case
of copyright infringement.  It flows as a matter of course.

It is not the first time in this courthouse that a
television internet streaming service has been found to cause
irreparable harm by the virtue of the fact they're
retransmitting without permission the signals.

THE COURT:  What case?

MR. KELLER:  Judge Buchwald's two cases.  The IVI
case, and I can provide you with a copy before we leave, and
there is also the Film On case which issued a temporary
restraining order.

In that case, to be fair, the legal defense was a

C3DJABCM                        Motions

1    little different.  In that case, the defendant said they

2    qualify for one of the secondary transmissions, safe harbors,

3    if you will, the compulsory licenses, of which there are

4    several in the Copyright Act.  There are limited circumstances

5    under which a cable television company, for example, your

6    Honor, can take signals out of the air, process them and stream

7    them across cables to their subscribers, but that is a very

8    narrow, heavily regulated statutory scheme and it is examined

9    in great detail by Judge Buchwald.  AEREO is not relying on

10   that for good reason.

11         That defendant was enjoined preliminarily after a

12   short period of expedited discovery.  In this case, as you know

13   from the answer and the counterclaim, and you know from the

14   letter that they submitted, they're relying on the Cablevision

15   case decided by the Second Circuit.  They have not told you

16   everything about the Cablevision case, your Honor.  Cablevision

17   does not cover what it is that they're doing and, in fact, the

18   very argument that they are making as to why Cablevision helps

19   them was rejected by Justice Kagan, then Solicitor General

20   Kagan when she filed a brief in the Cablevision case when it

21   was wending its way up for cert. in the Supreme Court.

22         She said it is a wrong interpretation of the Copyright

23   Act to say that mini-antennas, which they say result in a

24   one-to-one transmission, the mini-antenna, there is the

25   subscriber, they link the two.  That does not take that out of

C3DJABCM                         Motions

1   the realm of a classic public performance and that is why we

2   think Cablevision does not excuse their conduct and why we'll

3   prevail on the merits.

4          It is early in the case and obviously because I am in

5   it a little longer than you, I could go on and on.  That is not

6   quite fair.  If I leave you for two thoughts today, it is to

7   read a particular section of the Cablevision opinion, which I

8   have a copy of, too, and --

9          THE COURT:  I have it.

10         MR. KELLER:  You'll know that on Page 134 in the

11  Reporter of that decision, the court goes out of its way to

12  distinguish between public performance analysis and a

13  reproduction right analysis, and the preliminary injunction

14  that we seek will be based on a violation of the public

15  performance right.

16         Cablevision was very cable in the court's opinion,

17  they said they're not the same, and the fact that, for the

18  purposes of that reproduction right analysis which we are not

19  moving on, the fact that a subscriber or an end user is found

20  to make the copy does not answer the question of whether

21  Cablevision and not the subscriber might be involved in the act

22  of public performance.

23         THE COURT:  For the purposes of that, which I

24  understand to be somewhat narrow, what discovery do you need?

25         If I understand what you've just said, the preliminary

C3DJABCM                         Motions

1    injunction you intend to move on is for a violation of public

2    performance right, direct infringement?

3              MR. KELLER:  Correct.

4              THE COURT:  No secondary infringement?

5              MR. KELLER:  No.

6              THE COURT:  What discovery do you need and what

7    time-frame would you need for --

8              MR. KELLER:  As to time-frame, I notice in the letter

9    you got yesterday they said they're prepared to give us

10   discovery very rapidly.  Depending on how they define "very

11   rapidly," and what they intend to give up easily, I would think

12   we need a period of four weeks or so, maybe four to six, no

13   more than that, to get all the information we need to have it

14   vetted by the people that we might retain as experts so we can

15   understand exactly how this thing ticks.

16             Once we know that, because --

17             THE COURT:  You need that for the limited PI that you

18   intend to move on for the violation of public performance

19   right?

20             MR. KELLER:  Yes, your Honor.

21             THE COURT:  And four to six weeks for discovery, and

22   then what are you thinking in terms of briefing and hearing?

23             MR. KELLER:  I work backwards.  It may be faster than

24   four to six weeks and we should know if it were.  We would like

25   to have a preliminary injunction hearing before you no later

C3DJABCM                        Motions

1    than the week of May 14th.  We would like to do it sooner than

2    that if you could accommodate us and we get what we need in

3    discovery.

4            THE COURT:  Well, if I can accommodate it, working

5    backwards, if that is what I can accommodate, then that's the

6    time that there will be for discovery.  If that is a workable

7    time for a PI, then the time in advance of that will have to be

8    make-work for discovery and briefing.

9            MR. KELLER:  If we have a hearing the week of the

10   14th, that leaves us basically eight weeks from where we are

11   now.  If we have all of our, papers depending on the schedule

12   that you set, in before you and the witness list and anything

13   else you might require, the written testimony on direct comes

14   in through declarations, if we have that all in the week before

15   that --

16           THE COURT:  That is eight weeks.

17           MR. KELLER:  The hearing, the actual hearing will be

18   the 8th week from now, that is what I am saying.  If I am

19   unclear about that, I apologize.

20           THE COURT:  No, I thought that I had a moment of

21   thinking you're in vigorous agreement.  I'll hear from your

22   opposing counsel.

23           MR. KELLER:  Their schedule, they said 10 weeks for

24   expedited discovery, but then briefing and then a hearing on

25   the summary judgment, that is how they get to their generally

C3DJABCM                        Motions

 1   stated four months.  We cannot wait that.

 2              THE COURT:  You want two months?

 3              MR. KELLER:  We want to have a hearing no later than

 4   eight weeks from now and we'd like to do it sooner.  If we can

 5   get to you sooner, we are bound and determined to do that.

 6              THE COURT:  Just to map it out, what you'd like, Mr.

 7   Keller, is four to six weeks of discovery?

 8              MR. KELLER:  At the out outside.

 9              THE COURT:  At the outside with a hearing, and how

10   much time, how much calendar time do you anticipate for a

11   hearing?

12              MR. KELLER:  You know, this is not -- given the way

13   that you take preliminary injunctions through written direct,

14   your Honor --

15              THE COURT:  Well, I'm open here.  I'd like to hear

16   from both sides on this.  It may be the more efficient thing

17   for making me smart on what I need to know here to do live

18   direct.

19              MR. KELLER:  Even so, I was going to say I can't

20   imagine this more than two days, I really don't think that.

21              THE COURT:  Two days if I do live direct?

22              MR. KELLER:  I think two days with live testimony and

23   cross.  I still think it is a two-day hearing at most, your

24   Honor.

25              THE COURT:  And then what happens following the PI?

1          MR. KELLER:  Here is where we are in disagreement.

2     The suggestion has been made that somehow we're making more

3     work for the court because then there is a summary judgment

4     record that has to be prepared and you're doing it twice.  That

5     is not the way the rules work.  Rule 56 and Rule 65 are not

6     mutually exclusive and it is often the case that a preliminary

7     injunction record, in fact, is virtually all of the summary

8     judgment record.

9          We are not taking the position on whether they're

10    going to have an undisputed record that allows for summary

11    judgment or not.  We don't know that yet.  We haven't had the

12    discovery.  Maybe they're right and there isn't much, but I'm

13    not sure about that.

14          What we do know is that the fact that a defendant

15    wants summary judgment pretty quickly is not a defense or

16    reason not to grant an early preliminary injunction hearing.

17    We have a right to seek such a hearing.  We have made the case

18    that, based on cases from this courthouse, irreparable harm

19    flows if, in fact, they are infringing not as a matter of

20    presumption, as a matter of fact that we can prove, that is

21    what Judge Buchwald ruled in her IVI, case and we are prepared

22    to build that record in the next six to eight weeks.

23          They would like, obviously, to drag it out.  I don't

24    mean that pejoratively; I mean that factually.  They're

25    thinking about four months out.  We can't wait that long.

C3DJABCM                        Motions

1              By the way, your Honor, the proposal that they made to

2      you --

3              THE COURT:  Can you just flesh out a little bit for me

4      why you can't?

5              MR. KELLER:  Because irreparable harm happens every

6      day our rights are infringed, and they're going live, as we

7      understand it, in the New York market tomorrow, and according

8      to the press reports -- and we'll get discovery on this to find

9      out if it is so -- New York is still itself just a test market.

10     They plan to go nationally very quickly according to Mr.

11     Diller, one of their investors, 75 to 100 markets, and we are

12     not clear on the time-frame.  We want to know about that, too.

13             New York is still a test market.  We are not waiting

14     any longer.  They think they can go live.  They say that

15     they've been out there doing this for some time.  Your Honor,

16     it is what is known as a beta test.  It is an experimental

17     group.  This is even more narrow.  It was an invitation-only

18     beta test.  It wasn't widely available according to what they

19     said about their own service.  You had to be invited in some

20     way to be part of the beta group.

21             It was the most preliminary of experiments.  Now they

22     think they can go live.  We're here today to say you can't do

23     it without causing us irreparable injury, and we want to enjoin

24     it early, as early as we possibly can.

25             The summary judgment procedure that they've outlined

1    they've cited, that is what happened to Cablevision.  They're

2    exactly right, that is what happened to Cablevision.  What they

3    didn't tell you in their letter is that Cablevision agreed not

4    to launch its service while the courts had a chance to vet it

5    for whether it was copyright infringement or not.

