USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 2 0 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

AMERICAN BROADCASTING COMPANIES, INC. ET :
AL,
                                Plaintiffs,        :        12 Civ. 1540 (AJN)

        -v-                                        :        ORDER

                                                   :

AEREO, INC.,                                       :
                                Defendant,         :
--------------------------------------------------------------X
                                                   :
WNET ET AL,                                        :
                                Plaintiffs,        :        12 Civ. 1543

        -v-                                        :

                                                   :

AEREO, INC.,                                       :
                                Defendant,         :
--------------------------------------------------------------X

ALISON J. NATHAN, District Judge:

        The Court has received the attached letters regarding a dispute over privilege logs.  All

parties are ORDERED to produce complete privilege logs of documents created prior to the

commencement of this litigation that have been withheld on privilege or work-product grounds,

including documents contained in the files of outside counsel.  If the parties are able to reach an

agreement, they may narrow the scope of the privilege logs to be created, including by limiting

the scope of the logs to particular categories of documents such as those addressed in the parties'

letters.

        The parties are directed to meet and confer, no later than January 4, 2013, regarding the

timing of the production of these logs and whether the parties can reach agreement to narrow the

1

categories of documents to be included.  No later than January 7, 2013, the parties shall report to

the Court as to (1) any agreement reached as to narrowing the scope of privilege logs and (2) the

timing of the production of these logs.  If the parties have been unable to reach an agreement on

this point, no later than January 7, 2013, they each shall submit a brief letter, no longer than two

pages, with a proposal on the timing of the production of these logs.  The parties should expect

that Court will require prompt production of such logs.


      SO ORDERED:


Dated: December 20, 2012
      New York, New York

                                ALISON J. NATHAN
                        United States District Judge

JENNER&BLOCK

Jenner & Block LLP          Chicago
633 West 5th St.            Los Angeles
Suite 3600                 New York
Los Angeles, CA 90071-2054  Washington, DC
Tel 231 239-5100
www.jenner.com

December 10, 2012

**VIA EMAIL**
**(NathanNYSDChambers@nysd.uscourts.gov)**

Julie A. Shepard
Tel 213 239-2207
Fax 213 239-2217
jshepard@jenner.com

The Honorable Alison J. Nathan
United States District Judge
United States District Court for
   the Southern District of New York
500 Pearl Street, Room 615
New York, NY  10007

>      *Re:     WNET, et al., v. Aereo, Inc., No. 12-Civ.-1543-AJN (S.D.N.Y)*

Dear Judge Nathan:

Plaintiffs respectfully request that this Court order that, no later than December 21, 2012, the parties exchange logs of all documents responsive to the parties' first requests for production of documents withheld as privileged during the preliminary injunction phase of this case. Plaintiffs have engaged in good faith efforts to reach an agreement with Aereo regarding the mutual exchange of such logs. Despite acknowledging that Aereo's documents withheld as privileged during the preliminary injunction phase were gathered, reviewed and segregated as privileged at that time, Aereo refuses to provide the associated privilege log required under the local and federal rules.

Aereo's refusal to provide the required privilege log is prejudicial. As the preliminary injunction testimony shows, Aereo literally was designed with outside counsel by its side. Given the documents that have been produced to date (or, rather, the lack of documents), it is not unreasonable to suspect that Aereo is withholding business documents merely because a lawyer was "copied" on a communication or a document passed through a lawyer's hands. Such documents, of course, would not necessarily be legally privileged. Aereo is seeking to deny plaintiffs a fair opportunity to assess and, as necessary, challenge, its assertions of privilege.

Local Civil Rule 26.2 prescribes that, where a responsive document is withheld as privileged, the party withholding the document must, in writing, describe the document and "identify the nature of the privilege." *Id.* at 26.2(a)-(c). The rule states that, the "above shall be furnished in writing at the time of the response to such discovery." *Id.* at 26(b). Given the expedited nature of discovery during the preliminary injunction stage, the parties did not exchange privilege logs at that time. However, on October 12, 2012, shortly after fact discovery commenced, plaintiffs asked Aereo to agree to a mutual exchange of privilege logs on November 9 for the documents responsive to the parties' respective first sets of requests for production but withheld based on assertions of privilege. Plaintiffs' exchange proposal was coordinated with the ABC plaintiffs. Plaintiffs requested that Aereo confirm its agreement to this schedule by October 16.

December 10, 2012
Page 2

Aereo did not respond until October 22.  In its response, Aereo indicated that it was not going to provide any privilege log until the end of the completion of all fact discovery and unilaterally wanted to deviate from the rules governing the exchange of such logs in this Circuit, stating: "With respect to the privilege logs, we do not intend to do serial privilege logs."

On October 24, the parties conferred about the privilege log exchange.  Aereo's counsel admitted that the responsive documents Aereo had withheld at the preliminary injunction phase were gathered, reviewed and segregated as privileged.  Despite this, Aereo reiterated its intent not to produce a privilege log of these readily identifiable documents and expressed a desire to make plaintiffs wait until the end of fact discovery to exchange logs.  While plaintiffs expressed some flexibility with respect to the exchange date, plaintiffs stated that waiting until the end of discovery to produce the logs was unacceptable and risks requiring depositions to be re-opened as the parties would be unable to challenge an assertion of privilege until after the fact discovery cut off.

