# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

One Marina Park Drive
Boston, Massachusetts
02210-1878

Telephone
617 542-5070

Facsimile
617 542-8906

Web Site
www.fr.com

<u>VIA E-MAIL</u>

January 18, 2013

Hon. Alison J. Nathan
United States District Judge
Southern District of New York
500 Pearl Street, Rm. 614
New York, New York 10007

Re: WNET, et al, v. Aereo, Inc., No. 12-Civ. 1540-AJN (S.D.N.Y.) (Consolidated)

Dear Judge Nathan:

This letter responds to WNET Plaintiffs' correspondence dated January 16, 2013, requesting an extension of the fact discovery deadline from February 22, until May 15, 2013. Aereo does not disagree that a fact discovery extension may be required (although Aereo wants the most expeditious resolution of these actions), but believes that the request is premature because very substantial issues with Plaintiffs' production remain pending. As seems a pattern, Plaintiffs have rushed to the Court—apparently in an attempt to gain some tactical advantage—when they knew that Aereo was nearing the point at which it would prepare a letter to the court and motion to compel regarding extraordinary discovery non-compliance by the Plaintiffs. The parties' real dispute is not about the discovery deadline, as Plaintiffs' letter would have the Court believe, but about Plaintiffs' utter failure to engage in good faith discovery. The need for any extension is not occasioned by any failure in Aereo's document production (which has been exhaustive), but by Plaintiffs' delays and refusal to provide clearly relevant production in accordance with their legal obligation. The appropriate length of an extension can only be determined after a resolution of the outstanding disputed issues.

WNET Plaintiffs' assertion that an extension is necessary because Aereo has delayed discovery is patently false. To the extent that the discovery deadline must be extended, it is because Plaintiffs have unreasonably delayed discovery responses, failed to resolve issues promptly or reasonably and refused to produce relevant and necessary documents. In addition, it is important to note that Plaintiffs failed to limit the nature of the discovery sought to what they described at the September 21, 2012 scheduling conference, thus dramatically (and unreasonably) increasing the discovery burdens on Aereo.

The current discovery schedule was adopted by the Court at the urging of WNET Plaintiffs (and over Aereo's objection) based on specific representations that Plaintiffs made regarding the limited scope of the discovery they intended to pursue. Indeed, as everyone recognized, Plaintiffs had already engaged in exhaustive discovery of Aereo and its technology during the Preliminary Injunction phase of this case. In fact, during the scheduling conference, WNET Plaintiffs responded to direct questioning by the Court regarding additional discovery the Plaintiffs would need by stating that discovery would likely be limited to: (1) access to an Aereo subscription; (2) two antenna boards; (3) information about how the "watch" function is accessed; (4) database information regarding the manner in which consumers have actually



ATLANTA
AUSTIN
BOSTON
DALLAS
DELAWARE
HOUSTON
MUNICH
NEW YORK
SILICON VALLEY
SOUTHERN CALIFORNIA
TWIN CITIES
WASHINGTON, DC

used the Aereo system; and—possibly—(5) non-party minor discovery from investors and marketing firms.

Aereo learned soon after the scheduling conference that Plaintiffs' statements to the Court about "limited" discovery were highly misleading. On September 24, Plaintiffs served Aereo with a broad set of document requests that sought patently irrelevant documents, including among other things, documents "concerning designs or architectures considered but not adopted in designing or implementing the Aereo System; documents "concerning any actual, contemplated, considered, or proposed business or strategic plans for Aereo or the Aereo System"; and documents "concerning the value of Aereo, the Aereo business, the Aereo system, or the Aereo System technology." Read literally, Plaintiffs' document requests would require Aereo to review and potentially produce nearly every document in its possession.[1]

Although the requests were facially unreasonable and entirely beyond what Plaintiffs had indicated they would seek, Aereo promptly responded to the requests, subject to objections. The company began by producing the categories of information that Plaintiffs had indicated to the Court they would seek from Aereo. Production on all of those topics was substantially completed by the end of October. The only information not produced immediately after Plaintiffs' requests were served was database information regarding consumer use of the Aereo system. With respect to that topic, Aereo conferred with Plaintiffs at the beginning of October to provide, voluntarily, a description of all database and server log information available in the Aereo system, and then sent a written description of the databases and logs on October 24, 2012 (30 days after Plaintiffs served their requests), so that Plaintiffs could identify categories of interest. Plaintiffs did not respond, so Aereo collected and produced voluminous amounts of data from applicable databases and servers.

