DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel 212 909 6000
Fax 212 909 6836
www.debevoise.com

January 21, 2013


VIA E-MAIL

Hon. Alison J. Nathan
United States District Judge
Southern District of New York
500 Pearl Street, Rm. 614
New York, New York 10007

                **ABC, et al. v. Aereo, Inc., No. 12-Civ. 1540 (AJN) (S.D.N.Y.)**

Dear Judge Nathan:

      This responds to Aereo's January 18, 2013 letter ("Jan. 18 Letter") regarding privilege logs. Aereo's current proposal is seriously flawed. Given the importance of this issue, the ABC Plaintiffs request further assistance in resolving the matter.

      *First*, Aereo has not at all complied with the Court's instruction that it identify a subset of specific technologies "similar" to Aereo. To the contrary, Aereo literally maintains that every technology connected to a basic television set is "similar" to Aereo. It has described "similar" technologies as anything "that allow[s] consumers to view broadcast programming on media or platforms other than a traditional television platform." Jan. 16, 8:58 PM EST Email from David Hosp to Julie Shepard. Aereo's proposal to the Court is just as broad, requiring all legal analysis "regarding time-shifting technology, space-shifting technology, or antenna technology" to be logged. *See* Jan. 18 Letter at 2.

      The Court already has stated that logging every document held by outside counsel "regarding the harms caused by all technologies" similar to Aereo is "immensely burdensome." For that reason, Aereo's current proposal does not reflect the "suitable compromise" the Court requested be reached. Jan. 11 Order at 3-4.[1]

      *Second*, Aereo has yet to explain why legal analyses, residing in outside counsel files but never delivered to Plaintiffs, including those regarding prior litigations, possibly could be

---

[1] That is not for lack of trying on the part of the ABC Plaintiffs, who participated in multiple telephone conferences and one in person meeting in an attempt to reach a reasonable, mutually agreeable position on this issue.

relevant to this litigation.  It also has not explained how documents relating to different technologies, targeted at different markets, could be relevant to analyzing the harm caused by Aereo to the markets for Plaintiffs' works.  All Aereo has done is make conclusory assertions about its fair use defense.  That is not enough.  *See Perkins v. Chelsea Piers Management*, 2012 WL 4832814 at *1 (S.D.N.Y. Oct 10, 2012) ("[T]he party seeking discovery bears the burden of initially showing relevance[.]").

In addition, Aereo now wants a log dating back ten years, even though its actual requests for production only ask for documents dating back until April 2006.  Aereo's failure to articulate a substantive basis establishing the relevance of these privileged materials over any period, let alone an entire decade, exacerbates the immense burden noted by the Court, particularly because the privilege logs prove nothing.  *See Calabrese v. CSC Holdings, Inc.*, No. 02-cv-5171, 2009 WL 425879 at *17 (E.D.N.Y. Feb. 19, 2009) ("[P]rivilege logs are just that:  lists of items that have been withheld on the basis of a privilege.  They are not evidence of anything at all . . . .").  Accordingly, the Court should recognize this dispute for what it is, the first in a series of steps that will lead to challenges by Aereo regarding whether the logged documents (including any accepted as privileged in prior litigations) should continue to be protected as work product or attorney advice.  *See* Jan. 18 Letter at 2 ("Aereo shall have the right to request additional detail following the production of the 'categorical' log[.]").  The slipperiness of this slope and the additional burdens Aereo seeks to impose cannot be overstated, particularly given the "strong likelihood" that the documents Aereo seeks are "subject to legitimate claims of privilege."  Jan. 11 Order at 3.

*Third*, Aereo's suggestion that the logs take on greater importance because it has yet to receive other documents masks the real issue, which is that Aereo's entire approach to discovery has been abusive, including the 92 document requests it propounded.  *See In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) (parties are not entitled to "discovery sought in bad faith [or] to harass or oppress the party subject to it").  These 92 overbroad requests have triggered weeks of negotiations over their burdensome number and nature.  The identification and collection of additional documents can begin when Aereo reasonably adjusts its position.  For now, Aereo has only itself to blame for not yet receiving more documents.

*Fourth*, there is no disputing that much of this wasteful, tactical skirmishing over what is truly relevant would be narrowed and sharpened by virtue of whichever way the Second Circuit rules, making a stay appropriate.  In response to that sensible suggestion, Aereo now professes that, regardless of how the Second Circuit rules, it still wishes to offer an RS-DVR business making the entire scope of its discovery important.

That new position, of course, is completely inconsistent with the position Aereo took on September 19, 2012, when it supported a stay.  Perhaps more importantly, it also conflicts with the business plan it has followed for years.  *See, e.g.,* Pls.' Exs. 15 ("***Live*** Broadcast TV, meet the Internet.  Finally"); 33 ("focusing on the ***live*** television experience"); 35 ("***live*** sports is a core part of our value proposition"); 42 ("Proprietary infrastructure technology for 'must see TV'; Broadcast, ***LIVE*** windows"); 47 ("key dimension of the viewing experience . . .: ***Live***

programming") (emphasis added in all); *see also* 5/30/2012 Hr'g Tr. 188:22-190:14 (Kanojia) (Aereo's promotional video barely mentions its DVR service). Simply put, Aereo has no commercially viable business other than live retransmission.

Nonetheless, in contrast to Aereo's most recent privilege log proposal, the ABC Plaintiffs proposed to Aereo the following, based on your Jan. 11 Order:

1. With respect to documents in the files of outside counsel representing Plaintiffs in this case, Plaintiffs will produce privilege logs reflecting all privileged documents created prior to the commencement of this litigation relating to Aereo, Bamboom or Chaitanya Kanojia.

2. With respect to documents in the files of outside counsel other than the firms representing Plaintiffs in this case, Plaintiffs would produce privilege logs reflecting substantive analyses of the harm caused by Aereo and technologies with the same characteristics as Aereo: unauthorized services that retransmit Plaintiffs' over-the-air broadcast television programs on the Internet (i.e., ivi, Filmon and Aereokiller – a/k/a Barry Driller).

    a. Such logs would be categorical, with each categorical log entry describing the total number, subject matter, authors and recipients, and basis for withholding all documents in that category.

    b. Such logs would exclude any documents created after the commencement of litigation with respect to each technology included in the log, as well as any pre-litigation communications purely among lawyers within an outside law firm or among those lawyers and their consultants and agents.

Although the ABC Plaintiffs continue to believe that a stay to proceedings, pending the Second Circuit's ruling on the preliminary injunction, should be issued, if the Court wishes discovery to proceed, they request it limit the burden of logging privileged documents consistent with this proposal.

Respectfully yours,

*Bruce P. K*

Bruce P. Keller

cc:  All Counsel of Record