# FISH & RICHARDSON P.C.

One Marina Park Drive
Boston, Massachusetts
02210-1878

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
617 542-5070

Facsimile
617 542-8906

Web Site
www.fr.com

ATLANTA
AUSTIN
BOSTON
DALLAS
DELAWARE
HOUSTON
MUNICH
NEW YORK
SILICON VALLEY
SOUTHERN CALIFORNIA
TWIN CITIES
WASHINGTON, DC



VIA E-MAIL

January 28, 2013

Hon. Alison J. Nathan
United States District Judge
Southern District of New York
500 Pearl Street, Rm. 614
New York, New York 10007

Re: WNET, et al, v. Aereo, Inc., No. 12-Civ. 1540-AJN (S.D.N.Y.) (Consolidated)

Dear Judge Nathan:

Aereo, Inc. ("Aereo") seeks your assistance in resolving disputes regarding Plaintiffs' refusal to produce documents and information. Since discovery reopened, Plaintiffs have produced only: 1,231 Copyright Registrations; thirteen Copyright Applications; four Copyright assignments, and two television schedules. The parties have engaged in six weeks of conferences to resolve the issues, and are continuing to attempt to narrow the disputes. In that process, however, it has become clear that: (1) the parties will not be able to resolve all of their differences because Plaintiffs refuse to produce broad categories of information to which Aereo is entitled (including even refusing to identify all repositories and refusing to search for and produce all documents that refer to Aereo), and is necessary for this case to be tried fairly; (2) the issues are numerous and, in some cases complex, and more than three pages of briefing will be required to be helpful to the Court in resolving the matters (Plaintiffs' last round of offers to "compromise" comprised nearly forty single-spaced pages); and (3) these issues must be resolved as quickly as possible, because Plaintiffs' refusal to produce documents has halted discovery. As a result, we ask the Court to schedule limited briefing on these disputes, with Aereo to submit a brief of no more than 15 pages, within five (5) days of the Court granting leave to file and with Plaintiffs to file a responsive brief of the same length five (5) days later.[1] Aereo also requests that the Court hold a hearing at its earliest convenience after briefing is complete. Aereo continues in good faith to try to narrow the issues to be presented, but Plaintiffs have delayed long enough and these matters must be resolved.

Unfortunately, the parties cannot fully resolve the disputes regarding Plaintiffs' production. Plaintiffs have pursued scorched earth discovery against Aereo while frustrating Aereo's discovery at every turn. Plaintiffs' refusal to provide even basic information is unsupportable. By way of example only, to conceal any deficiencies in their search methods, Plaintiffs refuse to identify their document repositories or even

---

[1] Because the issues overlap, it may be most efficient for Plaintiffs to file one joint brief of 15 pages.

specify where they have searched for responsive documents.[2] Plaintiffs also have flatly refused to search across all repositories for documents referring to, or concerning Aereo and Mr. Kanojia. It is hard to imagine more necessary discovery in this action. Plaintiffs have instead hand-picked a few "custodians" and searched only their personal files. Plaintiffs' failure to conduct appropriate comprehensive searches on these and other discovery requests violates the rules of civil procedure and, if permitted, would hamstring Aereo in its defense of this case.

Plaintiffs refuse to produce entire categories of documents that are so critical to the defense of Plaintiffs' claims, that the refusal can only be seen as an act of bad faith. Again, by way of example only,[3] Plaintiffs engage in extensive internal and external research regarding the manner in which consumers access their programming across different platforms, such as computers, tablets, and smartphones—the very platforms consumers use to access programming with Aereo—and the way in which that consumer behavior impacts television viewing as a whole. Aereo is aware that such research exists because the President of Research and Media Development for NBC Universal, Alan Wurtzel, has spoken about it publicly and in substantial detail.[4] Such research is crucial to an understanding of any alleged harms, and aspects of the fair use analysis in this case.[5] Nonetheless, Plaintiffs refuse to produce any and all internal research concerning consumer access to programming across platforms and the impact that has on the commercial value of the works they claim are infringed.[6]

---

[2] Aereo voluntarily identified its electronic document repositories months ago, so Plaintiffs could assess where Aereo may have responsive document and Plaintiffs have, in addition, taken a Rule 30(b) deposition and an additional individual deposition on this topic.

