UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., DISNEY ENTERPRISES, INC., CBS BROADCASTING INC., CBS STUDIOS INC., NBCUNIVERSAL MEDIA, LLC, NBC STUDIOS, LLC, UNIVERSAL NETWORK TELEVISION, LLC, TELEMUNDO NETWORK GROUP LLC, and WNJU-TV BROADCASTING LLC, | : : : : : Civil Action No. 12-CV-1540 (AJN) : |
| Plaintiffs/Counterclaim Defendants, | : |
| v. | : |
| AEREO, INC. | : |
| Defendant/Counterclaim Plaintiff. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| WNET, THIRTEEN, FOX TELEVISION STATIONS, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WPIX, INC., UNIVISION TELEVISION GROUP, INC., THE UNIVISION NETWORK LIMITED PARTNERSHIP, and PUBLIC BROADCASTING SERVICE, | : : : : Civil Action No. 12-CV-1543 (AJN) : : |
| Plaintiffs/Counterclaim Defendants, | : |
| v. | : |
| AEREO, INC. | : |
| Defendant/Counterclaim Plaintiff. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT AEREO, INC.'S MEMORANDUM OF LAW PURSUANT TO
ORDER OF MAGISTRATE PITMAN DATED FEBRUARY 26, 2013 REGARDING
DISCOVERY ON DAMAGES, HARM, AND MARKET IMPACT**

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ........................................................................................................1

        A.      The Aereo Technology: Consumers Access a Remote Antenna and DVR .............1

        B.      This Action and the Relevance of Damages Discovery...........................................2

                1.      Relevance of Damages Discovery to Statutory Damages...........................3

                2.      Relevance of Damages Discovery to Fair Use ...........................................4

                3.      Relevance of Damages Discovery to Injunctive Relief ..............................5

II.     THE RELEVANCE AND IMPORTANCE OF THE REQUESTED DISCOVERY .........5

        A.      The Requested Discovery Is Directly Relevant to Statutory Damages ..................5

        B.      The Requested Discovery Is Relevant to Aereo's Fair Use Defense......................8

        C.      The Requested Discovery Is Also Relevant to Plaintiffs' Request for Permanent
                Injunctive Relief...................................................................................................10

III.    THE SPECIFIC DAMAGES DISCOVERY AEREO SEEKS .......................................11

IV.     CONCLUSION.............................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Agence France Presse v. Morel*,
  No. 10-Civ-02730, 2013 WL 146035 (S.D.N.Y. Jan. 14, 2013) (Nathan, J.) ......................6, 8

*Alexander v. Murdoch*,
  No. 10-Civ-5613, 2011 WL 2802899 (S.D.N.Y. May 27, 2011) ...........................................10

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
  874 F. Supp. 2d 373 (S.D.N.Y. 2012)...............................................................................3, 10

*Amsinck v. Columbia Pictures Industries, Inc.*,
  862 F. Supp. 1044 (S.D.N.Y. 1994).........................................................................................9

*Barclays Capital Inc. v. Theflyonthewall.com*,
  No. 06-Civ-4908, 2010 WL 2640095 (S.D.N.Y. June 30, 2010) ...........................................9

*Campbell v. Acuff–Rose Music, Inc.*,
  510 U.S. 569 (1994)................................................................................................................9

*Capitol Records, Inc. v. MP3Tunes, LLC*,
  Order at 1-3, No. 07-Civ-9931 (S.D.N.Y. Apr. 12, 2010).......................................................7

*Cartoon Network LP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008).....................................................................................................2

*eBay, Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)............................................................................................................5, 11

*EMI Entm't World, Inc. v. Karen Records, Inc.*,
  806 F. Supp. 2d 697 (S.D.N.Y. 2011)....................................................................................5, 6

*House of Bryant Publications, LLC v. A & E Television Networks*,
  No. 3:09-0502, 2009 WL 3673055 (M.D. Tenn. Oct. 30, 2009)..............................................9

*In the Matter of Adv. Television Systems and Their Impact Upon the Existing Television
  Broadcast Service*,
  12 F.C.C.R. 12809 Docket No. 87-268....................................................................................2

*Infinity Broadcast Corp. v. Kirkwood*,
  150 F.3d 104 (1998)................................................................................................................10

*Kleiner v. Burns*,
  No. 00-Civ-2160, 2000 WL 1909470 (D. Kan. Dec. 22, 2000) ...........................................6, 7

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Mattel, Inc. v. Walking Mountain Productions,*
   353 F.3d 792 (9th Cir. 2003) ..................................................9

*Microsoft Corp. v. AGA Solutions, Inc.,*
   589 F. Supp. 2d 195 (E.D.N.Y. 2008) ..................................................11

*New Line Cinema Corp. v. Russ Berrie & Co.,*
   161 F. Supp. 2d 293 (S.D.N.Y. 2001) ..................................................5

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
   464 U.S. 417 (1984) ..................................................2, 4, 10

*UMG Recordings, Inc., v. MySpace, Inc.,*
   No. 06-Civ-07361 (C.D. Cal. Mar. 17, 2008) ..................................................7

*Yurman Studio, Inc. v. Castaneda,*
   No. 07-Civ-7862, 2008 WL 4949775 (S.D.N.Y. Nov. 19, 2008) ..................................................6

