UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                              :

AMERICAN BROADCASTING COMPANIES, INC.,  :
DISNEY ENTERPRISES, INC., CBS BROADCASTING  :
INC., CBS STUDIOS INC., NBCUNIVERSAL MEDIA,  :
LLC, NBC STUDIOS, LLC, UNIVERSAL NETWORK  :
TELEVISION, LLC, TELEMUNDO NETWORK GROUP  :
LLC, WNJU-TV BROADCASTING LLC,  :
                                              :

        Plaintiffs,                       :
                                                :

        v.                                :    12 Civ. 1540 (AJN)
                                              :    **[consolidated]**

AEREO, INC.,                                :
                                              :

        Defendant.                      :
                                              :
------------------------------------------------------------------------X

## ABC PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND THE COMPLAINT

American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS

Broadcasting Inc., CBS Studios Inc., NBCUniversal Media, LLC, NBC Studios, LLC,

Universal Network Television, LLC, Telemundo Network Group LLC and WNJU-TV

Broadcasting, LLC (the "ABC Plaintiffs") hereby move to amend their March 1, 2012

complaint (the "Complaint") in the above-captioned matter, to add additional allegations

in support of their claim that Aereo, Inc. ("Aereo") is secondarily liable for copyright

infringement.

### PRELIMINARY STATEMENT

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave to amend

should be "freely" granted and the proposed amended complaint (copy attached) easily

meets the applicable standard.  It does no more than add additional details to existing allegations in the Complaint that bear on an issue that has been vigorously litigated between the ABC Plaintiffs and Aereo for over a year.  There is no possible claim of undue delay, prejudice, bad faith or futility resulting from the proposed amendment of the Complaint and those are the only factors that conceivably could warrant denial of the motion.

Aereo's assertion that the Complaint does not adequately put it on notice that it is potentially liable for secondary copyright liability, ignores that the Complaint alleges that (1) Aereo has "*authorized or will authorize others to exercise*" the exclusive copyright rights owned by the ABC Plaintiffs pursuant to 17 U.S.C. § 106[1] and (2) Aereo had no "license, permission or authorization" to do so.  *See* No. 12 Civ. 1540 Dkt. 1 ¶¶ 32-36 (emphasis added).[2]  It also ignores not only those allegations, but that:

---

[1]   17 U.S.C. § 106 grants copyright owners the exclusive right "to do and to authorize," among other things, the reproduction of the copyrighted work in copies and phonographs.  The legislative history, both leading treatises and the courts that have considered the issue recognize the "authorization" right as embodying secondary liability.  *See* H.R. Rep. No. 94-1476, 94th Cong., 2d Sess., at 61 ("[u]se of the phrase 'to authorize' is intended to avoid any questions as to the liability of contributory infringers"); 3 Melville B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT §12.04[D][1] & n. 414 (Matthew Bender Rev. Ed.) ("'to authorize' is simply a convenient peg on which Congress chose to hang the antecedent jurisprudence of third party liability") (collecting cases); Paul Goldstein, GOLDSTEIN ON COPYRIGHT § 8.1 & n.21 (3d ed. 2013 supp.) (noting that violating the "authorization right" is a form of secondary liability) (collecting cases).  The allegations of the original complaint, therefore, plainly pled a claim for secondary copyright liability.

[2]   Secondary copyright liability includes contributory infringement and vicarious infringement.  "[C]ontributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement" and either (a) materially contribute to the direct infringement; or (b) intentionally induce the direct

- Aereo itself put a secondary liability claim squarely at issue by seeking a declaration it has no such liability.  12-cv-1540, Dkt. 29, Amended Answer and Counterclaim at 1-2, ¶¶ 20-26.

- Aereo served discovery on the ABC Plaintiffs expressly directed toward the secondary liability claims, to which the ABC Plaintiffs have responded.  Indeed, as the Court knows from the March 21, 2013 hearing, much of the parties' disagreement over discovery concerns Aereo's requests that are relevant largely *only* as they relate to defending against secondary liability.  *See* 3/21/13 Hrg. Tr. 40:14-25.

