```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
AMERICAN BROADCASTING COMPANIES,
INC., et al.,                      :

              Plaintiffs,          :

    -against-                      :   12 Civ. 1540 (AJN)(HBP)

AEREO INC.,                        :

              Defendant.           :

-----------------------------------X
                                   :
WNET, et al.,
                                   :

              Plaintiffs,          :

    -against-                      :   12 Civ. 1543 (AJN)(HBP)
                                   :
AEREO INC.,                            ORDER
                                   :
              Defendant.
                                   :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

       I write to resolve the parties' dispute regarding the production of documents concerning the renegotiation of plaintiffs' retransmission agreements.  The parties submitted letters to me addressing the dispute on June 17, and I heard oral argument on the issue on June 20, 2013.

       The facts giving rise to this action are set forth in detail in the decisions of the Honorable Alison J. Nathan, United

States District Judge, denying plaintiffs' motion for a preliminary injunction, and the United States Court of Appeals for the Second Circuit, affirming Judge Nathan's decision. American Broadcasting Cos. v. Aereo, Inc., 874 F. Supp. 2d 373 (S.D.N.Y. 2012), aff'd sub nom., WNET, Thirteen v. Aereo, Inc., 712 F.3d 676 (2d Cir. 2013).  Familiarity with these decisions is assumed.

In support of their application for injunctive relief, plaintiffs argued that the presence of Aereo in the market place will have an adverse effect on plaintiffs' ability to negotiate retransmission agreements with cable television and satellite companies.  See American Broadcasting Cos. v. Aereo, Inc., supra, 874 F. Supp. 2d at 398-99.  In an effort to disprove this contention, defendants have sought both the retransmission agreements that plaintiffs have renegotiated after Aereo announced its entry into the market and all documents concerning those negotiations. To date, plaintiffs have produced the retransmission agreements that have been renegotiated since Aereo announced its entry into the market and all documents concerning the negotiation of such agreements that mention Aereo or Aereo-like services.[1]  The

---

[1] Aereo-like services are Filmon, Filmonx, Alki David, ivi, AereoKiller, Barry Driller or Zedina/Zedeva (Docket Item 205 at 8 n.3).

parties' present dispute relates to the remaining documents which, presumably, do not mention Aereo.

The dispute was first raised before me at a conference held on March 21, 2013. At that time, defendant claimed that the documents were relevant to plaintiffs' claim of irreparable harm based on the theory that the absence of references to Aereo or Aereo-like services in the retransmission negotiation documents would imply that Aereo's presence in the market has not affected the negotiation of retransmission agreements and rebut the injury claims that plaintiffs made in their preliminary injunction motion. At the March 21 conference, I suggested that plaintiffs stipulate that, except to the extent documents mentioning Aereo have actually been produced, Aereo was not mentioned in any of the remaining documents concerning the renegotiation of retransmission agreements. Plaintiffs were unwilling to agree to the stipulation, and I ordered production of the documents concerning the renegotiation of retransmission agreements that occurred after Aereo had announced its entry into the market (Docket Item 171).

The present dispute concerns the manner in which the renegotiation documents will be produced. Defendant seeks copies of all non-privileged, responsive documents. Plaintiffs argue that the renegotiation documents contain a substantial amount of

3

non-responsive information, as well as information that is protected by the attorney-client privilege and that is commercially sensitive.  Plaintiffs further claim that reviewing all the responsive documents to redact privileged and non-responsive material and to identify commercially sensitive information is an herculean task and would require the ABC plaintiffs to review 450,000 pages and the WNET plaintiffs to review 1.5 million pages.  Plaintiffs propose to produce the documents by giving defendant's counsel access to a data room, located at plaintiffs' counsels' office, that contains electronic files of responsive material.  According to plaintiffs, the data room will contain all non-privileged and unredacted documents concerning the renegotiation of the retransmission agreements.  At the June 20, 2013 oral argument, plaintiffs also stated that they would sequentially number the documents placed in the data room in order to define the universe of documents produced and would identify the custodians from whom the documents were collected, the third parties with whom plaintiffs were negotiating and the "ins and outs of the negotiating points."  The database will be electronically searchable, and plaintiffs have further offered to provide defendant with copies of any non-privileged, responsive documents that it designates.  Finally, plaintiffs have offered to provide defendant with access to the data room at any time

"during the parties' extended business hours" (Letter from Bruce P. Keller, Esq. to the undersigned, dated June 17, 2013 ("Keller Ltr."), at 1, n.2).  Defendant argues in principal part that plaintiffs' proposal is inadequate and inappropriate because (1) by seeing the documents defendant designates, plaintiffs will be able to deduce defendant's work product; (2) plaintiffs are attempting to satisfy their discovery obligations by making a "document dump" and leaving it to defendant to sort out responsive material; (3) the multi-step procedure will result in undue delay and burden to defendant and (4) the data room approach lacks accountability because defendant will have no way to assure itself that plaintiffs have placed all responsive documents in the data room.

