UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X
:
AMERICAN BROADCASTING COMPANIES, INC.,          :
DISNEY ENTERPRISES, INC., CBS BROADCASTING      :
INC., CBS STUDIOS INC., NBCUNIVERSAL MEDIA,     :
LLC, NBC STUDIOS, LLC, UNIVERSAL NETWORK        :
TELEVISION, LLC, TELEMUNDO NETWORK GROUP        :
LLC, WNJU-TV BROADCASTING LLC,                  :
                                                :
     Plaintiffs,                                :
                                                :
     v.                                         :          12 Civ. 1540 (AJN)
                                                :          **[consolidated]**
AEREO, INC.,                                    :
                                                :
     Defendant.                                 :
                                                :
-------------------------------------------------------------------------X

**ABC PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF
UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

     The ABC Plaintiffs submit, pursuant to Local Civil Rule 56.1(b), this statement in

response to the Rule 56.1(a) Statement of Undisputed Material Facts of Defendant Aereo,

Inc. ("Aereo").

## I.    The Aereo Technology

     1.    Members of Aereo can use and control an individual remotely-located

antenna and a remote digital video recorder and a remote digital video recorder ("DVR")

to access and record over-the-air television broadcasts available in their geographic

market and watch their recordings at their own convenience on a personal, Internet-

connected device, such as a television, smartphone or tablet. *ABC v. Aereo, Inc.*, 874 F.

Supp. 2d 373, 376-77 (S.D.N.Y. 2012 (Exh. 1)[1] ("*Aereo I*"); *WNET, Thirteen v. Aereo,

Inc.*, Nos. 12-2786-cv, 2013 WL 1285591, at *1 (2d Cir. Apr. 1, 2013) (Exh. 2) ("*Aereo

II*"); Exh. 3 (Kanojia Decl.) at ¶ 5.  Similarly, at home, a consumer can capture over-the-

air broadcast television via an antenna (including a computer-compatible dongle

antenna); make copies of that programming on a computer, VCR, or DVR; and view their recorded content via the Internet on an Internet-connected device such as a television, smartphone, or tablet.  Exh. 6 (5/31/2012 Tr.) at 306:13-308:25 (Horowitz Testimony).[2]

[1]"Exh ___" refers to exhibits to the declaration of R. David Hosp filed in support of Aereo's Motion for Summary Judgment.

[2]This can be accomplished by using a dongle antenna in connection with a computer and uploading the recorded program to the Internet for later retrieval.  Exh. 8 (Horowitz Expert Rep.) at ¶ 76.  If a DVR is used, this can be done using, for example, a Slingbox.  Exh. 6 (5/31/2012 Tr. at 306:13-308:25 (Horowitz Testimony).

**DISPUTED:**  Much of Aereo's statement of "undisputed material facts" actually

consists of conclusory legal argument that either is not supported by the underlying

record or is, at a minimum, based on facts that are in genuine dispute.  In particular, in the

context of this case, words such as "control" and "individual," as used in this statement

are not undisputed facts.

First, whether Aereo's subscribers "control" Aereo antennas is disputed.  There is

no dispute that Aereo's subscribers are allowed by Aereo to choose from certain channels

and that, when subscribers tell Aereo that they want to watch those channels, Aereo then

assigns antennas for that purpose.  That, however, does not mean that Aereo's subscribers

"control" those antennas in any relevant sense and the record indicates that Aereo

exercises considerable "control" over those antennas.  Although discovery is ongoing, the

current record demonstrates that facts relating to the issue of subscriber control of

antennas are genuinely disputed:

- Aereo preselects which frequencies its antennas may be tuned to.

   Declaration of Michael R. Potenza ("Potenza Decl.") Ex. 1 (4/9/13

   Lipowski Depo. 158:16-160:8 (Aereo can preclude certain channels from

its lineup); Ex.2, Pls.' Ex. 18 (email from Joseph Lipowski to Steve Harris deciding not to provide access to WNJB to Aereo subscribers despite receiving a "hi-vhf strong signal").

- Aereo randomly assigns a subscriber an antenna to be tuned when that subscriber tells Aereo that he or she chooses to watch a specific channel. Potenza Decl. Ex. 3 (5/30/12 Tr. 74:11-21) (Kelly); Ex. 4 (5/31/12 Tr. 297:12-298:4) (Horowitz); Ex. 1 (4/9/13 Lipowski Depo. 125:25-126:20; 128:18-138:19).

- Aereo tunes its antennas when a subscriber tells Aereo that he or she chooses to watch a specific channel.  Potenza Decl. Ex. 4 (5/31/12 Tr. 297:12-298:4) (Horowitz).

- Aereo automatically reassigns new antennas to subscribers when its system fails.  Potenza Decl. Ex. 1 (4/9/13 Lipowski Depo 104:19-105:22 (Aereo automatically reassigns antenna when DVR function fails); Ex. 5 (4/8/13 30(b)(6) Lipowski Depo. 320:23-322:10; 328:13-332:8).

- Aereo performs technological fixes and monitoring across its entire system of antennas.  Potenza Decl. Ex. 1 (4/9/13 Lipowski Depo. 246:21-249:13 (discussing fixes for issue created by many people watching same program, such as Olympics); 107:15-114:18 (mechanical fixes for NBC reception issues); 253:11-265:22 (discussing use of "ION-icorn" to aid reception of ION channel)); Exs. 6-13 (Lipowski Depo Exs. 15, 25-31 (emails discussing ION-icorn)).

3

Second, whether Aereo's antennas function on an "individual" basis is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo's antennas are truly capable of operating "individual[ly]" or are, instead, a group resource are genuinely disputed:



- There is a dispute as to whether the signal strength received by Aereo antennas are, as the Court was originally told, 1,000 times stronger than needed for reliable reception.  At his deposition, Aereo's Chief Engineer, Jim Bingham, could not corroborate that.  Potenza Decl. Ex. 14 (5/22/13 Bingham Depo 191:9-12) (declining to confirm accuracy of finding).

Third, when a subscriber is "watch[ing]" live broadcast television through the Watch Now service, whether Aereo or its subscribers volitionally "record" those

broadcasts is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers knowingly record a copy of a broadcast program are genuinely disputed:

- Aereo's subscribers have *no choice* but to have a copy made when they use the Watch Now service.  Potenza Decl. Ex. 1 (4/9/13 Lipowski Depo. at 72:10-14).

- Aereo prominently advertises its "live" television service throughout its website and distinguishes between watching "live" and "sav[ing] shows for later" using the remote DVR service.  Potenza Decl. Ex. 16 (screenshot from https://www.aereo.com) ("Watch live TV and save shows for later with a remote antenna and DVR.").

- Aereo asserts that consumers intuitively understand that a recording is created when subscribers use the Watch Now service to watch live television, such as a sporting event.  Potenza Decl. Ex. 17 (5/30/13 Kanojia Depo. 339:13-340:2) (claiming such knowledge is "obvious").  It, however, does not cite to any evidence of this intuition.  The only evidence in the record regarding what consumers understand is the understanding of Aereo's CEO, but, as he admitted, he is not a representative of consumers generally.  Potenza Decl. Ex. 3 (5/30/12 Tr. 190:22-191:1 (Kanojia) (describing himself as a "bad example," compared to the general public, in terms of his understanding of DVRs).

Fourth, whether Aereo's system is in any way "[s]imilar[]" to what consumers can do in their own homes is disputed.  There is no dispute that consumers can buy and use equipment, such as a combination of an in-home antenna, a DVR and a Slingbox, to watch broadcast television over the Internet.  That alone, however, provides no support for the conclusion that Aereo is "similar" to any of those devices standing alone, let alone the combination thereof.  Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo's service is similar to in-home consumer technology are genuinely disputed:

- To attract subscribers, Aereo provides a "beautiful" user interface and other consumer-oriented features that are not provided by other in-home consumer equipment.  Potenza Decl. Ex. 18 (4/23/12 Kanojia Tr. 29:14-15); Ex. 3 5/30/12 Tr. at 91:21-92:10 (Kelly).  Aereo also "pushes" its subscribers to view programs Aereo selects.  It does so by using an algorithm, developed by Aereo, to make predictions about programs the subscriber may like based on their viewing and recording history.  *See* Potenza Decl. Ex. 19 (screen shot of carousel); *id.* Ex. 3 (5/30/13 Kanojia Tr. 161:10-22 (describing use of Aereo algorithm to select featured content).

- Aereo also provides its subscribers with a program guide, Potenza Decl. Ex. 3 5/30/12 Tr. at 91:21-92:10 (Kelly), a feature Aereo's CEO admits is only available on one other antenna sold to the public, the "Elgato tuner/antenna combination."  However, the Elgato is an antenna created to

6

be used with mobile devices exclusively in connection with the Dyle

mobile television service owned by a joint venture of the Plaintiffs.

Potenza Decl. Ex. 3 (5/30/13 Kanojia Depo 83:20-84:1); *See also*

http://www.elgato.com/eyetv ("Access major network TV with Dyle

mobile TV")).

- Aereo preselects the frequencies to which its antennas may be tuned.

  Potenza Decl. Ex. 1 (4/9/13 Lipowski Depo. 158:16-160:8 (Aereo can

  preclude certain channels from its lineup); Ex. 2, Pls.' Ex. 18 (email from

  Joseph Lipowski to Steve Harris deciding to not provide access to WNJB

  to Aereo subscribers despite receiving a "hi-vhf strong signal").

Fifth, that *American Broadcasting Cos. v. Aereo, Inc.*, 874 F. Supp. 2d, 373, 386

(S.D.N.Y. 2012) ("*Aereo I*"), and/or *WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d

Cir. 2013) ("*Aereo II*"), cite facts does not establish that those facts are "binding" or that

they are now "undisputed" because findings made during the preliminary injunction

phase are not final and can be revisited.  *See Biediger v. Quinnipiac Univ.*, 691 F.3d 85,

107 (2d Cir. 2012) ("A decision on a preliminary injunction is, in effect, only a prediction

about the merits of the case . . . . [T]hus, findings of fact and conclusions of law made by

a court granting a preliminary injunction are not binding") (citing and quoting *University

of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

**II.**   **Copies in the Aereo System are Unique and Accessible Only to the Consumer who Made Them**

2.      Members can use the Aereo technology to make individual copies of local over-the-air broadcasts.  Exh. 7 (Aereo Technical Description) at AEREO0000981; Exh. 8 (Horowitz Expert Report) at ¶¶ 55, 57, 63, 79; Exh. 4 (Lipowski Decl.) at ¶ 5; Exh. 5 (5/30/2012 Tr.) at 104:23-105:1, 105:17-106:24 (Kelly Testimony).

**DISPUTED:**  Aereo's use of words like "individual" or "make" in this statement is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

First, whether Aereo simply provides a "technology" for "use" of its subscribers or, instead, offers a full-fledged subscription service to consumers is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo is a full-fledged subscription service to consumers are genuinely disputed.  *See* Response 1, *supra.*

Second, whether Aereo's subscribers "make" copies of broadcast programming when using Aereo's Watch Now service is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly "making" copies of broadcast programs are genuinely disputed:

- No facts in the record indicate that Aereo subscribers know that they are making, or intend to make, a recording when using the Watch Now service.  The record shows that Aereo does not advertise that a recording is being made when the Watch Now service is accessed and that Aereo provides only general information about that, such as (1) an answer to a

8

FAQ that states "When you tune to a channel through the Aereo application on your device, you instruct your antenna to tune to that channel and start recording the programming to the DVR" and (2) a disclaimer that states "Please note, when you press watch, it will start recording the show, allowing you to pause and rewind the program.  You may notice a slight delay as a result.  To save this recording for future use, simply hit record any time while watching."  This is in sharp contrast to the prominent statement on Aereo's homepage "Watch Live TV" which is immediately contrasted with the equally bold "save shows for later with a remote antenna and a DVR."  Potenza Decl. Ex. 3 (5/30/12 Hrg. Tr. 140:2-5 (Kanojia)); *id.* Ex. 17 (5/30/13 Kanojia Depo. 340:3-342:6) (no research performed or planned to study efficacy of disclaimer; Aereo never advertises its service is, at best, "near live"); *id.* Ex. 16 (screenshot from https://www.aereo.com) ("Watch live TV and save shows for later with a remote antenna and DVR.").  *See also* Response 1, *supra*.

Third, there is no dispute that Aereo's subscribers can use the Aereo service in the New York City DMA to watch "local" "over-the-air broadcasts."  Whether, and how easily, Aereo's subscribers who are *not* located in the New York City DMA can watch local, New York over-the-air broadcasts live is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to how easily Aereo's subscribers located outside of a geographic market can watch local over-the-air broadcasts from that market are genuinely disputed:

9



- The ability to use Aereo outside local markets is part of Aereo's ultimate marketing plan.  Potenza Decl. Ex. 21 Pls.' Ex. 26 (email between Joe Lipowski and David Cann discussing how "it would be pretty sweet to be a subscriber to the only platform that can deliver the superbowl live to a train, plane, or car").

3.      An Aereo member can press "Watch" or "Record" to record and watch a program that is currently airing, or she can press "Record" to record a program that is scheduled to air in the future.  By selecting "Watch" or "Record" in the Aereo system, an Aereo user makes a unique, separate, and individually identifiable fixed copy of their selected program.  This copy of the program is associated with and accessible to only that one user who made it.  *Aereo I* at 378-79, 386; *Aereo II* at *1, *9, *11; Exh. 5 (5/30/2012 Tr.) at 104:23-105:1, 105:17-114:17 (Kelly Testimony); Exh. 8 (Horowitz Expert Report) at ¶¶ 56, 57, 61, 63, 64, 79; Exh. 4 (Lipowski Decl.) at ¶¶ 6 n.1, 39-43, 47, 53, 54, 56; Exh. 9 (Kelly Dep.) at 103:8-17, 123:16-124:21; Exh. 10 (Kelly Decl.) at ¶¶ 42-43; Exh. 3 (Kanojia Decl.) at ¶ 29, 30, 34.

**DISPUTED:**  Aereo's use of words like "record," "makes" or "unique" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

First, whether Aereo's subscribers "record" or "make[]" copies of broadcast programming when pressing "Watch" to use the Watch Now service is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers knowingly "record" or "make" copies of broadcast programs are genuinely disputed.  *See* Responses 1-2, *supra*.

Second, whether the copies of broadcast programs made in the Watch Now or Record services are "unique" is disputed.  There is no dispute that Aereo associates each copy with a specific subscriber.  That alone, however, provides no support for the conclusion that the copies of such programs are "unique."  Although discovery is ongoing, the current record demonstrates that facts relating to whether each of the copies is unique are genuinely disputed:

- The content of a program stored in copies is identical to the program as it is broadcast over-the-air.  Potenza Decl. Ex. 3 5/30/12 Tr. 103:8-14 ("The broadcast signal impinges on all the antennas at the same time."); 105:17-23 ("[T]he broadcast signal would be available to any user that was tuned in to that station."); 119:9-18 ("[I]f multiple Aereo users are watching the same show at the same time, . . . all the data for that show for those users derive[s] from the same broadcast signal.") (Kelly).

- The only differences Aereo identifies as among different copies are imperceptible anomalies or glitches in the recordings from Aereo's antennas.  Potenza Decl. Ex. 4 (5/31/12 Tr. 300:16-304:14) (Horowitz).

4.      The user always makes a recording to hard disk DVR storage before any playback by the user occurs and the playback is from that recording.[3]  *Aereo I* at 386; Exh. 6 (5/31/2012 Tr.) at 292:1-9, 298:11-300:5 (Horowitz Testimony); Exh. 11 (Horowitz Decl.) at ¶ 19; Exh. 8 (Horowitz Expert Report) at ¶¶ 56-57, 64 and Fig. 11; Exh. 9 (Kelly Dep.) at 109:23-110:21, 123:10-124:21, 134:20-135:1; Exh. 4 (Lipowski Decl.) at ¶¶ 50-52, 56.

[3]The fact that live content is first recorded by the consumer with their Aereo DVR is similar to the function of any other DVR.  The recording enables pause and rewind functionality.  Further, unlike a typical DVR, the fact that each user makes a copy in connection with the "Watch" mode is disclosed in the Aereo member Frequently Asked Questions and also on the user interface.  See Exh. 16 (Aereo FAQ) at "What Happens when I Tune to a Live Program," "Why is there a Slight Delay when I Start Watching" (last accessed May 14, 2013) ("When using Aereo's LIVE PLAY mode, you make and view a recording of the program that you select and watch that recording."); Exh. 3 (Kanojia Decl.) at ¶¶ 40-41; Exh. 5 (5/30/2012 Tr.) at 139:21-140:5 (Kanojia Testimony).  In "Watch" mode, the user's unique copy of a program is recorded to a hard drive associated solely with that user, and is maintained for as long as the user continues to watch the recording (including up to two hours after the program concludes if the member pauses the program and takes no further action).  That copy may also be maintained for a longer span of time if the user chooses to save the recording for future viewing as he or she is watching the program.  *Aereo I* at 377, 378, 392; *Aereo II* at *2, *22 n. 15; Exh. 8 (Horowitz Expert Rep.) at 64.  In "Record" mode, the user's unique copy of a program is recorded to a hard drive and saved until the user chooses to delete it, or until her DVR runs out of space.  *Aereo I* at 377, 378, 392; *Aereo II* at *2; Exh. 8 (Horowitz Expert Rep.) at 64; Exh. 4 (Lipowski Decl.) at ¶¶ 6, n. 1, 53.

**DISPUTED:**  Aereo's use of words and phrases like "makes a recording," "similar" and "unique" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

First, whether Aereo's subscribers "make[]" "recording[s]" of broadcast programming when using Aereo's Watch Now service is disputed.  It is undisputed that Aereo provides its subscribers with a disclaimer and information in an FAQ that states that "When you tune to a channel through the Aereo application on your device, you instruct your antenna to tune to that channel and start recording the programming to the DVR."  That a subscriber "instructs" Aereo to "tune" to a "channel" and "start recording" does not, however, demonstrate that that subscriber has knowledge sufficient to show that

13

pressing the "Watch" button means the subscriber is volitionally "making" a recording, especially when contrasted with Aereo's repeated advertising that it provides "live TV." Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly "recording" or "making" copies of broadcast programs are genuinely disputed.  *See* Responses 1-2, *supra*.

Second, that facts are cited in *Aereo I* and/or *Aereo II* does not now establish them as "undisputed" because findings made during the preliminary injunction phase are not final and can be revisited.  *See* Response 1, *supra*.

Fourth, whether Aereo's system is in any way "[s]imilar[]" to any in-home consumer technology, including in-home DVRs, is disputed.  There is no dispute that Aereo provides its subscribers with access to a "remote" server that records broadcast programs.  That alone, however, provides no support for the conclusion that Aereo is similar to an in-home DVR.  Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo's service is similar to an in-home DVR or that a subscriber has "her DVR" are genuinely disputed:

- The Aereo servers are not physically located in subscribers' homes and are not connected to a subscriber's television.  Potenza Decl. Ex. 4 5/31/12 Tr. 289:5-20 (Horowitz) (nothing that the subscriber can do to "take off the lid" from and "see the innards").

- Aereo does not maintain a single "DVR" for each of its subscribers.  The recording function for all subscribers is located on shared servers.  Potenza

Decl. Ex. 22 (4/10/12 Kelly Expert Report 17-18).  *See also* Response 1, *supra*.

- Aereo applied for various patents covering its system, listing Aereo's CEO and CTO as co-inventors.  *See e.g.* Potenza Decl. Exs. 23.  In contrast to Aereo's CEO's sworn testimony in this case that "Aereo . . . does nothing different than what a consumer can get today . . . us[ing] a digital antenna, off-the-shelf DVR, a sling box . . . without any complication or difficulty," Potenza Decl. Ex. 18 (4/23/12 Kanojia Tr. 336:22-337:16), the patent application states that "[t]here is generally no simple way for a user to have [broadcast content] available to their other video-capable devices." Potenza Decl. Ex. 23 at 0006.  Aereo expressly seeks patents for the Aereo "method and system" on the grounds that they are novel when compared with the existing prior-art DVRs and antennas.  *Id.* at 0007.[1]

Fifth, whether the copies of broadcast programs are "unique" is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to whether the copies are unique are genuinely disputed.  *See* Response 3, *supra*.

---

[1]   Aereo's CEO and chief technology officer were both instructed, ostensibly on attorney-client privilege grounds, not to answer any questions about the patent applications, including questions about whether the statements made in the applications were truthful and accurate.  Potenza Decl. Ex. 17 (5/30/13 Kanojia Tr. 46:19-47:2; *see generally id.* 30-52); *id.* Ex. 1 (4/9/13 Lipowski Tr. 208:13-219:2).

5.     Each transmission of video in the Aereo system is initiated by a user, who plays back her previously-recorded unique copy.  A user controls recording and playback of their individual program via his or her web browser on a computer or other personal device.  The user does not receive or playback their recordings in the form of a "download" that is saved locally to the user's computer or device.  Instead, the user transmits her own unique recording stored on her remote DVR located at Aereo.  In both "Watch" and "Record" modes, the user may start watching her recording at any time after the recording has begun, and the user can pause, rewind, or fast-forward her recording. *Aereo I* at 377, 378, 387; *Aereo II* at *1, *2, *22, n.15; Exh. 4 (Lipowski Decl.) at ¶¶ 45-52; Exh. 6 (5/31/2012 Tr.) at 292:1-294:16 (Horowitz Testimony).[4]

> [4]The fixed copy saved by the Aereo member to her remote hard drive using either the "Watch" mode or the "Record" mode is physically and functionally different from the RAM memory "buffer" used to facilitate streaming over the Internet.  That buffer contains only a small packet of data consisting of a small portion of the program being streamed that is used solely to facilitate the streaming.  The buffer retains this small packet of data only for as long as is necessary to transmit that small portion of the program, after which the contents of the buffer are replaced with new packets of data to be sent to the user.  *Aereo I* at 378, 392; *Aereo II* at *11; Exh. 5 (5/30/2012 Tr.) at 107:5- 114:17 (Kelly Testimony); Exh. 6 (5/31/2012 Tr.) at 309:16-314:4 (Horowitz Testimony); Exh. 4 (Lipowski Decl.) at ¶ 53; Exh. 10 (Kelly Decl.) at ¶¶ 52-53.

**DISPUTED:**  Aereo's use of words and phrases like "plays back her previously recorded," "unique," "controls" and "the user transmits" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

First, whether Aereo's subscribers using the Watch Now service "play[] back . . . previously recorded" broadcast programs to themselves is disputed.  There is no dispute that Aereo's subscribers press "Watch" in order to receive a broadcast program through Aereo's service.  That does not mean that the subscriber is transmitting the program to herself.  *See Aereo I*, 874 F. Supp. 2d at 376 n.1 (declining to reach question of whether user or Aereo "makes" the performances).  Nor does it mean that Aereo's subscribers choose to make a recording of such programming and then "play back" from that

16

recording using the Watch Now service.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly making recordings from which they "play[] back" broadcast programs using the Watch Now service are genuinely disputed.  *See* Responses 1-2, *supra*.

<u>Second</u>, whether the copies of broadcast programs are "unique" is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether the copies are unique are genuinely disputed.  *See* Response 3, *supra*.

<u>Third</u>, whether an Aereo subscriber "transmits" a "unique recording" of broadcast programming stored on "her remote DVR" to herself is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether it is Aereo or Aereo's subscribers who transmit broadcast programming are genuinely disputed:

- Aereo's CEO, Mr. Chaitanya Kanojia, testified that any "singlecast" or one-to-one transmission online, including a transmission streaming a movie from Netflix to a Netflix subscriber, is a transmission made by the consumer.  Potenza Decl. Ex. 17 (5/30/13 Kanojia Depo. 377:20-379:5).

- Transmissions made in connection with Netflix streaming are made by Netflix.  Potenza Decl. Ex. 3 (5/30/12 Tr. 92:16-101:3 (Kelly) (Netflix and Aereo subscribers request that programs be transmitted to them, but Netflix and Aereo make the retransmissions)).

- No subscriber has a single "DVR" on Aereo's servers.  *See* Response 4, *supra*.

Fourth, the way in which Aereo's "fixed copies," made in connection with the Watch Now service, are "different from the RAM memory 'buffer' used to facilitate streaming over the Internet" is disputed.  There is no dispute that such fixed copies can retain data for a longer period of time than a "RAM memory buffer."  Although discovery is ongoing, the current record demonstrates that facts relating to whether such copies are similar to RAM memory buffer copies, inasmuch as neither is specifically requested to be made by Aereo's subscribers, are genuinely disputed:

- Aereo's fixed copies, as well as RAM memory buffer copies, are automatically created when a subscriber presses "Watch."  Potenza Decl. Ex. 3 (5/30/12 Tr. at 88:8-14 (Kelly)) (while data segments in fixed copy are being used for contemporaneous retransmission, they serve the same function as a buffer copy).

- Aereo's subscribers have *no choice* but to have a copy made when they use the Watch Now service.  Potenza Decl. Ex. 1 (4/9/13 Lipowski Depo. at 72:10-14).

Fifth, whether subscribers "save" (or "make") a fixed copy using the Watch Now service is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly "saving" copies of broadcast programs are genuinely disputed.  *See* Responses 1-2, *supra*.

Sixth, that facts are cited in *Aereo I* and/or *Aereo II* does not now establish them as "undisputed" because findings made during the preliminary injunction phase are not final and can be revisited.  *See* Response 1, *supra*.

18

A.    <u>All Recordings in the Aereo System are Made by the Consumer, Not
Aereo</u>

6.    The Aereo system functions automatically without any intervening action
by any Aereo employee in response to consumer requests.  With respect to accessing,
copying, and viewing over-the-air broadcast programming, the Aereo system functions
automatically, and only in response to the individual user's actions.  It is the user, not
Aereo, who makes a unique copy by pressing "watch" or "record" which copy is
available only to the person who made it.  It is the user, not Aereo, who transmits such
individual copy to herself for playback in the "Record" or "Watch" mode.  Nothing is
copied unless initiated by a user.  Nothing is transmitted until requested by a user.  *Aereo
II* at *11; Exh. 5 (5/30/2012 Tr.) at 134:25-135:3, 214:7-14 (Kanojia Testimony); Exh. 8
(Horowitz Expert Report) at ¶ 54 n.40; Exh. 3 (Kanojia Decl.) at ¶ 29; Exh. 4 (Lipowski
Decl.) at ¶¶ 12, 14, 35-37; Exh. 9 (Kelly Dep.) at 133-34.

**DISPUTED:**  Aereo's use of words like "makes," "unique" and "transmits" in its

statement of "undisputed material facts" is, in the context of the issues in this case,

conclusory legal argument that either is not supported by the underlying record or is, at a

minimum, based on facts that are in genuine dispute.

<u>First</u>, although discovery is ongoing, the current record demonstrates that facts

relating to the extent to which Aereo functions "automatically without any intervening

action" by Aereo are genuinely disputed:



19

Second, whether Aereo's subscribers "make[]" copies of broadcast programming when using Aereo's Watch Now service is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly "making" copies of broadcast programs are genuinely disputed.  *See* Responses 1-2, *supra*.

Third, whether the copies of Plaintiffs' works made by Aereo are "unique" is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether the copies are unique are genuinely disputed.  *See* Response 3, *supra*.

Fourth, whether an Aereo subscriber "transmits" an "individual copy to herself for playback" is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether it is Aereo or Aereo's subscribers who transmit broadcast programming to its subscribers are genuinely disputed.  *See* Response 5, *supra*.

Fifth, whether "[n]othing is transmitted until requested by a user" is disputed. There is no dispute that, in connection with its Watch Now service, Aereo does not transmit a program to a subscriber until a subscriber presses "Watch."  Similarly, "[n]othing is copied unless initiated by a user" implies that the user is initiating the copying.  *See* Responses 1-2, *supra*.  Those statements, however, obscure Aereo's control over and involvement in each step of transmitting and recording broadcast programs after receiving an instruction from a subscriber that she wants to watch using the Watch Now service.  Although discovery is ongoing, the current record demonstrates that facts relating to Aereo's involvement in transmitting and recording broadcast programs are genuinely disputed.  *See* Responses 1-2, *supra*.

20

Sixth, whether "[n]othing is copied unless initiated by a user" is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to whether broadcast programs are copied in connection with its quality control processes, and whether those copies are only made when "initiated by a user," are genuinely disputed:

- Aereo has been paying a company in India to review, for quality control purposes, every program Aereo retransmits, twenty-four hours a day, seven days a week. That company is able to watch and record each such program from India. Potenza Decl. Ex. 24 (4/8/13 Lipowski Depo., personal, 12:10-13:1; 55:10-63:2); *see also* Response 1, *supra.*

Seventh, that facts are cited in *Aereo I* and/or *Aereo II* does not now establish them as "undisputed" because findings made during the preliminary injunction phase are not final and can be revisited. *See* Response 1, *supra.*

7.      Copies are only made by the user using the Aereo system when she supplies the command by pressing "Watch" or "Record" to tune an antenna to a specific broadcast channel and to make a copy of her specific selected program.  *Aereo II* at *9, *11; Exh. 5 (5/30/2012 Tr.) at 106:25-114:17 (Kelly Testimony); Exh. 6 (5/31/2012 Tr.) at 292:1-294:16 (Horowitz Testimony); Exh. 8 (Horowitz Expert Report) at ¶¶ 57, 63, 64, 79; Exh. 9 (Kelly Dep.) at 103:8- 17, 123:16-124:21; Exh. 10 (Kelly Decl.) at ¶¶ 42-43; Exh. 3 (Kanojia Decl.) at ¶ 32; Exh. 4 (Lipowski Decl.) at ¶¶ 36-42.

**DISPUTED:**  Aereo's use of phrases like "made by the user" or "she supplies the command . . . to tune an antenna . . . and to make a copy" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

First, whether Aereo's subscribers "make" copies of broadcast programming when they use Aereo's Watch Now service is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly "making" copies of broadcast programs are genuinely disputed.  *See* Responses 1-2, *supra*.

Second, whether Aereo's subscribers supply a "command" to tune Aereo's antennas is disputed.  There is no dispute that Aereo's subscribers can choose which channel they want to watch using Aereo and that when subscribers tell Aereo that they want to watch particular channels, Aereo then assigns antennas for that purpose and tunes them to the appropriate frequency.  That does not mean that Aereo's subscribers "command" those antennas to be tuned to that frequency and the record indicates that Aereo controls those antennas.  Although discovery is ongoing, the current record

demonstrates that facts relating to whether subscribers control antennas are genuinely disputed.  *See* Response 1, *supra*.

Third, whether Aereo's subscribers supply a "command" that copies of broadcast programs be made when they use Aereo's Watch Now service is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly "command[ing]" that copies of broadcast programs be made are genuinely disputed.  *See* Responses 1-2, *supra*.

Fourth, that facts are cited in *Aereo I* and/or *Aereo II* does not now establish them as "undisputed" because findings made during the preliminary injunction phase are not final and can be revisited.  *See* Response 1, *supra*.

8.      The member chooses what programs to record.  The Aereo system merely allows users to access the over the air programming that Plaintiffs (and other over-the-air broadcasters) have made available to the public, to make individual copies of their selected programs via their remote DVR, and to play those copies back to themselves. *Aereo II* at *11; Exh. 3 (Kanojia Decl.) at ¶ 29; Exh. 5 (5/30/2012 Tr.) at 124:21-24 (Kanojia Testimony).

**DISPUTED:**  Aereo's use of phrases like "[t]he member chooses . . . to record," "merely allows," "Plaintiffs . . . have made available to the public" and "play those copies back to themselves" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

First, whether Aereo "merely allows users to access the over the air programming" is disputed.  There is no dispute that, by using Aereo, subscribers can watch over-the-air broadcast programming.  Aereo, however, does more than "merely" provide access to such programming.  Although discovery is ongoing, the current record demonstrates that whether Aereo "merely allows users to access" broadcast programming is genuinely disputed:

- Aereo takes broadcast signals, receives them on its antennas, demodulates the signal to turn it into digital data, transcodes and compresses the data, and then streams it over the Internet to portable devices.  Potenza Decl. Ex. 3 (5/30/12 Tr. 83:1-86:9) (Kelly); Ex. 1 (4/9 Lipowski Depo. 117-161 (generally, differences between Radio Shack antenna and Aereo service).

- Aereo provides its subscribers with television program guides and lists of featured programs.  Potenza Decl. Ex. 17 (5/30/13 Kanojia Depo. 72:23-

25 (program guide); Ex. 18 4/23/12 Kanojia Depo. 42:14-43:9) (program guide and "postcard carousel"); Ex.3 (5/30/12 Tr. 91:10-18 (Kelly) (program guide, postcard carousel and sophisticated search)); *See also* Response 1, *supra*.

Second, whether the Aereo system allows subscriber to "make" "individual copies" of programs when using Aereo's Watch Now service is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly "making" copies of broadcast programs are genuinely disputed. *See* Responses 1-2, *supra*.

Third, whether Aereo subscribers actually have "their DVR," as distinct from Aereo providing recording services that use its servers, whether or not such recordings are requested, is disputed. *See* Response 4, *supra*.

Fourth, whether subscribers "play" "copies back to themselves" using the Aereo service is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo transmits programs to subscribers or subscribers "play back copies to themselves" are genuinely disputed. *See* Response 5, *supra*.

Fifth, that facts are cited in *Aereo I* and/or *Aereo II* does not now establish them as "undisputed" because findings made during the preliminary injunction phase are not final and can be revisited. *See* Response 1, *supra*.

III.    **Members Have The Right To Access Over-The-Air Signals using an Antenna and to Record and Watch Plaintiffs' Programming**

     A.    Members Access Over-The-Air Signals Using Individual Antennas

     9.    An Aereo member is automatically assigned an antenna pair (one VHF and one UHF) at the inception of their selected recordings, whether in "watch or 'record' mode. Each Aereo member uses an individual Aereo antenna (also referred to generally as the "antenna") with respect to each recording using the Aereo system, and that individual's antenna only ingests the signal for the single channel selected by the user. *Aereo I* at 381; *Aereo II* at *1, *3; Exh. 6 (5/31/2012 Tr.) at 326:2-6 (Horowitz Testimony); Exh. 11 (Horowitz Decl.) at ¶¶ 54-55; Exh. 14 (Pozar Decl.) at ¶¶ 9, 15-16; Exh. 4 (Lipowski Decl.) at ¶¶ 36, 64-65; Exh. 13 (Volakis Dep. 5/12/2012) 201:12-202:8.

     **DISPUTED:** Aereo's use of phrases like "uses an individual Aereo antenna" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

     First, whether Aereo's subscribers "use[]"Aereo antennas is disputed.  There is no dispute that Aereo's subscribers can choose which channel they want to watch using Aereo and that when subscribers tell Aereo that they want to watch particular channels, Aereo then assigns antennas for that purpose.  That, however, does not mean that Aereo's subscribers "use" those antennas in any broader sense and the record indicates that Aereo exercises considerable control over those antennas.  Although discovery is ongoing, the current record demonstrates that facts relating to the issue of subscribers' use of antennas are genuinely disputed.  *See* Response 1, *supra*.

     Second, whether there is an individual antenna pair assigned to a subscriber for the duration of a viewing or recording session that functions on an "individual" basis is disputed.  Although discovery is ongoing, the current record demonstrates that facts

26

relating to whether Aereo's antennas are truly capable of operating "individual[ly]" or are, instead, a group resource are genuinely disputed.  *See* Response 1, *supra*.

Third, stating that Aereo's subscribers "use" an antenna "with respect to each recording using the Aereo system" implies that only the subscriber's use results in the creation of a recording.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers volitionally and exclusively are making copies of broadcast programs are genuinely disputed.  *See* Response 1, *supra*.

Fourth, that facts are cited in *Aereo I* and/or *Aereo II* does not now establish them as "undisputed" because findings made during the preliminary injunction phase are not final and can be revisited.  *See* Response 1, *supra*.

10.     Each Aereo antenna pair can be used and controlled by only one user at any given time, and each antenna captures only the signal tuned by that user. *Aereo I* at 378; *Aereo II* at *3; Exh. 5 (5/30/2012 Tr.) at 104:23-105:1, 105:17-105:25 (Kelly Testimony); Exh. 11 (Horowitz Decl.) at ¶¶ 17, 18, 22; Exh. 8 (Horowitz Expert Report) at ¶¶ 56, 64, 79, 81; Exh. 4 (Lipowski Decl.) at ¶¶ 27, 36-37; Exh. 9 (Kelly Dep.) at 76:12-21, 77:10-17; Exh. 13 (Volakis Dep. 5/12/2012) at 201:21-23.[6]

> [6]Each individual antenna within the Aereo system only receives a broadcast signal when it is automatically activated and tuned in response to a user's instruction to "Watch" or "Record." Exh. 8 (Horowitz Expert Report) at ¶ 64; Exh. 14 (Pozar Decl.) at ¶¶ 13-14; Exh. 4 (Lipowski Decl.) at ¶¶ 35, 37, 65.  When an individual antenna is not being used by a user, that antenna receives no broadcast signal.  Exh. 6 (5/31/2012 Tr.) at 295:5-18 (Horowitz Testimony); Exh. 4 (Lipowski Decl.) at ¶¶ 14, 36, 65; Exh. 14 (Pozar Decl.) at ¶ 11 & n.3; Exh. 9 (Kelly Dep.) at 76:12-21, 77:10-17; Exh. 5 (5/30/2012 Tr.) at 241:6-242:13 (Lipowski Testimony).

**DISPUTED:**  Aereo's use of words like "used," "controlled" and "tuned" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

First, whether Aereo's subscribers "use[]," "control[]" or "tune[]" Aereo antennas is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to the issue of subscriber "use," "control" and "tuning" of antennas are genuinely disputed.  *See* Responses 1, 7 and 9, *supra*.

Second, whether Aereo's antennas function on an "individual" basis to capture a signal of a channel selected by the user is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo's antennas are truly capable of operating "individual[ly]" or are, instead, a group resource are genuinely disputed.  *See* Response 1, *supra*.

<u>Third</u>, that facts are cited in *Aereo I* and/or *Aereo II* does not now establish them as "undisputed" because findings made during the preliminary injunction phase are not final and can be revisited.  *See* Response 1, *supra*.

11.     Each antenna pair is connected to its own tuner and feed line.  Exh. 8 (Horowitz Expert Rep.) at ¶ 59; Exh. 13 (Volakis Dep. 5/12/2012) at 201:12-23.  At any given time, a single Aereo antenna on an antenna board may be tuned to one channel and another antenna on that board may be tuned to another channel.  *Id.* at 201:21-202:8.

**DISPUTED IN PART:**  First, the ABC Plaintiffs do not dispute that antenna pairs are connected to numerous, redundant tuners and feed lines.  *Aereo II*, 712 F.3d at 697 (Chin, J., dissenting).  Although this fact is not contested, it does not compel the broader conclusions that Aereo's antennas operate independently or that Aereo's system creates unique copies of broadcast television programs, the facts of which are disputed.  *See* Responses 1, 3, *supra.*

Second, whether all antennas on an individual antenna board may be tuned independently is disputed. ███████████████████████████ ████████████████████████████████ ██████████████████████████████████ ███████████████████████████████████ ████████████████████ ███ ██████████████████████████████ ████████████ *See also* Response 1, *supra.*

12.     A user tunes her individually-assigned antenna by pressing either "Watch" or "Record," which automatically causes the antenna to activate at the time of the scheduled recording (whether it is at the time of her instruction or in the future), and tune to the desired channel.  That same action by the user causes her remote DVR to record a unique copy of the program to a hard drive, which recording is accessible only by that user.  *Aereo I* at 5-6, 23, 37; *Aereo II* at *12; Exh. 4 (Lipowski Decl.) at ¶¶ 5, 50; Exh. 8 (Horowitz Expert Rep.) at ¶¶ 56, 64; Exh. 6 (5/31/2012 Tr.) at 297:12-298:10 (Horowitz Testimony); Exh. 5 (5/30/2012 Tr.) at 102:21-103:7 (Kelly Testimony).

**DISPUTED:**  Aereo's use of words like "tunes," "causes" and "unique" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

First, whether Aereo's subscribers "tune[]" Aereo antennas or "cause" such antennas to activate or do anything else is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to the issue of subscriber control of antennas are genuinely disputed.  *See* Responses 1, 7 and 9, *supra*.

Second, whether Aereo's antennas function on an "individual[]" basis is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo's antennas are truly capable of operating "individually" or are, instead, a group resource are genuinely disputed.  *See* Response 1, *supra*.

Third, whether Aereo's subscribers "cause" Aereo's servers to record broadcast programming in the Watch Now service is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly "caus[ing]" copies of broadcast programs to be made are genuinely disputed.  *See* Responses 1-2, *supra*.

<u>Fourth</u>, whether a subscriber has her own "remote DVR" is disputed.  *See* Response 4, *supra.*

<u>Fifth</u>, whether the copies of broadcast programs are "unique" is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to whether the copies are unique are genuinely disputed.  *See* Response 3, *supra*.

<u>Sixth</u>, that facts are cited in *Aereo I* and/or *Aereo II* does not now establish them as "undisputed" because findings made during the preliminary injunction phase are not final and can be revisited.  *See* Response 1, *supra*.

13.     Whether in "Watch" or "Record" mode, the user-specific recording made by the user is made solely from the signal received by the specific antenna assigned to that user.  *Aereo I* at 378, 386-87; *Aereo II* at *2, *3; Exh. 5 (5/30/2012 Tr.) at 104:20-106:24, 137:1-7, 139:12-1; Exh. 4 (Lipowski Decl.) at ¶¶ 43, 56.

**DISPUTED:**  Aereo's use of words like "made" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

First, whether the Aereo system allows subscribers to "ma[ke]" copies of programs when using Aereo's Watch Now service is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers knowingly make copies of broadcast programs are genuinely disputed.  *See* Responses 1-2, *supra*.

Second, whether the assignment of a "specific antenna" to a particular user for the duration of a particular viewing or recording session means that each such antenna functions independently is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo's antennas are truly capable of operating "individually" or are, instead, a group resource are genuinely disputed.  *See* Response 1, *supra*.

Third, that facts are cited in *Aereo I* and/or *Aereo II* does not now establish them as "undisputed" because findings made during the preliminary injunction phase are not final and can be revisited.  *See* Response 1, *supra*.

33

14.     The signal generated from an individual antenna tuned by a user (whether in "Watch" or "Record" mode) is unique and will have variations in signal attributes different from the signals recorded from another antenna element.  Exh. 6 (5/31/2012 Tr.) at 328:19-24 (Horowitz Testimony); Exh. 5 (5/30/2012 Tr.) at 106:11-24 (Kelly Testimony); Exh. 4 (Lipowski Decl.) at ¶ 37; Exh. 9 (Kelly Dep.) at 78:15-24.  The copies that the user makes to her hard drive storage (whether in "Watch" or "Record" mode) are unique copies that have their own individual attributes, glitches, and artifacts. *Aereo I* at 380-81; Exh. 6 (5/31/2012 Tr.) at 300:16-304:14 (Horowitz Testimony); Exh. 5 (5/30/2012 Tr.) at 106:11-24 (Kelly Testimony); Exh. 4 (Lipowski Decl.) at ¶ 43; Exh. 8 (Horowitz Expert Report) at ¶ 55, n. 42; Exh. 9 (Kelly Dep.) at 141:19-142:9.

**DISPUTED:**  Aereo's use of words like "unique," "tune" or "makes" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute.

First, whether Aereo's antennas function on an "individual[]" basis is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo's antennas are truly capable of operating "individually" or are, instead, a group resource are genuinely disputed.  *See* Response 1, *supra*.

Second, whether Aereo's subscribers "tune" Aereo antennas is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to the issue of subscriber control of antennas are genuinely disputed.  *See* Response 1, *supra*.

Third, whether the Aereo system allows subscriber to make copies of programs when using Aereo's Watch Now service is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly "making" copies of broadcast programs are genuinely disputed.  *See* Responses 1-2, *supra*.

34

Fourth, whether the copies of broadcast programs are "unique" is disputed. Although discovery is ongoing, the current record demonstrates that facts relating to whether the copies are unique, regardless of their "individual attributes, glitches and artifacts," are genuinely disputed. *See* Response 3, *supra*.

Fifth, that facts are cited in *Aereo I* does not now establish them as "undisputed" because findings made during the preliminary injunction phase are not final and can be revisited. *See* Response 1, *supra*.

B.    <u>Members Access Local Over-The-Air Signals For Their Own Non-Commercial Use</u>

15.    Aereo permits only individuals to become members of Aereo and to use the Aereo technology to make and watch recordings.  Aereo does not offer its technology to commercial entities and Aereo's Terms of Use do not allow for the use of its technology for any commercial purpose.  *See, e.g.*, Exh. 15 (Aereo Terms of Use, available at https://aereo.com/terms (last accessed May 9, 2013)), "Right to Use Aereo Equipment and Platform" ¶ 5; Exh. 3 (Kanojia Decl.) at ¶¶ 5, 29.

**DISPUTED:**  There is no dispute that Aereo's Terms of Use state "You may not use the Site, Equipment, Platform and/or and any materials or content contained or embodied therein for any commercial purpose whatsoever."  To the extent, however, that statement is relevant to market harm or irreparable harm caused by Aereo, there is a genuine dispute:

- This Court has found that Aereo will cause Plaintiffs "irreparable harm." *Aereo I*, 874 F. Supp. 2d at 397.

- Aereo fails to present any facts rebutting this finding.

- Aereo's documents show that it was developing a marketing strategy of replacing licensed providers of Plaintiffs' works in the marketplace. Potenza Decl. Ex. 25 (AEREO0184185, "Our goal was to be the alternative to the MVPDs"); Ex. 26 (AEREO0315436, "Aereo is a cord cutter's dream"); Ex. 27 (AEREO0489482, "You don't need Hulu (delayed 28 days) if you have" Aereo).



There also is a dispute as to whether subscribers "use" the "Aereo technology or whether Aereo is a complex system or service for transmitting and storing broadcast television programming. Although discovery is ongoing, the current record demonstrates that facts relating to the nature of Aereo's service, including the extent to which it offers a subscription service to consumers and not "technology," are genuinely disputed. *See* Response 1, *supra*.

- Aereo's own patent application describes itself as a "method and system for capturing, storing, and streaming over the air [sic] broadcasts based on user requests. Potenza Decl. Ex. 23 US 2012/0129479 AI, at Abstract.

16.     Aereo limits the playback of over-the-air broadcasts to members located within the geographic area—currently only the New York City area[7]—served by those over-the-air signals.  The Aereo Terms of Use, which users must accept as part of using the Aereo system, limits playback only to those physically present in the home market area.  *See* Exh. 15 (Aereo Terms of Use, available at https://aereo.com/terms (last accessed May 9, 2013)) "Right to Use Aereo Equipment and Platform" ¶ 2.  Further,



[7]Aereo is currently expanding to Boston and will make its technology available to consumers in Boston in May 2013

**DISPUTED:**  There is no dispute that Aereo's subscribers can use the Aereo service to watch "over-the-air broadcasts" from stations broadcasting "within the geographic area . . . served by those over-the-air signals."  Whether, and how easily, Aereo's subscribers who are not located within the "geographic area . . . served by those over-the-air signals" can watch the same over-the-air broadcasts live is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to how easily Aereo's subscribers located outside of a geographic market can watch local over-the-air broadcasts from that market are genuinely disputed.  *See* Response 2, *supra*.

38

17.    Consumers use the Aereo system to access over-the-air television signals and to record and view the programs carried on those signals.  The fact that the Aereo technology is located remotely, versus in the consumer's home, and accordingly, consumers use and control the Aereo technology via the Internet is not material.  Nor is it material that over-the-air signals are converted for receipt over the Internet.  Indeed, all television transmission and reception involves the conversion of over-the-air broadcast signals into a format that is viewable by the user, for instance, on a television display. Ex. 6 (5/31/2012 Tr.) at 285:8-286:9 (Horowitz Testimony); Exh. 12 (Horowitz PowerPoint Slides).  Likewise, all recordings of any type change the received television signal into a different form and medium, whether the recording is analog or digital.  The VCR allows a user to record programming carried on over-the-air signals to magnetic tapes and DVRs allow a user to make digital recordings on to hard drives.  *Aereo I* at 377; *Aereo II* at *22, n. 15; Exh. 6 (5/31/2012 Tr.) at 286:10-288:15; 290:11-291:10, 298:16-23, 305:9-306:12 (Horowitz Testimony); Exh. 12 (Horowitz PowerPoint Slides).

**DISPUTED:**  Aereo's use of phrases like "use . . . to record" or "is not material" in its statement of "undisputed material facts" is, in the context of the issues in this case, conclusory legal argument that either is not supported by the underlying record or is, at a minimum, based on facts that are in genuine dispute

First, whether Aereo's subscribers "use" the Aereo service "to record" broadcast television programs when using Aereo's Watch Now service is disputed.  Although discovery is ongoing, the current record demonstrates that facts relating to whether subscribers are knowingly "recording" copies of broadcast programs are genuinely disputed.  *See* Responses 1-2, *supra*.

Second, whether the difference between Aereo's system and what consumers can do in their own homes is "material" is conclusory legal argument that, in any event, is disputed.  There is no dispute that consumers can use in-home consumer technology, such as a combination of an in-home antenna, a DVR and a Slingbox, to watch broadcast television over the Internet.  That alone, however, provides no support for the conclusion

39

that there "is no[] material" difference between Aereo and any of those devices standing alone or a combination thereof. Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo's service is materially different than an in-home consumer technology device are genuinely disputed.

Third, whether Aereo's subscribers "control" Aereo antennas or other "Aereo technology" is disputed. It is not disputed that Aereo's subscribers can choose which channel they want to watch using Aereo and that when subscribers tell Aereo that they want to watch particular channels, Aereo then assigns antennas for that purpose and transmits the programming on the requested channel to them. That, however, does not mean that Aereo's subscribers "control" the Aereo technology and the record indicates that Aereo controls its technology. Although discovery is ongoing, the current record demonstrates that facts relating to the issue of subscriber control of the Aereo technology are genuinely disputed. *See* Response 1, *supra.*

Fourth, whether the conversion of over-the-air signals for receipt "via the Internet" using the Aereo service is "material" is conclusory legal argument that, in any event, is disputed. The current record demonstrates that the delivery of over-the-air signals via the Internet by Aereo causes irreparable harm to the ABC Plaintiffs. *See Aereo I*, 874 F. Supp. 2d at 397-400 (finding irreparable harm caused by Aereo).

Fifth, whether the functions of Aereo's Internet retransmission service are in any way similar to the conversion of a broadcast signal for viewing on an in-home television display or conversion from an over-the-air signal to magnetic tape is disputed. There is no dispute that consumers can use in-home VCR or DVR technology to watch over-the-

40

air television programs.  Although discovery is ongoing, the current record demonstrates that facts relating to whether Aereo's service is similar to in-home consumer recording or display technologies are genuinely disputed.

Respectfully submitted,

/s/ Bruce P. Keller
Bruce P. Keller
Jeffrey P. Cunard
Matthew E. Fishbein
Michael R. Potenza
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel.:     (212) 909-6000
Fax:     (212) 909-6836

*Counsel for the ABC Plaintiffs*

Dated:  June 7, 2013