UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

AMERICAN BROADCASTING COMPANIES,    :
INC., et al.,
                                    :

                  Plaintiffs,       :    12 Civ. 1540 (AJN)(HBP)
                                    :
     -against-
                                    :
AEREO, INC.,
                                    :

                  Defendant.        :
----------------------------------X

WNET, et al.,                       :

                  Plaintiffs,       :    12 Civ. 1543 (AJN)(HBP)

     -against-                      :    OPINION
                                         AND ORDER
AEREO, INC.,                        :

                  Defendant.        :

----------------------------------X


          PITMAN, United States Magistrate Judge:


I.   Introduction


          By letter dated July 2, 2013, defendant seeks reconsid-

eration of that portion of the oral Order that I issued in this

case on June 20, 2013 directing defendant to produce Joseph

Lipowski and Chet Kanojia for an additional hour of deposition

testimony and overruling defendant's privilege objections to

questions concerning certain patent applications filed by defen-

dant[1] (Letter of R. David Hosp, Esq. to the undersigned, dated July 2, 2013, at 1).

For the reasons set forth below, defendant's application is denied.

II.  Facts

The facts giving rise to these actions are set forth in detail in the decisions of the Honorable Alison J. Nathan, United States District Judge, denying plaintiffs' motion for a preliminary injunction, and the Court of Appeals for the Second Circuit, affirming Judge Nathan's decision.  American Broadcasting Cos. v. AEREO, Inc., 874 F. Supp. 2d 373 (S.D.N.Y. 2012), aff'd, 712 F.3d 676 (2d Cir. 2013).  Familiarity with those decisions is assumed.

Plaintiffs (primarily broadcast television networks) allege that defendant is infringing their copyrights.  The allegations arise out of defendant's service that intercepts broadcast television signals and re-transmits them over the internet to subscribing individuals and entities.  Defendant also offers a remote recording functionality that allows subscribers to shift the time at which they view programs.

---

[1]My oral order was memorialized in a written Order dated July 3, 2013 (Docket Item 227).

2

The present dispute arises out of questions posed at the depositions of Chet Kanojia and Joseph Lipowski, Aereo's Chief Executive Officer and Chief Technology Officer, respectively, concerning several patent applications Aereo has filed. All of the applications claim inventions for technologies that appear to be closely related to Aereo's business of re-transmitting broadcast television programming for receipt over the internet.  For example, Patent Application 13/299,194 is entitled "Antenna System with Individually Addressable Elements in Dense Array."[2]  This application describes the background of the invention and summarizes the invention as follows:

> BACKGROUND OF THE INVENTION
>
> Over the air television, which is also referred to as terrestrial television or broadcast television, is a distribution mode for television content via radio frequency (RF) electromagnetic waves or radiation through the atmosphere.  Some examples of well known television networks in the United States that broadcast over the air content are ABC, CBS, FOX, NBC, and PBS. Through a series of affiliate stations, these networks are able to blanket the country with broadcasted content.  The result is that each one of these television networks is able to reach over 95% of all the households in the United States.
>
> Television networks are always looking for ways to attract new customers and increase viewership.  Recently, some television networks have been putting

---

[2]The patent applications in issue are available the website of the United States Patent and Trademark Office, http://appft.uspto.gov.

their programming online for people to access via
private and public data networks such as the Internet.
Typically, the television networks will upload content
to their website or some other third party website,
such as HULU.COM, that stream the content to users,
sometimes for a fee.  Today, the content that is avail-
able is often limited; sometimes, the most recent
episodes are not available or the content is outdated.

At the same time, a wide variety of devices are
available that can play audio and video content.  In
addition to the ubiquitous television, many now watch
video on their personal computers and mobile computing
devices, such as smartphones and tablet computers.
Video content is usually accessed through the Internet
using subscriber data networks, cellular phone net-
works, and public and private wireless data networks.
Moreover, some televisions now have network connec-
tions.  And, many game consoles have the ability to
access video content using third-party software such as
provided by Netflix, Inc.

SUMMARY OF THE INVENTION

Despite all of the new modalities for viewing
video, over the air content broadcast by the tradi-
tional television networks is still generally only
available through cable television subscriptions,
satellite television systems, or by capturing the over
the air broadcasts with a home-installed antenna.  For
users that do not subscribe to cable or do not have
cable access, it is generally required that they in-
stall their own RF or satellite antenna in order to
capture this broadcast content.  Then, this captured
content is generally only available for display on a
traditional television.  There is generally no simple
way for a user to have this content available to their
other video-capable devices.

The present system and method concern an approach
to enabling users to separately access individual
antenna feeds over a network connection, such as the
Internet and/or service provider network.  Each user is
assigned an antenna, such as their own, separate,
individual antenna, from which they can then record

4

and/or stream content transmissions from over the air
broadcasts.  That assignment may happen either as the
user initiates a recording or a user may be exclusively
assigned a specific antenna for their sole use for any
and all of their viewing and recordings.  As users
select content transmissions, individual antennas
receive the broadcast content.  At the users' election,
the system stores the content data to each of the
users' individual accounts separately for later play-
back by that user and/or streams the content data to
the separate users.  In this way, the users can access
broadcast content without having to maintain their own
antenna infrastructure and access broadcast content on
devices, such as mobile device, that lack the tuners
and decoders necessary to directly access over the air
broadcasts.

The antenna assignment is either permanent or
temporary depending on the mode of operation.  In one
mode, when users select to receive over the air content
or record over the air content for later viewing,
corresponding antenna elements and encoding resources
are allocated to the users on the fly.  Then, after the
antenna elements are no longer needed, the resources
are returned to the resource pool and become available
for other users.  In the other mode, users lease or buy
particular antenna elements, which are then exclusively
assigned to particular users and then used to service
the requests of those users.  In one example, the
antenna elements are leased to users for the duration
of those users' accounts.

Important to making the system feasible is creat-
ing a physically compact antenna system.

In general, according to one aspect, the invention
features an antenna system comprising a two dimensional
array of antenna elements for separately receiving over
the air broadcasts, the array of antenna elements
having a density of at least 10 antenna elements per
square meter and an encoder system for converting over
air broadcasts received by the separate antenna ele-
ments into content data to be stored in a data storage
system.

> In embodiments, the antenna elements are omni-directional antenna elements and particularly the antenna elements are symmetric dual loop antenna elements.
>
> Further, multiple ones of the two dimensional array of antenna elements are preferably used along with a housing that supports the two dimensional arrays adjacent to each other.  Thus, the two dimensional arrays of antenna elements form a three dimensional array within the housing. . . .

(U.S. Patent Application No. 13/299,194, available at

http://appft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF

&p=1&u=%2Fnetahtml%2FPTO%2Fsearch-bool.html&r=12&f=G&l=50&co1=AND

&d=PG01&s1=Aereo&OS=Aereo&RS=Aereo).

At their depositions, Aereo blocked questions to Kanojia and Lipowski concerning the patent applications, primarily on the ground of privilege.  After hearing oral argument on June 20, 2013, I overruled Aereo's objections and directed that Kanojia and Lipowski be produced for the continuation of their depositions with respect to the patent application.

III.  Analysis

    A.  Motions for Reconsideration:
        Applicable Standards

The standards applicable to a motion for reconsideration are set forth at length in one of my earlier Orders in these matters dated May 23, 2013 (Docket Item 205 in 12 Civ. 1540;

6

Docket Item 203 in 12 Civ. 1543) and need not be rehearsed here. In general terms, reconsideration is appropriate when the court has overlooked controlling law or facts that were called to its attention prior to the decision in issue or to prevent manifest injustice.  Quinn v. Altria Grp., Inc., 07 Civ. 8783 (LTS)(RLE), 2008 WL 3518462 at *1 (S.D.N.Y. Aug. 1, 2008) (Swain, D.J.).  It is not an opportunity to supplement the record or to make new arguments that were not made when an issue was initially considered.  McMahan & Co., v. Donaldson, Lufkin & Jenrette Sec., Corp., 727 F. Supp. 833, 833 (S.D.N.Y. 1989) (Mukasey, D.J.).

Aereo has not met these standards.  It cites no controlling facts or law that were called to my attention and that I overlooked.  Nevertheless, as a matter of discretion, I shall address the merits of Aereo's arguments.[3]

---

[3]Consistent with the limitations of Local Civil Rule 6.3 (last sentence), I have not considered any of the factual material submitted in connection with the motion for reconsideration.

B.  The Merits of
    Aereo's Application
    for Reconsideration

    1.  General Principles
        Applicable to
        Patent Applications

It may be helpful at the outset to review some of the
requirements of a valid patent application.  A patent application
must be signed by the inventor and he must confirm that he made
or authorized the making of the application and that he is the
original inventor or original joint inventor of the invention
claimed in the application.  35 U.S.C. § 115; 37 C.F.R. § 1.63.
In addition to meeting the more substantive requirements for
patentability, the application must reasonably describe the
invention, must disclose sufficient information to enable a
practitioner reasonably skilled in the art to practice the
invention without undue experimentation and must disclose the
best mode contemplated by the inventor of carrying out his
invention.  35 U.S.C. § 112; Teva Pharmaceuticals USA, Inc. v.
Sandoz, Inc., 723 F.3d 1363, 1370 (Fed. Cir. 2013); Novozymes A/S
v. DuPont Nutrition Biosciences APS, 723 F.3d 1336, 1344 (Fed.
Cir. 2013); Ateliers De La Haute-Garonne V. Broetje Automation
USA Inc., 717 F.3d 1351, 1356-57 (Fed. Cir. 2013).  There is no
requirement that the patent application disclose the inventor's

8

intentions concerning the exploitation of the patent, nor is there any requirement that the application disclose the inventor's patent strategy.

2.  Aereo's Arguments

Aereo first argues that its patent applications are irrelevant to this copyright action.  Although Aereo is correct in its statements that the technology it is actually using is central to this copyright action and that it may or may not be practicing the inventions claimed in its patent applications, these statements really only raise a question as to relevance; they do not establish that the applications are irrelevant.  As noted above, the subject matter of the applications appears to be closely related to the system Aereo is using.  See American Broadcasting Cos. v. AEREO, Inc., supra, 874 F. Supp. 2d at 376-81 (describing the technology actually used by Aereo).  As also noted above, a patent application must disclose the best mode contemplated by the inventor of carrying out his invention.  See generally In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig., 676 F.3d 1063, 1084-85 (Fed. Cir. 2012) (describing best-mode requirement set forth in 35 U.S.C. § 112).  Taking these premises facts together, it is reasonable to infer that the patent applications disclose at least some aspect of the

9

technology Aereo is actually using.  Although it is possible that (1) the inventions claimed in the patent applications have nothing to do with the system Aereo is using or (2) Aereo has deliberately chosen not to practice the best mode of utilizing its inventions, these possibilities seem unlikely.  In any event, the issue can be resolved by asking Lipowski and Kanojia foundational questions to ascertain whether Aereo is practicing any aspects of the inventions claimed in its patent.  If the answer is affirmative, relevance is established.

> The patent applications are also relevant to the issues of credibility and irreparable harm.  In opposing plaintiffs' application for a preliminary injunction, Aereo offered expert testimony suggesting that its internet retransmission capability was not substantially different from what consumers could accomplish with off-the-shelf components (see Transcript of Hearing held on May 31, 2012 (Docket Item 100 in 12 Civ. 1540) at 306-07).  Judge Nathan relied on this testimony as support for her conclusion that plaintiffs had failed to demonstrate irreparable harm.  American Broadcasting Cos. v. AEREO, Inc., supra, 874 F. Supp. 2d at 400 ("[G]iven that other products are already available that can provide broadcast content to mobile devices contemporaneous with its initial broadcast . . ., Plaintiffs have not established that this harm is imminent and non-speculative.").

In their patent application, however, in an apparent effort to establish novelty, <u>see</u> 35 U.S.C. § 102, the inventors state that broadcast "content is generally only available for display on a traditional television.  There is generally no simple way for a user to have this content available to their other video-capable devices."  Although the two positions are not irreconcilable, there is a certain tension between them sufficient to warrant examination.

Aereo next argues that the risk of prejudice resulting from questioning concerning the patent applications outweighs any probative value.  To the extent that Aereo contends that confidential patent strategies will be disclosed by the questioning, its contention is a red herring.  The patent applications do not disclose Aereo's patent strategy, and questions concerning the extent to which the inventions claimed in the patent applications reflect Aereo's actual system simply do not implicate patent strategy.

Aereo also makes the rather odd argument that "requiring inventors to answer questions about the claims or other portions of the patent applications would result in prejudice, because this testimony, provided in relation to the current copyright dispute, could later potentially be used in an entirely different context to interpret the scope of the claims during a

patent litigation" (Letter of R. David Hosp, Esq. to the under-
signed, dated July 2, 2013 at 9).  This argument fails for two
reasons.  First, there is a protective order in place prohibiting
discovery obtained in this action from being used in other
actions (Stipulated Protective Order, filed Mar. 22, 2012 (Docket
Item 20 in 12 Civ. 1540).  Second, the truth is immutable, and
the fact that a witness's testimony in this action may preclude
him from giving contradictory testimony in a subsequent action is
not prejudice.  The truth is the truth, and a witness cannot give
different versions of it in different proceedings without commit-
ting perjury.

Finally, Aereo attempts to resurrect its privilege
argument, contending that the inventors cannot be questioned
concerning the patent applications because they are the product
of consultation with counsel.  Although there can be no question
that confidential communications between an inventor and his or
her patent attorney made for the purpose of securing legal advice
are privileged, In re Spalding Sports Worldwide, Inc., 203 F.3d
800, 805-06 (Fed. Cir. 2000), defendant's argument fails for
several reasons.  First, it is beyond question that the attorney-
client privilege protects only communications with counsel, not
the underlying facts that are communicated to counsel.  As
explained by the Supreme Court,

The privilege only protects disclosure of communica-
tions; it does not protect disclosure of the underlying
facts by those who communicated with the attorney:

> "[T]he protection of the privilege extends only to
> <u>communications</u> and not to facts.  A fact is one
> thing and a communication concerning that fact is
> an entirely different thing.  The client cannot be
> compelled to answer the question, 'What did you
> say or write to the attorney?' but may not refuse
> to disclose any relevant fact within his knowledge
> merely because he incorporated a statement of such
> fact into his communication to his attorney."
> <u>Philadelphia v. Westinghouse Electric Corp.</u>, 205
> F. Supp. 830, 831 (E.D. Pa. 1962).

> See also <u>Diversified Industries</u>, 572 F.2d at 611; <u>State
> ex rel. Dudek v. Circuit Court</u>, 34 Wis.2d 559, 580, 150
> N.W.2d 387, 399 (1967) ("the courts have noted that a
> party cannot conceal a fact merely by revealing it to
> his lawyer").

<u>Upjohn Co. v. United States</u>, 449 U.S. 383, 395-96 (1981); <u>accord</u>

<u>Barkley v. Olympia Mortg. Co.</u>, 04-CV-875 (RJD)(KAM), 05-CV-187

(RJD)(KAM), 05-CV-4386 (RJD)(KAM), 05-CV-5302 (RJD)(KAM),

05-CV-5362 (RJD)(KAM), 05-CV-5679 (RJD)(KAM), 2007 WL 656250 at

*14 (E.D.N.Y. Feb. 27, 2007); <u>In re Woolworth Corp. Sec. Class</u>

<u>Action Litig.</u>, 94 Civ. 2217 (RO), 1996 WL 306576 at *2 (S.D.N.Y.

June 7, 1996) (Owen, D.J.); <u>Standard Chartered Bank PLC v. Ayala</u>

<u>Int'l Holdings (U.S.) Inc.</u>, 111 F.R.D. 76, 79-80 (S.D.N.Y. 1986)

(Sand, D.J.).  Thus, the attorney-client privilege is not impli-

cated in the absence of a question to the inventors seeking what

they told their counsel or, perhaps, what their counsel told

them.  Second, defendant's contention that a privilege attaches

to a patent application because it is the product of consultation with counsel is simply wrong.  The complaint in every counseled civil case is the product of the client's consultation and communication with counsel, yet no competent attorney would suggest that that fact prohibits defense counsel from asking a plaintiff about the facts alleged in the complaint.  Third, as noted above, an applicant for a patent is required by law to declare under penalty of perjury that he has made the patent application or has authorized its making.  35 U.S.C. § 115; 37 C.F.R. § 1.63.  Thus, a patent application is the inventor's own statement, not a privileged communication to counsel.

IV.  Conclusion

        Accordingly, for all the foregoing reasons, Aereo's application for reconsideration of my Order directing it to produce Joseph Lipowski and Chet Kanojia for an additional hour of deposition testimony each concerning their patent applications is denied in all respects.

Dated:  New York, New York
        October 7, 2013

                              SO ORDERED


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

                     14

Copies transmitted to:

All Counsel