DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
Fax  212 909 6836
www.debevoise.com

July 9, 2014

VIA CM/ECF

Hon. Alison J. Nathan
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**ABC, et al. v. Aereo, Inc., 12-cv-1540 (AJN)(HBP) (consolidated)**

Dear Judge Nathan:

On January 22, 2014, this matter was stayed pending a decision by the United States Supreme Court. [Docket No. 308] The Court ordered the parties to submit a joint letter regarding the next steps in this litigation once the Supreme Court issued its decision. *Id.*

**Plaintiffs' Position**

The Supreme Court ruled in Plaintiffs' favor on June 25, 2014. Accordingly, Plaintiffs will be submitting to the Court a proposed order, consistent with the Supreme Court's decision, that enjoins Aereo from violating Plaintiffs' public performance rights.

Beyond that, determining the most sensible and efficient way to proceed, including any final resolution and the recovery of damages and/or fees, has been rendered nearly impossible by Aereo's refusal to clearly specify whether, when and in what fashion it intends to continue operating. Since the Supreme Court's decision, Aereo and its principals have issued shifting and inconsistent positions. For example, in virtually the same breath, they stated that Aereo would "continue to fight" the broadcasters but also indicated that Aereo's entire business was "over now." Aereo suspended all operations and services nationwide on June 28, but told Plaintiffs that suspension might only be temporary. Obviously, should Aereo permanently discontinue its business, a consensual resolution of the litigation seems more likely. That might make it appropriate to leave the stay in place, at least for a limited time, in order to allow the parties to negotiate any remaining issues.

On July 1, however, its counsel suggested that Aereo has rethought its entire legal strategy and will raise before this Court a brand new defense based on Section 111 of the Copyright Act. Aereo never before pled (much less litigated) Section 111 as an affirmative defense. Whatever Aereo may say about its rationale for raising it now, it is astonishing for

Hon. Alison J. Nathan                                    2                                    July 9, 2014

Aereo to contend the Supreme Court's decision automatically transformed Aereo into a "cable system" under Section 111 given its prior statements to this Court and the Supreme Court.

It represented to this Court, for example, that it could not qualify as "a 'cable system'" and, therefore, that cases interpreting the application of Section 111 to Internet retransmission services were "irrelevant to the issues here." Aereo Memo at 15-16, Dkt. 30. Before the Supreme Court, Aereo again represented that, as a factual matter, it did not satisfy the basic definitions that govern Section 111 eligibility, citing the Second Circuit's decision in *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 283 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1585 (2013). *See* Brief for Respondent at 34 n. 17, *Am. Broad Cos., Inc. v. Aereo, Inc.*, No. 13-461 (U.S. S. Ct. Mar. 26, 2014) ("Petitioners do not argue that Aereo is a 'cable system' under § 111, and Aereo is not one."). When the issue arose at oral argument before the Supreme Court, Aereo once again disclaimed reliance on the Section 111 license. *See* Transcript of Oral Argument at 28, *Am. Broad. Cos., Inc. v. Aereo, Inc.*, __ S. Ct. __, 2014 WL 2864485 (2014) ("[W]e are not a cable service[.]").

In any event, were Aereo now to seek leave to amend its pleadings to assert a Section 111 defense, motion practice on that or any other issue should not be allowed until after the Plaintiffs are protected by the injunction the Supreme Court said should be granted against further violations of Plaintiffs' public performance rights. That is the most important next step, given the Court's ruling that Aereo has been violating Plaintiffs' exclusive rights to publicly perform their works for over two years, during which time Plaintiffs, as this Court held, have suffered irreparable harm. *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 397-402 (S.D.N.Y. 2012).

**Defendant's Position**

The stay of discovery in this matter should remain in place at least until the Court has resolved the injunction issues in connection with the remand. The resolution of those issues will affect the scope of the remaining limited expert discovery and a stay will cause no prejudice to Plaintiffs, particularly in light of Aereo's voluntary temporary suspension of services while it seeks guidance from this Court.

The Supreme Court has now ruled that "having considered the details of Aereo's practices, we find them highly similar to those of the CATV systems in *Fortnightly* and *Teleprompter*. And those are activities that the 1976 amendments sought to bring within the scope of the Copyright Act." *Am. Broad. Cos., Inc. et al. v. Aereo, Inc.*, No. 13-461, 2014 WL 2864485, at *12 (U.S. June 25, 2014). Accordingly, Aereo is entitled to a compulsory license under the Copyright Act, 17 U.S.C. § 111. And because Aereo is entitled to a license under Section 111, the transmissions Plaintiffs have sought to enjoin do not infringe Plaintiffs' rights under the Copyright Act. As such, the Section 111 issue is inextricably intertwined with the question of whether any injunction should enter following the Supreme Court's remand.

Aereo has been careful to follow the law, and the Supreme Court has announced a new and different rule governing Aereo's operations last week. Under the Second Circuit's precedents, Aereo was a provider of technology and equipment with respect to the near-live

Hon. Alison J. Nathan                          3                          July 9, 2014

transmissions at issue in the preliminary injunction appeal.  After the Supreme Court's decision, Aereo is a cable system with respect to those transmissions.  No additional discovery is needed to decide the Section 111 question, and its resolution at the threshold will eliminate the need to litigate, and take discovery with respect to, a wide swath of issues in the case.

Aereo's eligibility for a Section 111 compulsory license must be decided on an immediate basis or Aereo's survival as a company will be in jeopardy.  Following the Supreme Court's decision, Aereo temporarily suspended its operations, disabling the members' ability to make or schedule new recordings and disabling their ability to playback any recordings.  Aereo took this extraordinary step despite the absence of an injunction, and despite the fact that it believes that it can still operate in accordance with the terms of the Supreme Court's decision. As a result of this good-faith effort, however, Aereo is taking in no new revenue, and continuing to incur enormous costs such as employee salaries, equipment and lease payments, and vendor payments.

Aereo therefore requests that this Court leave the stay of discovery in place and address the effect of the Supreme Court's reversal and remand "for further proceedings consistent with the opinion" as soon as possible. *Id*. at *12.

**<u>Aereo is entitled to a statutory license and no injunction should issue.</u>**

If Aereo is a "cable system" as that term is defined in the Copyright Act, it is eligible for a statutory license, and its transmissions may not be enjoined (preliminarily or otherwise).

The Supreme Court held that Aereo is "substantially similar to" has an "overwhelming likeness" to, and "is for all practical purposes a traditional cable system."  *Id*. at *8, 9, 12 ("Aereo's activities are substantially similar to those of the CATV companies that Congress amended the Act to reach."; "Given Aereo's overwhelming likeness to the cable companies targeted by the 1976 amendments, this sole technological difference between Aereo and traditional cable companies does not make a critical difference here."; "We do not see how this single difference, invisible to subscriber and broadcaster alike, could transform a system that is for all practical purposes a traditional cable system into 'a copy shop that provides its patrons with a library card.'"; ". . . the many similarities between Aereo and cable companies, considered in light of Congress' basic purposes in amending the Copyright Act, convince us that this difference is not critical . . ."); "In sum, having considered the details of Aereo's practices, we find them highly similar to those of the CATV systems in *Fortnightly* and *Teleprompter*. And those are activities that the 1976 amendments sought to bring within the scope of the Copyright Act.").

The Supreme Court's holding that Aereo is a cable system under the Copyright Act is significant because, as a cable system, Aereo is now entitled to the benefits of the  copyright statutory license pursuant to the Copyright Act, 17 U.S.C. § 111(c). Aereo is proceeding to file the necessary statements of account and royalty fees.  By holding that Aereo is a cable system, the Supreme Court has overruled *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 279 (2d Cir. 2012) to the extent it might apply to Aereo—and, that case, in any rate, concerned a service that made distant, rather than local, transmissions of television programming to subscribers.

Hon. Alison J. Nathan                            4                            July 9, 2014

### Any injunction must permit time-shifting.

Even if this Court were to conclude that Aereo is not entitled to a statutory license, there is a further issue with respect to the *scope* of any preliminary injunction.

At the preliminary injunction stage, the Plaintiffs sought an injunction prohibiting playback of consumer recordings at any time before the broadcast was complete.  But the Supreme Court's majority opinion does not support such relief.  The Supreme Court held that Aereo only publicly performs when its technology allows ***near simultaneous*** transmission of over the air television broadcasts to its users.  *Aereo*, 2014 WL 2864485 at *4 ("We must decide whether respondent Aereo, Inc., infringes this exclusive right by selling its subscribers a technologically complex service that allows them to watch television programs over the Internet at about the same time as the programs are broadcast over the air. We conclude that it does."; "For a monthly fee, Aereo offers subscribers broadcast television programming over the Internet, virtually as the programming is being broadcast."; "The subscriber may instead direct Aereo to stream the program at a later time, but that aspect of Aereo's service is not before us.").

If the Court finds Section 111 inapplicable and determines that it should enter a preliminary injunction, that injunction must be limited to the conduct the Supreme Court carved out from *Cablevision*'s general rule: the simultaneous or near-simultaneous streaming of over-the-air television programs.  The Supreme Court opinion did nothing to prohibit—and indeed reaffirms the vitality of—non-simultaneous playback from copies created by consumers.

For the foregoing reasons, the stay of discovery should remain in place.  The remaining expert depositions, which are the only remaining discovery needed before trial, should take place within the three months following the Court's decisions on the application of Section 111 and/or the scope of any injunction.

                                        Respectfully submitted,

                                        /s/ Bruce P. Keller_____

                                        Bruce P. Keller


cc:     R. David Hosp, Esq.
        Richard L. Stone, Esq.