UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
: 
AMERICAN BROADCASTING COMPANIES, INC.,      :
DISNEY ENTERPRISES, INC., CBS BROADCASTING   :
INC., CBS STUDIOS INC., NBCUNIVERSAL MEDIA,   :
LLC, NBC STUDIOS, LLC, UNIVERSAL NETWORK    :
TELEVISION, LLC, TELEMUNDO NETWORK GROUP    :
LLC, WNJU-TV BROADCASTING LLC,                        :
:
        Plaintiffs,      :
:
        v.      :    12 Civ. 1540 (AJN)
:    **[consolidated]**
AEREO, INC.,      :
:
        Defendant.      :
:
-----------------------------------------------------------------------X

## MEMORANDUM ON REMAND IN SUPPORT OF A PRELIMINARY INJUNCTION

Richard L. Stone (*pro hac vice*)
Kenneth D. Klein (*pro hac vice*)
Julie A. Shepard (*pro hac vice*)
JENNER & BLOCK LLP
633 West Fifth Street
Los Angeles, CA 90071
Tel:   (213) 239-5100
Fax:   (213) 239-5199

*Counsel for the WNET Plaintiffs*

Bruce P. Keller
Jeffrey P. Cunard
Matthew E. Fishbein
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel:   (212) 909-6000
Fax:   (212) 909-6836

*Counsel for the ABC Plaintiffs*

Dated:     August 15, 2014

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

DISCUSSION .................................................................................................. 5

I.      Plaintiffs Have Satisfied All Of The Prerequisites For Entry Of A
        Preliminary Injunction. ....................................................................... 5

II.     Aereo Cannot Avoid A Preliminary Injunction By Belatedly Claiming
        That It Now Qualifies For The Section 111 Compulsory License. ...................... 7

        A.      The Court In *Aereo III* Did Not Rule That Aereo Qualifies For The
                Section 111 License Nor Did It Overrule *ivi*. .................................... 8

        B.      The Copyright Office Has Not Granted Aereo A Section 111
                Compulsory License By "Provisionally Accepting" Its Statements Of
                Account. ........................................................................... 11

III.    The Injunction Cannot Properly Be Confined To What Aereo Terms "Near
        Simultaneous" Retransmissions........................................................... 13

IV.     The Injunction Should Be Nationwide. .................................................. 15

        CONCLUSION.................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Broadcasting Companies, Inc., v. Aereo, Inc.,*
    874 F. Supp. 2d 373 (S.D.N.Y. 2012)..................................................1, 5, 6

*American Broadcasting Companies, Inc. v. Aereo, Inc.,*
    134 S. Ct. 2498 (2014)..........................................................................*passim*

*CBS Broadcasting, Inc. v. FilmOn.com, Inc.,*
    No. 10-7532, 2014 WL 3702568 (S.D.N.Y. July 24, 2014)...................3, 11

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
    467 U.S. 837 (1984)........................................................................................9

*Community Television of Utah, LLC v. Aereo, Inc.,*
    --- F. Supp. 2d ---, 2014 WL 642828 (D. Utah 2014)..........................1, 6, 16

*Fox Television Stations, Inc. v. BarryDriller Content Systems, PLC,*
    915 F. Supp. 2d 1138 (C.D. Cal. 2012) ...............................................6, 16

*Fox Television Stations, Inc. v. FilmOn X LLC,*
    966 F. Supp. 2d 30 (D.D.C. 2013) .......................................................6, 16

*Glover v. United States,*
    531 U.S. 198 (2001)........................................................................................9

*In re Ivan F. Boesky Sec. Litig.,*
    957 F.2d 65 (2d Cir. 1992).........................................................................15

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,*
    549 U.S. 443 (2007)........................................................................................8

*United States v. Mason,*
    412 U.S. 391 (1973)......................................................................................10

*WNET, Thirteen v. Aereo, Inc.,*
    712 F.3d 676 (2d. Cir. 2013)....................................................................1, 5, 6

*WPIX, Inc. v. ivi, Inc.,*
    691 F.3d 275 (2d Cir. 2012)....................................................................*passim*

*WPIX, Inc. v. ivi, Inc.,*
    765 F. Supp. 2d 594 (S.D.N.Y. 2011)................................................................3, 12

**STATUTES**

17 U.S.C. § 101................................................................................2, 4, 14

17 U.S.C. § 111....................................................................................*passim*

17 U.S.C. § 119..............................................................................................10

17 U.S.C. § 122..............................................................................................10

17 U.S.C. § 502..............................................................................................15

**OTHER AUTHORITIES**

37 C.F.R. § 201.17..........................................................................................13

47 C.F.R. § 76.64..............................................................................................8

H.R. Rep. No. 94-1476 (1976)......................................................................16

S. Rep. No. 94-473 (1975)..............................................................................16

## PRELIMINARY STATEMENT

In *American Broadcasting Companies, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014) ("*Aereo III*"), the Supreme Court held that "Aereo 'perform[s]' copyrighted works 'publicly,' as those terms are defined by the Transmit Clause," when Aereo streams broadcast television programming over the Internet to its subscribers. *Id*. at 2511. Consistent with the Supreme Court's opinion and mandate in *Aereo III*, Aereo must be enjoined from streaming, transmitting, retransmitting, or otherwise publicly performing any of Plaintiffs' programming over the Internet (through websites such as aereo.com), or by means of any device or process.

This Court originally denied Plaintiffs' motion for a preliminary injunction because it believed that Second Circuit law interpreting the Transmit Clause required a holding that Aereo did not publicly perform Plaintiffs' copyrighted programs.   The Second Circuit affirmed the order denying the preliminary injunction for the same reason. *See WNET, Thirteen v. Aereo, Inc.,* 712 F.3d 676, 690-94 (2d. Cir. 2013) ("*Aereo II*"), *aff'g American Broadcasting Companies, Inc., v. Aereo, Inc.*, 874 F. Supp. 2d 373 (S.D.N.Y. 2012) ("*Aereo I*").   Now that the Supreme Court has reversed the Second Circuit's holding, Plaintiffs respectfully request that the Court enter a preliminary injunction against Aereo and that it do so in the form attached hereto as Exhibit A ("Proposed Order").   The Proposed Order is materially identical to the order that the United States District Court for the District of Utah, unconstrained by the Second Circuit's prior interpretation of the Transmit Clause, entered against Aereo in *Community Television of Utah, LLC v. Aereo, Inc.*, --- F. Supp. 2d ---, 2014 WL 642828 (D. Utah

2014) ("*Community Television v. Aereo*").  *See* Exhibit B ("Utah Order").  While Aereo has appealed the Utah court's decision, it did not object to the form of the Utah Order at the time of its entry.

Aereo attempts to avoid an injunction by desperately pitching *Aereo III* as an endorsement of its infringing business model; it claims the Supreme Court determined that Aereo is now entitled to a "compulsory" license under Section 111 of the Copyright Act, 17 U.S.C. § 111.  But the Court held only that Aereo publicly performs Plaintiffs' copyrighted works under the Transmit Clause, an intentionally "broad" provision that explicitly reaches anyone who transmits a performance "to the public" by means of "any device or process."  134 S. Ct. at 2509; *accord* 17 U.S.C. § 101.  Although the Court was clearly aware of Section 111, as the Justices raised it during oral argument, the *Aereo III* opinion notably does not say that Aereo is a cable system for purposes of Section 111 or that Aereo is entitled to the enormous benefits of the Section 111 compulsory license. The issue was simply not before the Court in *Aereo III* because Aereo had repeatedly denied being a cable system entitled to the Section 111 license.

*Aereo III* also does not even mention, let alone overrule, the controlling Second Circuit law—*WPIX*, *Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012) ("*ivi*"), *cert. denied*, 133 S. Ct. 1585 (2013)—which held that Internet retransmission services (which would include Aereo) are not "cable systems" under the Copyright Act and do not qualify for the narrowly-defined Section 111 license.  *Id*. at 284.  Judge Buchwald reached that very conclusion three weeks ago, rejecting Aereo-clone FilmOn's Section 111 license defense and holding it in contempt for streaming Plaintiffs' programming over the Internet

following *Aereo III.  See CBS Broadcasting, Inc. v. FilmOn.com, Inc.*, No. 10-7532, 2014 WL 3702568, at *4 (S.D.N.Y. July 24, 2014) ("*FilmOn.com*").  The Copyright Office, which Congress entrusted with responsibility for administering the Section 111 license, likewise has advised Aereo (and FilmOn) that nothing in *Aereo III* alters the Office's long-held view, affirmed by *ivi*, that retransmissions of broadcast signals over the Internet fall outside the scope of the Section 111 license.  *See* Exhibits C & D.

Aereo attempts to make much of the statement in *Aereo III* that "Aereo's practices . . . [are] highly similar to those of [cable systems]."  134 S. Ct. at 2511.  But simply retransmitting broadcast programming, while sufficient to bring Aereo within the broad Transmit Clause, is not sufficient to bring Aereo within the narrow Section 111 license. Otherwise any broadcast retransmission service whatsoever, including the proverbial Internet-savvy "kid in the dorm room," would qualify for the Section 111 license.  *See WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 610 (S.D.N.Y. 2011) ("*ivi I*").  The thirty-five years of history following Section 111's enactment, which has seen the emergence of other broadcast retransmission technologies that did not qualify for the Section 111 license, aptly demonstrates that that is not the case.

Aereo also attempts to limit the injunction to what it terms "near-simultaneous" retransmissions.  Aereo's suggestion that it can avoid publicly performing Plaintiffs' programs merely by retransmitting the programs to subscribers at some later time,

however, is irreconcilable with the Supreme Court's opinion and the text of the Transmit Clause.[1]

The Supreme Court in *Aereo III* made clear that Aereo publicly performs Plaintiffs' copyrighted works when it retransmits those works to subscribers over the Internet, *regardless of any time delay that may occur*. *See* 134 S. Ct. at 2510 (the fact that "Aereo's subscribers may receive the same programs at different times . . . does not help Aereo. . . for the Transmit Clause expressly provides that an entity may perform publicly [when] 'the members of the public capable of receiving the performance . . . receive it . . . at different times'") (quoting 17 U.S.C. § 101).   Even with a time delay, Aereo's service still involves retransmitting contemporaneously-perceptible images and sounds of Plaintiffs' programs to the public without authorization.

---

[1]   That suggestion also is inconsistent with the record.  Aereo itself has emphasized that its live and time-delayed services are inextricably intertwined.   They are the same service; the only distinction is whether the subscriber chooses to delete (Watch Now) or to save (Record) a copy of a program after its live transmission.  *See* Kanojia Declaration filed 7/31/14 ¶ 7 [Dkt. 319 (stricken by Court order on August 1, 2014 [Dkt. 321])] ("[T]he Aereo technology was not set up to distinguish between operation of the 'Watch Now' function and 'Record' function – the only difference between the two was a setting on whether the user's recording was automatically deleted after the conclusion of the program.  As a result, Aereo could not just 'turn off' the simultaneous live viewing."); *see also* 5/30/2012 Hr'g Tr. at 141:7-141:13 (Kanojia) ("Q:  Technologically speaking, in terms of what is actually going on within the system and how the recording is being made, what is the difference between watching the program that is airing right now using record mode and watching the program that's airing right now in watch mode? A. Technologically, and how the system functions, there is no distinction."); *id.* at 140:18-141:1 (Kanojia) (it is "possible to watch live television in the record mode" by setting up a "recording and join[ing] that recording and start[ing] a playback of that recording almost immediately").  Thus, as its system is currently structured, Aereo cannot turn off Watch Now without also turning off Record.

Aereo is an adjudicated infringer.  It has been trampling on Plaintiffs' copyrights for over two years and has collected hundreds of thousands of dollars in subscriber fees while doing so.  Plaintiffs are entitled to an injunction protecting their rights, and in order to protect those rights the injunction must bar Aereo from publicly performing Plaintiffs' copyrighted works by streaming, retransmitting or any other means.

## DISCUSSION

### I.   Plaintiffs Have Satisfied All Of The Prerequisites For Entry Of A Preliminary Injunction.

Plaintiffs prevailed in the Supreme Court on the merits of their public performance claims.  In addition to rejecting the Second Circuit's interpretation of the Transmit Clause in the context of Aereo's service, the Supreme Court also rejected Aereo's characterization of itself as a mere provider of remote antennas and DVRs.  The Court held that Aereo "performs" under the Copyright Act—notwithstanding the fact that its system captures, records, and retransmits programs only in response to subscriber requests.  134 S. Ct. at 2506-07.  In light of the Supreme Court's opinion in *Aereo III*, Plaintiffs have demonstrated the requisite likelihood of success on the merits of their claim that Aereo's Internet retransmission service infringes their exclusive public performance rights.

This Court already has concluded that Aereo's unauthorized Internet retransmission service irreparably harms Plaintiffs and that the entry of a preliminary injunction would not disserve the public interest.  *See Aereo I*, 874 F. Supp. 2d at 396-404.  Those conclusions are consistent with the Second Circuit's decision in *ivi*,

upholding the district court's finding that the unauthorized retransmission of broadcast programming over the Internet irreparably harms copyright owners and that enjoining such a service does not disserve the public interest. *See* 691 F.3d at 285-88 ; *accord Community Television v. Aereo*, 2014 WL 642828, at *9-10; *Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30, 49-51 (D.D.C. 2013) ("*FilmOn X*"); *Fox Television Stations, Inc. v. BarryDriller Content Systems, PLC*, 915 F. Supp. 2d 1138, 1147-48 (C.D. Cal. 2012) ("*BarryDriller*").

This Court previously determined that the balance of hardships did not tip "decidedly" in Plaintiffs' favor. *See Aereo I*, 874 F. Supp. 2d at 402-03. While the Second Circuit agreed with that determination, it did so because it mistakenly thought that Plaintiffs had not established a likelihood of success. *See Aereo II,* 712 F.3d at 684 ("[T]he balance of hardships is largely a function of whether the harm Aereo would suffer from the issuance of an injunction is legally cognizable, which in turn depends on whether Aereo is infringing the Plaintiffs' copyrights."); *id.* at 695-96 (same). Because Plaintiffs have now established the requisite likelihood of success, the balance of hardships tips decidedly in Plaintiffs' favor. "It is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product." *ivi*, 691 F.3d at 287; *accord, Community Television v. Aereo.*, 2014 WL 642828 at *9-*10; *FilmOn X*, 966 F. Supp. 2d at 51; *BarryDriller,* 915 F. Supp. 2d at 1147-48.

## II.   Aereo Cannot Avoid A Preliminary Injunction By Belatedly Claiming That It Now Qualifies For The Section 111 Compulsory License.

Throughout the prior proceedings before this Court and the Supreme Court, Aereo repeatedly represented that it was not raising a Section 111 defense.[2] *See* Defendant's Initial Pre-Hearing Memorandum at 15-16 [Dkt. 30] ("***Aereo . . . does not claim it is a 'cable system,'*** and these cases [*ivi I* and *FilmOn.com*] thus are irrelevant to the issues here.") (emphasis added); Tr. of Oral Argument, *Am. Broad. Cos., Inc. v. Aereo, Inc.*, No. 13-461 (U.S. Apr. 22, 2014) at 28:8-14 (D. Frederick, counsel for Aereo), *available at* http://www.supremecourt.gov/oral_arguments/argument_transcripts/13-461_o7jp.pdf. ("Now, we are not a cable service.  The reason we're not a cable service is because cable takes all signals and pushes them down.  There's a head [end].  It's defined by statute. There's a very particularized regulatory structure that deals with taking a lot of content and pushing it down to consumers."); Br. for Respondent at 34 n. 17, *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014) (No. 13-461) ("Petitioners do not argue that Aereo is a 'cable system' under § 111, and Aereo is not one.").

---

[2]   Congress enacted Section 111, 17 U.S.C. § 111, as part of the 1976 Copyright Revision Act.  Section 111(c) of the Act, 17 U.S.C. § 111(c), states that, under certain circumstances, "secondary transmissions" of "primary transmission[s] made by a broadcast station . . . shall be subject to statutory licensing" if made by a "cable system." Among other things, the secondary transmissions must be "permissible" under the rules of the Federal Communications Commission ("FCC") and the cable system must timely deposit statutorily-prescribed royalties with the Copyright Office.  As the courts in *ivi* and the Copyright Office have concluded, Congress intended the Section 111 license to cover traditional cable services that bear no resemblance to Aereo's Internet service, other than that each retransmits broadcast programming.  Congress accorded the Section 111 license in 1976 to an industry that was (and remains) heavily regulated by the FCC and that incurs substantial costs developing and maintaining its own infrastructure and securing franchises on a community-by-community (or state-by-state) basis.

Now that it has lost on appeal, Aereo's position has changed. Aereo now claims, based on a misreading of the Supreme Court's opinion, that it is a "cable system," at least for purposes of securing the benefits of the Section 111 license—although, Aereo suggests, it is not a "cable system" for purposes of complying with FCC rules, which require, among other things, that cable systems obtain the consent of broadcast stations before retransmitting their signals. *See* 47 C.F.R. § 76.64. Aereo is wrong. The Supreme Court did not hold that Aereo is a "cable system" under Section 111 of the Copyright Act or that it is entitled to a Section 111 license. Aereo is not entitled to the Section 111 license, as the Second Circuit's *ivi* decision and rulings of the Copyright Office make clear.[3]

### A.   The Court In *Aereo III* Did Not Rule That Aereo Qualifies For The Section 111 License Nor Did It Overrule *ivi*.

Aereo predicates its change-of-theory on *Aereo III,* claiming the Supreme Court ruled that Aereo is a "cable system" for purposes of Section 111. Preliminarily, *Aereo III* cannot properly be construed as extending the Section 111 license to Aereo and other Internet retransmission services because Aereo never argued before the Supreme Court that it is entitled to the Section 111 compulsory license and, in fact, insisted that it is not a cable system and is not entitled to the Section 111 license. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 455 (2007) ("[W]e ordinarily do not

---

[3]   Aereo's Section 111 "defense" is procedurally defective. Before that defense could be "properly raised," *see* Mandate, *WNET, Thirteen v. Aereo, Inc.*, 12-2807, Dkt. 349 (2d Cir. Aug. 6, 2014), Aereo would need to move for leave to amend its answer to assert that defense and leave to do so would need to be granted.

consider claims that were neither raised nor addressed below[.]"); *Glover v. United States*, 531 U.S. 198, 205 (2001) ("As a general rule . . . we do not decide issues outside the questions presented by the petition for certiorari.").

More importantly, however, the *Aereo III* opinion does *not* hold that Aereo is a cable system entitled to a Section 111 license, even though the Court was clearly aware of Section 111, as Aereo points out.   The opinion contains no discussion of Aereo's entitlement to a Section 111 license at all.   There is no analysis of the statutory framework governing the Section 111 license (including its history and purpose) nor of its relationship to the regulations of the FCC, no discussion of the statutory and administrative requirements for such a license, and no mention of the *ivi* decision, which speaks directly to this issue and which the Supreme Court declined to review just last year.   The opinion also does not mention the Copyright Office's longstanding (and continuing) view that Internet retransmitters are not entitled to the Section 111 license—a view to which the Second Circuit in *ivi* deferred under the doctrine of *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  *See ivi*, 691 F.3d at 279-85.

Although Aereo is correct that the Supreme Court discussed Aereo's similarity to early cable systems, the Court did so in the context of analyzing the legislative history to determine whether Aereo "performs" within the meaning of the Copyright Act.   The Court concluded that Aereo does perform, and is not merely an equipment provider, because its broadcast retransmission service is functionally similar to the early community antenna television or cable systems that Congress intended to include within the scope of the Transmit Clause.  134 S. Ct. at 2506-07.  That is not the same as holding

that Aereo qualifies for the statutory license.  And it is certainly not the same as overruling *ivi*.  *See United States v. Mason*, 412 U.S. 391, 395 (1973) (when the Supreme Court 'did not so much as mention' a decision, it cannot be said to have questioned or overruled that decision).

In *ivi*, the Second Circuit thoroughly considered Section 111's extensive "legislative history, development, and purpose" as well as its administrative history.  691 F.3d at 284.  After doing so, and noting that Section 111 must be narrowly construed, *id*. at 281-82, the Second Circuit unequivocally concluded that Congress did not intend for Section 111 to extend to any Internet retransmission service.  *Id*. at 284-85.

*Aereo III* says no more than that Aereo is similar to cable systems because both retransmit broadcast signals to paying subscribers.  That similarity does not make Aereo eligible for the Section 111 license.  Satellite television services comparable to DirecTV and DISH once argued that they too were similar to cable systems and thus qualified for the Section 111 license.  However, the Copyright Office and ultimately the United States Court of Appeals for the Eleventh Circuit ruled that satellite carriers were not eligible for the Section 111 license.  And Congress established separate compulsory licenses for the satellite carriers tailored to their operations.  *See ivi*, 691 F.3d at 281; 17 U.S.C. §§ 119 & 122.  Likewise, microwave services once argued that because they are very similar to cable systems, they too are entitled to the 111 license.  The Copyright Office rejected that argument and Congress responded by amending Section 111 to bring microwave services within the 111 license.  *See ivi*, 691 F.3d at 282.  Similarity to cable simply does not equate to eligibility for the narrow Section 111 license.

Last month, FilmOn, which purports to be technologically identical to Aereo, made the same Section 111 argument to Judge Buchwald that Aereo makes here, *i.e.*, that it is entitled to the Section 111 license because *Aereo III* said that Aereo is similar to cable. Judge Buchwald properly rejected the argument as a "mischaracterization of the holding in *Aereo* [*III*]," explaining that "**[a] series of statements that Aereo . . . is very similar to a cable system is not the same as a judicial finding that Aereo and its technological peers are, in fact, cable companies entitled to retransmission licenses under § 111 of the Copyright Act.**" *FilmOn.com*, 2014 WL 3702568, at *4 (emphasis added). Holding that FilmOn is not entitled to the Section 111 license, Judge Buchwald relied on the Second Circuit's decision in *ivi* that "Congress did not intend for § 111 licenses to extend to Internet retransmissions." *Id.* (citing *ivi*, 691 F.3d at 284). Judge Buchwald concluded that "the governing law in the Second Circuit is that services like [Aereo] that retransmit broadcast programming are *not* entitled to compulsory licenses under § 111 of the Copyright Act," and there was nothing "in the Supreme Court's recent decision in [*Aereo III*] that would alter this conclusion." *Id.* at *4-*6 (emphasis in original).

### B. The Copyright Office Has Not Granted Aereo A Section 111 Compulsory License By "Provisionally Accepting" Its Statements Of Account.

In its failed attempt to by-pass this Court and take its Section 111 defense straight to the Second Circuit, Aereo advised the Second Circuit that its Section 111 application "has been provisionally accepted" by the Copyright Office, suggesting that the Office has no issue with Aereo's Section 111 claim. Letter from D. Hosp to C. Wolfe at 3, *WNET,*

*Thirteen v. Aereo, Inc.*, No. 12-2807, Dkt. 333 (2d Cir. July 24, 2014).  That is a serious misrepresentation by omission.  The Copyright Office's letter to Aereo unequivocally reaffirmed the Office's longstanding view, in which Congress has acquiesced, that "internet retransmissions of broadcast television fall outside the scope of the Section 111 license."  *See* Exhibit C (Copyright Office July 16, 2014 letter to Aereo).  Citing *ivi*, the Office also stated it does "not see anything in the Supreme Court's recent decision in [*Aereo III*] that would alter [the] conclusion" that Aereo cannot "qualif[y] for the Section 111 statutory license."  *Id*.  The Office provided a similar response to FilmOn.  *See* Exhibit D.  Rather than "accepting" Aereo's application, the Office deferred rejecting it pending the outcome of Aereo's ongoing litigation.  *See id*.

The Copyright Office's response to Aereo and FilmOn is just the latest word on an issue about which that legislative agency has been consistent for decades.  As noted in *ivi I*, the Copyright Office's opinion that an Internet retransmitter "does not qualify for" a Section 111 license has been "unwavering" over the years and the Copyright Office essentially views that "matter as settled law."  *ivi I*, 765 F. Supp. 2d at 604-05.  Aereo's suggestion that the Copyright Office now has a different view, no longer thinks *ivi* is correct, or reads *Aereo III* to have changed the law, is misleading—at the least.

It is equally misleading to suggest that Aereo somehow has a Section 111 license simply because the Copyright Office accepted (provisionally) Aereo's statement of account.  Copyright Office regulation establishes precisely the opposite:

> [C]ompletion by the Copyright Office of the final processing of a Statement of Account and royalty fee

> deposit shall establish only the fact of such completion and the date or dates of receipt shown in the official record. **It shall in no case be considered a determination that the Statement of Account was, in fact, properly prepared and accurate . . . or that any other requirements to qualify for a compulsory license have been satisfied.**

37 C.F.R. § 201.17(c)(2) (emphasis added).

## III.   The Injunction Cannot Properly Be Confined To What Aereo Terms "Near Simultaneous" Retransmissions.

Aereo has argued that the injunction against it should be limited to the "near simultaneous transmission of over the air television broadcasts." Letter from D. Hosp to C. Wolfe at 5, *WNET, Thirteen v. Aereo, Inc.*, No. 12-2807, Dkt. 333 (2d Cir. July 24, 2014). In its now-stricken emergency motion, Aereo also argued (wrongly) that the Supreme Court found what Aereo refers to as its "time-shifted 'Record' function" to be non-infringing, and it suggested that it will offer some type of delayed-retransmission service in the future, whenever it can determine how to do so technologically. Memo. in Support of Aereo's Emergency Motion, Dkt. 318 at 3 (stricken by Court order on August 1, 2014 [Dkt. 321]). Aereo's suggestion that it can operate without infringing as long as it delays retransmissions so they are not made simultaneously with the original broadcast reflects a serious misunderstanding of *Aereo III* and the law.

The Supreme Court's interpretation of the Transmit Clause makes clear that Aereo's retransmissions of the same programs to its subscribers are public performances, regardless of whether the retransmissions are made at the "same time" or at "different times." 134 S. Ct. at 2509-10. Specifically, the Supreme Court held that Aereo publicly performs Plaintiffs' copyrighted programs when it retransmits their contemporaneously

perceptible images and sounds to its subscribers over the Internet.  *Id*. at 2509.  And it

made clear that Aereo's retransmissions are a public performance *even if they do not*

*occur simultaneously with the broadcast or with each other*:

> Finally, we note that Aereo's subscribers may receive the
> same programs ***at different times*** and locations . . . .  [That]
> does not help Aereo, . . . [because] the Transmit Clause
> expressly provides that an entity may perform publicly
> "whether the members of the public capable of receiving
> the performance . . . receive it in the same place or in
> separate places and at the same time or at ***different times***."
> In other words, "the public" need not be situated together,
> spatially or ***temporally***.

*Id.* at 2510 (quoting 17 U.S.C. § 101) (emphasis added, internal citation omitted).

Despite this unambiguous holding, Aereo claims it is devising another

technological workaround which, according to its emergency motion, involves

"uncoupling" its Watch Now function from its "time-shifted 'Record' function."  Memo.

in Support of Aereo's Emergency Motion, Dkt. 318 at 3.  But the Supreme Court has held

that Aereo cannot, in the first instance, lawfully retransmit the programming that would

be recorded.  Thus, while the *Aereo III* opinion expressly reserves the issue of remote

storage DVRs and cloud-storage services in other circumstances, 134 S. Ct. at 2511, this

does not assist Aereo.  As the Supreme Court held, Aereo's subscribers' copies are not

lawfully acquired; instead, they are received from Aereo's unlicensed and infringing

service:  "Neither the record nor Aereo suggests that Aereo's subscribers receive

performances in their capacities as owners or possessors of the underlying works. . . .

[A]n entity that transmits a performance to individuals in their capacities as owners or

possessors does not perform to 'the public,' whereas an entity like Aereo that transmits to

large numbers of paying subscribers who lack any prior relationship to the works does so perform." *Id*. at 2510.

Finally, any technological workaround would still infringe under the reasoning of *Aereo III*, since it would still involve retransmitting the contemporaneously perceptible images and sounds of Plaintiffs' programs to the public without authorization. Regardless of when Aereo's subscribers view the programming (if at all), Aereo's unauthorized retransmission service renders multiple subscribers "capable of receiving" the "contemporaneously perceptible images and sounds" of the programs, and thus, as the Supreme Court held in *Aereo III*, Aereo is publicly performing those programs.  A time delay does not change that fact.  *Id*.

Plaintiffs are entitled to a preliminary injunction that affords them complete and meaningful relief consistent with *Aereo III*.  *See In re Ivan F. Boesky Sec. Litig.*, 957 F.2d 65, 69 (2d Cir. 1992) (district court's actions on remand must carry out appellate mandate and give it full effect).

## IV.    The Injunction Should Be Nationwide.

Section 502(a) of the Copyright Act, 17 USC § 502(a), provides that a court "may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  Section 502(b) of the Act, 17 U.S.C. § 502(b), provides that any such injunction "*shall* be operative throughout the United States and *shall* be enforceable" by any United States court with personal jurisdiction. (Emphasis added).  Congress intended copyright injunctions to apply nationwide:  "a copyright owner who has obtained an injunction in one State will be able to enforce it

against a defendant located anywhere else in the United States."  H.R. Rep. No. 94-1476 at 160 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659; *accord* S. Rep. No. 94-473 at 142 (1975).

Previously, concerns of comity persuaded other courts to limit the geographic scope of an injunction in cases involving services similar to Aereo.  *See FilmOn X*, 966 F. Supp. 2d at 51-52; *BarryDriller*, 915 F. Supp. 2d at 1148; *Community Television v. Aereo*, 2014 WL 642828, at *10.  However, the Supreme Court's decision in *Aereo III* alleviates those concerns.  As far as infringing public performances by Aereo are concerned, there are no conflicts between the law of the Second Circuit and any other circuit in the United States.  The Second Circuit in *ivi* affirmed a preliminary injunction that prohibited the unauthorized Internet retransmission of broadcast programming to subscribers anywhere in the nation.  The injunction against Aereo—which expanded into nine cities throughout the United States during the past two years[4]—likewise should be nationwide.

---

[4]   *See* http://blog.aereo.com/2014/01/aereo-announces-launch-date-cincinnati/ (announcing Aereo's January 2014 launch in Greater Cincinnati region following its 2013 expansion into Boston, Atlanta, Miami, Salt Lake City, Houston, Dallas, Detroit, Denver and Baltimore metropolitan areas).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the Proposed Order Granting Preliminary Injunction attached as Exhibit A.


Dated:      August 15, 2014
            New York, New York


/s/ Richard L. Stone

Richard L. Stone (*pro hac vice*)
Kenneth D. Klein (*pro hac vice*)
Julie A. Shepard (*pro hac vice*)
JENNER & BLOCK LLP
633 West Fifth Street
Los Angeles, CA 90071
Tel:    (213) 239-5100
Fax:    (212) 239-5199

*Counsel for the WNET Plaintiffs*

/s/ Bruce P. Keller

Bruce P. Keller
Jeffrey P. Cunard
Matthew E. Fishbein
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel:   (212) 909-6000
Fax:   (212) 909-6836

*Counsel for the ABC Plaintiffs*

17

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

WNET, THIRTEEN, FOX TELEVISION )
STATIONS, INC., TWENTIETH CENTURY )
FOX FILM CORPORATION, WPIX, LLC, )
UNIVISION TELEVISION GROUP, INC., THE )    ECF Case
UNIVISION NETWORK LIMITED )
PARTNERSHIP, and PUBLIC )
BROADCASTING SERVICE, )    Case No. 12-civ-1540-AJN
)    (Consolidated)
Plaintiffs, )
)
v. )
)
AEREO, INC. f/k/a BAMBOOM LABS, INC., )
)
Defendant. )
)
_____ )

## [PROPOSED] PRELIMINARY INJUNCTION

This Court, having considered all the submissions in support of, and in opposition to, the

Motion for Preliminary Injunction filed by Plaintiffs WNET, THIRTEEN, Fox Television

Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, LLC, Univision Television

Group, Inc., The Univision Network Limited Partnership, Public Broadcasting Service,

American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS Broadcasting Inc., CBS

Studios Inc., NBCUniversal Media, LLC, NBC Studios, LLC, Universal Network Television,

LLC, Telemundo Network Group LLC, and WNJU-TV Broadcasting LLC, all matters presented

at the hearing on this Motion, and *American Broadcasting Co. v. Aereo, Inc.*, 134 S. Ct. 2498

(2014), overturning *WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676 (2d Cir. 2013), and remanding

this case for further proceedings before this Court consistent with that opinion, and good cause

appearing, hereby GRANTS the Motion and ORDERS THAT:

2299300.1

1. For purposes of this Preliminary Injunction, the following definitions shall apply:

   a. "Plaintiffs" shall mean Plaintiffs WNET, THIRTEEN, Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, LLC, Univision Television Group, Inc., The Univision Network Limited Partnership, Public Broadcasting Service, American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS Broadcasting Inc., CBS Studios Inc., NBCUniversal Media, LLC, NBC Studios, LLC, Universal Network Television, LLC, Telemundo Network Group LLC, and WNJU-TV Broadcasting LLC.

   b. "Defendant" shall mean Defendant Aereo, Inc. (formerly known as Bamboom Labs, Inc.).

   c. "Copyrighted Programming" shall mean each of those broadcast television programming works, or portions thereof, whether now in existence or later created, including but not limited to original programming, motion pictures and newscasts, in which the Plaintiffs, or any of them, (or any parent, subsidiary, or affiliate of any of the Plaintiffs) owns or controls an exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 et seq.

2. Pending a final resolution of this action, Defendant, and all of its parents, subsidiaries, affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order (the "Enjoined Parties") are preliminarily enjoined from streaming, transmitting, retransmitting, or otherwise publicly performing any Copyrighted Programming over the Internet (through websites such as aereo.com), or by means of any device or process throughout the United States of America.

3.  Violation of this Preliminary Injunction shall expose Defendant and all other persons bound by this Preliminary Injunction to all applicable penalties, including contempt of Court.

4.  Within three court days of the effective date of this Preliminary Injunction, Defendant shall file and serve a report in writing and under oath setting forth in detail the manner and form with which Defendant has complied with the Preliminary Injunction.

5.  Nothing herein shall restrict Plaintiffs' ability to seek to amend this injunction or to seek permanent injunctive relief with terms that are broader in scope than those delineated herein.


IT IS SO ORDERED.


Dated: _____          _____
                                        ALISON J. NATHAN
                                        United States District Court Judge

2299300.1

# Exhibit B

Brent O. Hatch (5715)
Shaunda L. McNeill (14468)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
  bhatch@hjdlaw.com
  smcneill@hjdlaw.com

Richard L. Stone (pro hac vice)
Julie A. Shepard (pro hac vice)
Amy M. Gallegos (pro hac vice)
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
  rstone@jenner.com
  jshepard@jenner.com
  agallegos@jenner.com

*Attorneys for Plaintiffs*
*Community Television of Utah, LLC d/b/a*
*KSTU FOX 13, KUTV Licensee, LLC d/b/a*
*KMYU and KUTV, and Fox Broadcasting*
*Company*

Rodney R. Parker (4110)
Adam M. Pace (14278)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: 801.521.9000
  rrp@scmlaw.com
  amp@scmlaw.com

John C. Ulin (pro hac vice)
ARNOLD & PORTER LLP
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017-5844
Telephone: 213.243.4000
  john.ulin@aporter.com

Robert Alan Garrett (pro hac vice)
Hadrian R. Katz (pro hac vice)
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
Telephone: 202.942.5000
  robert.garrett@aporter.com
  hadrian.katz@aporter.com

*Attorneys for Plaintiff*
*Nexstar Broadcasting, Inc.*

## IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COMMUNITY TELEVISION OF UTAH, LLC d/b/a KSTU FOX 13, KUTV LICENSEE, LLC d/b/a KUTV and KMYU, and FOX BROADCASTING COMPANY,<br><br>     Plaintiffs,<br>vs.<br><br>AEREO, INC.,<br><br>     Defendant. | **ORDER GRANTING MOTIONS FOR PRELIMINARY INJUNCTION**<br><br>Civil No. 2:13-cv-00910<br><br>Judge Dale A. Kimball |

| NEXSTAR BROADCASTING, INC. | |
|---|---|
|      Plaintiff,<br>vs. | |
| AEREO, INC. | |
|      Defendant. | |

This Court, having considered all the submissions in support of, and in opposition to, the Motions for Preliminary Injunction filed by Plaintiffs Community Television of Utah, LLC, doing business as KSTU FOX 13; KUTV Licensee, LLC d/b/a KMYU and KUTV; Fox Broadcasting Company; and Nexstar Broadcasting, Inc. (collectively, "Plaintiffs"), and having considered all matters presented at the hearing on these Motions, and good cause appearing, for the reasons stated in the Memorandum Decision issued on February 19, 2014 (Dkt. 87), hereby GRANTS the Motions and ORDERS THAT:

1.     For purposes of this Preliminary Injunction, the following definitions shall apply:

     a.     "Plaintiffs" shall mean Plaintiffs Community Television of Utah, LLC, doing business as KSTU FOX 13; KUTV Licensee, LLC d/b/a KMYU and KUTV; Fox Broadcasting Company; and Nexstar Broadcasting, Inc.

     b.     "Defendant" shall mean Defendant Aereo, Inc.

     c.     "Copyrighted Programming" shall mean each of those broadcast television programming works, or portions thereof, whether now in existence or later created, including but not limited to original programming, motion pictures and newscasts, in which the Plaintiffs, or any of them, (or any parent, subsidiary, or affiliate of any of the Plaintiffs) owns or controls an exclusive right under the United States Copyright Act, 17 U.S.C. §§ 101 et seq.

2. Pending a final resolution of this action, Defendant, and all of its parents, subsidiaries, affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order (the "Enjoined Parties") are preliminarily enjoined from streaming, transmitting, retransmitting, or otherwise publicly performing, displaying, or distributing any Copyrighted Programming over the Internet (through websites such as aereo.com), or by means of any device or process within the geographic boundaries of the Court of Appeals for the Tenth Circuit.

3. Violation of this Preliminary Injunction shall expose Defendant and all other persons bound by this Preliminary Injunction to all applicable penalties, including contempt of Court.

4. Plaintiffs shall post a bond in the amount of $150,000.00, upon which this injunction will immediately take effect.

5. Within three court days of the effective date of this Preliminary Injunction, Defendant shall file and serve a report in writing and under oath setting forth in detail the manner and form with which Defendant has complied with the Preliminary Injunction.

6. Nothing herein shall restrict Plaintiffs' ability to seek to amend this injunction or to seek permanent injunctive relief with terms that are broader in scope than those delineated herein.

IT IS SO ORDERED.

Dated: February 25, 2014.

Dale A. Kimball, U.S. District Judge

3

# Exhibit C



**United States Copyright Office**
Library of Congress · 101 Independence Avenue SE · Washington, DC 20559-6000 · www.copyright.gov

**By Email and First-Class Mail**

July 16, 2014

Mr. Matthew Calabro
Aereo, Inc.
280 Summer Street
Boston, MA  02210

Re:  Section 111 Statement of Account Filings

Dear Mr. Calabro:

Invoking the statutory license for secondary transmissions by cable systems in 17 U.S.C. § 111, Aereo, Inc. ("Aereo"), has tendered to the U.S. Copyright Office fourteen statements of account ("SOAs") covering reporting periods from January 1, 2012 through December 31, 2013, along with associated royalty and filing fees totaling $5,310.74.

In the view of the Copyright Office, internet retransmissions of broadcast television fall outside the scope of the Section 111 license.[1]  Significantly, in *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012), the Second Circuit deferred to and agreed with the Office's interpretation of Section 111.  As explained in that case, Section 111 is meant to encompass "localized retransmission services" that are "regulated as cable systems by the FCC." *Id.* at 284 (quoting 57 Fed. Reg. 3284, 3292 (Jan. 29, 1992)).  We do not see anything in the Supreme Court's recent decision in *American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014), that would alter this conclusion.

According to established Copyright Office practice, the Office may accept Aereo's SOA filings without comment; accept them provisionally, either taking no position or commenting upon any reservations we may have about the filings; or refuse the filings as not eligible under the compulsory license.  *See* 53 Fed. Reg. 17962, 17963 (May 19, 1988).  For the reasons discussed above, the Office does not believe Aereo qualifies for the Section 111 statutory license, and will not process Aereo's filings at this time.[2]  In recognition of the fact that Aereo has raised the

---

[1] *See, e.g.*, U.S. Copyright Office, *A Review of the Copyright Licensing Regimes Covering Retransmission of Broadcast Signals* 91-99 (1997); *Copyright Broadcast Programming on the Internet: Hearing Before the Subcomm. on Courts and Intellectual Property of the Comm. on the Judiciary*, 106th Cong. 25-26 (2000) (statement of Marybeth Peters, Register of Copyrights).

[2] Because Aereo does not appear to be eligible for the statutory license, the Office does not at this time address other potential concerns about the adequacy of Aereo's filings under Section 111.

issue before the courts, however, the Office will not refuse Aereo's filings but will instead accept them on a provisional basis.[3]  Aereo should be aware that, depending upon further regulatory or judicial developments, and/or based upon the Office's own further review of the issue, the Office may subsequently determine that it is appropriate to take definitive action on Aereo's filings, which could include rejection of the statements.

Sincerely,

Jacqueline C. Charlesworth
General Counsel and Associate Register
   of Copyrights

cc:  Mr. Ramon Rivera, Aereo, Inc.

---

[3] We also note the pendency of a proceeding before the Federal Communications Commission concerning whether internet-based services may be treated as "multichannel video programming distributors" for purposes of communications law, the outcome of which could impact the analysis under Section 111, as Section 111 limits the statutory license to retransmission services that are "permissible under the rules, regulations, or authorizations of" the FCC.  *See Media Bureau Seeks Comment on Interpretation of the Terms "Multichannel Video Programming Distributor" and "Channel" As Raised in Pending Program Access Complaint Proceeding*, MB Docket No. 12-83, DA 12-507 (released Mar. 30, 2013), *available at* http://www.fcc.gov/document/media-bureau-seeks-comment-interpretation-mvpd-and-channel.

# Exhibit D



**United States Copyright Office**
Library of Congress · 101 Independence Avenue SE · Washington, DC 20559-6000 · www.copyright.gov

**By Email and First-Class Mail**

July 23, 2014

Yelena Calendar
3-1 N. Canon Dr. Suite #208
Beverly Hills, CA 90210

Re:  Section 111 Statement of Account Filings

Dear Ms. Calendar:

Invoking the statutory license for secondary transmissions by cable systems in 17 U.S.C. § 111, FilmOn.com, Inc. ("FilmOn") has tendered to the U.S. Copyright Office fourteen statements of account ("SOAs") covering reporting periods from January 1, 2014 to June 30, 2014, along with associated royalty and filing fees totaling $938.00.

We understand FilmOn to be an internet-based service that retransmits broadcast television programming.  In the view of the Copyright Office, such a service falls outside the scope of the Section 111 license.[1]  Significantly, in *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012), the Second Circuit deferred to and agreed with the Office's interpretation of Section 111.  As explained in that case, Section 111 is meant to encompass "localized retransmission services" that are "regulated as cable systems by the FCC."  *Id.* at 284 (quoting 57 Fed. Reg. 3284, 3292 (Jan. 29, 1992)).  We do not see anything in the Supreme Court's recent decision in *American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014), that would alter this conclusion.

According to established Copyright Office practice, the Office may accept FilmOn's SOA filings without comment; accept them provisionally, either taking no position or commenting upon any reservations we may have about the filings; or refuse the filings as not eligible under the compulsory license.  *See* 53 Fed. Reg. 17962, 17963 (May 19, 1988).  For the reasons discussed above, the Office does not believe FilmOn qualifies for the Section 111 statutory license, and will not process FilmOn's filings at this time.[2]  In recognition that the question of eligibility of internet-based retransmission services for the Section 111 license appears to have been raised

---

[1] *See, e.g.*, U.S. Copyright Office, *A Review of the Copyright Licensing Regimes Covering Retransmission of Broadcast Signals* 91-99 (1997); *Copyright Broadcast Programming on the Internet: Hearing Before the Subcomm. on Courts and Intellectual Property of the Comm. on the Judiciary*, 106th Cong. 25-26 (2000) (statement of Marybeth Peters, Register of Copyrights).

[2] Because FilmOn does not appear to be eligible for the statutory license, the Office does not at this time address other potential concerns about the adequacy of FilmOn's filings under Section 111.

again before the courts, however, the Office will not refuse FilmOn's filings but will instead accept them on a provisional basis.[3]  FilmOn should be aware that, depending upon further regulatory or judicial developments, and/or based upon the Office's own further review of the issue, the Office may subsequently determine that it is appropriate to take definitive action on FilmOn's filings, which could include rejection of the statements.

Lastly, we understand that FilmOn has communicated to our Licensing Division a desire to amend its recently submitted filings.  Any such amended SOA would be accepted on the provisional basis described above.  Should FilmOn choose to submit corrected filings, please be sure each amended SOA is accompanied by the requisite $150 fee.  *See* 37 C.F.R. 201.3(e).

Sincerely,

Jacqueline C. Charlesworth
General Counsel and Associate Register
  of Copyrights

---

[3] We also note the pendency of a proceeding before the Federal Communications Commission concerning whether internet-based services may be treated as "multichannel video programming distributors" for purposes of communications law, the outcome of which could impact the analysis under Section 111, as Section 111 limits the statutory license to retransmission services that are "permissible under the rules, regulations, or authorizations of" the FCC.  *See Media Bureau Seeks Comment on Interpretation of the Terms "Multichannel Video Programming Distributor" and "Channel" As Raised in Pending Program Access Complaint Proceeding*, MB Docket No. 12-83, DA 12-507 (released Mar. 30, 2013), *available at* http://www.fcc.gov/document/media-bureau-seeks-comment-interpretation-mvpd-and-channel.