6            The whole process that they've said is eminently

7    reasonable might be eminently reasonable if they didn't launch

8    tomorrow.  But we have asked them would you not launch?  That

9    is the first thing we asked.  Then we can come up with an

10   agreed-upon schedule like Cablevision.  They said we are not

11   waiting, we are ready to go.  That is why we need preliminary

12   injunctive relief and we need it now.

13           THE COURT:  Thank you, Mr. Keller.  Let me hear from

14   Mr. Hosp.

15           MR. HOSP:  Yes, your Honor, this is Mr. Englander.

16           MR. ENGLANDER:  I am going to speak, your Honor, but

17   Mr. Hosp may need to straighten me out from time to time.

18           As we indicated in our letter, your Honor, we're

19   interested in resolving this as expeditiously and efficiently

20   as we can.  We are a small start-up.  We have been accused of

21   copyright infringement in connection with what we do.  We need

22   to have that resolved.

23           We think the preliminary injunction process being

24   proposed to you will actually delay things and get in the way

25   of that and that is why we have indicated an objection.  It is

C3DJABCM                          Motions

1   possible we can work something out so that that is not the

2   case.

3             THE COURT:  Is it right that there is no possibility

4   of an agreed-upon delay of launch to work out a schedule?

5             MR. ENGLANDER:  That's correct, your Honor.

6             THE COURT:  Okay.

7             THE COURT:  I thought maybe if I asked, it would be

8   different.

9             MR. ENGLANDER:  No, your Honor.  Maybe I should

10  address this first.

11            THE COURT:  Go right ahead.

12            MR. ENGLANDER:  There are a number, as Mr. Keller

13  said.  Maybe I should address this first.  They have delayed

14  the opportunity to get this resolved on a reasonable schedule

15  for at least nine months, your Honor.  There is no reason that

16  they could not have come to court and sought a declaratory

17  judgment.  We did everything but give blueprints, okay?

18            That is perhaps an exaggeration, but we have been very

19  transparent.

20            THE COURT:  I haven't looked at the IVI case, but can

21  you respond to the point?

22            MR. ENGLANDER:  It is a very, very different system

23  and set of ideas and concepts.  What we are doing is providing

24  a system that a consumer can use to do nothing different than a

25  consumer has every right to do right now.  A consumer right now

C3DJABCM                    Motions

1    can get over-the-air broadcasting by having an antenna on the

2    roof of their home.  They can make a copy of that, unique copy

3    for their own personal use and they can play it back to

4    themselves.

5           All we are doing is remotely locating an antenna.

6    They're very small antennas.

7           THE COURT:  The size of a dime?

8           MR. ENGLANDER:  Exactly.  This is one of them and

9    there will be thousands of them.  The consumer will tune in to

10   their own antenna.  In other words, they will sit at home, go

11   onto our system using our system, and think of it as a machine

12   using our system, tune their antenna, make a copy, their own

13   unique copy of that television program and then play that back,

14   that unique copy that is theirs back to themselves.

15          Your Honor, two cases conclude that that is entirely

16   lawful.  One is the Cablevision decision from the Second

17   Circuit, four years' old, that dealt with the remote storage

18   DVR being offered by Cablevision, and I think other is Sony.

19   Sony came from the U.S. Supreme Court which says that a

20   consumer has the right to get over-the-air broadcasts, make a

21   copy for their own personal use and play it back to themselves.

22          So that is what we have here.  We have told the

23   industry, and had specific meetings with many of Mr. Keller's

24   clients in which over the last several months we have explained

25   what we're doing.  If they needed relief and they were really

1    concerned about it on a preliminary basis, they could have

2    sought a declaratory judgment at any time.  They did not.  They

3    waited until just before the launch, and now they tell you it

4    is very urgent they get decided.

5           THE COURT:  Isn't that an argument you could

6    potentially make counter to their irreparable harm arguments?

7    Why would that preclude them from bringing a preliminary

8    injunction motion?

9           MR. ENGLANDER:  The answer is it doesn't.  The concern

10   we have is simply somehow they seem to be suggesting to you

11   that they're going to divide up discovery so that what we'll

12   have is one process where they seek a preliminary injunction

13   and then the case will still by out there not resolved and

14   hanging over the head of this start-up company.

15          If we can manufacture a schedule so that we can also

16   have in front of you the summary judgment motions that we

17   believe are appropriate on a record that they do not claim is

18   incomplete -- the thing we don't want to have happen is we go

19   through a process where they move for preliminary injunction,

20   we move for summary judgment, and they say 56 (e), we are not

21   ready yet to decide this.

22          They haven't given us all the facts.  We are going to

23   do discovery, get the complete discovery done that needs to be

24   done so your Honor has in front of you the full facts.  We

25   think this case is a case, primarily a case that gets decided

C3DJABCM                         Motions

1    on the law.  We have to know how our system works.  That is

2    important.

3          There may be some other facts we need to do discovery

4    of from them, but we can do that rapidly and then have before

5    your Honor all you need to decide a motion for summary

6    judgment, and if they choose to file a motion for preliminary

7    injunction, a motion for preliminary injunction.  We need to

8    work on a schedule that allows us to come before you.

9          In the Cablevision case which we were involved in --

10         THE COURT:  And you think you can do that, that can be

11   done in, accomplished in four months, a hearing in four months?

12         MR. ENGLANDER:  We hashed out a schedule in which it

13   was basically briefing completed in four months.  We may be

14   able to do it faster with cooperation from the parties, I

15   believe we could.  I am listening to Mr. Keller saying he is

16   going to have four to six weeks of discovery and a hearing in

17   eight weeks, and I am wondering where the briefing comes in.

18   We haven't even seen their motion yet.

19         Their schedule, it seems to me, I don't quite get it.

20   Are they saying they're going to file their motion before

21   discovery is complete or are we going to be, after 9 months are

22   they going to give us four days to respond to a preliminary

23   injunction motion?

24         We have, with respect to preliminary injunction

25   motion, we have a serious issue about irreparable harm that

C3DJABCM                         Motions

1    needs discovery.  What we are talking about here, because this

2    is something the consumers can do now, it is not at all evident

3    what the irreparable harm is.  Tomorrow when we provide another

4    system that does what consumers can do anyway, it is not clear

5    what the irreparable harm is to the broadcasters from that.

6    There should be none.  So we need discovery on that, and that

7    is part of the reason we thought this process needs to play a

8    little long longer.

9              THE COURT:  What would that look like?  What amount of

10   time would it take?

11             MR. ENGLANDER:  We can do it within the time they're

12   taking discovery on our system, we believe, your Honor

13   simultaneously.

14             THE COURT:  Not less?

15             MR. ENGLANDER:  Less time than that?  I think it is

16   four to six weeks.

17             THE COURT:  What would it look like?

18             MR. ENGLANDER:  It would look like discovery of the

19   people who, I suppose --

20             THE COURT:  Are you talking depositions?

21             MR. ENGLANDER:  I think so, yes, your Honor, because

22   interrogatories as to what their contention is, how they claim

23   that they are being irreparably harmed, followed by witnesses

24   with respect to how they claim they're being irreparably

25   harmed, and probably simultaneously documents from them

1    regarding their retransmission agreements that they currently

2    have because we believe they're going to claim that they're

3    losing revenue from -- that they are potentially going to lose

4    revenue from the retransmission agreements they have.  We are

5    going to need the retransmission agreements and we are going to

6    need to take discovery about those.

7              THE COURT:  Okay.

8              MR. HOSP:  I had one or two quick things to add.

9              One of it was on the urgency that is being argued

10   here.  The reality is there were a series of announcements,

11   public announcements about this company that started close to a

12   year ago.  Mr. Canuge went out to the FCC, had numerous

13   conversations with executives, with many plaintiffs before you

14   were explaining the technology.

15             It was known that this was, the planned launch was for

16   the first -- at some point early on in this year.  The claim

17   that somehow the world changed as of February 14th when the

18   announcement was made that the roll-out would begin on March

19   14th -- and let me just be clear about that.  The roll-out that

20   begins tomorrow is not a black or white kind of a thing.  It is

21   not as though tomorrow hundreds and thousands of people can

22   sign up.  There is a process to this.  There is a continuation

23   of a roll-out that has already begun.  There is no question the

24   announcement talked about the roll-out because that is the way

25   you do these things, roll things out, you have public

C3DJABCM                        Motions

announcements.  It is continuation of a process that began
quite a while ago, and there was no material information that
was disclosed on February 14th that the plaintiffs didn't have
prior to that.

         I also point out that the announcement was made on
February 14th.  The complaint wasn't filed until I believe the
1st.  So, yes, March 1st, so a little over two weeks, they
waited two weeks to file it.  Then they waited another eight
days to contact Chambers.  So they have a already built in
another month.  And the notion that somehow we are talking some
of the largest companies in America who had prior knowledge of
this, who are building in this time -- in fact, the notion that
somehow it's the defendants who are trying to cause delay here
is not the case.  The reality is it is the defendants who are
looking to get this resolved quickly.

         One question I am not clear on is what discovery is
done in the preliminary injunction phase that isn't done in the
phase regarding summary judgment or disposition on the merits.
I am not entirely clear what it is that can be cordoned off.
The reality is they're going to ask for documents regarding our
system.  That is the majority of our documents.  The reality is
if we are talking about preliminary injunction, particularly
preliminary injunction, we are going to be digging very deeply
into the documents they have on irreparable harm.  The delay
came prior to the filing of the action.

C3DJABCM                    Motions

1              It is not clear to me on either side whether it is on

2      the plaintiff's side or the defendant's side, what the

3      difference is behind the discovery.  It is not clear to me.

4              THE COURT:  Let me hear from Mr. Keller on that.  I

5      thought I heard you say something like we can just take what we

6      do for --

7              MR. KELLER:  That is exactly what I said.

8              THE COURT:  -- without additional discovery?

9              MR. KELLER:  That is exactly what I said.  This notion

10     there is a duality here in discovery is not one of my making.

11     I said the opposite.

12             THE COURT:  Tell me again, I want to focus for a

13     minute on why we can just do this.  There is a time question.

14     Let's just for a second bracket the time question.

15             MR. KELLER:  Put that aside.  Here is my answer.

16             They're entitled to move for summary judgment at any

17     time.  That is what Rule 56 says.  They can move for it

18     tomorrow.  They can move for it at the close of expedited

19     discovery.

20             THE COURT:  I suppose you have to answer first.

21             MR. KELLER:  Actually, at any time.

22             THE COURT:  They can move --

23             MR. KELLER:  At any time, that is what the rule says.

24     They put in their answer and counterclaim.  If they think we

25     have --

C3DJABCM                     Motions

1          THE COURT:  I understand you say they need some

2     discovery?

3          MR. KELLER:  Not trying to cut it off.  I want them to

4     take that discovery.  We are going to have some issues,

5     however, for the same reason that Judge Buchwald denied the

6     type of discovery that they now say they want, the very type of

7     discovery they want.  The details of those agreements were not

8     important to irreparable harm.  There was motion practice

9     before Judge Buchwald.  She says you're not entitled to that

10    stuff and I'm not going to give it to you.

11          She turned to the plaintiffs in IVI and said, of

12    course, if you can't prove your irreparable harm harm case

13    because there wasn't adequate discovery, don't come crying to

14    me.  We'll take that ruling.  We are fine with that.  There is

15    no duality, no extra work.  They can make their motion at any

16    time.  It is always the case, always is an overstatement,

17    preliminary injunction records and summary judgment records are

18    very similar.

19          THE COURT:  It is true it is often the case that PI

20    and preliminary in injunction get consolidated.

21          MR. KELLER:  You have that right under Rule 65 if you

22    want to convert this to a trial on the merits, Judge, if you

23    give the parties notice, you have the right to do that.  Nobody

24    here is urging you to do that, but you certainly could do that,

25    and it is for that very reason courts have the right to do that

C3DJABCM                          Motions

1    on notice because the records don't always differ that much.

2           We're not opposed to that.  What we are opposed to is

3    this notion of four weeks out.  I need to respond to two other

4    things.

5           THE COURT:  Yes.  I think one of them will be if it is

6    four to six weeks for discovery, what are you looking at for --

7           MR. KELLER:  Our preliminary injunction brief.  It is

8    not uncommon in this courthouse at all for expedited discovery

9    to precede the briefing that the court gets as to why each side

10   thinks an injunction should or should not issue.

11          Actually, we thought it was -- that is why we called

12   Chambers.  By the way, the notion that we delayed, we would

13   have been before you sooner if Mr. Hosp and I had been able to

14   either reach agreement or agree that we couldn't agree.  There

15   was a little back-and-forth that got left out that led to the

16   eight days that followed the final of the claim.  It is

17   immaterial.  I'll get to the main event.

18          The main event is that we are ready to take the

19   expedited discovery.  I'll get on the phone with Mr. Hosp later

20   or tomorrow morning and tell them what we need.  They can tell

21   us what they need.  If there is no disagreement, we'll go to

22   it.  The notion, though, that somehow they can't respond

23   because they haven't seen a brief yet is really the opposite.

24   We came down here and said let's talk about this.

25          THE COURT:  I missed that point.

C3DJABCM                        Motions

1          MR. KELLER:  There was suggestion somehow the brief

2     has to come in before we move for preliminary injunctive

3     relief.

4          THE COURT:  I hadn't understood that.  I thought the

5     point was if it takes on the outside six weeks to do the

6     discovery, and then there is a hearing two weeks later, are you

7     talking about doing your motion and their opposition and their

8     reply within those two weeks?

9          MR. KELLER:  Yes.

10         THE COURT:  Presumably with a little bit of time for

11    me to read the papers?

12         MR. KELLER:  Absolutely.  The schedule, eight weeks

13    out at the outside, but discovery can be shorter than the four

14    to six weeks.  That will allow the parties to fully -- look,

15    Judge, in all honesty, they're ready.  They made an appearance

16    a half a day after we filed the complaint.  They already put in

17    their answer and counterclaim.  They have already written to

18    you on the subject.  They have been ready for a long time.

19         We haven't been ready because I have to tell you

20    discovery will show there were no blueprints suggested, there

21    was no transparency.  There was discussion about we're going to

22    test market this service.  You know what, we are going to

23    retransmit your signals and we think we can do it under

24    Cablevision.  That is all we knew.

25         We knew one more thing.  Their antennas are really,

C3DJABCM                          Motions

1   really small.  That doesn't change anything.  It is what goes

2   on behind the scene that makes the difference.  That is why we

3   need expedited discovery.  Once we get that discovery, we will

4   be ready to brief it, and you'll have ample time to read our

5   moving brief, their opposition, and any reply that we choose to

6   put in.  We may not need one.  We may talk to you about it when

7   we come see you.

8          The one thing I want to impress upon you in addition

9   to the Cablevision case, obviously, and --

10          THE COURT:  Before you turn to that, is there any

11   front briefing you can do before?

12          MR. KELLER:  Yes.

13          THE COURT:  Just to see in your interpretation, but

14   could you do a --

15          MR. KELLER:  Absolutely.

16          THE COURT:  So everybody knows what target here is?

17          MR. KELLER:  We are happy to do it.

18          THE COURT:  What would that look like?

19          MR. KELLER:  It would be devoid of facts, but it would

20   be a primer on the law to the extent that either side thinks

21   that Cablevision is important for you to really dissect, each

22   side can dissect it, we are all for that.  We can have a brief

23   in next week.

24          Theirs is probably halfway written, Judge.  They have

25   had on their web site their legal theory available for

1    everybody to see.  What we haven't had are the facts and, of

2    course, we haven't had the imminence of a launch.

3           There is not a single case that suggests that you have

4    to sue for a preliminary injunction on the basis of a test

5    market.  You can look for it.  They go the other way.  You

6    don't have to.  That delay argument, as you said, goes to the

7    merits whether or not a preliminary injunction should issue.

8    It is not a reason not to schedule it.

9           The thing that I think is most telling of what you

10   just heard, Mr. Englander must have used the word "copies" half

11   a dozen or more times.  We are not focused on the copy except

12   insofar as a copy assists the public performance.

13          We are not talking about time-shifting.  We go home,

14   and you want to record a program and you want to watch it the

15   next day?  That is time-shifting.  The Supreme Court has

16   spoken.  You, in the privacy of your own home, can do that.

17   That is not what we are talking about in terms of preliminary

18   injunction motion.

19          We are talking about the same transmission of

20   television signals in real time enjoined in IVI case, I Crave

21   TV case in 2000 in the Western District of Pennsylvania.  This

22   is not the first time somebody tried to use the internet as a

23   retransmission medium.  Every time they tried to do it with

24   copyright and television programs, they have been enjoined.

25          The same results should obtain here.  We can start

C3DJABCM                    Motions

1    briefing you why next week, but we need to get that hearing on

2    so we can get that preliminary injunction, and we would like to

3    do it, if the court would permit, no later than the week of May

4    14th.

5              THE COURT:  I have a couple of questions.

6              I think I need, at some point we need to bring the

7    Jenner folks in a little bit because it is not consolidated,

8    but if it is consolidated, I am wondering now if we are on the

9    same schedule or not.  You've presented a very, what I

10   understand as to be a quite narrow claim just on direct

11   infringement, just going to the violation of public performance

12   right.

13             MR. KELLER:  That's correct.

14             THE COURT:  I don't know if that is where they are and

15   how and if these matters are consolidated, how that affects the

16   the schedule.  Let me hear from everyone on that point and then

17   we'll return to the cases actually in front of us.

18             MR. FABRIZIO:  Thank your Honor.  Steve Fabrizio.

19             We agreed with everything Mr. Keller said in terms of

20   need to quickly get the preliminary injunction and a need to

21   avoid a four month schedule which everybody knows is not

22   ultimately going to be four months for summary judgment.

23             THE COURT:  Sorry, everybody knows what?

24             MR. FABRIZIO:  It is not ultimately going to be the

25   end date for preliminary injunction.  That will be when the

C3DJABCM                    Motions

1    briefs go in.  Then there will have to be a hearing and

2    decision and there will probably be more argument about what

3    form of injunction should issue.  I don't suppose everyone

4    concedes all of those issues after-the-fact.

5           We have every expectation and hope that we will very

6    quickly be before you in this Court and that these two cases

7    should proceed in absolute lockstep on the same schedule

8    without double-teaming AEREO.  We are in close coordination, we

9    will coordinate discovery, coordinate hearings.  Our

10   expectation is that having the two cases together is not going

11   to add any additional time.

12          THE COURT:  Are your claims limited in the same way as

13   Mr. Keller's?

14          MR. FABRIZIO:  We have the exact same public

15   performance claim, direct infringement.  We also have an

16   alternative unfair competition claim.

17          THE COURT:  That is your state claim?

18          MR. FABRIZIO:  Yes.

19          THE COURT:  Before your state claim under the

20   Copyright Act, I'll take a peek at your complaint.

21          MR. FABRIZIO:  Ah --

22          THE COURT:  I thought I saw some reference to

23   contributory, secondary liability?

24          MR. FABRIZIO:  We would be moving for preliminary

25   injunction on direct infringement of the public performance

1    right and perhaps on the state law claim in the alternative.

2              THE COURT:  Okay.

3              MR. FABRIZIO:  That is it.  We believe the discovery

4    that is needed for both of those is essentially the same when

5    you consider irreparable harm.

6              THE COURT:  Go ahead, Mr. England.

7              MR. ENGLANDER:  The first point is it is true we can

8    file a motion for summary judgment at any time.  As I indicated

9    and I thought --

10             THE COURT:  You indicated you need discovery?

11             MR. ENGLANDER:  No, we don't need discovery to move

12   for summary judgment.

13             THE COURT:  Right.  You said you needed discovery on

14   irreparable harm?

15             MR. ENGLANDER:  We are ready to move for summary

16   judgment, but what we don't want is a schedule to come before

17   you once on preliminary injunction and we file a motion, and he

18   says 56 (e), I haven't had enough discovery yet.

19             We need a schedule that allows us to present both of

20   them before you.  If there is a belief that we can do that in

21   eight weeks, I am very skeptical of that because I certainly

22   don't think in a matter of this magnitude, when we haven't seen

23   their motion for preliminary injunction yet, we should be

24   forced into some extraordinarily rapid response brief.

25             Mr. Keller says we have our briefing ready.  That is

C3DJABCM                         Motions

1    not true with respect to irreparable harm.  We do not know

2    their irreparable harm case.  We can certainly brief why it is

3    that we think what we are doing is lawful.  We are prepared to

4    do that.

5           We don't have a motion for preliminary injunction or

6    an irreparable harm motion or even, even an outline of what

7    their irreparable harm case supposedly is.  I am skeptical of

8    eight weeks.  Am I skeptical of 12?  Probably not as long as we

9    are going to put both types of motions before you at the same

10   time so that we a have the opportunity to resolve the entire

11   matter at the same time.

12          Your Honor may decide no, but we would like that

13   opportunity, and not to go at this piecemeal because what that

14   is, that is a prescription for AEREO not to have this matter

15   resolved and have it continue on.

16          THE COURT:  I understand that.  Am I hearing you right

17   that it a difference between two months and four months?

18          MR. KELLER:  No, I don't think so that is right.  Mr.

19   Fabrizio put his finger right on it.  Their proposal is quite

20   different as it was articulated in the letter.  Maybe it

21   changed a little bit today.

22          It is 10 weeks or it was 10 weeks of discovery, then a

23   briefing schedule, then we submit it your Honor, four months

24   out we start briefing it, moving brief, opposition brief, reply

25   brief.  Then you get to decide it.  Of course, I know the court

1    will do as fast as it can, but there is a difference between

2    deciding summary judgment and having to rule quickly on a

3    preliminary injunction record.

4            Then as he said, there will be some disagreement if we

5    are to prevail over the scope of an injunction, and all of that

6    means what they really want is something a few more months out,

7    and we can't wait and it is not a defense.  It is not the basis

8    for opposing preliminary injunction to say I want summary

9    judgment, and I am not representing, your Honor, one way or the

10   other whether there will be additional discovery necessary.

11   Right now I am hard-pressed to think about what it will be.  In

12   large part whether additional discovery is going to be needed

13   will depend on how candid they are about what the facts really

14   are.

15           We are going to face exactly the same issue, though,

16   when we're in expedited discovery to build a preliminary

17   injunction record.  The more cooperation, the less need for

18   discovery further down the road.  This is not an attempt to get

19   two bites at the apple.  It is an attempt to do what we are

20   entitled to do, which is ask the court for preliminary

21   injunctive relief on an expedited schedule.

22           It was an excellent suggestion you made.  We are happy

23   to submit to the court, even bereft of detailed facts, why

24   Cablevision cuts against them in several significant ways.  We

25   have Solicitor Kagan's brief on that, we can work it into our

C3DJABCM                    Motions

1    brief and point out why.  We have got the IVI case.  We have

2    the I Crave TV case.  We have two or three other cases where

3    efforts to use the internet to transmit copyrighted program was

4    held to violate the public performance right.

5         We can brief all of those cases for you and we can do

6    that next week.  I bet you Mr. Fabrizio can do it, too, so we

7    can get going.  Then there won't be any surprises.  To the

8    extent you have the brief and you think about it and have more

9    questions, you can ask us for more briefing.  In the meantime,

10   there is no slight of hand here.  They will know what our

11   theory is.  They do.  They anticipated it.  It has been on

12   their web site for a while what their theory is.  They know

13   what we are going to say.

14        What is interesting, I have to come back to it, every

15   time you heard from Mr. Englander on the merits, he kept

16   talking about copies.  Copies goes to the reproduction right.

17   We are interested in the preliminary injunction as a violation

18   of the public performance right, and Cablevision, at Page 134,

19   says they're not the same for any number of purposes, most

20   importantly who's doing the act.

21        This is a little little like the Wizard of Oz, where

22   Toto pulls back the curtain and there is a wizard pulling the

23   levers and buttons and switches, and the Great Oz being

24   projected up on the screen says pay no attention to the man

25   behind the curtain who is really doing the projection.

C3DJABCM                        Motions

```
 1          AEREO is doing the same thing.  Pay no attention to
 2   the fact we set up an entire system to grab broadcast signals
 3   over the air.  They use a fiction of a mini-antenna and say
 4   that you know what, we fit within Cablevision.  They process
 5   our copyrighted programming and they stream it across the
 6   internet, and Mr. Englander is wrong when he says consumers can
 7   do it now.  They can't do it now.  If they could do it now,
 8   stream signals across the internet, you wouldn't need an
 9   aerial.  They can't do it now.
10          When he says they can do it now, he is talking about
11   time-shifting.  We are not litigating time-shifting.  The
12   Supreme Court has spoken.  The public performance right, every
13   time it has been litigated in this courthouse and elsewhere,
14   whatever the defense, the cases were the same, they take the TV
15   signal, copyrighted programming, stream it to subscribers or
16   users on the internet.  Every single case says that is a
17   violation of the public performance right.  Cablevision does
18   not speak to the contrary.  We are ready to brief that for you
19   next week.
20          MR. ENGLANDER:  First of all, we did suggest four
21   months to have briefing complete and be ready to go.
22          THE COURT:  Four months to the hearing?
23          MR. ENGLANDER:  Yes, four months to be ready to decide
24   it on the merits.  We really are, and I don't think -- as I
25   listened to Mr. Keller, he doesn't have specifics as to how we
```

C3DJABCM                         Motions

are going to get from six weeks of discovery to a properly

briefed hearing before you in eight weeks.  I don't see it.  I

think we really are, as you pointed out, sort of debating the

difference between two and four months.

          The second point, the public performance right,

Cablevision directly addresses the public performance right and

directly holds in that case there was no public performance

because the individual was making their own unique copy, using

Cablevision's system and playing back their own unique copy to

themselves.  That is exactly what AEREO's system allows, and it

is true that right now a consumer with the appropriate

electronics can do exactly that and they can do it through an

internet system to an international monitor.

          THE COURT:  Do you have -- the response is not the

right word -- anything you want to say about if the matters are

consolidated and how that interfaces with the scheduling in any

way in light of what you've heard, Mr. Fabrizio?

          MR. FABRIZIO:  Yes.

          MR. ENGLANDER:  Here is the only thing that their case

may add, and it is unclear to me to what degree they're going

to pursue it, is an indirect infringement case.  Our position,

as I believe -- I can tell your Honor has done some looking at

this -- our position is that that case is foreclosed by Sony,

that Sony holds that an individual has the right, that the

consumer is engaged in a fair use when they make a copy of an

C3DJABCM                    Motions

over-the-air broadcast for themselves and they play it back to
themselves.

        That is not a public performance because it is just
coming to them.  Cablevision establishes that unequivocally.
Therefore, we can move for summary judgment on the indirect
infringement case as well and we can put that before you at the
same time, and we believe it can be resolved on summary
judgment.  That is the difference that this case may add.

        MR. FABRIZIO:  I can save counsel some time?

        THE COURT:  Say that again?

        MR. FABRIZIO:  I can save counsel some time.

        We do not have a claim for the virtual DVR copying
that they allowed.  The reproduction claim in our complaint is
because we do not know the internal workings of how they engage
in the public performances and what copies and what is the
nature of copies that were made in aid of the public
performances.

        THE COURT:  You would need additional discovery beyond
the PI discovery for --

        MR. FABRIZIO:  No, your Honor.  It is part and parcel
of the same discovery.  I believe what everybody needs is to
know how a signal gets into their system, how it works its way
through their system, and how it leaves their system, and
that's the discovery that will tell us that.  It is no
additional discovery.  We may very well not move on that.  It

C3DJABCM                         Motions

depends entirely on things we do not know now about how they do

what they do in their public performing of these works.

          To be as clear as can be, we have not moved, we have

not filed a complaint raising claims against the virtual DVR

portion of their service.

          MR. KELLER:  Your Honor, we keep going back between

merits and scheduling.  Scheduling is much more important

because it is unfair for you to have to listen to lawyers who

have been thinking about this for a few weeks at least, and in

the case of AEREO much longer, baffle you with all sorts of

citations.

          THE COURT:  You're worried about me?

          MR. KELLER:  I am not worried.  It is unfair.

          THE COURT:  I am looking forward to the briefing.

          MR. KELLER:  We should give you a better record.

          THE COURT:  I am not going to decide --

          MR. KELLER:  We want the expedited discovery so we can

do that.  That is the way the case should be teed-up for you so

you have everything you need and not just lawyers' argument,

which is all you'll get, but we'll give it to you next week.

          THE COURT:  Mr. Englander, you might want to make

another point.

          MR. ENGLANDER:  The only thing, that was a very

helpful clarification.  It sounds like we are not engaged about

a debate what Sony did or didn't cover.

C3DJABCM                    Motions

1          I agree with Mr. Fabrizio, based on what he is talking

2     about, the discovery can be done as the discovery Mr. Keller

3     would need to do and motions for summary judgment from our

4     perspective can be filed against those claims.

5          So that is is very helpful.  We are now just debating,

6     it sounds like we are debating between 8 to 10 to 12 weeks and

7     4 months and what is appropriate to get the appropriate record

8     and the appropriate briefing before you to resolve if they're

9     going to file for preliminary injunction and when we see it, we

10    can do that and do motion for summary judgment from our side.

11         MR. KELLER:  If you said six weeks for expedited

12    discovery or less, we would have our moving brief in addition

13    to whatever we give you next week, I stand by that offer the

14    day discovery closes.  That is a full two weeks.

15         THE COURT:  Plus, plus some preliminary briefing

16    potentially on --

17         MR. KELLER:  I am ready to brief something for you

18    next week.

19         THE COURT:  That would make, and my thinking is in

20    part starting to get me into the law, but also to just I think

21    of it as just a clear target for the PI for the other side,

22    that they don't have to -- they can quickly know what it is as

23    you have represented.

24         MR. KELLER:  We can lay it all out for them next week

25    so they have a roadmap of our moving case.  The only thing that

C3DJABCM                        Motions

1    will follow will be the facts, the proverbial meat on the

2    bones, and then the day the discovery closes is the day we can

3    submit our pre-hearing brief with the facts that elaborate on

4    our legal theory.

5          If we got done in five weeks of discovery, you would

6    have five weeks and then you would have two to three weeks, our

7    brief comes in the day discovery closes, their brief comes in

8    the next week, our reply brief comes in a few days after that

9    and that's how we do.  I don't think it is that hard, from six

10   weeks to eight weeks or five weeks to eight weeks.  It is done

11   all the time.

12         This really, the degree to which we are getting pushed

13   back on this I think is proof in the pudding.  They want to put

14   this off, but they can't any longer.  They're trying to have it

15   all ways.  We didn't move fast enough, but now that we have

16   moved, now it is too fast.

17         THE COURT:  What I hear is they want to put it off a

18   little bit in order to get everything resolved at once.

19         MR. KELLER:  There is nothing extra.  That is why I

20   come back to Rule 56.  They can move for summary judgment any

21   time.  We are not going to stop you.

22         THE COURT:  Let me ask, we touched on it, but what

23   would your view be to under 65 (a)(2) to consolidate the PI

24   hearing with the trial on merits?  Could we do that?

25         MR. KELLER:  I don't know what our client's position

C3DJABCM                          Motions

1   is on that because I haven't raised it with him.  You have the

2   power to do it, on notice to the parties.  I don't know what

3   that does to the case, but I have to tell you it does serve

4   similar purposes as their plan.  The one thing I can tell you

5   my clients would say is unacceptable to them, if they were

6   asking what their preference is, they wouldn't want that to add

7   time to the schedule.  In other words --

8            THE COURT:  Would they if it were a day, two days?

9            MR. KELLER:  I settle cases on --

10           THE COURT:  You're close?

11           MR. KELLER:  One day is not going to make --

12           THE COURT:  I am curious if there is way to get to

13   something like a three-month schedule, not to be overly

14   simplistic, but you want to, once they want four months, could

15   we get to three months and do everything?

16           I should take a peek at my calendar to know if it is

17   even in the ballpark.

18           MR. KELLER:  The whole point of coming down today,

19   your Honor, was to take your calendar into account.  You should

20   do that.

21           THE COURT:  That's why we're here, but I am saying I

22   should look.  I literally have my calendar here so I want to

23   look because we might be arguing, we will know exactly what

24   we're arguing about.  But, Mr. Englander, did --

25           MR. ENGLANDER:  One other issue I want to raise, does

C3DJABCM                         Motions

1    Mr. Keller anticipate expert affidavits with respect to his

2    preliminary injunction motion?

3             MR. KELLER:  Yes.

4             MR. ENGLANDER:  So part of why we thought four months

5    was the appropriate time is because we anticipated that experts

6    would be involved, that the experts wouldn't be able to do

7    anything until the discovery of our system was done and that

8    there would be deposition discovery of those experts.

9             Again I'm working off my experience with the

10   Cablevision case where there were limited experts, it was done

11   very cooperatively and efficiently, and in the end there was

12   really no disputed fact.

13            If you read the case of the District Court or the

14   Second Circuit, although there was actual live testimony about

15   how the systems worked, there were no disputed facts.  It was

16   useful, I think, to both courts to have that process play out.

17            THE COURT:  But it is right that in Cablevision there

18   was an agreement not to proceed until --

19            MR. ENGLANDER:  That's correct, your Honor.  My point

20   is this -- and again we do not want to delay this -- if it is

21   believed we can do this on a shorter time-frame, we certainly

22   will endeavor to do that.

23            If Mr. Keller is going to drop an expert affidavit for

24   the first time on us a week before a scheduled preliminary

25   injunction hearing or two weeks before it, then we've

C3DJABCM                          Motions

1    compressed our time quite a bit.

2           THE COURT:  Mr. Keller, when you say four to six

3    weeks, that is fact discovery and that is distinct from expert

4    discovery?

5           MR. KELLER:  No, your Honor.  We'll do it all.

6           MR. ENGLANDER:  That is fine.

7           MR. FABRIZIO:  Your Honor, just one quick point.

8           Defendants seem to be under the impression they have

9    an absolute right to present a dispositive summary judgment

10   motion at the same time we present a preliminary injunction.

11   Obviously, preliminary injunctions are preliminary in nature,

12   they are a different standard.  They're designed to stop

13   irreparable harm.

14          They argue it is a totally different system.  What

15   this Court has already decided, has already ruled on a full

16   factual record that the exact same consumer service causes us

17   irreparable harm.  There is no question about that.

18          THE COURT:  What is that?

19          MR. FABRIZIO:  IVI case.  IVI had one big antenna.

20   Beyond that, as far as we can tell, it is the same thing.

21          So whether it is one big antenna or, as they like to

22   say, tons of teeny, tiny, little antennas, we think the legal

23   issue is identical.  The reality is the irreparable harm we

24   face, our clients face from a retransmission television service

25   over the internet is identical, and the court has ruled, made

C3DJABCM                          Motions

1    factual findings that we are suffering irreparable harm.

2          There is just no right on the part of the defendant to

3    presuppose that a schedule has to work backwards from their

4    preferred summary judgment on a final disposition of the case.

5    The reality is, we will have the preliminary injunction and one

6    side or the other is very likely to immediately appeal that

7    preliminary injunction, and then you will get to final

8    dispositive closure on a preliminary injunction basis.  Whether

9    the case goes on after that, your Honor, most experience is

10   cases at that point would end.

11         We shouldn't be held to an expedited final disposition

12   that delays our preliminary injunction.  Preliminary

13   injunctions are heard on two, three, four weeks of discovery

14   all the time.  That is really all we are asking for.

15         THE COURT:  Two, three, four, five, six?

16         MR. FABRIZIO:  Two, four, six, your Honor.  The point

17   is taken.

18         THE COURT:  I suppose another option would be to just

19   do a very compressed PI schedule.

20         MR. HOSP:  If I may, two quick points.

21         One is we seem to be hearing the completely separate

22   argument from both sides which is on the one hand, they

23   couldn't have filed a preliminary injunction until now because

24   they didn't know what was behind the curtain.

25         On the other hand, they know exactly what the system

1    is and they know that somehow someone, this Court has ruled

2    against it previously.

3          THE COURT:  I am not, as I sit here, moved by the fact

4    they didn't file sooner.  As I've said, you can make those

5    arguments in front of me is a question of irreparable harm.

6          MR. HOSP:  Fair enough.

7          THE COURT:  They can bring a preliminary injunction

8    motion.

9          MR. HOSP:  Fair enough.  We are not disputing at all

10   their right to bring a preliminary injunction hearing, not in

11   the least.  We think that delay should be accounted for in the

12   scheduling of that preliminary injunction hearing.

13         Ultimately we are really are talking about scheduling,

14   and that is really the --

15         THE COURT:  We'll have a scheduling hearing.

16         MR. FABRIZIO:  We are not done yet.

17         THE COURT:  We are getting there.

18         MR. KELLER:  What is this record?

19         THE COURT:  An hour and a half.

20         MR. HOSP:  What we are hoping for is to make sure the

21   discovery needs to be conducted, the discovery plaintiffs

22   intend to take of our client and the discovery we need to take

23   of plaintiffs can all happen in a way that, sure, absolutely.

24   If the parties want to file summary judgment briefs when that

25   is over, that is fine.  If they want to file preliminary

C3DJABCM                    Motions

1    injunction briefs when that is over, that is fine as well.

2          What we don't want to have happen is basically have a

3    schedule that goes forward with a limited amount of discovery

4    for preliminary injunction and then the process somehow grinds

5    to a halt, we do the preliminary injunction and we don't get

6    discovery if we need it to resolve this on the merits because

7    that is --

8          THE COURT:  I would set the schedule for discovery

9    following PI.  Based on representations, I can set it and maybe

10   even without I can set a very tight schedule.

11         MR. HOSP:  What we are asking for again is the notion

12   that these two processes be rolled into each other in a

13   reasonable way, that is our goal.

14         MR. FABRIZIO:  Our point is they simply have no right

15   to insist that they be rolled together.

16         THE COURT:  That is true.  I thought for a moment we

17   might be verging on some agreement, but now I am less certain.

18   Let me pause talking for a moment and look at my calendar.

19         (Pause)

20         THE COURT:  Mr. Keller, you had said your desire would

21   be no later than May -- what was it?

22         MR. KELLER:  If possible, your Honor, the week of May

23   14th.

24         THE COURT:  Am I seeing this right, Sayra, that I have

25   a trial starting on the 15th?  I have a trial the week of the

C3DJABCM                     Motions

1    15th, the week of the 14th and the 21st?

2                    (Off-the-record discussion)

3           THE COURT:  It turns out I have two trials in May.  I

4    have a three day Bench trial starting on May 15th, so that week

5    is going to be out.  That will go to trial.

6           The following week I have a week-long jury trial

7    starting on the 21st.  So we need to either have to move closer

8    in time or further in time.  Given your harm, is moving closer

9    in time a possibility?

10          MR. KELLER:  I think it is a possibility.  Here is my

11   suggestion:  In the spirit of cooperation that has

12   characterized the entire proceeding, I think Mr. Hosp and Mr.

13   Englander and Mr. Fabrizio and I ought to get together and see

14   what around that time-frame is doable and pick a date that is

15   either before the two weeks that you have, two weeks you have

16   blocked out or the week thereafter because obviously if those

17   two weeks are blacked out, they're blacked out.

18          I have to say even I, as urgent as this is and

19   irreparable as the harm may be, can't say one week on the side

20   of two weeks or week after makes that much difference as long

21   as everybody understands we are not waiving any irreparable

22   harm arguments in an effort to come up with a schedule that

23   works for everybody.

24          THE COURT:  Here is where I am.  I would like it if we

25   can do this all at once, but there is not agreement on that.

C3DJABCM                    Motions

1    In that case, I think you're entitled to a preliminary

2    injunction and to make your arguments and I can accommodate a

3    proceeding, a hearing, I can accommodate it the week of April

4    30th.  I can accommodate it the week of May 7th.  I appreciate

5    your wanting to work it out, but I think --

6              MR. KELLER:  In the spirit of cooperation, why don't

7    we pick the week after, the week of the 28th which then gives

8    everybody another two weeks, gives you more time because if you

9    have trials in those two weeks, you are going to need time to

10   read our submissions.  I think that is the fairest thing of

11   all.  If we have it the week of the 28th is the week you are

12   available again, right, your Honor?

13             THE COURT:  I am available the week of the 28th, but

14   the 28th itself the courthouse is apparently closed.

15             MR. KELLER:  Memorial Day, the 28th.

16             THE COURT:  I wouldn't mind, but you won't be able to

17   get --

18             MR. KELLER:  I wouldn't mind.  A hearing that week is

19   the way to go then.  That way we can make sure that the briefs

20   come in far enough in advance of your two trials so that you

21   have time with the record that will be created.

22             MR. FABRIZIO:  As a current guest in this courtroom, I

23   am hesitant to mention a personal scheduling matter.  That

24   would be perfect as long as it -- no, that would be perfect as

25   long as it doesn't slip.  For over a year I have been planning

C3DJABCM                        Motions

1    with my wife to go to the artic, and we leave on June 7th.

2              THE COURT:  If it slipped beyond that week, we would

3    be in Mr. Englander's schedule.

4              MR. FABRIZIO:  Hopefully they won't take that as an

5    invitation to delay things a little more.

6              MR. KELLER:  Your Honor, that is my -- the week of the

7    28th, if we get it done that week, accommodates that concern.

8    That is what we would request that you order expedited

9    discovery between now and then, and the parties can actually,

10   can with this threshold issue resolved, work out a lot of the

11   rest.

12             I will represent now, although I don't know what our

13   position is going to be on summary judgment, I am not looking

14   to do things twice or to make the argument that discovery is

15   incomplete.  If it is incomplete or if they think they need

16   something from us that they haven't gotten for their summary

17   judgment motion, I'll represent to the court they can continue

18   on an expedited discovery basis if that makes sense to them

19   thereafter.  You can order it anyway, as you said earlier.

20   This isn't an effort to --

21             THE COURT:  Do you think there is some possibility,

22   that once you've got, everybody has the date in mind and

23   discovery is full steam ahead, that you wouldn't be opposed to

24   consolidating to trial on the merits?

25             MR. KELLER:  Your Honor, that would be the first

C3DJABCM                    Motions

1  question I ask the clients when I get back, obviously.  You

2  have asked now twice.  Let me find out what their position is

3  on that.

4          THE COURT:  If it helps, I can ask a third time, you

5  can tell your client.

6          MR. KELLER:  It will be in the transcript.  We will

7  get it straight.

8          We will certainly take that under advisement and I can

9  give your their position.  On Rule 65 you can do it on notice,

10 you can impose your desire that way so the parties know they

11 have to complete their best possible record in the time

12 allotted so it is not so much a do they want it if you think it

13 makes sense.  Everyone will have a clearer picture of whether

14 it makes sense once we get going on discovery.

15         THE COURT:  Mr. Englander?

16         MR. ENGLANDER:  Your Honor, that is fine.  We are fine

17 with the schedule.  There are a couple of housekeeping issues

18 associated.

19         Mr. Keller has represented the reason we are fine with

20 the schedule, Mr. Keller represented he is going to provide us

21 a brief that indicates, lays out those parts of his case that

22 he can lay out.

23         THE COURT:  Yes.

24         MR. ENGLANDER:  Frankly, based on what we are hearing

25 now, we are going to endeavor to file a motion for summary

C3DJABCM                    Motions

judgment far enough in advance to have that brief for you on

that same schedule.  We can sit down and try to figure out a

briefing schedule, and I think there is a fair chance we'll be

able to do it.  Is that what you want to prefer or are we going

to try to hash that out while we are here?

THE COURT:  We can hash out some of it and you can --

for my purposes, I would like a set of preliminary briefs on as

much pre-fact or in the world of facts as you have it now that

can be done.  Maybe that will -- and not only will help me, but

then the target is clear.  So let's at least set a schedule for

that.

MR. KELLER:  Next week?

THE COURT:  My only hesitation is I don't yet know

whether the cases are consolidated.  I think I should be able

to -- I am hopeful I'll hear from Judge Marrero today or

tomorrow and see where he is.  A week from today would be

great.

MR. KELLER:  Okay.  My question is:  Does it assist

the court if those briefs, the initial briefs, come in, even

though it is a little unusual, not in the form of a moving

brief, but a Bench memo for the court simultaneously submitted,

and simultaneously each side responds to the other brief

because that will save some time.

THE COURT:  No.

MR. KELLER:  I am just asking.

C3DJABCM                        Motions

1              THE COURT:  Part of the work being done here is just

2     setting the target of your PI motion.

3              MR. KELLER:  Okay.

4              THE COURT:  I don't think they should be asked to

5     simultaneously brief.

6              MR. KELLER:  We'll submit a brief a week from today.

7     Then what would be the rest of the schedule thereafter?

8              THE COURT:  Do you want to work it out or do you want

9     me to sort it out?

10             MR. KELLER:  A week from today is what you ruled on

11    our brief.  Tell us where you are.

12             THE COURT:  Mr. Englander, Mr. Keller has volunteered

13    a week from today for his.  What would you like?

14             MR. ENGLANDER:  This is not an opposition brief, but

15    more in the nature of responsive to his brief what our position

16    is?

17             THE COURT:  Well, yes, call it what you like.  It will

18    be responsive to his brief.  You'll have the opportunity,

19    you'll both obviously have opportunity to do your briefing in

20    advance of the hearing following discovery.

21             MR. ENGLANDER:  We anticipate also filing a motion for

22    summary judgment.  Giving him enough time to respond will

23    probably be more of a -- let me confer with Mr. Hosp to make

24    sure I am not committing to something.

25             THE COURT:  While you're doing that, while you're

1    doing that, we'll pick our date.  Why don't I reserve for the

2    hearing, I've got other matters on Fridays, so I am looking at

3    for the hearing itself May 29th, 30th and 31st.

4            MR. ENGLANDER:  If you set it either Wednesday or

5    Thursday, it seems to me that will give us an opportunity to

6    come back from the weekend.

7            THE COURT:  It has to be done in two days.

8            MR. KELLER:  I think that can be done in two days,

9    your Honor.

10           THE COURT:  We'll take the 30th and 31st.

11           MR. ENGLANDER:  That sounds right.  If I get the dates

12   right, you're saying you will have your brief in somewhere

13   around the 21st or thereabouts, right?

14           How about if we file a responsive brief to Mr.

15   Keller's brief mid-April and also file any motion for summary

16   judgment we are going to file at that time?

17           MR. KELLER:  Your Honor, again they can move at any

18   time, but I want to be clear what I said earlier.

19           THE COURT:  Right.

20           MR. KELLER:  If they move for summary judgment before

21   there has been any discovery, what do you think our opposition

22   is going to be based on?

23           We can't say whether there is any disputed facts until

24   an evidentiary discovery record has been created.  I know that

25   they like the concept of summary judgment, but I want to be

C3DJABCM                         Motions

```
 1   clear, if they do it at the very outset of the expedited
 2   discovery period --
 3           THE COURT:  You said --
 4           MR. ENGLANDER:  Their opposition wouldn't need to be
 5   due until mid-May, at which point all fact discovery should be
 6   in and they should have the opportunity to respond on a full
 7   factual record.
 8           MR. FABRIZIO:  Maybe I missed something.  What are you
 9   proposing for mid-April, the response to what we file next
10   week?
11           THE COURT:  He suggested consolidating for his
12   purposes.
13           MR. ENGLANDER:  I think we'll file them separately if
14   it is okay?
15           THE COURT:  Well, let's keep them distinct.  Let's set
16   a time-frame for the preliminary sets of briefs.  If you don't
17   want to file it, you don't have to file it.  It is up to you.
18           I think it is right you say you can bring your summary
19   judgment motion whenever you like, but knowing that we need to
20   be looking at towards the close of discovery in order for Mr.
21   Keller to be able to respond, and I trust that he will if we
22   are done with that, we can move forward and do this all at
23   once.  If we can't, we can't, but we are going to try to do
24   that.  It is my hope if it is feasible given what you have all
25   learned in the course of discovery.
```

 1              You're free to bring your motion whenever you like.

 2     If you would like to respond as a preliminary matter, tell me

 3     when you would like to.

 4              MR. ENGLANDER:  I would say mid-April would be time

 5     for a responsive brief.

 6              THE COURT:  You have a concern with that?

 7              MR. KELLER:  I am just trying to --

 8              MR. FABRIZIO:  -- I don't have a concern with that,

 9     but I would make a counter-suggestion.

10              THE COURT:  Hang on a second.  We have a court

11     reporter and two people talking.

12              MR. FABRIZIO:  Sorry.  I have a counter-consideration.

13     I have no problem with their filing their response in

14     mid-April.  My suggestion would be we file our brief not a week

15     from today, but a week from Friday, so it is the end of next

16     week.

17              THE COURT:  You are not in front of me yet.  I can't

18     tell you when to file a brief.

19              MR. KELLER:  I have to tell you something.  I do have

20     a problem with a mid-April response to what we are filing only

21     because we're now being asked to put in a brief in a week,

22     which I represented we would do, but then as I count the

23     calendar weeks, that gives them one, two, three weeks at a

24     minimum to put in something on their own.  That seems a

25     little --

1           THE COURT:  Isn't it just to their disadvantage to

2    have your side of the matter sitting in front of me?

3           MR. KELLER:  That depends on things that I don't know

4    about as to how Chambers works.  If you are going to read it

5    right away and study it intently every day, perhaps.  I am

6    thinking it does give them an inordinate advantage in terms of

7    time because they will be taking discovery as we are going

8    through this process -- look, I think it is equitable.

9           I understood the desire of the court to have

10   preliminary briefing from people who obviously know the case

11   law, so you can get the law lay of the land, as the lawyers see

12   it.  We'll put in our brief next week on any day you order.  We

13   are happy to do it a week from today and we will.

14          They should not have three more weeks to respond.

15   That doesn't seem quite fair to me.  It should be a shorter

16   period and they shouldn't be able to work in any of the facts

17   that might be adduced in the course of discovery that will be

18   ongoing.

19          THE COURT:  I didn't understand that latter part, what

20   Mr. Englander was asking.

21          MR. KELLER:  I don't think -- I am expressing concerns

22   what I perceive to be a relative unfairness.  That said, my

23   position is stated.  So any way you like it!

24          MR. HOSP:  At the risk of seeming agreeable --

25          THE COURT:  By all means!

C3DJABCM                          Motions

1        MR. HOSP:  -- I think, Mr. Keller, with the parameters

2    that your Honor has laid out in terms of Mr. Keller's initial

3    brief and the ultimate date for the hearing, I think if we all

4    sit down, we can actually hammer out this schedule, but it

5    probably makes more sense to do that with everybody's calendars

6    out and actually looking and having the opportunity to talk

7    through this specifically.

8        THE COURT:  That is fine with me.  My view on this

9    point, Mr. Keller, is that as the movant, you're seeking the PI

10   in the time-frame that you are, I think for my purposes what I

11   want is an opening brief on the law that narrows the issues.

12   It seems to me it is to their disadvantage to take longer than

13   they need to respond to that, but they don't have to respond to

14   it at the end of the day.

15       I agree what it can't, what it can't do is sort of

16   incorporate factual information because that just means that

17   you're going to come and say we need an opportunity to respond

18   to that, and then I'll have eight briefs before we get to the

19   actual briefing.

20       MR. KELLER:  Understood.

21       MR. ENGLANDER:  Your Honor, with one issue that is

22   significant.  I understood that Mr. Keller in his initial brief

23   would also lay out what their irreparable harm case is so that

24   we have an adequate opportunity to respond to that before the

25   close of discovery and the hearing.  That was part of the

C3DJABCM                        Motions

1   reason why the expedited schedule made sense.  I think that

2   will have some facts baked into it.  They're all within the

3   control of plaintiff.

4           MR. KELLER:  Your Honor, let me make it easy.  Our

5   irreparable harm is exactly the irreparable harm that the

6   broadcasters suffered in the IVI case and --

7           THE COURT:  This initial briefing can include your --

8           MR. KELLER:  There are no secrets.  The irreparable

9   harm will be exactly as the same type of harm that Judge

10  Buchwald found to be irreparable in the IVI and that led her to

11  issue a temporary restraining order in the Film On case.

12          THE COURT:  You will want to make that argument to me

13  and not ask me to reference --

14          MR. KELLER:  There will be specific facts that we will

15  talk about as we put on our preliminary injunction evidence on

16  the schedule that you've already just ordered, but for the

17  purposes of the preliminary brief I am telling them now what it

18  is.  It is not a secret.  They know it already.

19          We are going to have -- I see a fight looming, and I

20  will try to resolve it.

21          THE COURT:  I would rather resolve it now.

22          MR. KELLER:  We are not going to give them all of our

23  various retransmission agreements because they weren't ordered

24  to be given given up in the IVI case.  They are extremely

25  confidential and it is the fact of the agreement and not

C3DJABCM                        Motions

1   specific details that creates the irreparable harm.

2           Whether we got paid 10 cents or $10,000 isn't the

3   issue.  The loss of control over the distribution of our

4   copyrighted programming is the irreparable harm that we will be

5   relying on.  Just as Judge Buchwald ruled, we don't need to

6   give them the various agreements that we have with cable

7   operators and multisystem operators and satellite operators.

8           Those agreements, they exist.  We can tell them that

9   they exist.  We can identify their existence, so we can swear

10  to their existence on a stack of Bibles.  We know they exist.

11  You can take judicial notice our copyrighted programming is

12  retransmitted across the United States in a variety of ways by

13  people who either qualify for compulsory licenses or take the

14  time to negotiate their own licenses.  They're doing neither.

15          That is irreparable harm.  The loss of control over

16  copyrighted content is well recognized as irreparable harm and

17  we will put on the facts that we will lose control and the

18  reasons why, but we will not willingly, and if we have to brief

19  this, too, we will, although I would like to avoid it because

20  it is not the first time the issue has been litigated.  We will

21  put in a lot of details why that is not something they get to

22  have in discovery.  The irreparable harm case is absolutely

23  clear.  It is ruled on.  It is the same case as IVI.

24          THE COURT:  Mr. Englander, am I correct that to assume

25  you intend to argue you are entitled to the retransmission

C3DJABCM                          Motions

1   agreements?

2           MR. ENGLANDER:  Yes, but we are not prepared to argue

3   that in the brief.  They're the moving plaintiff claiming

4   irreparable harm.  This will be relevant discovery, it seems to

5   me.  We would like the opportunity to brief it.  We know it

6   will be an issue, so we will try to get it resolved as quickly

7   as we can.

8           MR. FABRIZIO:  In answer to your question, I think the

9   brief that we will file, assuming both two briefs, I don't

10  think we intend to submit evidence, actually affidavits for

11  irreparable harm, but I see no reason why we would not identify

12  the categories of harm and the legal underpinning or our

13  irreparable harm case.

14          MR. KELLER:  I absolutely agree.  That is what I meant

15  to say.  If I didn't make it clear, I apologize.

16          MR. HOSP:  As you indicated before, there is an

17  indirect infringement claim here.  I want to be clear there is

18  overlap between the notion of irreparable harm with respect to

19  injunctive relief and preliminary injunction and the fourth

20  factor of the fair use test to the extent that there is a claim

21  for indirect infringement with respect to potential value of

22  the programming.

23          Is the same argument going to be limited to the extent

24  that we get into a fair use defense?

25          MR. FABRIZIO:  Honestly, I don't know what you just

C3DJABCM                          Motions

1    meant.

2              THE COURT:  I didn't understand the point.  I don't

3    think I need to.  Here is what we are going to do.  I set the

4    hearing date.  I want an initial set of briefing.  I am going

5    to set dates, so by the 21st for the movant and -- I despise

6    this calendar -- April 4th in response.

7              I'd like a joint letter on the remaining -- actually,

8    let's just do it.  We're talking closing discovery for the

9    PI -- well, I propose April 17th, which is five weeks.

10   Actually, hang on.  We moved it back.  The close of discovery

11   by April 24th.

12             MR. HOSP:  Is that inclusive of expert discovery?

13             THE COURT:  It is.  Mr. Keller, you intend to submit

14   briefing on that date, you said?

15             MR. KELLER:  Sure, yes, if you would like, in addition

16   to the brief that we are already going to give you, additional

17   briefing in advance of the preliminary injunction hearing, we

18   will do that.  It is going to be somewhat, it is going to be a

19   little duplicative because the legal arguments wouldn't have

20   changed very much, but it will certainly have the benefit of

21   specific factual points we intend to produce at the hearing.

22             THE COURT:  I would like from each side briefing in

23   advance of the hearing once we hit the close of discovery.

24             MR. FABRIZIO:  Your Honor, would it be possible for

25   the parties to work out the schedule for that briefing?

C3DJABCM                         Motions

1         THE COURT:  I don't know.

2         MR. FABRIZIO:  I believe it would be.  I believe

3    Mr. Hosp was making the same suggestion.  That way we can --

4         THE COURT:  I am comfortable with that.  I am

5    comfortable with that.  So you have got the hearing date now,

6    you have the close of discovery including expert discovery, you

7    have got dates on initial briefing prediscovery.  I am happy

8    for you to work out otherwise between yourselves and submit a

9    joint letter to me with briefing in advance of the hearing

10   itself.

11        MR. FABRIZIO:  I think we need just one more thing

12   from your Honor.  How far in advance of the hearing date would

13   you like to see the last brief filed?

14        THE COURT:  Well, I hope for one of my other trials

15   settling in May.  I need to have it, I would like to have it by

16   the 14th.  That is giving me two weeks.

17        MR. FABRIZIO:  So it shall be!

18        THE COURT:  Anyone concerned about that?

19        MR. ENGLANDER:  It seems a little tight if we are

20   contemplating replies.  The first brief is April 24th?

21        THE COURT:  We can do it without replies.  I guess it

22   depends in part whether you're moving for summary judgment.

23        MR. ENGLANDER:  We can come very close to that date.

24        THE COURT:  Okay.  With that, why don't you work out

25   the specific --

C3DJABCM                          Motions

1          MR. KELLER:  We'll see if we can work it out and

2     report back.  I have one more question.

3          THE COURT:  Let me just set, so we have got -- why

4     don't you all submit a joint letter to me by this Friday, and

5     then in response to that I'll -- assuming everything is agreed

6     upon and I agree to it -- I'll put out an order memorializing

7     the schedule.

8          MR. FABRIZIO:  Hopefully we will be officially yours

9     before then.  If not, you will be able to assume we agree with

10    whatever Mr. Keller said sight unseen, how about that?

11         MR. KELLER:  I wish life were like that.

12         Your Honor, did you, after hearing all of this, come

13    closer to a decision whether you would like direct by

14    declaration and cross only for --

15         THE COURT:  I would like live direct.

16         MR. KELLER:  Okay.

17         THE COURT:  Mr. Englander, you were standing?

18         MR. ENGLANDER:  No, your Honor.

19         THE COURT:  All right.  So you'll submit to me by

20    Friday a certifiable proposal that works within the boundaries

21    I have set.  I imagine I'll be hear from you in-between at

22    least on one discovery dispute unless you can work it out.  I

23    do strongly encourage if there are others that you try to work

24    them out, but call us if you need us.

25         MR. ENGLANDER:  Sorry, but I need a little

1   clarification because I am a little behind.

2          As far as the hearing goes, I am coming to understand

3   anyone who submits an affidavit should be available to give

4   live direct, is that it?

5          THE COURT:  My rules had anticipated for Bench trials

6   and generally PIs that I was going to do affidavits for direct

7   testimony and just cross-examination.  I am actually going to

8   change those rules, so I will effectuate that change now and,

9   in any event, I would want it hear.

10         MR. ENGLANDER:  If there is no limit, then --

11         THE COURT:  We'll meet and do a final, a conference in

12  advance of the hearing to make sure that we have an agreed upon

13  basic schedule, and I know from looking at -- if you're going

14  to file for summary judgment, you submit whatever affidavits.

15         MR. ENGLANDER:  All I am trying to get a handle on is

16  the scope of this preliminary injunction hearing in terms of

17  who is actually going to testify as opposed to information that

18  is supplied by affidavit.

19         Again I think you're right, we can probably talk about

20  this.  My sense is probably there are some witnesses that the

21  parties will want to put in front of you.  There may be other

22  stuff that an affidavit is enough.

23         THE COURT:  Of course, of course.  Only put live

24  witnesses in front of me that I am going to need.  You can put

25  in affidavits of folks who will be live witnesses, I'll read it

C3DJABCM                    Motions

1   all.  I agree, I hope you'll come to agreement on a basic

2   schedule for the hearing and scope of it.  It is two days,

3   everyone.  You look perplexed, Mr. Keller.

4            MR. KELLER:  I was thinking, your Honor -- and I am

5   sorry that it showed -- would it not ordinarily be the case in

6   duplicate --

7            THE COURT:  He may file for summary judgment.

8            MR. KELLER:  That is his choice.  The point is with

9   your ruling that you want live witnesses, I am thinking there

10  won't be too many people that we will have affidavits from as

11  part of our preliminary injunction case, and I was just

12  thinking through how that fit with what was being said.

13           My view of it is, and then I was thinking even more,

14  and that is what you saw, about whether it makes sense in this

15  case to have some sort of schedule beyond two days, whether

16  there should be X hours put aside or something like that.  That

17  is something we'll talk about.

18           THE COURT:  Why don't you talk about it, try to sort

19  it out, and if you can't, then we can do a phone conference and

20  I'll set the ground rules.

21           MR. KELLER:  Understood.

22           THE COURT:  You look perplexed!

23           MR. ENGLANDER:  I am because now I am thinking sort of

24  one way to do this, obviously, is the affidavits and the full

25  basis for their motion for preliminary injunction are before

C3DJABCM                          Motions

 1  you before the hearing takes place.  We have had a full

 2  opportunity to respond to what we think the facts are before

 3  the hearing takes place.

 4          Live witnesses come on because you may have technology

 5  that needs to be explained.  If we do it the other way and we

 6  don't have all the evidence in until at the hearing, then we

 7  are going to have post-hearing briefing.  I was just sort of

 8  going through that in my head.  Again that is your Honor's --

 9          THE COURT:  Why don't you all see what you want to

10  propose to wrap this all up, and I'll take a look and let you

11  know if I agree or disagree.  If you can't agree, I'll tell you

12  what the grounds rules are.

13          MR. KELLER:  That makes sense.  Thank you, your Honor.

14          THE COURT:  Is there anything further before -- you

15  have now set the record.  This is my longest scheduling

16  conference to date.  I haven't been at this very long.

17          MR. FABRIZIO:  You scheduled a preliminary injunction

18  and summary judgment motion?

19          THE COURT:  Potentially.

20          MR. FABRIZIO:  Maybe.

21          MR. KELLER:  Thank you for seeing us on such short

22  notice.

23          THE COURT:  Is there anything else, Mr. Keller?

24          MR. KELLER:  No.

25          THE COURT:  Mr. Englander and Hosp?

C3DJABCM                         Motions

1            MR. HOSP:  Thank your Honor.

2            MR. ENGLANDER:  No.

3            MR. FABRIZIO:  Thank your Honor.

4            THE COURT:  Very well.  I'll be hearing from you soon.

5            (Court adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25