Meet and confer efforts continued via correspondence after the October 24 call, but Aereo still refuses to engage in the requested mutual exchange of logs of all responsive documents that were identified, segregated, and withheld as privileged during the preliminary injunction proceedings in this case.  Aereo has premised its refusal on two arguments.  Both are frivolous and evince that Aereo's true motive is to delay plaintiffs' ability to challenge Aereo's continued withholding of documents that will have to be listed on the log and to hamper plaintiffs' efforts to complete fact discovery in a timely manner to prepare this matter for trial.

As noted above, Aereo initially stated it would not produce "serial" privilege logs, meaning Aereo refused to produce a log of the documents withheld at the preliminary injunction stage, which closed over six months ago.  Aereo took the position that plaintiffs would have to wait until Aereo completed its production of documents in response to a second set of requests, which plaintiffs served in September, before Aereo would provide any privilege log.[1]  After plaintiffs pointed out in their November 14 letter that Aereo's position violated Local Civil Rule 26.2, Aereo seems to have abandoned this plainly meritless justification for its refusal to provide the requested log.

Aereo has also tried to manufacture a dispute as to what Aereo mischaracterizes as the "scope" of the privilege logs to justify continuing to delay the mutual exchange of privilege logs.  Specifically, Aereo now claims that the "scope" of *plaintiffs' log* must include the *outside* counsels' *internal* communications that reside in the offices, files and computers of plaintiffs' *outside* law firms under the assumption that some could be responsive, although they are admittedly work product or privileged.  What Aereo is really asking for is to expand the scope of Aereo's document requests served at the preliminary injunction stage and reinterpret them to require plaintiffs to commence an entirely new gathering and review of documents located in their outside

---

[1]     Although Aereo's response to the plaintiffs' second request was due on October 29, Aereo unilaterally decided to engage in a rolling production and its production is still not nearly complete.  Aereo has not produced any regular documents (emails, memos, presentations, etc.) at all and has limited its production to computer source code and raw data.  In any event, even if Aereo's current production were close to complete, that would not provide a basis for Aereo's refusal to provide a log of the documents that Aereo identified over six months ago as responsive and has been withholding as privileged since then. (Aereo has not produced a privilege log in connection with plaintiffs' second request.  The parties are in discussions about Aereo's responses and log.)

December 10, 2012
Page 3

counsel's files and then engage in the pointless exercise of logging those internal law firm communications. All the while, Aereo will be withholding its own privilege log until that gathering, review and senseless logging is completed.

Since raising this novel position in October, Aereo has never provided any authority to support it. Indeed, the one case recently cited by Aereo, *Lippe v. Bairnco*, 1998 WL 901741 (S.D.N.Y. Dec. 28, 1998), actually undermines Aereo's position. Aereo seems to have cited the case because the law firm in that case provided the representative of its former client (the Trustee in bankruptcy) with a log of the documents that the law firm was withholding from its former client. Aereo claims that this case between a client and its former firm somehow supports that a non-client who is a defendant in litigation can demand a log of internal documents and communications of plaintiffs' outside counsel. On its face, *Lippe* provides no support to Aereo. Indeed, it confirms that a law firm's documents are <u>not</u> in its client's possession, custody or control.[2]

In the meet and confer process, Aereo has claimed that the genesis for its demand that the privilege logs include outside counsels' internal documents is founded on a belief that the plaintiffs routinely engaged outside counsel to analyze technology based on something one of Aereo's counsel thought Steven Fabrizio said in a telephone conversation in the preliminary injunction phase, in response to a casual comment made by Aereo's counsel that plaintiffs had not produced formal studies by plaintiffs of the harm caused by Aereo. Based on this, Aereo now claims that it is entitled to a log of outside counsel's internal files. This position is wrong on multiple levels as has been explained to Aereo during the meet and confer process. First, plaintiffs' counsel disabused Aereo of the factual premise for its demand and explained that they must have misunderstood what Mr. Fabrizio said. To be clear, Mr. Fabrizio is not aware of any such practice. Second, plaintiffs' counsel also pointed out that if any analysis was performed for any of the plaintiffs by their outside counsel concerning Aereo, then the clients would have that analysis in their files and it will appear on the logs that will be exchanged in response to the plaintiffs' proposal. Despite this, Aereo still refuses to agree to the exchange, which is a clear indication that Aereo's "scope" objection has been manufactured to create further delay in its production of a routine privilege log.

In sum, plaintiffs have attempted in good faith obtain Aereo's cooperation in meeting its obligation to produce a privilege log for documents already identified, segregated, and withheld during the preliminary injunction proceedings. Yet, Aereo continues to assert meritless excuses, and in so doing wastes the time and resources of all parties – and now, regrettably, this Court. Plaintiffs respectfully request that this Court issue an order compelling the mutual exchange of privilege logs, by December 21, 2012, which shall identify all documents withheld as privileged during the preliminary injunction proceedings in this case. Plaintiffs also request that, lest there be any further dispute, this Court specify that all logs must comply with Local Civil Rule 26.2.

Respectfully submitted,

Julie A. Shepard

---

[2] The *Lippe* court noted that the law firm had already provided a copy of a memorandum which had previously been delivered to the client. The only additional documents that the court required be turned over were attorney time records, which again the client already had received though billing.

GOODWIN | PROCTER

R. David Hosp
617.570.1089
rhosp@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

December 13, 2012

**Via Electronic Mail**

The Honorable Alison J. Nathan
United States District Court
Southern District of New York
500 Pearl Street, Room 615
New York, NY 10007

**Re:**    *WNET et al. v. Aereo, Inc.*, S.D.N.Y. Civ. Action No. 12-Civ-1543

Dear Judge Nathan:

Defendant Aereo, Inc. ("Aereo") respectfully submits this letter in response to Plaintiffs'
December 10, 2012 letter regarding privilege logs. The parties have agreed to the production of
privilege logs with respect to documents created prior to the date of the filing of the complaints
in this matter. The only real disagreement between the parties concerns the appropriate scope of
those logs. Aereo's position is that the parties are obligated to produce <u>complete</u> privilege logs,
which include a listing of documents within outside counsel's possession that are being withheld
based on a claim of privilege or work product. Plaintiffs, however, refuse to produce complete
privilege logs, asserting (without legal authority) that they do not have to identify any documents
within Plaintiffs' outside attorneys' possession. Plaintiffs have refused to discuss or confer on
this issue. Once the appropriate scope of the logs has been determined, Aereo has no doubt that
the parties will be able to agree on the appropriate timing of production.[1]

During the Preliminary Injunction phase of this matter, Aereo served document production
requests targeting any analysis – particularly with respect to the market impact on Plaintiffs'
programming – of Aereo, Slingbox, DVRs, RS-DVRs, or other similar technology that Plaintiffs
view as "disruptive." In light of the harm asserted by Plaintiffs, the relevance of such documents
cannot be disputed.

---

[1] Fox Plaintiffs' letter illustrates the need for consolidation of the cases 1543 and 1540.
Notwithstanding the claim that the initial demand regarding privilege logs "was coordinated with
the ABC plaintiffs," this dispute appears to involve only the Fox plaintiffs. The Fox Plaintiffs
have made clear that, unless otherwise specifically indicated, demands from the Fox Plaintiffs
are from them alone. *See* Exhibit A ("[i]n this post-PI phase, you should assume that emails
from the Jenner team are being sent on behalf of the WNET plaintiffs only, unless the email
expressly says otherwise."). None of the communications on this matter have been coordinated
on this matter, and the letter submitted to the Court is in the 1543 case only. As a result, Aereo
could end up subject to different obligations and schedules in these related cases.

GOODWIN | PROCTER

In response to this request, Plaintiffs failed to produce a single document. When asked how it was possible that Plaintiffs had done no research or analysis into the harms that might be visited upon them, which they claimed would be catastrophic, counsel for Plaintiffs indicated that if any such analysis had been done, it likely would have been done by outside attorneys.[2]

There is no question that documents created or obtained by outside counsel for Plaintiffs in the course of their representation leading up to this litigation are "within the custody or control" of Plaintiffs. *M.L.C., Inc. v. North American Phillips Corp.*, 109 F.R.D. 134 (S.D.N.Y. 1984) (documents in possession of patent trial counsel are within client's custody and control); *A.S.P.C.A. v. Ringling Bros. and Barnum and Bailey Circus*, 233 F.R.D. 209 (D.D.C. 2006).[3] To be sure, these documents are possibly (though not necessarily) protected from production by the attorney client privilege or work product doctrine, but that does not relieve the requirement to assert that privilege openly and provide a log of those assertions. As a result, if such documents exist and are not produced, they must be logged.

Aereo first raised the issue of the appropriate scope of the privilege logs when Plaintiffs demanded an immediate production of logs October 12, 2012. Aereo was clear that it would produce logs, and indicated that, as is common practice, it planned to compile those logs when production was nearing completion. In the spirit of compromise, Aereo then agreed to produce logs at an earlier date if the parties could come to an agreement regarding the appropriate scope of the logs' contents.[4] The parties exchanged a number of letters and engaged in multiple conversations during which Plaintiffs refused to address the issue regarding the scope of the logs. Aereo's most recent letter – and the parties last discussion of privilege logs – asked for Plaintiffs' availability to continue discussing this dispute. *See* Exhibit B, page 6. ("Please let me know when you would like to continue our discussions on the proper scope of the privilege logs to come to a mutual agreement on how to proceed.") Plaintiffs have not responded to this request and did not raise the issue of privilege logs again until they submitted their letter to the Court without any notice to Aereo. Aereo has never, as Plaintiffs misstate to the Court, refused to provide a privilege log. *See id.* ("We will, of course, produce a privilege log . . .").

---

[2] Plaintiffs claim that they have "disabused" Aereo of its misunderstanding. Fox Letter at 3. Plaintiffs' denials, however, are carefully crafted. Fox Plaintiffs claim only that Mr. Fabrizio is "unaware" of whether "plaintiffs *routinely* engaged outside counsel to analyze technology." Fox Letter at 3 (emphasis added). Of course, whether or not such engagement was routine or sporadic or rare does not impact Plaintiffs' duty to identify those documents over which they claim privilege. To the extent that such practice was rare, it merely means that meeting their obligation should impose no burdens at all.

[3] Plaintiffs' recitations about citations to *Lippe v. Bairnco* are inaccurate. Counsel for the ABC Plaintiffs sent a letter regarding the privilege log dispute citing the *Lippe v. Bairnco* case for support that such internal documents should not be logged. Aereo merely pointed out that the case actually <u>required</u> the production of a log of what was withheld from the files of outside counsel, including "attorney research notes; internal housekeeping memoranda; internal research memoranda prepared by junior lawyers for senior lawyers; a draft outline of research issues; and attorney time records." 1998 WL 901741, at *1-2 (S.D.N.Y. Dec. 28, 1998).

[4] In a letter dated November 19, 2012, Aereo stated that while it "continues to not see the benefit of producing serial privilege logs," Aereo "will accede to your demand in that regard." *See* Exhibit B, n 3.

GOODWIN | PROCTER

Plaintiffs have made dramatic, doomsday predictions about the impact that disruptive technology like Aereo's could have on the value of their programming. Indeed, Plaintiffs told this Court that, as a result of this type of technology, the risk is "substantial that events like the Super Bowl are not going to be on free TV anymore" and "you won't be seeing Sunday Night Football on NBC or any over-the-air broadcaster." *See* 5/31/12 Hearing Tr. at 430:5-14 (Keller Summation). Given these apocalyptic predictions, it is simply illogical to suppose that Plaintiffs – the largest entertainment companies in the world – have not conducted or commissioned studies to analyze what the actual impact of these technologies on their business is likely to be. Indeed, if Plaintiffs have not conducted such studies or even discussed the topic, it calls into question the genuineness of Plaintiffs' claims of harm. The only other logical assumption – one that was confirmed by Plaintiffs' counsel – is that to the extent any such analyses have been made, they have been made by or at the direction of lawyers, and Plaintiffs' believe that they are protected by attorney-client privilege or the work product doctrine. Plaintiffs may claim that privilege. Aereo, however, is entitled to a log identifying all such documents, whether they reside with in-house counsel or outside counsel or agents, so that it may evaluate any such claims.

As Plaintiffs are fully aware, Aereo has never refused to produce a privilege log. Aereo has even agreed to compromise on the timing of the production of those logs. Plaintiffs have refused to produce a complete privilege log, or even to discuss the appropriate scope of such logs. As a result, Aereo asks this Court to order the Plaintiffs to produce a complete log of documents created prior to the filing of these lawsuits that they are withholding based on a claim of attorney-client privilege or work product doctrine. Once that order is entered, Aereo believes that the parties will be able to agree to the timing of the production of privilege logs.

Sincerely,

R. David Hosp

cc: All counsel of record

# EXHIBIT A

**Michael, Erin M**

| | |
|---|---|
| From: | Fabrizio, Steven B <SFabrizio@jenner.com> |
| Sent: | Wednesday, September 26, 2012 12:44 PM |
| To: | Hosp, R David; Puzella, Mark S |
| Cc: | Shepard, Julie A.; Klein, Kenneth D.; Bruce Keller; Michael Potenza; Englander, John C; Chan, Yvonne W; Michael, Erin M |
| Subject: | Re: WNET v. Aereo - Discovery |

Dave – A call on the ESI makes perfect sense.  Ideally we'd do it by the end of this week, but understand if you need until the first of next week to assess what is on the system.  We may want Kelly Truelove on that call, and you may want one of Aereo's technologists.  I am available for a call on Monday of next week at any time on or after 1:30pm ET, and am also available any time on Tuesday.  JULIE – what is your availability?

Thank you for the accounts.  Can you advise of the credentials to access.  Also, I think I understand what you mean when you say "under the conditions set forth in Judge Nathan's previous order" and, subject to our reviewing the Court's previous order to refresh our understanding of it, that is acceptable provided you do not mean the accounts will terminate within a set period of time.  Further, I had requested that the accounts, at least initially (subject to our further request), not be any different from a normal consumer account when it comes to Aereo's geo-limiting functionality.  I assume that is not an issue for Aereo.  Please advise if I have misunderstood Aereo's intentions.

On the boards, we think Judge Nathan was crystal clear that we should get this type of discovery now.  You will recall that I specifically asked the Court to clarify its order on this very issue.  As the court made clear, it is only the exchange of expert reports/disclosures and expert depositions that should wait until the next (expert) phase of discovery; all discovery necessary to get to that point – even if the discovery would be the underpinning of expert analysis – is to go forward.  Please advise if Aereo is willing to provide the boards by early next week (and the cost).  If not, we would like to bring this issue to the Court's attention on Monday.  We have a lot to do and do not want to delay.

On the issue of your experts being present, I do not think it is consistent with case law, and obviously would encroach on plaintiffs' work product.  What you are referring to, I believe, is case law where destructive testing will be conducted on the only item in existence, such that one party's destructive testing eliminates the ability of the other party to conduct their own testing.  If you have contrary case law, please provide it so we can better assess this issues.  In any event, we consider this to be an entirely independent issue from our right to the boards.  We have lots of testing and experimentation that will be conducted short of destructive testing, such that we can take up this issue if/when the time is right.

Fair point on identifying which plaintiff set is sending an email.  In this post-PI phase, you should assume that emails from the Jenner team are being sent on behalf of the WNET plaintiffs only, unless the email expressly says otherwise.  Clearly, the two sets of plaintiffs will be coordinating efforts as much as possible, as before, but this email protocol will be the safest to avoid misunderstandings.

SBF

From: "Hosp, R David" <RHosp@goodwinprocter.com<mailto:RHosp@goodwinprocter.com>>
Date: Wed, 26 Sep 2012 13:12:24 +0000
To: Steven Fabrizio <sfabrizio@jenner.com<mailto:sfabrizio@jenner.com>>, Mark Puzella
<mpuzella@goodwinprocter.com<mailto:mpuzella@goodwinprocter.com>>
Cc: Julie Shepherd <JShepard@jenner.com<mailto:JShepard@jenner.com>>, Kenneth Klein
<KKlein@jenner.com<mailto:KKlein@jenner.com>>, Bruce Keller
<bpkeller@debevoise.com<mailto:bpkeller@debevoise.com>>, Michael Potenza

1

<mpotenza@debevoise.com<mailto:mpotenza@debevoise.com>>, John Englander
<jenglander@goodwinprocter.com<mailto:jenglander@goodwinprocter.com>>, Yvonne Chan
<ychan@goodwinprocter.com<mailto:ychan@goodwinprocter.com>>, "Michael, Erin M"
<EMichael@goodwinprocter.com<mailto:EMichael@goodwinprocter.com>>
Subject: RE: WNET v. Aereo - Discovery

Steve:

I am responding to your several discovery emails of the past few days.  First, we are willing to provide you with working accounts, and will do so under the conditions set forth in Judge Nathan's previous order.  The accounts should be on today.  Second, we will provide you with two functioning boards.  We ask that our experts have the opportunity to witness any destructive testing that is done.  We believe this is consistent with case law, and will help to avoid some of the questions regarding the manner in which the tests were performed at the PI stage.  Because this is relevant to expert discovery, rather than fact discovery, we believe that it can best be addressed once fact discovery is concluded.  Third, with respect to reservation of ESI, we believe that Aereo has fully complied with its obligations.  We are in the process of cataloguing the various aspects of data that are available in the system, and I suggest that we schedule a call early next week to discuss what is available, and whether there is anything else you believe should be maintained.  To the extent that any such requests require the storage of an unreasonable amount of data, we may need to discuss reimbursement of those costs.  In any event, I think that topic is more amenable to a discussion after we have a firm idea of what exists within the system and you can tell us specifically what you are looking for.

We are also fine with email service.  Please copy Mark Puzella, John Englander, Yvonne Chan and Erin Michael on all such service.

We just got Julie's email  regarding initial disclosures.  My first reaction is that enough discovery has been done at this point that initial disclosures are probably superfluous, but let us give it some thought.

Finally, on all future emails, please let me know whether requests are coming from one set of Plaintiffs or both, just so that I'm sure what agreements we have with whom, and who has made various requests.

Let me know when you are available for a talk next week.  Thanks,

Dave

R. David Hosp
Goodwin Procter LLP
Exchange Place
Boston, MA  02109
T: 617-570-1089
F: 617-523-1321
rdhosp@goodwinprocter.com<mailto:rdhosp@goodwinprocter.com>
www.goodwinprocter.com
-----Original Message-----
From: Fabrizio, Steven B [mailto:SFabrizio@jenner.com]
Sent: Monday, September 24, 2012 7:34 PM
To: Hosp, R David; Puzella, Mark S
Cc: Shepard, Julie A.; Klein, Kenneth D.; Bruce Keller; Michael Potenza
Subject: Re: WNET v. Aereo - Discovery

Dave - Could we have Aereo's position on production of the items referenced below?

SBF

From: Steven Fabrizio <sfabrizio@jenner.com<mailto:sfabrizio@jenner.com>><mailto:sfabrizio@jenner.com>>
Date: Thu, 20 Sep 2012 13:35:22 -0400
To: "Hosp, R David"
<RHosp@goodwinprocter.com<mailto:RHosp@goodwinprocter.com>><mailto:RHosp@goodwinprocter.com>>, Mark
Puzella
<mpuzella@goodwinprocter.com<mailto:mpuzella@goodwinprocter.com>><mailto:mpuzella@goodwinprocter.com>>
Cc: Julie Shepherd <JShepard@jenner.com<mailto:JShepard@jenner.com>><mailto:JShepard@jenner.com>>, Kenneth
Klein <KKlein@jenner.com<mailto:KKlein@jenner.com>><mailto:KKlein@jenner.com>>, Bruce Keller
<bpkeller@debevoise.com<mailto:bpkeller@debevoise.com>><mailto:bpkeller@debevoise.com>>, Michael Potenza
<mpotenza@debevoise.com<mailto:mpotenza@debevoise.com>><mailto:mpotenza@debevoise.com>>
Subject: WNET v. Aereo - Discovery

Dave - We will prepare and serve formal discovery requests.  However, there are two matters that are holdovers from
the PI discovery requests, and we would like to have Aereo produce these right away.  They will come as no surprise to
you.

The first request is for two fully functioning antenna boards, which we will purchase from Aereo, so that we may
conduct destructive testing.  Related, we would like two sets of antenna loop pairs (with a pair consisting of both the
UHF and VHF loops), also for testing.

The second request is for a fully functional subscriber account on Aereo.  At this time, Aereo does not need to disable
the geo-limiting functionality; we want to see how the account works from the perspective of an ordinary consumer.  As
before, we will represent that we will not engage in any human ex parte communications with Aereo through the
account.

We recognize that, in the past, Aereo has resisted this discovery.  However, Judge Nathan's admonition to us at the
hearing was to confer in good faith in light of what we believe she would do.  It seems reasonably clear from the Court's
past orders and Judge Nathan's comments at the hearing that the Court expects Aereo to produce this discovery.
Accordingly, I am hoping we can avoid the expense and delay of motions practice.  At the same time, if Aereo is going to
refuse production, we would like to know that now so that our discovery is not delayed while the matter is being
decided by the Court.

I am happy to talk though any of this at your convenience.

SBF



_____


Steven B. Fabrizio

Jenner & Block LLP

1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
Tel (202) 639-6040
Fax (202) 661-4823
SFabrizio@jenner.com<mailto:SFabrizio@jenner.com><mailto:SFabrizio@jenner.com>
www.jenner.com<http://www.jenner.com/>

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

_____

*******************************************************************
IRS CIRCULAR 230 DISCLOSURE:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
*******************************************************************

*******************************************************************
This message is intended only for the designated recipient(s).  It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections.
If you are not a designated recipient, you may not review, copy or distribute this message.  If you receive this in error, please notify the sender by reply e-mail and delete this message.  Thank you.
*******************************************************************

4

# EXHIBIT B

GOODWIN | PROCTER

R. David Hosp
617 570 1089
rhosp@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
Exchange Place
Boston, MA 02109
T  617 570 1000
F  617 523 1231

November 19, 2012

**VIA E-MAIL**

Julie A. Shepard
Jenner & Block LLP
633 West 5th Street
Suite 3600
Los Angeles, CA 90071-2054

      RE:   Aereo's Discovery

Dear Julie:

      This letter responds to your November 14, 2012 letter regarding the purported "deficiencies and delays" in Aereo's discovery. As a general matter, your characterizations of statements that have been made and positions taken by both sides are incorrect, and the taking of such liberties with reality is, unfortunately, all too common and not likely to move matters forward. In order to avoid further unnecessary letter writing, I will simply say that we disagree with the representations made in your letter, and move directly to addressing specific discovery issues. As a result, I address each of the sections in your letter in turn below.

      **A. 30(b)(6) Deposition**

      On November 8, 2012, you served an incomplete 30(b)(6) deposition notice on extensive technical topics.[1] Without consulting ahead of time, you unilaterally noticed the deposition for a date ten days later and the Monday of Thanksgiving week. As we timely expressed, Aereo's 30(b)(6) designee is unavailable on that day. The "alternatives" Mr. Klein proposed of November 29 and 30 were simply not made in good faith. You and your team are well aware that the Second Circuit oral argument is on November 30 and as I expressed to Mr. Klein, Aereo's one in-house counsel wants to be present at both the oral argument and the 30(b)(6) deposition, including preparation for both—not an unreasonable request. We thus offered two dates the following week, one of which you have chosen.

---

[1] The notice served on November 8, 2012 omitted nearly half of the proposed topics covered. As a result, Aereo was unable to determine the scope of the notice until we received the complete copy on the afternoon of Friday, November 9, 2012.

GOODWIN | PROCTER

Julie A. Shepard
November 19, 2012
Page 2

No delay has occurred.  Indeed, you have had Mr. Turner's[2] summation of the information you are seeking in this deposition since October 24.  Plaintiffs have also had two fully functioning antenna boards (along with materials necessary to conduct testing on these boards) since October 16.  Any delay in conducting testing is a result of your choice and your delay.  If your expert has been unable to operate the board, or to conduct testing, it raises questions about his competence to testify as an expert in this case.  Moreover, your choice to wait until November 8 to serve the notice for a deposition on Thanksgiving week is just that your choice—and any resulting "delay" is a product of that choice.

**B.  Timing of Document Productions**

In response to direct questioning by Judge Nathan about what discovery was needed, Mr. Fabrizio said that necessary discovery would likely be limited to: (1) access to an Aereo subscription (which was provided by Aereo prior to any discovery deadline); (2) two antenna boards (which were provided by Aereo prior to any discovery deadline); (3) discovery from investors and marketing firms (which would be, on its face, irrelevant, and has consequently not been pursued by Plaintiffs); (4) information about how the "watch" function is accessed (which you have based on the computer code that has been produced, and the subscription provided); and (5) database information regarding the manner in which consumers have actually used the Aereo system (a description of which has been provided so that you can tell us exactly what you want—which you had not done until your November 14th letter, addressed further below).  This comported with representations Mr. Fabrizio had made to me in conversations before the September 19 scheduling conference.  Given these representations regarding the limited areas of additional discovery needed, Judge Nathan ordered the schedule under which we are now operating.

As you are fully aware, Plaintiffs' document requests do not comport with Mr. Fabrizio's representations to Aereo or to the Court, but rather are much broader and more burdensome than had previously been indicated.  Indeed, Plaintiffs' requests could theoretically include every document in the company's possession, most of which have no relevance to this matter.  Subject to our objections, we have produced and are continuing to produce responsive documents.  As we have shifted our focus to e-mail and other electronic documents, we now know that there are over 200,000 e-mails within the custodians listed below alone just since March 2012.  We are working on reviewing those documents on a priority basis but will not be able to come anywhere near completing this enormous undertaking by November 28.  The fact that we have begun to work through this material to expedite the process does not indicate that the requests for

---

[2] Your letter refers to Mr. Tucker and an "attachment to R."  We assume you are referring to Mr. Turner and his October 24, 2012 e-mail.

GOODWIN | PROCTER

Julie A. Shepard
November 19, 2012
Page 3

production are appropriate in scope, and we reserve the right to raise these issues with the Court to seek proper limits on the burden Plaintiffs have sought to impose.

Further, on our November 9 call, I did not ask you to agree to our custodians and search terms, though we fully agree that the parties should reach agreement on these matters, if possible. Rather, in response to your request, we agreed to provide you with a list of custodians. The list of custodians we are reviewing is as follows:

- Chet Kanojia, President & CEO
- Joseph Lipowski, Chief Technology Officer
- Virginia Lam, Vice President Communications and Government Relations
- Amanda Chin, Vice President Acquisition Marketing
- Griffin Cherry, Vice President Experience and Creative
- Nick Sallon, Director Content & Business Development
- Christopher McKay, Director Customer Care and Billing
- David Cann, General Manager Expansion
- Dan Pond, Senior Principal Hardware Engineer
- Brian Loveland, Director, Infrastructure Operations
- Nevo Hed, Senior Principal SW Engineer
- James Bingham, Senior Principal Engineer
- Ali Cox, former Director Marketing

This letter confirms that we are supplementing the responses to Plaintiffs' first set of discovery requests for those custodians listed above that were not collected and reviewed during the preliminary injunction phase. Of course, these e-mails are on top of the 200,000 created since March, so this supplementation will not occur by November 28.

Finally, on our October 24 call, I asked for information regarding Plaintiffs' privileged documents, which you indicated that you would supply, but now have refused to do so. Additional issues related to the privilege log are discussed in Section D, below.

### C.  Purported "Deficiencies" in Aereo's Responses

#### a.  Request No. 3

As you know from telephone calls and Mr. Turner's October 24 detailed summary, Request No. 3 addresses the production database. Since you never responded to Mr. Turner's e-mail, we have gone forward with producing the responsive data contained in the production database, as well as logs from the antenna server and streaming servers. This production contains detailed information concerning all aspects of subscribers' usage of Aereo, and

GOODWIN PROCTER

Julie A. Shepard
November 19, 2012
Page 4

represents almost the entirety of the information that Mr. Fabrizio represented to the Court would be necessary for discovery. Your belated demand for production in native form is not feasible because (1) we cannot redact subscriber personal identifying information from a native database, and (2) the database contains nonresponsive information such as administrative testing data that does not contain any user information.

IP addresses were redacted from the prior production of information from the subscriber database, and we had no reason to anticipate that a different request would be made this time. As a result, we had already prepared the production redacting the entire IP address. Please explain your position that the last four digits of the IP address will provide responsive information without divulging consumer identifying data and we will consider that request.

### b. Request No. 4

Mr. Turner provided a detailed summary of the data responsive to Request No. 4 that exists in his October 24 e-mail. To date, we have not received a response from you to that information. Our written response to Request No. 4 saying that we would produce the information in content and form to be agreed upon by the parties was intended to allow time for Plaintiffs to digest the information provided by Mr. Turner and to allow for discussions on how to proceed. Since we have not heard from you on this matter, we have begun preparing this data for production and, subject to our objections, have begun our production.

Any other subscriber demographic data also responsive to this request (if it exists) will be produced in the ordinary course.

### c. Request No. 5

Documents concerning designs or architectures considered but *not* adopted by Aereo are wholly irrelevant to how the Aereo system currently functions. Indeed, your demand is particularly ironic given the fact that your former expert Dr. Volakis even complained that we produced numerous iterations of technical documents that are not the final versions used in production. We will continue to produce technical documents related to the Aereo system as implemented but will not seek out completely irrelevant documents.

### d. Request No. 10

The limit placed on the types of communications with actual or potential investors to communications concerning the Aereo technology is identical to the limit placed on this same request at the preliminary injunction phase—without objection by Plaintiffs. Indeed, the areas of inquiry you identify in your letter are documents or information that would be responsive to other document requests. For example, analysis of how Aereo would affect the broadcast

GOODWIN | PROCTER

Julie A. Shepard
November 19, 2012
Page 5

industry are responsive to Request No. 11 and will be produced as agreed.  Documents regarding
financials will be produced as agreed below.  Aereo simply refuses to produce documents with
actual or potential investors concerning unrelated topics or potential investment terms, as they
are not reasonably calculated to lead to the discovery of admissible information.

### e.  Request No. 13

As I have indicated in our e-mail correspondence, Aereo has fully complied with Request
No. 13 for "Two fully functioning Aereo antenna boards that are identical in all material respects
to the antenna boards currently in operation in the Aereo System, complete with all necessary
power and data connectors."  You have had the two boards, with cables and connectors, for over
four weeks.  As noted previously, these boards are fully functioning and ready to be tested, and if
your expert cannot determine how to conduct that testing, it calls into question his qualifications
as an expert.  On November 12, we received Mr. Fabrizio's lengthy e-mail requesting additional
hardware, software, and firmware that are not encompassed by Request No. 13.  As we have
indicated many times at this point, we are working with our client to understand these new
requests and to determine what is reasonable, and those issues have been addressed in separate
correspondence.  Since your letter, we sent Mr. Fabrizio a lengthy email identifying the
additional hardware and software Aereo will produce.  As indicated in that email, much of what
was requested has previously been produced.  In short, your comments about "obfuscation" are
contradicted by the record, and are not conducive to reasonable consultation between
professional counsel.

### f.  Request No. 17

Aereo will agree to produce documents sufficient to show Aereo's revenues and profits
as of April 1, 2012, July 1, 2012, October 1, 2012, and quarterly thereafter until commencement
of a trial on the merits.

We fail to see how "projections" of revenue or profit are reasonably calculated to lead to
the discovery of admissible evidence.  Projected (i.e. estimated) revenue at some point in the
future if Aereo continued to operate would not be relevant to a damages calculation if Plaintiffs
succeeded at trial and thus Aereo ceased to operate.

### g.  Request No. 20

The estimated value of the "Aereo Assets" is also wholly irrelevant to any potential
damages calculation, including statutory damages.  See 17 U.S.C. § 504.  First, no party has
requested a jury in this case, and the case will be heard by Judge Nathan.  Second, you provide
no authority for the notion that valuation of a company would ever be a consideration in the

GOODWIN | PROCTER

Julie A. Shepard
November 19, 2012
Page 6

court's determination of statutory damages, nor is there a logical nexus to such damages in this case.

### D.  Privilege Log

First, Aereo has never "refused" to provide a privilege log.  Instead, as is customary, Aereo has attempted to meet and confer to arrive at a mutually agreeable plan for all parties to avoid disagreements regarding the logs that are produced.[3]  To that end, we had scheduled the November 9 call to discuss.  Rather than discussing privilege logs, Mr. Fabrizio came on the phone and made new requests for production of hardware, software, and firmware.  After running out of time due to Mr. Fabrizio's participation on an entirely separate and unexpected topic, I told you that we would have to discuss the privilege logs and to let me know your availability.  You failed to contact me in this regard and instead now categorize Aereo as "refusing" to produce a privilege log.

Second, Mr. Fabrizio represented to me during the preliminary injunction phase that the reason Plaintiffs had not produced *any* analysis of the television industry (not just analysis of Aereo as your letter indicates) was because outside lawyers handle all of that analysis.  Thus it is entirely reasonable to request that all such analysis be logged.  This is not at all a "novel concept" and indeed the case cited in Mr. Keller's November 16 letter supports what turns out not to be a novel concept at all.  In that case, the court allowed Debevoise & Plimpton to withhold "internal law office documents" from *production* but Debevoise & Plimpton had prepared a log of these documents describing what was withheld, including "attorney research notes; internal housekeeping memoranda; internal research memoranda prepared by junior lawyers for senior lawyers; a draft outline of research issues; and attorney time records."  *Lippe v. Bairnco Corp.*, 1998 WL 90174, at *1-2 (S.D.N.Y. 1998).

Please let me know when you would like to continue our discussions on the proper scope of the privilege logs to come to a mutual agreement on how to proceed.  We will, of course, produce a privilege log in accordance with the Federal Rules, and we note Plaintiffs' refusal to provide a complete privilege log.

### E.  Other Concerns

#### a.  Custodians and Search Terms

I have addressed your questions about custodians and search terms where you first raised them in Section B, above.  We have also encouraged Plaintiffs to suggest key words they would

---

[3] Aereo also continues not to see the benefit of producing serial privilege logs, but will accede to your demand in that regard.

GOODWIN | PROCTER

Julie A. Shepard
November 19, 2012
Page 7

like to have searched to expedite the process. Because Plaintiffs' requests, read literally, would improperly require the review and production of every document in Aereo's possession, there is little Aereo can do to guess what Plaintiffs are really after, other than to unreasonably and unnecessarily increase Aereo's discovery costs.

### b.  Metadata - Custodian Information

As I indicated in my November 16 email, Aereo now uses a corporate Gmail system which saves all e-mail on a central server. We have limited custodian information from a prior email system and from Google/local documents. This metadata was included in the production sent to you on November 16, 2012.

### c.  Withholding Responsive Documents Other Than for Privilege

Finally, also as indicated on our November 9 call, we are not affirmatively withholding relevant documents other than for privilege unless otherwise indicated in our response. To the extent responsive documents exist within the custodians being searched and we have not otherwise specifically limited our production in our response, we will produce such non-privileged documents.

Sincerely,

Dave Hosp/ywc

R. David Hosp