In total, Aereo has reviewed well over 300,000 documents totaling millions of pages in addition to numerous caches of data, computer code, and other ESI. As a result of this extraordinary effort, Aereo's production is nearly complete, and Plaintiffs' claims that Aereo has "delayed" its production are unsupportable.

By contrast, Plaintiffs have expended most of their resources during this same time avoiding discovery and stonewalling Aereo's reasonable document requests.[2] In response to several requests for the most basic and clearly relevant documents, Plaintiffs initially issued blanket refusals to produce anything. By way of example only, Plaintiffs refused to produce any communications by their boards of directors concerning Aereo or the Aereo technology, as well as documents concerning their deployment of remote storage digital video recorder

---

[1] Plaintiffs contrast the literal number of their requests with the number of Aereo's. But, while Plaintiffs made fewer document requests in number, their scope is unreasonably broad and effectively encompass every document in Aereo.

[2] Indeed, Plaintiffs' primary efforts in connection with discovery seem to be to generate dozens of multipage letters either making aggressive demands for "immediate" production of various items and documents or, ironically, trying to justify how burdensome discovery is to their major network clients.

technology—documents which are directly related to Plaintiffs' claims of harm. Such blanket refusals to produce anything in response to many requests going to the core issues of the case could not reasonably have been made in good faith, but instead appear to have been interposed for the purpose of forcing Aereo into protracted negotiation to get basic information. Indeed, Plaintiffs have dragged out the meet-and-confer process with respect to their refusals to produce documents for more than a month while asking for repeated extensions and providing incomplete responses. Plaintiffs were well aware that Aereo was nearly ready, after weeks of unsuccessful attempts to confer and resolve the issues with plaintiffs, to bring these issues to the Court. Knowing that they could postpone it no longer, Plaintiffs sent these letters to try to preempt Aereo's filing and further avoid discovery via an extension or a stay.

To date, Plaintiffs' productions remain woefully incomplete. For example, several Plaintiffs, including WNET, WPIX, and Univision, have not produced a single document since the Preliminary Injunction phase. During the current round of discovery, Fox and PBS have only produced a smattering of minimally useful documents, consisting solely of copyright registrations and television schedules. Not a single email or written communication has been produced by any of the WNET Plaintiffs since April 2012.[3] Plaintiffs' dilatory tactics already forced Aereo to postpone eight 30(b)(6) depositions of the WNET Plaintiffs (as well as nine depositions of the ABC Plaintiffs) that were previously scheduled so they could be completed well within the Court's imposed discovery deadline.

An appropriate discovery extension should not be set until document discovery issues are resolved. If no agreement on these disputes is reached, Aereo will shortly be filing a letter with respect to these discovery issues that concern material at the very heart of this case. For these reasons, the Court should deny WNET Plaintiffs' request for a discovery extension until the outstanding discovery disputes are resolved.

Very truly yours,

/s/ R. David Hosp

R. David Hosp
Principal

RDH/dzs

cc: All Counsel of Record

30741878.doc

---

[3] Aereo is making one last effort to get Plaintiffs to voluntarily comply with its obligations. If that last effort is unsuccessful, Aereo will, in a separate letter, provide the Court with detail regarding Plaintiffs' discovery failures. It is sufficient here to note that Aereo cannot conduct a reasonable defense in the face of Plaintiffs' wholesale refusal to produce relevant documents.