[3] The specific documents that Plaintiffs have refused to produce and the related requests cannot be adequately covered in a three-page letter, which is why Aereo proposes fifteen (15) page briefs to set forth the disputes in a clear and comprehensive way that would be helpful to the Court. In addition to those mentioned in the body of this letter, dispute categories include (but are not limited to): documents related to harm Plaintiffs allege as a result of the use of Aereo, including the alleged effect of Aereo (compared to other related technologies such as home antennas, DVRs, and place- or media-shifting devices like SlingBox) on retransmission fees, license fees, ad revenue etc.; documents related to consumer volition in using Aereo or related technologies; documents regarding relevant lobbying activities related to Aereo and similar technologies; and documents regarding the effects of Aereo and other related technologies on viewership.

[4] *See, e.g.*, Wurtzel videos available at http://www.youtube.com/watch?v=lz3Z0VyugTc, http://www.youtube.com/watch?v=9NIYSEAFDBc, http://www.youtube.com/watch?v=pSFv1ygidys.

[5] Plaintiffs' refusal to produce their internal research is particularly troubling because Mr. Wurtzel's statements indicate that the research contradicts the Plaintiffs' testimony before this Court. Additionally, some of this research existed before the Preliminary Injunction hearing, and yet was not produced. *See* Wurtzel Interview, March 28, 2012 (http://www.youtube.com/watch?v=lz3Z0VyugTc) (research revealed that, when consumers view television on multiple platforms, "it would actually increase the amount of television that they watched.") Plaintiffs concealed this research and data through the preliminary phase of this case, but all such materials must be produced now.

[6] Plaintiffs offer an illusory "compromise" of producing research concerning specific technologies, such as Aereo, Zediva, ivi, Filmon, and RS-DVRs. That proposal is calculated to exclude more general research that analyzes the financial and market effects of consumer viewing of over-the-air

Plaintiffs also have refused in many instances to produce documents created before 2011. This arbitrary cut off has no relation to the existence of relevant documents. As the Court is aware, aspects of Aereo are similar in functionality to home DVRs, the RS-DVR and media or place shifting devices like SlingBox. These technologies were in existence prior to 2011 and Plaintiffs no doubt studied their effect. Additionally, Mr. Wurtzel has stated that NBC did significant research during the 2008 Summer Olympics on consumer receipt of programming over the Internet and its effect on the commercial value of the company's programming.

A theme that runs through Plaintiffs' objections and "compromises" is their offer to produce documents that support their claims and their refusal to search for and produce documents that do not. For example, Plaintiffs have said that, with respect to harm, they will provide only "documents sufficient to show the harm Aereo causes." Plaintiffs also seek to limit their production of various categories (*e.g.* retransmission agreements and market research) to documents related to services like FilmOn, AereoKiller, ivi and Zediva. Plaintiffs believe that these are likely to support Plaintiffs because they challenged them in litigation. However, technologies that Plaintiffs *did not challenge* are equally, if not more, relevant—particularly because Aereo is more akin to technologies that Plaintiffs have not successfully challenged in Court (i.e., home antennas, DVRs, RS-DVRs, and media or place shifting devices like SlingBox). Moreover, analyses Plaintiffs have performed regarding these technologies are relevant to issues like consumer volition and the impact of time- and space-shifting on Plaintiffs' programming. Plaintiffs' position is not advanced in good faith, is not in accordance with the rules and must be rejected if Aereo is going to have a fair playing field to defend against Plaintiffs' efforts to shut it down.

These are only examples of literally dozens of discovery disputes on which the parties have fully conferred. Plaintiffs have stretched out the discovery process while Aereo diligently produced its documents. Plaintiffs have had the benefit of substantial discovery from Aereo, but Aereo has essentially nothing from Plaintiffs and cannot proceed with depositions, prepare its experts, or prepare its defense generally. For these reasons, Aereo requests that this Court grant leave to Aereo to submit a full motion to compel, not to exceed 15 pages, and schedule a hearing on these matters.

Very truly yours,

R. David Hosp
Principal

---

broadcast programming on non-traditional platforms, which Mr. Wurtzel states actually *increases* viewership. Such evidence is critically important to Aereo's fair use and damages defenses.

cc: All Counsel of Record

22975359.doc