STATUTES

17 U.S.C. § 107 ..................................................4, 10

17 U.S.C. § 107(4) ..................................................8

17 U.S.C. § 504(c)(1), (2) ..................................................7

Communications Act of 1934, 47 U.S.C. § 303 ..................................................2

Pub. L. No. 69-169, 44 Stat. 1162 (1927) ..................................................2

Section 1 of the Radio Act of 1927 ..................................................2

OTHER AUTHORITIES

4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.04 [B][1][a]
   (2005) ..................................................6

2 PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT  § 14.2.1.1 (3d ed. 2007) ..................................................6

Defendant Aereo, Inc. ("Aereo") submits this memorandum pursuant to the Court's February 26, 2013 Order requesting additional briefing on discovery sought by Aereo relating to harm/damages alleged by Plaintiffs as well as the fair use defense advanced by Aereo, and explaining the relevance of that discovery.[1]  In sum, the requested discovery is necessary, and indeed vital, to Aereo, and is commonly produced in copyright litigation as a matter of course.

## I.  INTRODUCTION

Aereo's February 1, 2013 letter to the Court detailed discovery that Plaintiffs have flatly refused to provide, including categories related to damages, harm, and commercial or market impact and value.  *See* Exhibit A.  This discovery is directly relevant to the claims and defenses asserted in this case, including (i) the measure of statutory damages; (ii) the fourth fair use factor—the effect of the allegedly infringing use on the market for and value of the work; and (iii) whether permanent injunctive relief is appropriate.[2]  For context, Aereo provides the following brief summary of its business and technology and the claims at issue in this case.

### A.  The Aereo Technology: Consumers Access a Remote Antenna and DVR

Aereo provides a technology platform that enables consumers to use equipment remotely-located "in the cloud," including an individual antenna and digital video recorder ("DVR"), to create, access, and view their own unique recorded copies of publicly available over-the air broadcast television programming. The government grants broadcasters licenses to broadcast over the public airwaves; in exchange, the broadcasters are obligated to make free over-the-air

---

[1] This Court's February 26, 2013 Order also ordered Plaintiffs to identify by March 11, 2013, any and all custodians and repositories that might reasonably have responsive documents.  Unfortunately, Plaintiffs take an unreasonably narrow view of what documents are responsive.  Accordingly, that list will likely need to be expanded once the pending discovery issues, and any follow up issues, are resolved.

[2] As instructed, this brief addresses only the relevance of the documents as related to the issue of "harm." However, other issues remain extant.  For example, Plaintiffs have not yet been ordered to produce documents which refer to or concern Aereo (including its former names, CEO and lead investor) as described in Aereo's February 1 letter at ¶ 3, p. 10.  Likewise, Plaintiffs have not yet been ordered to produce documents that concern consumer volition or who is the "actor" when consumers use Aereo or like technologies such as home or remote antennas, DVRs, or media shifting devices such as Slingbox or dongles.  *Id.* at ¶¶ 5-7, pp. 11-13.

broadcasts available to the public.[3]  For a small fee, Aereo users can take advantage of current technology to use remotely located equipment *functionally identical* to that which they would otherwise have and use in their home for the same purposes, to access and record those broadcasts.  The essential question posed by this case is whether consumers can locate home television viewing equipment, such as a television antenna and DVR, remotely.[4]

### B.   This Action and the Relevance of Damages Discovery

On March 1, 2012, two groups of plaintiffs filed related actions against Aereo in this Court.  The ABC Plaintiffs alleged direct copyright infringement;[5] the WNET Plaintiffs alleged direct infringement and also *contributory* copyright infringement of the reproduction and public performance rights in their copyrighted works.

Plaintiffs seek damages and a permanent injunction.  Evidence concerning alleged harms caused by Aereo, *or lack thereof*, is relevant both to Plaintiffs' damages claims and the irreparable harm Plaintiffs must prove to obtain an injunction.  Additionally, in order to prevail on a contributory infringement claim, Plaintiffs must first prove an underlying direct infringement.  This requires Plaintiffs to prove that a consumer using Aereo technology (*i.e.* an individual remote antenna and DVR) to access publicly available over-the-air broadcast television and make individual, unique copies of that programming for their private viewing, infringes their copyrights.  Based on the long-standing precedent of *Sony Corp. of Am. v.*

---

[3] Section 1 of the Radio Act of 1927 created the Federal Radio Commission to allocate the "use of such [broadcast] channels, but not the ownership thereof, by individuals, firms, or corporations . . . under licenses granted by Federal authority"). Pub. L. No. 69-169, 44 Stat. 1162 (1927) (emphasis added). Section 4 of that Act directed the Commission to grant licenses to the public airwaves in the "public convenience, interest, or necessity"—a requirement carried forward today in the Communications Act of 1934, 47 U.S.C. § 303.  *See In the Matter of Adv. Television Systems and Their Impact Upon the Existing Television Broadcast Service*, 12 F.C.C.R. 12809, 12816, MM Docket No. 87-268 ("reaffirm[ing] intention to preserve and promote universal, free, over-the-air television").

[4] The *Cablevision* case squarely answered this question as to remote DVRs.  *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 139-40 (2d Cir. 2008).

[5] The ABC Plaintiffs have indicated to Aereo that they also wish to bring a claim for contributory infringement even though it is not within their complaint.  They should be required to either move to amend to add this claim or disclaim it.  Until that issue is resolved, and as long as the ABC Plaintiffs assert that they are bringing a contributory infringement claim, they should be estopped from complaining about responding to discovery requests about it.

*Universal City Studios, Inc.*, 464 U.S. 417 (1984), consumers have a "fair use" right to make copies of publicly available over-the-air broadcast programming, which by definition is not copyright infringement.  Accordingly, Aereo has a fair use defense to contributory infringement.

All Plaintiffs moved for a preliminary injunction on the basis of Aereo's alleged direct infringement of Plaintiffs' public performance rights.[6]  Extensive discovery was conducted and a two-day hearing was held with multiple witnesses, including expert testimony for both sides.[7] *The District Court denied Plaintiffs' motions for a preliminary injunction, finding that a consumer's use of Aereo to access and view their own recordings of broadcast television is not a public performance under the Copyright Act, but rather is a private performance.* The District Court specifically found that the Aereo technology was squarely within the *Cablevision* case. *See Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 395 (S.D.N.Y. 2012) ("faithful application of *Cablevision* requires the conclusion that Plaintiffs are unlikely to succeed on the merits of their public performance claim").  *See* Exhibit B.  That denial was appealed and is pending.  Plaintiffs' copyright claims remain pending before the District Court.  While the basis, relevance, and need for specific requests are in Aereo's February 1, 2013 letter and are further detailed below, the fundamental principles are these: [8]

### 1.   Relevance of Damages Discovery to Statutory Damages

As detailed in Section IIA below, it is well established that an election of statutory

---

[6] Plaintiffs likely sought a preliminary injunction on what they perceived to be their strongest claims.  Notably, they did *not* raise the reproduction or contributory infringement claims in their motion for a preliminary injunction.
[7] As is presently the case, Aereo provided voluminous discovery regarding its technology and business (so much so that Mr. Fabrizio confirmed to Judge Nathan at the Preliminary Injunction Hearing that very limited additional discovery was necessary, *see* Hosp Declaration filed herewith ("Hosp Decl."), Exh. 1 at 4-7); by contrast, Plaintiffs produced very few documents at the preliminary injunction stage despite their disclosure obligations and then pending requests.
[8] In addition, it is important to note that Aereo has produced documents in accordance with the Federal Rules.  Indeed, the point is underscored by the fact that Plaintiffs could only find very minor issues to raise with Aereo's production including only answers to poorly drafted requests for admissions, requests for IP addresses and requests for valuation documents.  In contrast, after the preliminary injunction proceedings and prior to the February 1 letters to the Court, Plaintiffs had produced only copyright registrations, television programming schedules, and heavily-redacted retransmissions agreements that the Court had ordered them to produce.

damages does not eliminate the need for damages discovery.[9]  The available statutory damages in copyright cases range from $200 to $150,000 per work infringed, and determining the appropriate level requires consideration of the effect of infringement on Plaintiffs' revenues.

### 2.    Relevance of Damages Discovery to Fair Use

Aereo asserts a fair use defense to the WNET Plaintiffs' contributory infringement claim. In choosing to try to re-litigate *Sony,* Plaintiffs have opened up discovery on the fair use defense. One simply needs to review *Sony* to understand the broad range of issues and related discovery that pertain to Plaintiffs' contributory infringement claims and the defenses thereto.  This is not a simple case with a single copyright asserted.  Plaintiffs are challenging a specific way that consumers are accessing and recording otherwise free to air broadcast television.  In doing so, they open themselves to discovery on the question of how Aereo technology harms them in a way that is different than existing technologies acknowledged to be legal.  To answer that question, Aereo must be able to discover the categories of documents enumerated below and in its February 1 letter.  Without them, Aereo will be forced to defend this case blindly.

There are four enumerated fair use factors in the Copyright Act that must be considered in evaluating a fair use defense, the fourth being: "the effect of the use upon the potential market for, or value of, the copyrighted work." 17 USC § 107.  Plaintiffs allege that consumers who use Aereo to access and record over-the-air broadcast television via their remote antenna are direct infringers. Under the fourth fair use factor, Aereo is entitled to discovery about how the consumer's use of its technology will affect the potential market for or value of the alleged copyrighted works.  For example, how does a consumer's use of a remote antenna cause market effects different from a consumer's use of an in-home antenna?  How does a consumer's use of

---

[9] While Plaintiffs have not made a formal election, Plaintiffs have confirmed to Aereo and the Court that they elect statutory damages.

an Aereo remote DVR cause market effects different from use of in-home or other available remote DVRs?  Plaintiffs advanced this contributory infringement claim and Aereo cannot and should not be foreclosed from gathering the evidence necessary to defend the claim.

### 3.    Relevance of Damages Discovery to Injunctive Relief

Under *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), and its progeny, injunctions are not automatic in copyright cases—there must be proof of irreparable harm. Plaintiffs' executives testified at the preliminary injunction hearing regarding specific alleged harms, including general control of their alleged copyrights and specific issues such as measuring viewership (*i.e.*, ratings), ability to negotiate licensing and retransmission agreements, and Plaintiffs' own efforts to use the Internet to stream content.  *See* Hosp Decl., Exh. 1 at 48:10-22 and 59:6-24; Exh. 2 at 407:3-12.  Aereo is entitled to discovery on these claimed harms (present or future) and how it is attributable to Aereo versus similar available technologies.

Without discovery regarding the market and financial effects Plaintiffs allege are caused by Aereo and how those effects are different from and distinguishable from other like technologies, Aereo will be hamstrung from defending this case as to claimed statutory damages, its fair use defense, and the requested injunction.

## II.    THE RELEVANCE AND IMPORTANCE OF THE REQUESTED DISCOVERY

### A.    The Requested Discovery Is Directly Relevant to Statutory Damages

Financial documents and information relating to (i) Plaintiffs' revenues and profits from the works at issue; (ii) Plaintiffs' promotion and exploitation of the purportedly infringing works; and (iii) the value of Plaintiffs' copyrights, are directly relevant to Plaintiffs' statutory damages claim.  It is well established that "statutory damages should be commensurate with the actual damages incurred."  *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 303 (S.D.N.Y. 2001); *see EMI Entm't World, Inc. v. Karen Records, Inc.*, 806 F. Supp. 2d 697, 707-88 (S.D.N.Y. 2011) (amount of statutory damages must "bear some relationship to actual

damages suffered"). "At the end of the day, statutory damages should bear some relation to actual damages suffered." *Yurman Studio, Inc. v. Castaneda*, No. 07-Civ-7862, 2008 WL 4949775, at *2 (S.D.N.Y. Nov. 19, 2008).[10]  Actual damage is, therefore, a key factor in determining statutory damages.

Courts, including this Court, have repeatedly recognized that the types of financial information and other discovery that Aereo seeks concerning the actual harm (if any) to a copyright plaintiff—such as information about a plaintiff's revenues, profits, and costs—is directly relevant to the determination of statutory damages.  *See* Hosp Decl., Exh. 3 at 14:4-15 (citing *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) for the proposition that "[w]hen determining the amount of statutory damages to award for copyright infringement, courts consider . . . [factors including] the revenue lost by the copyright holder. . . ."); *EMI*, 806 F. Supp. 2d at 697 (same).  In addition, as many courts and commentators have recognized, the Copyright Act's statutory damages provisions should not be interpreted so as to "lead to awards of statutory damages that are massively disproportionate when compared to the actual harm caused by the infringing defendants…. The Court[s] find[] it unlikely that Congress intended the statutory damages provision of the Copyright Act to create such a result." *Agence France Presse v. Morel*, No. 10-Civ-02730, 2013 WL 146035, at *27 (S.D.N.Y. Jan. 14, 2013) (Nathan, J.). "[W]hen anything more than the statutory minimum is elected . . . the court's discretion and sense of justice are controlling with respect to the sum of damages awarded within the statutory range." *Kleiner v. Burns*, No. 00-Civ-2160, 2000 WL 1909470, at *3 (D. Kan. Dec. 22, 2000). In *Kleiner*, the plaintiff's initial disclosures asserted damages of "[u]p to" the maximum statutory amount.  *Id.* at *1.  The court granted defendant's motion to compel "a computation of damages and all evidence supporting such damages as required by the Federal Rules of Civil Procedure," and ordered plaintiff to "produc[e] … a computation of Plaintiff's actual damages," including by

---

[10] *See also* 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.04 [B][1][a] (2005) ("the determination of statutory damages within the applicable limits may turn upon such factors as … the revenues lost by the plaintiffs as a result of the defendant's conduct…."); 2 PAUL GOLDSTEIN, GOLDSTEIN ON COPYRIGHT § 14.2.1.1 (3d ed. 2007) ("The amount of actual damages and profits the plaintiff would probably have recovered had it been able to prove them" is a "benchmark" for calculating statutory damages.).

"either disclos[ing] to Defendants any evidence she possesses of her actual damages or inform[ing] Defendants that, other than that already produced, she does not possess any additional evidence of actual damages." *Id.* at *3; *see also* Hosp Decl., Exh. 4 attaching *UMG Recordings, Inc., v. MySpace, Inc.*, No. 06-Civ-07361 (C.D. Cal. Mar. 17, 2008) (Dkt. No. 260) (granting motion to compel production of "documents reflecting the profitability of the allegedly infringed works"; "evidence of … [plaintiff's] lost revenues or lost profits, if any, is potentially vital to [defendant's] ability to defend itself against [plaintiff's] damages claims").

Here, Plaintiffs confirm that they will elect statutory damages but have not agreed to any limit on the amount of such damages, which may range between $200 and $150,000 (17 U.S.C. § 504(c)(1), (2)); nor have Plaintiffs proposed any principled basis on which statutory damages should be calculated.  Plaintiffs have not even defined the scope of the case or the number of works for which they may ultimately claim infringement, instead merely providing "non-exhaustive list[s]" of well over a hundred television programs. Compl. at ¶ 29 & Ex. 3, *ABC et. al v. Aereo*, No. 12-Civ-1540 (S.D.N.Y. Mar. 1, 2012) (Dkt. No. 1); Compl. at ¶ 19 & Ex. A, *WNET et.al v. Aereo*, No. 12-Civ-1543 (S.D.N.Y. Mar. 1, 2012) (Dkt. No. 1). In light of the statutory maximum of $150,000 for each work infringed and the open-ended lists of at least hundreds of allegedly infringed works, there should be no debate that Plaintiffs must produce the financial documents and evidence sought.[11]  Documents evidencing the value of the works at issue, as well as evidence of Plaintiffs' alleged lost revenues and lost profits, are vital to Aereo's

---

[11] Plaintiffs rely on *Capitol Records, Inc. v. MP3Tunes, LLC*, Order at 1-3, No. 07-Civ-9931 (S.D.N.Y. Apr. 12, 2010) (Dkt. No. 168) for the proposition that electing statutory damages relieves them of their basic obligation to produce evidence of their claimed harm.  *See* Hosp Decl., Exh. 5.  That decision, however, did not preclude discovery of all information related to harm.  Instead, the Magistrate only denied two of defendants' document requests related to historical profitability of the works in question, primarily because "the defendants [had] not adequately explained how historical profitability data would help a finder of fact determine the plaintiffs' actual damages during the relevant period." *MP3Tunes*, Order at 1-2, No. 07-Civ-9931 (S.D.N.Y. Jan. 22, 2010) (Dkt. No. 142).  Hosp Decl., Exh. 6.  Here the discovery sought is necessary to test specific claims of harm about which Plaintiffs have already testified during the preliminary injunction hearing. Such discovery for the limited ten year period Aereo seeks is also relevant to whether any potential loss of advertising revenue, for example, is attributable to a larger historical trend rather than to Aereo.

case. Aereo is entitled to this discovery so that it may adequately defend itself, and to ensure that Plaintiffs' award of statutory damages, if any, is not "massively disproportionate when compared to [Plaintiffs'] actual harm," if any. *Agence France Presse*, 2013 WL 146035 at *27.

The financial information Aereo seeks—detailed below in Section III—including revenue, expenses, and profits for the allegedly infringed works, as well as the effect of Aereo on the value of the alleged works—is undeniably relevant to statutory damages. For example, documents relating to Nielsen and other rating services—and not just the Nielsen reports themselves—are relevant as they are likely to disprove Plaintiffs' claim that they are damaged because no rating services measure Internet viewership. *See* Hosp Decl., Exh. 1 at 48:10-22.

Documents concerning related technologies and their impact on Plaintiffs—also detailed in Section III—are equally relevant because they are likely to show that Aereo's only effect on the value of the alleged works, if any, is the very same effect as uncontroversial, legal technologies such as in-home and remote DVRs and antennas.  In other words, how can the Court determine any harm purportedly caused by Aereo without understanding how such harm is different from or over and above "harms" caused by similar technologies?  Without this discovery, the Court and Aereo are left with Plaintiffs' bald assertions and no method to test the underlying data or assumptions.  Plaintiffs cannot show that such discovery would be unduly burdensome; nor that their actual damages, if any, are not readily ascertainable.

**B.    The Requested Discovery Is Relevant to Aereo's Fair Use Defense**

Aereo also must have the discovery it seeks in order to adequately present its fair use defense to the contributory infringement claim.  Indeed, the fair use analysis *requires* the Court to consider information about the actual and potential harm Plaintiffs allege. 17 U.S.C. § 107(4) ("the factors to be considered shall include … the effect of the use upon the potential market for

or value of the copyrighted work."). "The fourth factor asks whether *actual* market harm resulted from the defendant's use of plaintiff's protected material and whether 'unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market' for the original or its derivatives." *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 804 (9th Cir. 2003) (internal quotation marks omitted, emphasis added; citing *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 575–76 (1994)). "While the mere absence of measurable pecuniary damages does not require a finding of fair use, the less adverse the effect that the alleged infringing has on a copyright owner's expectations of financial gain, the less public benefit need be shown to justify the use." *Amsinck v. Columbia Pictures Industries, Inc.*, 862 F. Supp. 1044, 1049 (S.D.N.Y. 1994) (citing *MCA, Inc. v. Wilson*, 677 F.2d 180, 183 (2d Cir. 1981)).

Courts routinely rely upon evidence of harm (or lack thereof) in analyzing the fourth fair use factor. *See, e.g.*, *Barclays Capital Inc. v. Theflyonthewall.com*, No. 06-Civ-4908, 2010 WL 2640095, at *4 (S.D.N.Y. June 30, 2010) ("fair-use defense … necessitated discovery into … the effect of [defendant's] use upon the potential market for or value" of the plaintiff's copyrighted works) (internal quotation marks and citation omitted); *House of Bryant Publications, LLC v. A & E Television Networks*, No. 3:09-0502, 2009 WL 3673055, at *8 (M.D. Tenn. Oct. 30, 2009) (evidence relevant to fourth factor "will often focus on … the potential market for licensing of the [copyrighted work]") (internal quotations and citation omitted). Discovery relevant to the fourth factor encompasses more than just financial information. As the Supreme Court has recognized, "[s]ince fair use is an affirmative defense, its proponent would have difficulty carrying the burden…without…evidence about relevant markets." *Campbell*, 510 U.S. at 590.

Evidence of harm, the relevant markets in which Plaintiffs operate and evidence of how

Aereo technology-versus other related technology-caused harm is thus of great relevance to the critical question of whether Aereo's customers make fair use of Plaintiffs' alleged works.[12] Plaintiffs appear to argue that it is irrelevant whether Aereo's customers are engaging in fair use. *See* Hosp Decl., Exh. 1 at 41:5-6 ("It's not what the user does with the Aereo system that matters as much as what Aereo does with its own system").  Plaintiffs are wrong because that is not the law. *See, e.g., Sony*, 464 U.S. at 433 ("Any individual may reproduce a copyrighted work for a 'fair use;' the copyright owner does not possess the exclusive right to such a use").  So long as Plaintiffs allege claims of contributory copyright infringement against Aereo, a finding of fair use by Aereo's customers provides a complete defense against such claims. "Neither contributory nor vicarious copyright infringement can exist without an underlying finding of direct infringement." *Alexander v. Murdoch*, No. 10-Civ-5613, 2011 WL 2802899, at \*16 (S.D.N.Y. May 27, 2011) (citing *MGM Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)). Moreover, a "fair use of a copyrighted work…is not an infringement of copyright." 17 U.S.C. § 107.

Information about the actual or potential harm to Plaintiffs is directly relevant to Aereo's fair use defense—it would be manifestly unjust to deny Aereo precisely the information necessary to assert its defense.  Plaintiffs should provide the requested discovery.

**C.     The Requested Discovery Is Also Relevant to Plaintiffs' Request for Permanent Injunctive Relief**

Finally, even if they succeed on the merits, Plaintiffs must establish irreparable harm for

---

[12] At the February 26 hearing, Plaintiffs cited to *Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104 (1998) to suggest that Aereo's conduct—not the consumer's—is what is at issue.  *Kirkwood*, however, addressed a claim of *direct* infringement, not contributory infringement.  As a result, the question of whether there was an underlying infringement by the consumer sufficient to support a claim for contributory infringement was never presented. The fair use analysis as to Aereo's customers is separate and distinct from any analysis as to Aereo itself.  For example, the first fair use factor (whether the challenged use is "commercial") is determined by whether the *consumer's* making of a copy for his or her own purposes is a "commercial use," *not* whether *Aereo* is a commercial entity. Similarly, in *Sony*, the defendant sold a commercial product (the Betamax), but the inquiry turned on whether use of that commercial product *by the consumer* was a fair use.  *Sony*, 464 U.S. at 449-50 ("The District Court's findings plainly establish that time-shifting [by the consumer] for private home use must be characterized as a noncommercial, nonprofit activity.").

their requested injunction.  Following the Supreme Court's decision in *eBay*, courts no longer presume irreparable harm.  *See Microsoft Corp. v. AGA Solutions, Inc.,* 589 F. Supp. 2d 195, 203-204 (E.D.N.Y. 2008).  While Judge Nathan found that Plaintiffs had established irreparable harm as a preliminary matter, Aereo is entitled to discovery to more fully test Plaintiffs' claims of harm.  This is particularly true given that recently produced documents, withheld from preliminary injunction discovery, contradict aspects of Plaintiffs' testimony at that hearing.

Plaintiffs previously testified regarding specific harms allegedly resulting from use of Aereo, such as the alleged inability to measure Internet viewership, the negative effect on their ability to negotiate licensing and retransmission agreements, and unfair competition with Plaintiffs' efforts to build businesses around streaming content.  *See* Hosp Decl., Exh. 1 at 48:10-22 and 59:6-24; Exh. 2 at 407:3-12.  However, Plaintiffs withheld—and continue to withhold—documents necessary to challenge that testimony.  Aereo's discovery into these areas is entirely appropriate and critically necessary to test Plaintiffs' claims.

## III.    THE SPECIFIC DAMAGES DISCOVERY AEREO SEEKS

In its February 1, 2013 letter, Aereo highlighted specific categories of documents that it needs in discovery.  Because Plaintiffs have refused to produce categories of critical documents that go straight to the issues described above—measuring statutory damages, developing a fair use defense to Plaintiffs' contributory infringement claims, and determining irreparable harm—Aereo requests comprehensive orders compelling Plaintiffs to produce documents on these issues.[13]  The following categories of documents are *fundamental and basic to this case:*

---

[13] Plaintiffs claim to have offered certain "compromises," which really are intended to prevent the production of anything of any value to Aereo.  In particular, Plaintiffs seek to limit productions temporally to 2011 and 2012—a strategy that appears calculated to prevent Aereo from rebutting Plaintiffs' asserted "harm" by depriving Aereo of documents necessary to establish the contextual use of similar technologies by consumers over the past few years.  Plaintiffs also in many cases offer to produce *only those documents they believe support their positions*, and refuse to produce anything else (*e.g.*, "documents sufficient to show the harm Aereo causes," *see* ABC Plaintiffs' Responses to Aereo's Second Request for Production, Nos. 62, 66-70, 72-75).  *See* Hosp Decl., Exh. 7.  This

- **Documents on damages and commercial impact generally.**  Plaintiffs should produce information sufficient to identify what harms and commercial impacts Aereo causes that are distinct from the impacts and effects caused by other related technologies such as antennas, DVRs, remote DVRs, and place or media shifting devices such as SlingBox or dongles, as well as for each asserted copyrighted program information sufficient to identify the specific and detailed financial impact on the profit for that program resulting, specifically and only, from the Aereo technology.  *See* Exhibit A at ¶ 13 (p.18).

- **Documents concerning revenue, expenses, profit and loss per alleged copyrighted work.**  Plaintiffs should produce information sufficient to identify on a per program and monthly basis: (i) total revenue, (ii) sources of revenue (e.g. retransmission fees, advertising revenue, licensing) and the platform to which they are attributable, and (iii) expenses, broken out by platform, profit and loss by platform (together with information sufficient to understand how profit and/or loss is derived).  *See id.* at ¶ 12 (p. 17).

Such documents go to the heart of the analysis on statutory damages, irreparable harm, and fair use, and this is exactly the type of inquiry that has been allowed in similar cases.

Within these baseline categories of traditional harm documents going to the very essence of Plaintiffs' contentions and Aereo's defenses, Aereo is entitled to orders requiring production of several specific categories of documents that are related to previous testimony and assertions by Plaintiffs and are necessary for measuring statutory damages, developing a fair use defense to Plaintiffs' contributory infringement claims, and determining irreparable harm.  For example, given how Plaintiffs monetize and value their copyrighted works through advertising, Aereo also is specifically entitled to:

- **Documents concerning advertising revenue.**  Plaintiffs should produce information sufficient to identify: (i) advertising revenue, per program, per month, (ii) any documents that concern the impact of Aereo, as well as similar technologies, on advertising revenue, (iii) the methods and results of plaintiffs measurement of viewership, (iv) how those measurements and results impact advertising revenue, (v) whether there has been analysis of the viability of measuring the audience for users of Aereo's remote antenna technology, and (vi) whether in negotiations with any advertisers Aereo or similar technologies have been considered and discussed.  *See id.* at ¶ 10 (p. 16).

For another example, Plaintiffs have claimed that Aereo will harm them in their

---

conflicts directly with the discovery process.  A party is not permitted to cherry-pick what they view as helpful documents to produce and suppress documents that are not helpful on the same subject.  Aereo must be permitted full discovery in order to defend itself from Plaintiffs' claims.

negotiations of retransmission agreements and other licenses.  *See* Hosp Decl., Exh. 8 at ¶ 10.
Having placed the agreements and negotiations at issue, Aereo is entitled to:

- **Plaintiffs' re-transmission and licensing agreements.**  Plaintiffs should produce all
  retransmission agreements and license agreements, together with documents concerning
  negotiations, in un-redacted form as well as any and all documents that demonstrate how
  Aereo caused commercial effects on such agreements, well as any commercial effects
  from other similar technologies. [14]  *See* Exhibit A at ¶ 9 (p. 15).

Further, in order to determine any true impact from Aereo, impacts from other

technologies must be contrasted.  Thus, documents showing harm allegedly caused by Aereo, as

well as any documents related to any economic impact from other related technologies, are

necessary.  Without information related to other technologies, it is impossible to determine what

allegedly has been caused by Aereo rather than by different technologies, by competition from

other sources, or by other distribution platforms.  Technologies that provide similar functionality

(*e.g.*, in-home antennas, TiVo, DVR, Slingbox, etc.) have existed for years and Plaintiffs have

studied the impact of those technologies extensively.  Documents relating to the impact of

existing similar technologies are directly relevant to the issue of harm and are essential to a

determination of causation.  Aereo is entitled to:

- **Documents related to consumer use of in-home DVRs**, including, without limitation:
  (i) documents related to the volitional conduct involved in operating DVRs, (ii)
  documents that indicate any comment, analysis and/or research by Plaintiffs that their
  profits are affected or diminished by consumer use of DVRs (iii) any information about
  the commercial impact of consumer use of in-home DVRs versus remote DVRs, (iv) any

---

[14] Judge Nathan specifically and repeatedly found that the Aereo technology is analogous to certain other
technologies such as DVRs, remote DVRs, TiVo, and Slingbox.  *See* Exhibit B.  ("Thus, from the user's perspective,
Aereo's system is similar in operation to that of a digital video recorder ("DVR")); *see also id.* at 20-21 ("As in
*Cablevision*, the functionality of Aereo's system from the user's perspective substantially mirrors that available
using devices such as a DVR or Slingbox, which allow users to access free, over-the-air broadcast television on
mobile internet devices of their choosing.  To the extent that the Second Circuit's holding in *Cablevision* was
premised on an inability to distinguish Cablevision's system from otherwise lawful activities, Aereo's system
deserves the same consideration.") (internal citations omitted).  *Incredibly, Plaintiffs have refused to produce
documents related to technologies the District Court explicitly stated are similar to Aereo, and only agreed to
produce documents related to technologies that the District Court determined were factually dissimilar to Aereo,
such as ivi.*  It makes no sense that documents that are distinct from Aereo's technology would be relevant while
documents found by Judge Nathan to be essentially identical to Aereo's would not.  Both should be produced.

documents that demonstrate or concern measurement of consumer use of DVRs, in-home, and how such measurement affects the value or profitability of each copyright work, and (v) any documents that concern any differences between the measurement and impact of consumer use of DVR's and consumer use of remote-DVRs.  *See* Exhibit A at ¶ 6 (p. 12).

- **Documents concerning ad-skipping.**  Plaintiffs should produce information sufficient to identify what effects and commercial impacts ad-skipping causes, broken down by device and platform.  *See id.* at ¶ 11 (p. 16).

- **Documents concerning other similar technology, including consumer use of place-shifting or media-shifting devices such as Slingbox, dongles, etc.**  Relevant documents concern these similar technology and their claimed effect on Plaintiffs, from the inception of the technology and, include, but are not limited to: (i) documents that provide any comment, analysis and/or research by Plaintiffs with respect to whether their profits are affected or diminished by consumer use of SlingBox, dongles and other like technologies (ii) any documents that demonstrate or concern measurement of consumer use of SlingBox, dongles, or other like technologies, and how such measurement affects the value or profitability of each copyright work, and (iii) any documents that concern any differences between the measurement and impact of consumer use of SlingBox, dongles and other like technologies versus use of Aereo.  *See id*. at ¶ 7 (p. 13).

Plaintiffs also put forth testimony that they would be harmed by Aereo because they have invested "substantial amounts in [their] broadcast infrastructure to ensure that the viewing public continues to receive the high-quality viewing experience they have come to expect …"  *See* Hosp Decl., Exh. 8 at ¶ 19.  Aereo is entitled to test that claim, and to determine whether Plaintiffs have either encouraged or discouraged the use of antennas.  Aereo is entitled to:

- **Documents related to consumer use of antennas,** including, without limitation: (i) documents that indicate any comment, analysis and/or research by Plaintiffs that their profits are affected or diminished by consumer use of antennas; (ii) documents that may indicate any effort to discourage or limit consumer use of antennas; (iii) any information about consumer use of remote antennas or about remote antennas generally (iv) any documents that demonstrate or concern measurement regarding content consumed by consumers use of antennas and how such measurement affects the value or profitability of each copyright work.  *See* Exhibit A at ¶ 5 (p. 11).[15]

Finally, Plaintiffs submitted unsupported testimony at the preliminary injunction stage that Aereo would "siphon" audiences from measurable platforms like over-the-air and cable,

---

[15] This is particularly true given the fact that certain documents improperly withheld at the preliminary injunction stage and only recently produced contradict Ms. Brennan's sworn statement and indicate Plaintiffs' desire to push consumers *away from* using over-the-air broadcasts and toward the use of pay and subscription delivery systems.

which allegedly would harm the broadcasters.  *See* Hosp Decl., Exh. 9 at ¶ 20.  However, prior to

filing this action, Plaintiffs conducted research that contradicts that testimony, but never

produced it.  For example, during the past three Olympics, NBC made its programming available

online for the express purpose of measuring the impact on over-the-air broadcasting when

consumers access programming on their computers and tablets.  News reporting of that research

suggests that online access to programming actually increases television viewing, which

undercuts Plaintiffs' claims at a fundamental level.[16]  Aereo is entitled to:

- **Documents related to consumer and other research, including ratings and viewership research on alternative platforms.**  Specifically, documents and information that concern research, data, ratings and comparisons concerning the impact on each asserted copyrighted program's value or profitability of consumers' use of antennas, remote antennas (including Aereo's), DVRs, RS-DVRs, media or space shifting devices such as SlingBox, portable devices and the Internet to access programming, and produce such documents.  *See* Exhibit A at ¶ 8 (p. 14).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs should be ordered to produce those documents

identified in Aereo's letter dated February 1, 2013.


Dated: March 8, 2013                              Respectfully submitted,


                                                     /s/ R. David Hosp
                                                  R. David Hosp (DH 3344)
                                                  Mark S. Puzella   (Admitted *pro hac vice*)
                                                  FISH & RICHARDSON P.C.
                                                  One Marina Park Drive
                                                  Boston, Massachusetts 02210
                                                  Tel.: (617) 368-2125
                                                  Fax: (617) 542-8906
                                                  hosp@fr.com
                                                  puzella@fr.com

---

[16] Amy Chozick, *NBC Unpacks Trove of Data From Olympics*, N.Y. TIMES, Sept. 26, 2012, available at
http://www.nytimes.com/2012/09/26/business/media/nbc-unpacks-trove-of-viewer-data-from-london-
olympics.html?pagewanted=all&_r=0.  *See* Hosp Decl., Exh. 12.

Michael S. Elkin
Thomas Patrick Lane
Seth E. Spitzer
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
melkin@winston.com
tlane@winston.com

Jennifer A. Golinveaux (Admitted *pro hac vice*)
WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111
Tel: (415) 591-1000
Fax: (415) 591-1400
jgolinveaux@winston.com

*Attorneys for Defendant Aereo, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 8, 2013, I caused Defendant Aereo, Inc.'s Memorandum of Law Pursuant to Order of Magistrate Pitman Dated February 26, 2013 Regarding Discovery on Damages, Harm, and Market Impact to be electronically filed with the clerk of the District Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ R. David Hosp_____
R. David Hosp

17