On March 21, 2013, at the conclusion of the parties' last appearance before this Court, the ABC Plaintiffs asked whether Aereo would continue to insist on its position, notwithstanding that the issue of secondary liability is actually being litigated, thus requiring motion practice.  Aereo has never responded.  The ABC Plaintiffs, therefore, are forced to bring this motion to avoid any further unnecessary distraction and remove any doubt that they are asserting secondary liability claims against Aereo.

## BACKGROUND

The Complaint alleges that Aereo makes "unauthorized retransmissions of plaintiffs' over-the-air television broadcast programming to the public for a fee."  *See* No. 12 Civ. 1540 Dkt. 1 ¶ 1.  At paragraphs 24 and 32-36, the ABC Plaintiffs pled two distinct theories of copyright liability based on this conduct.  First, they allege Aereo itself has "exercised or will exercise . . . one or more of plaintiffs' exclusive rights"

---

infringement.  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001)); *Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).  Vicarious liability is imposed where a defendant "profit[s] from direct infringement while declining to exercise a right to stop or limit it."  *Grokster*, 545 U.S. at 930 (internal citation omitted).

without authorization.  No. 12 Civ. 1540 Dkt. 1 ¶¶ 32-36.  Second, they allege Aereo

"has authorized or will authorize others to exercise" those rights and that Aereo had no

"license, permission or authorization" to do so.  *Id.*

On March 12, 2012, Aereo filed its Answer and Counterclaim, which it amended

on April 2, 2013.  In both pleadings, Aereo alleged it had no secondary liability under

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).  12-cv-1540

Dkt. 29 at 1-2, Affirmative Defenses ¶ 3; Counterclaim ¶¶ 20-26.  The ABC Plaintiffs

specifically addressed this claim in their Reply.  12-cv-1540 Dkt. 31 ¶¶ 20-22.  Since

then, Aereo has served discovery on the ABC Plaintiffs, consisting of 92 separate

document requests and a number of interrogatories and requests for admission.  Those

requests seek broad and far-reaching discovery based on Aereo's asserted need to

"*present its fair use defense to the contributory infringement claim.*"  12-cv-1540 Dkt.

159, Aereo Discovery Memorandum, at 8 (emphasis added).

On December 17, 2012, this case was formally consolidated (on Aereo's motion)

"for all purposes" with Civil Action No. 12-cv-1543, the case filed by the WNET

Plaintiffs.  *See* 12-cv-1540 Dkt. 124.  There is no dispute that the issue of contributory

liability is at issue in that case, *see* 3/21/13 Hrg. Tr. 180:20-24 (Stmt. of M. Elkin), and,

as a result, there is no contention that any aspect of the scope of the consolidated case

would change were the ABC Plaintiffs' claims for secondary liability tried along with

their claims for direct infringement.

That is confirmed by the specific allegations the ABC Plaintiffs seek to add:

4

- In providing the Aereo service, Aereo is directly liable for infringement under the Copyright Act because it either has exercised or will exercise plaintiffs' exclusive rights to publicly perform and to reproduce in copies the TV Programs and other works in which plaintiffs (and/or their parents, subsidiaries or affiliates) own copyrights.  (Proposed Am. Cmpl. ¶ 35).

- In the alternative, Aereo is liable for contributory infringement as to such reproductions because it purports to have authorized or authorizes infringement including by (a) Aereo having knowledge of the programming reproduced, that such programming is copyrighted, and that such programming is reproduced in the systems Aereo has created, and (b) Aereo causing or materially contributing to such infringement by providing the site and facilities for the infringing reproductions in connection with the operation of the Aereo service.  (Proposed Am. Cmpl. ¶ 36).

- In the alternative, Aereo is liable for intentionally inducing and encouraging infringement as to such reproductions by providing the Aereo service with the object of promoting its use, and by promoting its use, to reproduce copies of the TV Programs and other works in which plaintiffs (and/or their parents, subsidiaries or affiliates) own copyrights.  (Proposed Am. Cmpl. ¶ 37).

- In the alternative, Aereo is vicariously liable for infringement as to such reproductions by obtaining a financial benefit from the Aereo service while having the right and ability to control infringement by its subscribers.  (Proposed Am. Cmpl. ¶ 38).

These allegations reflect the reality of the way the case has proceeded to date – since at least when Aereo injected these same issues into the proceedings with its declaratory judgment cause of action, if not before.

## ARGUMENT

Leave to amend a pleading should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Health-Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir. 1990). Accordingly, courts may deny leave only when a request (1) would prejudice the opposing party, (2) would be futile or (3) has been unduly delayed or brought in bad

faith.  *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 303 (S.D.N.Y. 1996), *aff'd*, 116 F.3d

465 (2d Cir.1997); *see also Ispat Inland, Inc., v. Kemper Envtl., Ltd.*, No. 05-cv-5401,

2007 WL 2197837, at*1 (S.D.N.Y. July 31, 2007) (Pitman, J.).  None applies here.

## I.  <u>Granting Leave To Amend Will Not Prejudice Aereo.</u>

The key question for most motions to amend is whether the amendment will

"unfairly surprise[] the non-movant and impede[] the fair prosecution of the claim."

*Monahan v. N.Y. City Dept. of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000).  There can

be no question of unfair surprise or unfairness on this record.

The parties have been litigating the secondary liability claim for over a year.  The

complaint pled it; Aereo's counterclaim for a declaratory judgment pled it; the WNET

Plaintiffs pled it; the cases are consolidated "for all purposes" and Aereo has propounded

discovery on secondary liability issues to which the ABC Plaintiffs have responded.

There is no surprise here.

For the same reason, the proposed amendment will in no way delay a resolution to

this litigation.  The proposed amendment will not result in *any* additional discovery

burden on Aereo.  *Duling v. Gristedes Operating Corp.*, 265 F.R.D. 91, 100 (S.D.N.Y.

2010) (Pitman, J.) (granting leave to amend where "relatively minor" additional

discovery could be "easily completed within the time the Scheduling Order allows for

discovery.")  That is because Aereo has conducted discovery on this claim,

notwithstanding Aereo's inexplicable protestation that it is not part of the ABC Plaintiffs'

case.  Accordingly, not only will Aereo not be required to expend any "significant

additional resources" if leave to amend is granted – it will be required to spend no

additional resources.  *Cf. Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993);

*see also Duling*, 265 F.R.D. at 101 (even that "an amendment will require a party to

invest additional resources in litigation is not sufficient grounds for its denial").

## II.   <u>The Proposed Amendment Is Not Futile</u>.

A proposed amendment is considered futile only if it has no merit.  *Duling*, 265

F.R.D. at 103; *see also Health-Chem Corp*, 915 F.2d at 810 ("[W]here . . . there is no

merit in the proposed amendments, leave to amend should be denied.").  The legal basis

of the ABC Plaintiffs' secondary liability claims have been recognized by the Supreme

Court.  *See*, *e.g.*, *Grokster*, 545 U.S. at 930; *Sony*, 464 U.S. at 434.  Aereo was

sufficiently concerned about the risk of such liability that it affirmatively sought a

declaration that it should not be imposed.  In its Counterclaim, it specifically asked the

Court to address this precise claim.  12-cv-1540 Dkt. 29 at ¶¶ 20-26.  That is the opposite

of an amendment without merit.

## III.   <u>The ABC Plaintiffs Did Not Delay And Acted In Good Faith</u>.

The ABC Plaintiffs have been trying to resolve the issue presented by this motion

with Aereo in an effort to avoid a waste of the court's resources.  Now that the Second

Circuit has ruled on the preliminary injunction, the ABC Plaintiffs bring this motion to

finally resolve it in the face of Aereo's unwillingness to do so, despite the clarity of all

the pleadings in the case.[3]

---

[3]   Complaint (12-cv-1540 Dkt. 1 ¶¶ 24, 32-36); Counterclaim (12-cv-1540 Dkt. 29 at 1, ¶¶ 20-26); Reply (12-cv-1540 Dkt. 31 ¶¶ ¶¶ 20-26).

The ABC Plaintiffs acted reasonably in attempting to avoid unnecessary motion practice.  That is good faith, not the type of abuse of the legal process that could result in denial of leave to amend.  *See, e.g., Barrows v. Forest Labs, Inc.*, 742 F.2d 54, 58 (2d Cir. 1984) (upholding District Court's denial of leave to amend where new claims "created an imminent danger that plaintiff would seek to force a favorable settlement by abusive use of the discovery process" (internal quotation marks omitted)).

Moreover, delay, absent a showing of bad faith or prejudice, usually is "not a sufficient reason for denying a motion to amend."  *Ispat Inland, Inc.*, 2007 WL 2197837, at *1.  Leave to amend, therefore, is "appropriate *at any stage* of litigation," and a court will deny leave only when sought on "the eve of trial."  *Duling.*, 265 F.R.D. at 97 (emphasis added).

The case is far from the eve of trial and even from the close of discovery.  *See* 12-cv-1540 Dkt. 172, Order, *American Broadcasting Cos. v. Aereo*, 12 Civ. 1540 (AJN)(HBP) (April 1, 2013) (setting discovery and case schedule; fact discovery to close June 14, 2013; no trial date has been set).  Furthermore, no deadline for amending pleadings, under Rule 16(b) of the Federal Rules of Civil Procedure or otherwise, has been set in this case.  *See Duling*, 265 F.R.D. at 97 (motion to amend filed before Rule 16(b) deadline not unduly delayed); *Yves St. Laurent Parfums, S.A. v. Costco Wholesale Corp.*, No. 07-cv-3214(LBS)(HBP), 2007 WL 3340840, at *2 (S.D.N.Y. Nov. 8, 2007) (motion to amend was timely where it was entered before extended deadline had lapsed).

**CONCLUSION**

For the foregoing reasons, ABC Plaintiffs' motion to amend their Complaint should be granted.

Respectfully submitted,

/s/ Bruce P. Keller
Bruce P. Keller
Jeffrey P. Cunard
Michael R. Potenza
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel.:     (212) 909-6000
Fax:     (212) 909-6836

*Counsel for the ABC Plaintiffs*

Dated:  April 30, 2013

# APPENDIX A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                 :

AMERICAN BROADCASTING COMPANIES, INC.,   :
DISNEY ENTERPRISES, INC., CBS BROADCASTING   :
INC., CBS STUDIOS INC., NBCUNIVERSAL MEDIA,   :
LLC,:NBC STUDIOS, LLC, UNIVERSAL NETWORK   :
TELEVISION, LLC, TELEMUNDO NETWORK GROUP   :
LLC, WNJU-TV BROADCASTING LLC,   :
                                                 :

       Plaintiffs,                                   :

          v.                                      :     12 Civ. 1540(AJN)(HBP)
                                                 :

AEREO, INC.,                                   :

       Defendant.                               :
                                               :
------------------------------------------------------------------------X

## PROPOSED AMENDED COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

      Plaintiffs American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS

Broadcasting Inc., CBS Studios Inc., NBCUniversal Media LLC., NBC Studios, LLC., Universal

Network Television, LLC, Telemundo Network Group LLC and WNJU-TV Broadcasting LLC

(collectively, "plaintiffs"), by their attorneys, complain and allege against defendants Aereo, Inc.

("Aereo" or "defendant") as follows:

## NATURE OF THE ACTION

      1.     This copyright infringement action arises out of Aereo's unauthorized chain of

receiving, then simultaneously retransmitting to the public, plaintiffs' over-the-air television

broadcast programming in the New York City market.  Aereo uses its antenna facilities to

receive those television broadcasts, transcodes them from their digital broadcast format into a

different compression format for retransmission over the Internet, and then streams that

programming, over the Internet, to the public.  Beginning March 14, 2012, subscribers can pay Aereo $12 a month for any of plaintiffs' television broadcasts in the New York City market and have Aereo retransmit them, from Aereo's web-based platform, to the subscribers' Internet-connected devices (including personal computers, and mobile devices like laptops, tablets and smartphones.)  Aereo subscribers can ask Aereo to retransmit them, so that they can watch them simultaneously as they are aired, and/or have Aereo record and store them on Aereo's servers for later viewing.

2.      Aereo, however, has no rights, under any license, statute or case law, to any of the copyrighted programming that is the basis of its subscription-only Internet service.  Aereo just helps itself – without permission and on a round-the-clock, daily basis – to programs created, owned and broadcast at great expense by plaintiffs and properly licensed to other commercial actors who wish to distribute those programs.

3.      The Copyright Act sets out in detail the limited ways in which secondary transmissions of television programs may be made without infringing the rights of parties like plaintiffs.  Aereo fits none of those carefully delineated exceptions.  Instead, Aereo seeks to avoid liability by using the fiction of purportedly assigning each subscriber his or her own "antenna" for the duration of the retransmitted broadcast that Aereo streams to the subscriber.  According to Aereo, this artifice makes its retransmissions "private," not public, no matter how many antennas it offers or how many of its subscribers simultaneously use these antennas to view plaintiffs' broadcasts.  *See* Bamboom, Enabling Lawful Consumer Viewing Choice, *available at* http://static.arstechnica.com/Bamboom_LawfulViewingChoice_4-11-1.pdf.  Playing on the fictitious "rental" of the antenna to each subscriber, Aereo then points to the subscribers

as if they were solely responsible for the retransmission, with Aereo having nothing to do with the process.

4.      Aereo is wrong.  In offering its services, it performs a work "publicly" within the meaning of the Copyright Act.  Aereo is fully engaged in, and responsible for, every step of the process of retransmitting over-the-air broadcasts to members of the public – *i.e.*, its subscribers:

- Aereo builds a system that receives and retransmits broadcast programming, and houses the "antennas" in arrays it maintains in the New York City area.  This unlicensed system has no other purpose other than to receive and then retransmit and record over-the-air television broadcasts.

- Although Aereo purports to associate an individual antenna, for a limited period, with a particular subscriber, that does not make the resulting retransmission private, because the use of any device or process to retransmit broadcast content to multiple subscribers is defined in the Copyright Act as performing a work "publicly."

- On top of that, according to Aereo, it does not even "rent" a particular antenna to a particular subscriber for the duration of the subscription relationship.  Rather, it assigns and reassigns its antennas indiscriminately to subscribers who sign up for the Aereo service, pay the required fee and log in to receive a broadcast retransmission at a given point in time.

- Each step along the entire retransmission path, not just that of "turning on the antenna," is relevant for purposes of whether the retransmissions are being made to the public.  Aereo's conversion and simultaneous retransmission and recording of the over-the-air broadcasts to multiple subscribers renders its conduct infringing.

5.      As a legal matter, as well as a matter of common sense, Aereo provides a service to the end user that is similar to and competes with cable or satellite operators that retransmit broadcast programming to their subscribers, except that Aereo does not pay, under either a privately-negotiated or compulsory license, for the right to retransmit that content.  Copyright law requires either that Aereo fit within narrow statutory exceptions that authorize such retransmissions or negotiate licenses.  Aereo does neither.

3

6.      Unless restrained by this Court, the loss of control over the way plaintiffs have chosen to transmit their copyrighted programming, the usurpation of plaintiffs' opportunities to license content over new media and the other unlawful conduct contemplated by Aereo threaten plaintiffs with substantial irremediable losses.

7.      Accordingly, plaintiffs respectfully request that the Court preliminarily and permanently enjoin defendant's unlawful conduct and, as plaintiffs are permitted to elect, award actual damages or statutory damages pursuant to the Copyright Act arising out of defendant's unlawful conduct.

## JURISDICTION AND VENUE

8.      This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338, because the action arises under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*  This Court may enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202.

9.      Aereo is amenable to service of process, and this Court has personal jurisdiction over Aereo pursuant to N.Y.C.P.L.R §§ 301 and 302, because, on information and belief, Aereo is registered to do business in the State of New York and/or conduct business within the State of New York, including this District, and because a substantial part of the events or omissions giving rise to the claims herein occurred within this District.

10.     Venue is proper in this Court under 28 U.S.C. §§ 1391 (b) and 1400 (a), because, on information and belief, Aereo captures the signals of, and programming transmitted by, broadcast television stations in this District – including those stations owned by plaintiffs and the programming in which plaintiffs own the copyrights – and most of the plaintiffs are headquartered or have offices in this District and are injured in this District.

## THE PARTIES

11.     Plaintiff American Broadcasting Companies, Inc. ("ABC") is a Delaware corporation with its principal place of business at 77 West 66th Street, New York, New York, and does business as the ABC Television Network and as WABC-TV.  ABC actively is engaged in the production and distribution of television programs and other copyrighted works, including programs ABC transmits to numerous broadcast television stations that it owns and operates, and other stations that are affiliated with its ABC Television Network, in the United States.  ABC grants these stations the right to broadcast programming within their communities of license. The FCC has licensed ABC to operate the television station identified by the call letters WABC-TV ("WABC"), the signal of which is broadcast to viewers over-the-air in the New York City market.  Cable systems, satellite services and other multichannel video programming distributors also make WABC transmissions available to their subscribers, upon negotiating for the right to do so, under Section 325 of the Communications Act, 47 U.S.C. § 325.

12.     Plaintiff Disney Enterprises, Inc. ("DEI") is a Delaware corporation with its principal place of business at 500 S. Buena Vista Street, Burbank, California.  DEI actively is engaged in the licensing of its copyrighted properties, and certain of its affiliates are engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

13.     Plaintiff CBS Broadcasting Inc. ("CBS") is a New York corporation with its principal place of business at 51 West 52nd Street, New York, New York.  CBS actively is engaged in the production and distribution of television programs and other copyrighted works, including programs CBS transmits to numerous broadcast television stations in the United States that are affiliated with its CBS Television Network, including stations that it owns and operates.

5

CBS grants these stations the right to broadcast programming within their communities of license. The FCC has licensed CBS to operate the television station identified by the call letters WCBS-TV ("WCBS"), the signal of which is broadcast to viewers in the New York City market. Cable systems, satellite services and other multichannel video programming distributors also make WCBS transmissions available to their subscribers upon negotiating for the right to do so under Section 325 of the Communications Act, 47 U.S.C. § 325.

14.     Plaintiff CBS Studios Inc. ("CBS Studios") is a Delaware corporation with its principal place of business at 51 West 52nd Street, New York, New York. CBS Studios actively is engaged in the worldwide production and distribution of copyrighted entertainment products, including programs that television broadcast stations and other media outlets transmit or retransmit to the public.

15.     Plaintiff NBCUniversal Media LLC ("NBCUniversal") is a Delaware limited liability company with its principal place of business at 30 Rockefeller Plaza, New York, New York. NBCUniversal is actively engaged, among other things, in the production and distribution of television programs and other copyrighted works, including programs NBCUniversal transmits to broadcast television stations in the United States that it owns and operates, and numerous other stations that are affiliated with the NBC Television Network, which is also owned and operated by NBCUniversal. NBCUniversal grants these stations the right to broadcast programming within their communities of license. The FCC has licensed NBCUniversal to operate the television station identified by the call letters WNBC-TV ("WNBC"), the signal of which is broadcast to viewers over-the-air in the New York City market. Cable systems, satellite services and other multichannel video programming distributors also make WNBC transmissions available to their subscribers upon negotiating for the right to do

so under Section 325 of the Communications Act, 47 U.S.C. § 325.  NBCUniversal also licenses its copyrighted works to various media outlets in the United States and elsewhere.

16.    Plaintiff NBC Studios, LLC ("NBC Studios") is a New York limited liability company,  with its principal place of business at 100 Universal City Plaza, Universal City, California, and is a wholly owned subsidiary of plaintiff NBCUniversal.  NBC Studios is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

17.    Plaintiff Universal Network Television, LLC ("UNT") is a Delaware limited liability company with its principal place of business at 100 Universal City Plaza, Universal City, California, and is a wholly-owned subsidiary of plaintiff NBCUniversal.  UNT is actively engaged in the production and licensed distribution of television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the NBC Television Network and distributed elsewhere in the world.

18.    Plaintiff Telemundo Network Group LLC ("Telemundo") is a Delaware limited liability company with its principal place of business at 2290 West 8th Avenue, Hialeah, Florida, and is a wholly-owned subsidiary of plaintiff NBCUniversal.  Telemundo is, among other things, actively engaged in the production and licensed distribution of Spanish-language television programs, including programs that are transmitted to numerous broadcast stations in the United States affiliated with the Telemundo Network and distributed elsewhere in the world.

19.    Plaintiff WNJU-TV Broadcasting LLC ("WNJU-TV") is a Delaware corporation with its principal place of business at 2290 West 8th Avenue, Hialeah, Florida, and is a wholly-owned subsidiary of plaintiff NBCUniversal.  The FCC has licensed WNJU-TV to operate the

television station identified by the call letters WNJU-TV ("WNJU"), a Spanish-language

broadcasting station whose signal is broadcast to viewers over-the-air in the New York City

market.  Cable systems, satellite services and other multichannel video programming distributors

also make WNJU transmissions available to their subscribers upon negotiating for the right to do

so under Section 325 of the Communications Act, 47 U.S.C. § 325.

20.     On information and belief, defendant Aereo is incorporated under the laws of the

State of New York with its principal place of business at 37-18 Northern Boulevard, Long Island

City, NY 11101.

## NATURE OF AEREO'S UNLAWFUL CONDUCT

21.     Aereo has publicly announced it will offer a commercial, for-profit service to the

public that allows Aereo subscribers to view, on any Internet-connected device, including

smartphones, tablets and personal computers, retransmissions of "[a]ll the broadcasts -- NBC,

ABC, CBS, PBS, FOX, CW & over 20 local channels!" serving the New York, New York

market.  *See* Exhibit 1 (website screenshot from aereo.com).  As of March 14, 2012, for $12 a

month, subscribers will be able either to watch the retransmission "live" or have Aereo record up

to 40 hours of programming for later viewing on what Aereo represents as a "cloud"-based DVR

system provided by Aereo's servers.

22.     Aereo initially plans to offer this service in the New York City area, but, on

information and belief, unless enjoined, plans to expand its offerings to other geographic areas in

the near future.  Potential subscribers and retransmissions are purportedly limited, through geo-

location technology, to those within the specific local geographic markets covered by the over-

the-air broadcasts Aereo retransmits.

23.     Aereo purports to make available to each paying subscriber a tiny antenna for the

duration of a broadcast that a subscriber requests Aereo to retransmit or record.  This is Aereo's

8

"rental." Aereo masses large numbers of these antennas in bulky arrays at what are essentially "antenna farms."

24. On information and belief, when subscribers request programs be transmitted to their Internet-connected device, Aereo takes several steps. First, Aereo purports to tune a given antenna to a subscriber's requested over-the-air broadcast. In fact, once up and running, Aereo will effectively be providing a service capable of capturing and then retransmitting *all* over-the-air programming in the New York City television broadcast market. Second, it receives the over-the-air digital broadcasts with those antennas and routes the broadcast signals to its processing center. Third, it digitally transcodes, converts and compresses the signals so they can be retransmitted through the Internet to the subscribers who have requested those programs. Fourth, it retransmits the broadcast signal in an Internet Protocol format over the public Internet simultaneously to all subscribers who have opted to receive the programming, all of whom can view it simultaneously from their Internet-connected devices by accessing Aereo's proprietary, web-based platform. As Aereo puts it in the FAQ section of its web site, "When you become an Aereo member and log in, you are assigned a miniaturized, private, remote antenna and DVR. Aereo offers technology to give consumers access to their antenna and DVR *via a web browser and supported internet-enabled device*. Once you've connected to your antenna, you can use *the Aereo platform to access all major broadcast networks live* in HD and use your remote DVR to set recordings and watch your favorite shows when you want." *See* Exhibit 2 (print out of FAQ section of Aereo website) (emphasis added).

25. Defendant has not obtained the authorization or consent of plaintiffs or, upon information and belief, any other party, to retransmit plaintiffs' broadcast signals or the

9

copyright programming contained therein over the Internet, or otherwise to make, directly or indirectly, copies of plaintiffs' broadcast signals or content.

26.     Until recently, Aereo's service was not available to the public.  Instead, it was limited to a small, "invitation only" experimental group.  Even during this limited "beta" test, however, Aereo was on notice of the copyright issues raised by its activities.   Nevertheless, it refused to explain its retransmission technology and processes in any detail.

27.     Instead, Aereo recently announced it will make its infringing subscription service widely available to the public on March 14, 2012.  This makes court intervention necessary to protect plaintiffs' valuable intellectual property rights from Aereo's wholesale acts of infringement.

## COUNT ONE
## COPYRIGHT INFRINGEMENT

28.     Plaintiffs hereby incorporate by reference and reallege each and every allegation of paragraphs 1 through 27 above.

29.     Plaintiffs (and/or their parents, subsidiaries or affiliates) are the legal or beneficial owners of the copyrights in numerous programs that have been, or will be, exhibited over broadcast television stations and a variety of other media outlets.  A non-exhaustive list of such television programs, identifying representative examples of programs in which plaintiffs (and/or their parents, subsidiaries or affiliates) own the pertinent copyright interests, is set forth in Exhibit 3 ("TV Programs").

30.     Each such TV Program is an original audiovisual work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.  Each such TV Program has been or will be registered with the United States Copyright Office or is the subject of an application

for registration filed with the Copyright Office.  Copyright registration certificates or other documentation demonstrating compliance with Sections 408(f) and 411 of the Copyright Act, 17 U.S.C. §§ 408 (f) & 411, and implementing Copyright Office regulations, corresponding to the TV Programs identified in Exhibit 3, are attached hereto as Exhibits 4 to 36.

31.     Each TV Program has been created or licensed for exhibition by plaintiffs (and/or their parents, subsidiaries or affiliates), the broadcasts of which Aereo is retransmitting and reproducing without authorization as part of its Aereo service.  On information and belief, as part of Aereo's unauthorized service, Aereo will retransmit, by streaming or otherwise transmitting over the public Internet, and will reproduce, each TV Program and numerous other works in which plaintiffs own copyrights.

32.     Under Section 106 of the Copyright Act, 17 U.S.C. § 106, plaintiffs (and/or their parents, subsidiaries or affiliates) own the exclusive rights, among others, to reproduce in copies their copyrighted works, to distribute copies to the public of their copyrighted works, to publicly perform their copyrighted works, to publicly display their copyrighted works, and to make derivative works based upon their copyrighted works.

33.     Under Section 106 of the Copyright Act, 17 U.S.C. § 106, plaintiffs (and/or their parents, subsidiaries or affiliates) also own the exclusive rights to authorize others to exercise the rights set forth in the preceding paragraph 32.

34.     Neither the plaintiffs nor any other person authorized by plaintiffs have granted any license, permission or authorization to Aereo to exercise any of the rights set forth in paragraph 32 or to authorize others to exercise such rights, respecting the TV Programs or any other works in which plaintiffs (and/or their parents; subsidiaries or affiliates) own copyrights.

35.     In providing the Aereo service, Aereo is directly liable for infringement under the Copyright Act because it either has exercised or will exercise plaintiffs' exclusive rights to publicly perform and to reproduce in copies the TV Programs and other works in which plaintiffs (and/or their parents, subsidiaries or affiliates) own copyrights.

36.     In the alternative, Aereo is liable for contributory infringement as to such reproductions because it purports to have authorized or authorizes infringement including by (a) Aereo having knowledge of the programming reproduced, that such programming is copyrighted, and that such programming is reproduced in the systems Aereo has created, and (b) Aereo causing or materially contributing to such infringement by providing the site and facilities for the infringing reproductions in connection with the operation of the Aereo service.

37.     In the alternative, Aereo is liable for intentionally inducing and encouraging infringement as to such reproductions by providing the Aereo service with the object of promoting its use, and by promoting its use, to reproduce copies of the TV Programs and other works in which plaintiffs (and/or their parents, subsidiaries or affiliates) own copyrights.

38.     In the alternative, Aereo is vicariously liable for infringement as to such reproductions by obtaining a financial benefit from the Aereo service while having the right and ability to control infringement by its subscribers.

39.     As a result of Aereo's willful copyright infringement, plaintiffs have been and are being irreparably harmed.

40.     Unless restrained by the Court, Aereo will continue to engage in such willful copyright infringement.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court enter judgment in plaintiffs' favor and against Aereo as follows:

12

A.      Issue a preliminary and permanent injunction enjoining and restraining Aereo and its officers, agents, servants, and employees and all those in active concert or participation with them, from infringing plaintiffs' exclusive rights under the Copyright Act by offering the Aereo service and engaging in the conduct described above;

B.      Award plaintiffs their damages proven or statutory damages elected, costs and reasonable attorneys' fees in accordance with 17 U.S.C. §§ 504 and 505 and other applicable law; and

C.      Award such other and further relief as the Court shall deem just and appropriate.


Respectfully submitted,


By: _____
        Bruce P. Keller
        (bpkeller@debevoise.com)
        Michael R. Potenza
        (mpotenza@debevoise.com)
        DEBEVOISE & PLIMPTON LLP
        919 Third Avenue
        New York, New York 10022
        Tel.:    (212) 909-6000
        Fax:    (212) 909-6836

        *Counsel for Plaintiffs*

Dated:  April 30, 2013