Given the rationale for defendant's request and plaintiffs' repeated concession, both in open court and in correspondence to me, that Aereo has, to date, had no impact on the renegotiation of retransmission agreements (Keller Ltr. at 2),[2]

---

[2] There is one exception to the plaintiffs' concession. Counsel for Fox has represented that "Aereo has been raised in some of [Fox's] retransmission negotiations" (Letter from Steven B. Fabrizio, Esq., to the undersigned, dated April 5, 2013 at 3). However, Fox's counsel stated that she expected production of the documents related to this negotiation -- namely Fox's negotiations with Comcast -- to be completed by June 28, 2013 (Letter from Julie A. Shepard, Esq., to the undersigned, dated June 17, 2013 at 2).

5

defendant's legitimate discovery needs and the burden on plaintiffs of reviewing and producing copies of all documents requested, I conclude that plaintiffs' proposal is adequate. Defendant is seeking the documents in issue to prove a negative -- that, to date, Aereo has not impacted plaintiffs' renegotiation of retransmission agreements. Apart from deposition testimony or admissions, defendant can accomplish this by either locating documents that affirmatively state that Aereo or Aereo-like services are not affecting the renegotiation of retransmission agreements or by testimony from an individual or individuals who reviewed the documents that no documents were found that suggest Aereo or Aereo-like services impacted the negotiations. The notion that defendant would offer hundreds of thousands of pages for either the Court or the fact-finder to review to prove that Aereo did not impact the negotiations is close to being absurd on its face. Given the nature of the proposition in issue, the number of potentially useable documents should be relatively small. Although defendant argued at the June 20 conference that all of the renegotiation documents are relevant because they will permit it to understand the nature of the parties' negotiating positions, I do not see how the parties' negotiating positions, except to the extent tied to Aereo or Aereo-like services, are relevant to this litigation. Moreover, Aereo's initially prof-

fered theory of relevance -- and the one upon which I based my ruling ordering production -- was limited to countering plaintiffs' proposed theory of harm, by showing that Aereo was not mentioned during the renegotiations, and did not encompass a broader inquiry into plaintiffs' negotiating strategy.

Second, the contention that the mechanism proposed by plaintiffs will result in disclosure of work product is not convincing.  Defendant has already disclosed the purpose of the document request and its theory of relevance.  It is difficult to understand what work product remains with respect to the document request or what work product would be disclosed by plaintiffs' learning what documents defendant wants copied.  Moreover, plaintiffs have represented that they will not track defendant's reviewers' activities in the data room except to the extent necessary to provide defendant with copies of the documents defendant requests.

As to defendant's contention that plaintiffs are attempting to perpetrate a "document dump," the wide range of the documents plaintiffs are offering is the result of the breadth of defendant's document request and not the result of misconduct by plaintiffs.  Defendant is seeking to prove a negative by the absence of references to Aereo or Aereo-like services in a broad array of documents.  The volume of documents being made available

to defendant is the result of defendant's request, not of gamesmanship by plaintiffs.

Any delay resulting from the mechanism proposed by plaintiffs is ameliorated by plaintiffs' agreement to provide the documents in an electronically searchable format.  This facility should make it substantially easier for defendant to locate relevant documents.  Although defendant claims that it will be hindered in its review because plaintiffs are better positioned to understand how the documents are organized, defendant does not explain how plaintiffs' producing the documents en masse will make it easier for defendant to understand how the documents are organized.  In any event, the electronic search feature plaintiffs have offered, in conjunction with the additional information plaintiffs have agreed to produce, including the identification of custodians and the "ins and outs" of the negotiations, should facilitate defendant's review of the documents.

Next, although plaintiffs' proposal will result in some burden on defendant, the impact on defendant is not the only relevant factor.  The burden on plaintiffs must also be considered.  It appears that the burden of requiring plaintiffs to review many thousands of documents when it appears that few documents, if any, will actually be produced substantially

outweighs the burden on defendant of utilizing the mechanism proposed by plaintiffs.

Finally, plaintiffs' offer to number the documents placed in the data room is sufficient to address any concerns about accountability. This proposal will define the universe of responsive documents, and prevent plaintiffs from later relying on documents that were not contained in the data room.

The following guidelines shall apply to the document review and production mechanism proposed by plaintiffs. For the thirty-day period following the issuance of this Order, plaintiffs shall provide defendant with access to the data room on one-hour's notice between the hours of 8:00 a.m. to midnight, Monday through Friday and 8:00 a.m. to 7:00 p.m., Saturday, Sunday and holidays. The individuals reviewing the documents shall be permitted to take notes. In the absence of an agreement among the parties to the contrary, defendant may request copies of any document that refers to Aereo or Aereo-like services or any document that purports to be a comprehensive list the factors relevant to the renegotiation of a retransmission agreement. Defendant is not to request copies of documents that do not on

their face imply the irrelevance of Aereo and Aereo-like services to the renegotiation of the retransmission agreements.

Dated:  New York, New York
        July 3, 2013

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel