UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN BROADCASTING COS., INC., DISNEY ENTERPRISES, INC., CBS BROADCASTING, INC., CBS STUDIOS INC., NBCUNIVERSAL MEDIA, LLC, NBC STUDIOS, LLC, UNIVERSAL NETWORK TELEVISION, LLC, TELEMUNDO NETWORK GROUP LLC, and WNJU-TV BROADCASTING LLC, <br><br> Plaintiffs/Counterclaim Defendants, <br> v. <br><br> AEREO, INC., <br><br> Defendant/Counterclaim Plaintiff. | Civil Action No. 12-CV-1540 (AJN) (HBP) |
| WNET, THIRTEEN, FOX TELEVISION STATIONS, INC., TWENTIETH CENTURY FOX FILM CORPORATION, WPIX, INC., UNIVISION TELEVISION GROUP, INC., THE UNIVISION NETWORK LIMITED PARTNERSHIP, and PUBLIC BROADCASTING SERVICE, <br><br> Plaintiffs/Counterclaim Defendants, <br> v. <br><br> AEREO, INC., <br><br> Defendant/Counterclaim Plaintiff. | Civil Action No. 12-CV-1543 (AJN) (HBP) |

**AEREO, INC.'S OPPOSITION TO**
**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**PAGE**

ARGUMENT ........................................................................................................................... 3

I.   PLAINTIFFS CANNOT SUCCEED ON THE MERITS BECAUSE AEREO IS
ENTITLED TO A COMPULSORY LICENSE UNDER 17 U.S.C. § 111 ........................ 3

    A.   CONGRESS OVERTURNED *FORTNIGHTLY* AND *TELEPROMPTER*
WITH THREE INEXTRICABLY INTERTWINED AMENDMENTS IN
THE 1976 ACT ................................................................................................ 5

    B.   AEREO'S "WATCH NOW" FUNCTIONALITY IS EXACTLY WHAT
CONGRESS INTENDED TO REACH WITH THE TRANSMIT CLAUSE
AND SECTION 111 .......................................................................................... 5

    C.   DURING ORAL ARGUMENT, THE SUPREME COURT MADE CLEAR ITS
VIEW THAT IF AEREO WERE A CABLE SYSTEM, IT WOULD BE
ELIGIBLE FOR A SECTION 111 LICENSE ....................................................... 6

    D.   AEREO ALSO MEETS THE DEFINITION OF A "CABLE SYSTEM"
UNDER SECTION 111 ...................................................................................... 8

        1.   AEREO IS A FACILITY .......................................................................... 9

        2.   AEREO'S FACILITY RECEIVES SIGNALS .......................................... 9

        3.   AEREO'S EQUIPMENT TRANSMITS THOSE SIGNALS TO
SUBSCRIBERS ..................................................................................... 10

    E.   AEREO'S "WATCH NOW" TRANSMISSIONS ARE PERMISSIBLE
UNDER THE FCC'S RULES ............................................................................ 10

    F.   AEREO FILED STATEMENTS OF ACCOUNT AND DEPOSITED
ROYALTY FEES WITH THE COPYRIGHT OFFICE ...................................... 13

    G.   AEREO'S ELIGIBILITY FOR A COMPULSORY LICENSE IS
CONSISTENT WITH CONGRESSIONAL INTENT AND PUBLIC POLICY 13

    H.   PLAINTIFFS' ASSERTIONS THAT AEREO IS NOT ENTITLED TO A
SECTION 111 LICENSE FAIL .......................................................................... 14

        1.   AEREO IS ENTITLED TO ASSERT SECTION 111 AS A DEFENSE. 14

        2.   *WPIX V. IVI* IS NOT CONTROLLING PRECEDENT ........................... 15

II.  NO PRELIMINARY INJUNCTION SHOULD ISSUE BECAUSE AEREO'S
"WATCH NOW" FUNCTION FALLS WITHIN A DMCA SAFE HARBOR ............... 17

III.  THERE IS NO PRESENT BASIS FOR A FINDING OF IRREPARABLE HARM........ 19

    A.    PLAINTIFFS CONCEDED DURING DISCOVERY THAT AEREO DID NOT HARM RETRANSMISSION CONSENT NEGOTIATIONS.................... 20

    B.    NIELSEN CAN NOW MEASURE AEREO VIEWERSHIP ............................. 21

IV.  A PRELIMINARY INJUNCTION ON REMAND CANNOT APPLY TO AEREO'S "RECORD" FUNCTION ................................................................................. 22

CONCLUSION.................................................................................................... 25

## TABLE OF AUTHORITIES

PAGE(S)

<u>CASES</u>

*Agostini v. Felton,*
    521 U.S. 203 (1997)...........................................................................................19

*Am. Broad. Cos., Inc. v. Aereo, Inc.,*
    134 S. Ct. 2498 (2014) ............................................................................... *passim*

*Am. Broad. Cos., Inc. v. Aereo, Inc.,*
    874 F. Supp. 2d 373 (S.D.N.Y. 2012)......................................................... *passim*

*Capital Cities Cable, Inc. v. Crisp,*
    467 U.S. 691 (1984)....................................................................................13, 14

*Cartoon Network LP v. CSC Holdings, Inc.,*
    536 F.3d 121 (2d Cir. 2008)........................................................................ *passim*

*CBS Broadcasting Inc. v. FilmOn.com, Inc.,*
    No. 10-Civ-7532, 2014 WL 3702568 (S.D.N.Y. July 24, 2014)......................2, 17

*City of Pontiac Retired Emps. Ass'n. v. Schimmel,*
    751 F.3d 427 (6th Cir. 2014) ...........................................................................19

*Ecological Rights Found. v. Pac. Gas & Elec. Co.,*
    713 F.3d 502 (9th Cir. 2013) ...........................................................................11

*Ellison v. Robertson,*
    357 F.3d 1072 (9th Cir. 2004) .........................................................................18

*Fortnightly Corp. v. United Artists Television, Inc.,*
    392 U.S. 390 (1968)..................................................................................... *passim*

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
    523 U.S. 26 (1998).............................................................................................5

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue,*
    707 F. Supp. 2d 520 (D.N.J. 2010) ..................................................................19

*Nat'l Broad. Co., Inc. v. Satellite Broad. Networks, Inc.,*
    940 F.2d 1467 (11th Cir. 1991) ....................................................................11, 12

*Rufo v. Inmates of Suffolk County Jail,*
    502 U.S. 367 (1992)..........................................................................................19

*Satellite Broad. & Commc'ns Ass'n of Am. v. Oman*,
   17 F.3d 344 (11th Cir. 2011) ......................................................................11, 12

*In re Sky Angel*,
   25 FCC Rcd. 3879 (Media Bur. 2010) ..................................................................11

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ...............................................................................................24

*Starter Corp. v. Converse, Inc.*,
   170 F.3d 286 (2d Cir. 1999) ..................................................................................23

*Teleprompter Corp. v. Columbia Broadcasting System, Inc.*,
   415 U.S. 394 (1974) ....................................................................................... *passim*

*Ventura Broad. Co. v. FCC*,
   765 F.2d 184 (D.C. Cir. 1985) ..............................................................................11

*WNET v. Aereo, Inc.*,
   712 F.3d 676 (2d Cir. 2013) ..............................................................................5, 18

*WPIX, Inc. v. ivi, Inc.*,
   765 F. Supp. 2d 594 (S.D.N.Y. 2011)........................................................*passim*

*WPIX, Inc. v. ivi, Inc.*,
   691 F.3d 275 (2d Cir. 2012)............................................................…...….…*passim*

## STATUTES

17 U.S.C. § 111............................................................................................. *passim*

17 U.S.C. § 512.................................................................................................2, 17, 18

## OTHER AUTHORITIES

37 C.F.R. § 201.17……………………………………………………………………12

H.R. Rep. No. 94-1476 (1976)………………………………………..……7, 8, 14

2-8 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 8.18[E]
   (2014) ..................................................................................................................8, 14

*The Open Internet Guide*,
   FED. COMM. COMMISSION, http://transition.fcc.gov/cgb/consumerfacts/openinternet.pdf
   (last updated Apr. 25, 2014) ...............................................................................11

*U.S. Copyright Office Statement of Account SA1-2 (Short Form)*,
    U.S. COPYRIGHT OFFICE FORMS, http://www.copyright.gov/ forms/SA1-2c-2011.pdf
    (last updated May 30, 2014) ...........................................................................................12, 13

This Court should not enter Plaintiffs' proposed preliminary injunction on remand from the Supreme Court's decision in *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2511 (2014) ("*Aereo III*").  Plaintiffs cannot succeed on the merits of their public performance claim because, under *Aereo III*, Aereo's "Watch Now" function is a "cable system" and Aereo is therefore entitled to a statutory license under 17 U.S.C. § 111 and does not infringe Plaintiffs' rights.  In *Aereo III*, the Supreme Court found that, "having considered the details of Aereo's practices, we find them highly similar to those of the CATV systems in *Fortnightly* and *Teleprompter*.  And those are activities that the 1976 amendments sought to bring within the scope of the Copyright Act."  *Aereo III*, 134 S. Ct. at 2511.  The Court specifically noted that one of the 1976 amendments to which it was referring was Section 111's compulsory licensing scheme.  *Id.* at 2506.  At oral argument, the Court made clear its understanding that its ruling would entitle Aereo to a Section 111 license when Justice Sotomayor specifically stated, ***"We say they're a c[]able company, they get the compulsory license."***  *See* Exh.[1] 1 (Transcript of Oral Argument, *Aereo III* (Apr. 22, 2014) ("S. Ct. Tr.")) at 5:2–4.

Indeed, the Court specifically found that with respect to its "Watch Now" functionality, Aereo is a facility that receives television broadcast signals and makes secondary transmissions to its subscribers, *Aereo III*, 134 S. Ct. at 2501—a finding that satisfies every element of the "cable system" definition contained in Section 111.  *See* 17 U.S.C. § 111(f)(3).  And, notwithstanding the fact that Plaintiffs had the benefit of Aereo's arguments (which were in Aereo's *Motion for Emergency Consideration of Preliminary Injunction Issues Upon Remand*), Plaintiffs do not dispute that Aereo meets the elements of Section 111's definition.  Rather, they argue only that Aereo is not entitled to a Section 111 license based on the Second Circuit's

---

[1] All references to "Exh." refer to the Exhibits attached to the Declaration of R. David Hosp submitted herewith.

decision in *WPIX, Inc. v. ivi, Inc.* 691 F.3d 275 (2d Cir. 2012) ("*ivi II*"). But *ivi* concerned nationwide, out-of-market retransmissions that are fundamentally different from Aereo's in-market-only technology and thus it does not apply here.[2]  Aereo has paid the statutory license fees required under Section 111, and thus Plaintiffs can no longer complain that they are not being compensated as copyright owners.  As a result, Aereo is entitled to a compulsory license under the Copyright Act, and no preliminary injunction should issue on remand.

Plaintiffs also cannot show a likelihood of success on the merits because Aereo is entitled to the safe harbor of 17 U.S.C. § 512(a).  As described below, Aereo meets each element on uncontested facts.  As a result, no preliminary injunction should issue on remand.

In addition to there being no likelihood of success on the merits, Plaintiffs have failed to show any imminent irreparable harm.  Over two years ago, this Court found that Plaintiffs had shown irreparable harm that was "not overwhelming."  *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 397–400 (S.D.N.Y. 2012) ("*Aereo I*").  That preliminary finding, however, was based on Plaintiffs' testimony that Plaintiffs contradicted almost immediately in public statements to investors and that has been further debunked in discovery.  Plaintiffs have admitted that, notwithstanding the fact that Aereo continued to operate and expand in the two years after the denial of the preliminary injunction, they suffered no harm to their retransmission negotiations.  For example, the CEO of CBS has said that Aereo has not "affected us in terms of one sub, one deal, one anything."  Exh. 2 at 11.  Likewise, the Court found irreparable harm because Nielsen did not "presently" measure technologies like Aereo.  *Aereo I*, 874 F. Supp. 2d at 398 n. 12.  It does now.  Despite these changed circumstances, Plaintiffs offer no new or additional evidence of present imminent irreparable harm.  Because they have failed to meet

---

[2] The same is true for *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, No. 10-Civ-7532, 2014 WL 3702568 (S.D.N.Y. July 24, 2014), which Plaintiffs also cite.

their burden on this required element, no injunction should issue.

Finally, even if Plaintiffs could show a likelihood of success on the merits and an imminent threat of irreparable harm, Plaintiffs' proposed injunction is overbroad because it seeks to enjoin both Aereo's "Watch Now" and time-shifted DVR functions.  Such requested relief goes well beyond what Plaintiffs requested in their Motion for a Preliminary Injunction,[3] and the narrow scope of the Supreme Court's ruling in *Aereo III*, which did not overturn *Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 130-33 (2d Cir. 2008) ("*Cablevision*") with respect to time-shifted transmissions of recorded television programming.  *Cablevision* remains the law in this Circuit and Aereo's time-shifted DVR is functionally identical to the Cablevision system.  As a result, even if this Court finds that Plaintiffs are likely to succeed on the merits on simultaneous transmissions, any injunction should not reach time-shifted consumer transmissions using Aereo's cloud DVR technology.

## **ARGUMENT**

I.   **PLAINTIFFS CANNOT SUCCEED ON THE MERITS BECAUSE AEREO IS ENTITLED TO A COMPULSORY LICENSE UNDER 17 U.S.C. § 111**

The Supreme Court based its holding that Aereo's "Watch Now" function was a public performance on its view that the "Watch Now" feature essentially functions as a cable system and should be treated as a cable system.  The Supreme Court began its analysis in *Aereo III* with a summary of the legislative motivations behind the 1976 amendments to the Copyright Act. The Court noted its previous decisions in *Fortnightly Corp. v. United Artists Television, Inc.*, 392

---

[3] As the Court likely recalls, Plaintiffs failed to identify the relief they were seeking until just prior to the close of the preliminary injunction hearing, and then stated that they only sought to enjoin access to their over-the-air broadcasts while the program was still airing.  *See* 5/31/12 PI Hrg. Tr., No. 12-Civ-1540, Dkt. No. 100 at 387:4–16; 391:17–392:7.  *See also Aereo I*, 874 F. Supp. 2d at 376 (noting that Plaintiffs limited the scope of their preliminary injunction motion to challenge "only the aspects of Aereo's service that allow subscribers to view Plaintiffs' copyrighted television programs contemporaneously with the over-the-air broadcast of these programs").  That is the only requested relief that was before the Supreme Court.

U.S. 390 (1968) and *Teleprompter Corp. v. Columbia Broadcasting System, Inc.*, 415 U.S. 394

(1974), where it found that the CATV systems at issue did not "perform" when they received and

transmitted over-the-air television signals through cable wires to individual subscribers. *Aereo*

*III*, 134 S. Ct. at 2504–05.  Aereo *III* recognized that, in response to those cases, Congress

enacted three inextricably intertwined amendments to the Copyright Act that were intended to

bring the transmissions made using the type of technology considered in *Fortnightly* and

*Teleprompter* within the scope of the Act: (i) a new definition of "public performance"; (ii) the

Transmit Clause; and (iii) Section 111 (the "1976 Amendments"). *Id*. at 2505–06.

The Court ultimately concluded that Aereo's "Watch Now" technology is equivalent to

the technology the Court previously considered in *Fortnightly* and *Teleprompter* (precisely the

technology the 1976 Amendments were intended to reach) and that therefore Aereo must be

covered under the Act.[4]  The Supreme Court expressly acknowledged at oral argument that such

a finding would also bring Aereo under the rights and obligations contained in Section 111's

license provisions.  Exh. 1 (S. Ct. Tr.) at 5:2–4.  It would be illogical and fundamentally unfair to

find that Aereo's "Watch Now" functionality is a "cable system" under the 1976 Amendments

for the public performance analysis, but is not entitled to a compulsory license under the same

Amendments.  The benefits and the burdens of cable system status under the Copyright Act must

and do flow together.  As a result, Aereo is entitled to a Section 111 license.

---

[4] Indeed, the Court found Aereo's "Watch Now" technology so similar to the cable systems in *Teleprompter* and *Fortnightly* that in describing the Aereo technology the Supreme Court quoted its decades-old descriptions of the technologies in those cases that prompted the 1976 Amendments.  *See, e.g.*, *Aereo III*, 134 S. Ct. at 2501, 2506, 2507 ("By means of its technology, Aereo's system 'receive[s] programs that have been released to the public and carr[ies] them by private channels to additional viewers.' *Fortnightly*, supra, at 400."; "By means of its technology (antennas, transcoders, and servers), Aereo's system 'receive[s] programs that have been released to the public and carr[ies] them by private channels to additional viewers.' *Fortnightly*, 392 U.S., at 400. It 'carr[ies] . . . whatever programs [it]receive[s],' and it offers 'all the programming' of each over-the-air station it carries. *Id*., at 392, 400."; "Indeed, as we explained in *Fortnightly*, such a subscriber 'could choose any of the . . . programs he wished to view by simply turning the knob on his own television set.' 392 U.S., at 392. The same is true of an Aereo subscriber.").

**A.    CONGRESS OVERTURNED *FORTNIGHTLY* AND *TELEPROMPTER*
WITH THREE INEXTRICABLY INTERTWINED AMENDMENTS IN
THE 1976 ACT**

The Supreme Court began its analysis with the recognition that the Transmit Clause and

Section 111 were adopted together to address the type of technology considered in *Fortnightly*

and *Teleprompter*.  *Aereo III*, 134 S. Ct. at 2506.[5]  It also acknowledged the necessary

interdependence between the Transmit Clause and Section 111, because the license was enacted

to provide a reasonable royalty under the Copyright Act from those entities whose activities were

targeted by the Transmit Clause.  *Id*.  As a result of the Court's findings, to the extent Congress

intended the Transmit Clause to reach Aereo's "Watch Now" activities insofar as they are "for

all practical purposes" the same as those of a traditional cable company, *id*. at 2507, Congress

also intended Section 111 to reach those same activities.[6]  *See Lexecon Inc. v. Milberg Weiss

Bershad Hynes & Lerach*, 523 U.S. 26, 36 (1998) (describing a central tenet of statutory

interpretation: a statute is to be considered in all of its parts when construing any one of them).

**B.    AEREO'S "WATCH NOW" FUNCTIONALITY IS EXACTLY WHAT
CONGRESS INTENDED TO REACH WITH THE TRANSMIT CLAUSE
AND SECTION 111**

Having explained the interrelatedness of the three particular 1976 Amendments, the

Supreme Court concluded that Aereo's "Watch Now" function is so similar to that of a cable

system that with respect to "Watch Now," Aereo should be treated as a cable system under the

Copyright Act.  Importantly, in reaching this conclusion, the Supreme Court did not limit the

---

[5] The Second Circuit similarly recognized that the Transmit Clause was intended in part to abrogate *Fortnightly* and *Teleprompter* and bring a cable television system's transmission of broadcast television programming within the scope of the public performance right. *WNET v. Aereo, Inc.*, 712 F.3d 676, 699–700 (2d Cir. 2013) ("*Aereo II*").

[6] Plaintiffs assert that the Supreme Court did not directly address Section 111 in *Aereo III*; but the Court made clear that Congress' 1976 definitional changes to the concept of what it means to "perform publicly" and its adoption of the Transmit Clause are directly related to—and intended to address the same technology as—the compulsory license provisions of Section 111.  *Aereo III*, 134 S. Ct. at 2506 ("Congress made these three changes to achieve a similar end: to bring the activities of cable systems within the scope of the Copyright Act.").

5

application of its reasoning to just the Transmit Clause; rather, it found that Aereo's "Watch Now" activities were meant to be reached by the entire Act—and specifically by *all* of the 1976 Amendments adopted to address the Court's prior decisions in *Fortnightly* and *Teleprompter*:

> In sum, having considered the details of Aereo's practices, we find them highly similar to those of the CATV systems in *Fortnightly* and *Teleprompter*.   And those are activities that the *1976 amendments* sought to bring within the scope of the *Copyright Act.*

*Aereo III*, 134 S. Ct. at 2511 (emphasis added).

The Supreme Court reiterated that Aereo's "Watch Now" technology should be a "cable system" under the multiple 1976 Amendments, even where it addressed what it viewed as non-material differences in how "Watch Now" operates compared to how CATV companies operate:

- "[G]iven Aereo's overwhelming likeness to the cable companies targeted by the *1976 amendments*, this sole technological difference between Aereo and traditional cable companies does not make a critical difference here."  *Id.* at 2501 (emphasis added).
- "But the many similarities between Aereo and cable companies, considered in light of Congress' basic purposes *in amending the Copyright Act*, convince us that this difference is not critical here."  *Id.* at 2507 (emphasis added).
- "In terms of *the Act's purposes*, these differences do not distinguish Aereo's system from cable systems . . ."  *Id.* at 2508 (emphasis added).

The fact that the Supreme Court did not limit its application of the Copyright Act's provisions to just the Transmit Clause, but instead made clear that "Watch Now" is governed by all of the 1976 Amendments to the Copyright Act, makes clear that the Transmit Clause and Section 111 cannot, as Plaintiffs now urge, be separated and selectively applied.  *Id.* at 2501, 2507.

### C.   DURING ORAL ARGUMENT, THE SUPREME COURT MADE CLEAR ITS VIEW THAT IF AEREO WERE A CABLE SYSTEM, IT WOULD BE ELIGIBLE FOR A SECTION 111 LICENSE

The oral argument transcript makes clear the Court understood that its findings would make Aereo eligible for a Section 111 license.  The issue was first raised by Justice Sotomayor in

a colloquy with Plaintiffs' counsel (who appeared to agree with her), where she specifically

referenced the definition of a "cable system" in Section 111.

> JUSTICE SOTOMAYOR: . . . But I look at the definition of a cable company, and it seems to fit. . . . [Aereo] [m]akes secondary transmissions by wires, cables, or other communication channels.  It seems to me that a little antenna with a dime fits that definition.  To subscribing members of the public who pay for such service.  I mean, I read it and I say, why aren't they a cable company?
>
> MR. CLEMENT:  Well, Justice Sotomayor, a couple of things.  First of all, I mean, I think if you're—if you're already at that point, you've probably understood that just like a cable company, they're public—they're publicly performing and maybe they qualify as a cable company and maybe they could qualify for the compulsory license that's available to cable companies under Section 111 of the statute.
>
> JUSTICE SOTOMAYOR:  But it just gets it mixed up.  Do we have to go to all of those other questions if we find that they're a cable company?  ***We say they're a c[]able company, they get the compulsory license.***

Exh. 1 (S. Ct. Tr.) at 4:1–5:4 (emphasis added).

Additionally, Justice Breyer, who authored the majority opinion, noted at oral argument

that any decision finding Aereo to be a cable system for the purposes of the Transmit Clause, ***but***

***not*** for Section 111, would run counter to the purpose of the 1976 Amendments:

> JUSTICE BREYER:  Once you take them out of the compulsory licensing system, they're going to have to find copyright owners, who owns James Agee's pictures?  Who owns something that was written by—like a French silent film in 1915?  I mean, the problem is that they might want to have perfectly good things that people want to watch and they can't find out how to get permission.  That is a problem that worries me and it worries me again once you kick them out of the other systems.

*Id*. at 53:21–54:5.  Here, Justice Breyer referenced the very policy consideration that drove the

adoption of Section 111—a determination by Congress that the technologies like those

considered in *Fortnightly* and *Teleprompter* should be entitled to a compulsory license so that

they would not have to negotiate individually with copyright owners.  *See* H.R. REP. NO. 94-

1476 (1976) at 89 ("[I]t would be impractical and unduly burdensome to require every cable

system to negotiate with every copyright owner whose work was retransmitted by a cable

system."); *see also* 2-8 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT §

8.18[E] (2014) (Section 111 was "[t]he compromise solution . . . whereby the cable operators are

not required to obtain the consent of copyright owners nor to negotiate license fees, but copyright

owners are entitled to be paid prescribed royalties . . . .").  The Court's emphasis on the

interrelatedness of the 1976 Amendments, repeated statements that Aereo is governed by all of

those Amendments, and the discussions during oral argument, make clear that Aereo's eligibility

for a compulsory license is not only required by the decision, it was an ***intended*** consequence of

the decision.

### D.    AEREO ALSO MEETS THE DEFINITION OF A "CABLE SYSTEM" UNDER SECTION 111

Nor is there any question that with respect to the "Watch Now" function, Aereo also

meets all the definitional requirements of a "cable system" under Section 111.[7]  The undisputed

facts developed in this case as interpreted in *Aereo III* compel this conclusion.  And, despite

knowing Aereo's position, Plaintiffs do not dispute this in their opening brief on remand.

Section 111 broadly defines a "cable system" as:

> [1] a facility, located in any State, territory, trust territory, or possession of the
> United States, that [2] in whole or in part receives signals transmitted or programs
> broadcast by one or more television broadcast stations licensed by the Federal
> Communications Commission, and [3] makes secondary transmissions of such
> signals or programs by wires, cables, microwave, or other communications
> channels to subscribing members of the public who pay for such service.

---

[7] Prior to the Supreme Court's decision, under the law of this Circuit (*Cablevision*), Aereo's "Watch Now" feature
did not make transmissions "to the public."  And thus Aereo did not seek a compulsory license.  The Supreme
Court's decision in *Aereo III* has changed the law.  As a result, Plaintiffs' contention that Aereo did not raise the
Section 111 defense previously, and that it is somehow barred from making these argument now, is specious.  *See*
Pls.' Mem. on Remand, No. 12-Civ-1540, Dkt. No. 323 (Aug. 15, 2014) ("Mem.") at 7–11.

17 U.S.C. § 111(f)(3).  There is now no question that Aereo (1) is a facility; (2) that receives

signals of local broadcasters; and (3) those signals are transmitted to subscribers.  Indeed, that is

now the law of the case.  Therefore, Aereo is eligible for a statutory license under Section 111.

### 1.   AEREO IS A FACILITY

It is undisputed that Aereo is a facility, and significant evidence submitted in this case

confirms this.  For example, Dr. Horowitz testified regarding Aereo's facility in Brooklyn, New

York.  Declaration of Paul Horowitz, No. 12-Civ-1540, Dkt. No. 78 at ¶ 63 ("Aereo impartially

provides access to all broadcast television stations . . . received at the Brooklyn site . . . .").  The

Supreme Court also acknowledged this fact.  *See Aereo III*, 134 S. Ct. at 2501, 2506 ("Aereo

uses its own equipment, housed in a centralized warehouse . . . ."); Exh. 1 (S. Ct. Tr.) at 4:1–4

(Justice Sotomayor: "But I look at the definition of a cable company and it seems to fit.  A

facility located in any State.  They've got a . . . building in Brooklyn . . . .").

### 2.   AEREO'S FACILITY RECEIVES SIGNALS

It is also undisputed that, with respect to the "Watch Now" function, Aereo's equipment

receives signals transmitted or programs broadcast by one or more television broadcast stations

licensed by the Federal Communications Commission ("FCC").  *See Aereo I*, 874 F. Supp. 2d at

378.  Dr. Horowitz, again, has already provided detailed testimony to that effect.  5/31/12 PI Hrg.

Tr., No. 12-Civ-1540, Dkt. No. 100 at 319:4-320:9 (describing how a single Aereo antenna

works to receive over-the-air broadcasting).  Plaintiffs' own arguments confirm that there is no

dispute on this point.  *See* Pls.' Prop. Findings of Fact and Conclusions of Law, No. 12-Civ-

1540, Dkt. No. 102 at ¶ 9 ("Aereo takes the broadcast signals, receives them on the antenna . . .

.") (citing 5/30/12 PI Hrg. Tr. at 100:11–23).  And the Supreme Court also acknowledged this

fact in *Aereo III*: "A[n] [Aereo] server . . . tunes the antenna to the over-the-air broadcast

carrying the show. The antenna begins to receive the broadcast, and an Aereo transcoder translates the signals received . . ."; "By means of its technology (antennas, transcoders, and servers), Aereo's system 'receive[s] programs that have been released to the public and carr[ies] them by private channels to additional viewers.'"  134 S. Ct. at 2503, 2506 (alteration in original); *see also* Exh. 1 (S. Ct. Tr.) at 4:1–7.

### 3.   AEREO'S EQUIPMENT TRANSMITS THOSE SIGNALS TO SUBSCRIBERS

Plaintiffs have also confirmed that Aereo's "Watch Now" technology transmits the received signals to subscribing members of the public who pay for the service.  *Aereo I*, 874 F. Supp. 2d at 385; *see also* Reply Br. for Pls., *Aereo II*, No. 12-2807, Dkt. No. 167 at 9 ("[Aereo] then passes the programming along to its subscribers, all of whom can watch the retransmitted CBS signal simultaneously and in real-time when logged in to the Aereo website.") (citing 5/30/12 PI Hrg. Tr. at 82:13–86:19).  And, once again, the Supreme Court also acknowledged this fact: "[O]nce several seconds of programming have been saved, Aereo's server begins to stream the saved copy of the show to the subscriber over the Internet . . ."[8]  *Aereo III*, 134 S. Ct. at 2503; *see also* Exh. 1 (S. Ct. Tr.) at 4:1–13.

### E.   AEREO'S "WATCH NOW" TRANSMISSIONS ARE PERMISSIBLE UNDER THE FCC'S RULES

Because Aereo meets the definition of a cable system (and the Supreme Court has held that it should be considered a "cable system" for purposes of the 1976 Amendments to the Act),

---

[8] It is now the law that the technological details of "Watch Now" do not distinguish Aereo from the cable systems the 1976 Amendments reach.  Throughout this litigation, Plaintiffs have contended that how Aereo functions does not matter because "Watch Now" is the functional equivalent of the *Teleprompter* and *Fortnightly* technology.  *See, e.g.*, Pls.' Initial Pre-Hearing Mem., No. 12-Civ-1540, Dkt. No. 17 at 3–4.  The Supreme Court agrees: "Insofar as there are differences [between Aereo's activities and the activities of CATV systems], those differences concern not the nature of the service that Aereo provides so much as the technological manner in which it provides the service. We conclude that those differences are not adequate to place Aereo's activities outside the scope of the Act."  *Aereo III*, 134 S. Ct. at 2511.  This is as true for Section 111 as it is for the other 1976 Amendments.

Aereo is entitled to a compulsory license in accordance with Section 111 as long as the transmissions made using Aereo's "Watch Now" technology are permissible under the FCC's rules, regulations, and authorizations.  *See* 17 U.S.C. § 111(c)(1). The transmissions are permissible because the FCC has expressly rejected any regulatory oversight of the transmission of television signals over the Internet.  *See The Open Internet Guide*, FED. COMM. COMMISSION, http://transition.fcc.gov/cgb/consumerfacts/openinternet.pdf (last updated Apr. 25, 2014) ("[T]he FCC does not regulate Internet content or applications. To the contrary, the FCC seeks to develop and implement high-level, flexible rules of the road for broadband to ensure that no one - not the government and not the companies that provide broadband service - can restrict innovation on the Internet.").  The FCC has addressed this both as a matter of policy, and in its adversarial decisions.  *See In re Sky Angel*, 25 FCC Rcd. 3879 at ¶ 10 (Media Bur. 2010).  As a result, there are no FCC rules or regulations that prohibit Aereo's "Watch Now" transmissions.

It is well-settled that where a regulatory scheme does not prohibit a particular action, that action is, as a matter of logic and legal construction, "permissible" under that regulatory scheme. *Ventura Broad. Co. v. FCC*, 765 F.2d 184, 194 (D.C. Cir. 1985) (holding that FCC decisions which are not prohibited by statute are permissible); *see also Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 514 (9th Cir. 2013) (finding that where the EPA had chosen not to regulate stormwater runoff from the defendants' utility poles, that runoff was in compliance with the Clean Water Act, even if it was discharged without a permit required by the EPA).

This issue has been addressed specifically in the context of Section 111 and the question of what is "permissible" under FCC regulations.  In 1991, prior to Congress' adoption of Section 119 of the Copyright Act, which enacted a compulsory license scheme for satellite television providers, NBC sued Satellite Broadcasting Networks for copyright infringement based on the

fact that the company transmitted NBC's signals through its satellite system.  *Nat'l Broad. Co., Inc. v. Satellite Broad. Networks, Inc.*, 940 F.2d 1467, 1468 (11th Cir. 1991), *superseded on different grounds by regulation*, 37 C.F.R. § 201.17(k), as recognized by *Satellite Broad. & Commc'ns Ass'n of Am. v. Oman*, 17 F.3d 344 (11th Cir. 2011).  The defendant asserted a compulsory license under Section 111 and argued that it was in compliance with FCC regulations because the FCC had chosen not to regulate satellite television transmissions.  *Id.*  The Eleventh Circuit agreed, holding that "***The short answer is that the rebroadcast was permissible because no rule or regulation forbade it.***"  *Id.* at 1471 (emphasis added).  The court then elaborated on its reasoning:

> NBC has argued that before SBN's transmissions could become "permissible," the FCC had to affirmatively approve them. But to require express approval of the FCC would be to reach a result from the FCC's inaction that the FCC unequivocally does not intend. The FCC has expressed sympathy for NBC's concerns that direct-to-home satellite distribution threatens the network-affiliate relationship . . . but the FCC has explicitly stated it would not address these concerns until after the courts have resolved the copyright infringement issue.

*Id.*

Moreover, it has long been recognized that the definitional analysis of what constitutes a cable system under the Copyright Act and the FCC Act are separate and non-coterminous.  The Copyright Office's own Section 111 regulations state that ***"a system that meets this definition is considered a 'cable system' for copyright purposes, even if the FCC excludes it from being considered a 'cable system' because of the number or nature of its subscribers or the nature of its secondary transmissions."***  37 C.F.R. § 201.17(b)(2); *see also U.S. Copyright Office*

*Statement of Account SA1-2 (Short Form)*, U.S. COPYRIGHT OFFICE FORMS,

http://www.copyright.gov/ forms/SA1-2c-2011.pdf (updated May 30, 2014) (quoting C.F.R.).[9]

### F.  AEREO FILED STATEMENTS OF ACCOUNT AND DEPOSITED ROYALTY FEES WITH THE COPYRIGHT OFFICE

Aereo filed the necessary paperwork and paid the fees required by Section 111 on July

10, 2014.  *See* Declaration of Chaitanya Kanojia ("Kanojia Decl.") at ¶ 8.[10]  The Copyright

Office provisionally accepted Aereo's application, and properly   deferred to the courts the

question of Aereo's eligibility for a compulsory license.  Exh. 3 (7/16/14 Copyright Office Ltr).

Plaintiffs make much of the fact that the Copyright Office has previously stated that "Internet re-

transmitters" do not qualify for Section 111 licenses.  But the Copyright Office has never opined

specifically on the availability of Section 111 licenses for purely local-to-local Internet

transmissions.  Each of the opinions cited by Plaintiffs (and by the Copyright Office in its letter)

assumes the national or global nature of "Internet" re-transmissions, and that assumption is the

overriding basis for the Copyright Office's conclusions.  Mem. at 9-13; Exh. 3 (7/16/14

Copyright Office Ltr).  This was the only basis for the Second Circuit's decision in *ivi*.  691 F.3d

at 284 ("Internet retransmission services cannot constitute cable systems under § 111 because

they provide nationwide—and arguably global—services.").

### G.  AEREO'S ELIGIBILITY FOR A COMPULSORY LICENSE IS CONSISTENT WITH CONGRESSIONAL INTENT AND PUBLIC POLICY

As explained above, the 1976 Amendments represented a balance of competing

---

[9] Indeed, when passing the 1976 Amendments, Congress specifically noted that the Copyright Act served different purposes than the FCC Act and warned the FCC "not to rely upon any action of this Committee as a basis for any significant changes in the delicate balance of regulation in areas where the Congress has not resolved the issue." H.R. REP. NO. 94-1476 at 89.  In short, both Congress and the Copyright Office fully anticipated the differences in the definitions and the consequences of those differences.

[10] Aereo filed fourteen Statement of Account forms and paid the associated royalty and filing fees covering the semi-annual reporting periods from January 1, 2012 through December 31, 2013.  Kanojia Decl. at ¶ 8 n. 1.  Aereo is also finalizing its filings for the first half of 2014, which will be completed by the August 29, 2014 deadline.  *Id.*

interests—ensuring a reasonable level of compensation for copyright owners, while permitting companies that were increasing local public access to broadcast television to continue to develop. *See Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 711 (1984); H.R. REP. NO. 94-1476 at 89; NIMMER, *supra*, at § 8.18[E]; *cf.* Exh. 1 (S. Ct. Tr.) at 53:21–54:5 (concerns Justice Breyer voiced at oral argument).[11]  In *Aereo III*, the Supreme Court determined that Aereo's "Watch Now" service is the same local-broadcast-to-local-viewer service that early cable systems provided—a service whose development Congress intended to protect when it amended the Copyright Act in 1976.  The Court notes: "Aereo's activities are substantially similar to those of the CATV companies that Congress amended the Act to reach."  134 S. Ct. at 2501, 2506.

## H.  PLAINTIFFS' ASSERTIONS THAT AEREO IS NOT ENTITLED TO A SECTION 111 LICENSE FAIL

Plaintiffs cannot dispute (and have not disputed) any of the foregoing facts and legal analysis, even though they were fully aware of Aereo's arguments.  Rather, Plaintiffs offer only two arguments for their conclusion that Aereo should not be entitled to a statutory license under Section 111.  First, they suggest that Aereo is ineligible because it has not made this argument before.  Mem. at 8-9.  Second, they assert that Aereo cannot be a "cable system" given the Second Circuit's decision in *ivi*.  *Id.* at 10, 12.  Both arguments fail in view of *Aereo III*.

### 1.  AEREO IS ENTITLED TO ASSERT SECTION 111 AS A DEFENSE

Aereo did not suddenly change direction; the law was changed in fundamental ways by *Aereo III*.  In light of the Supreme Court's decision in *Aereo III*, it is entirely proper for Aereo to assert the Section 111 license defense on remand.  Aereo did not specifically assert the defense

---

[11] In their brief, Plaintiffs assert that the Supreme Court conducted "no analysis of the statutory framework governing the Section 111 license (including its history and purpose)…" Mem. at 9.  This not accurate.  In fact, *Aereo III* contains four pages of analysis of the statutory history that led to the adoption of the 1976 Amendments, including, specifically, Section 111 and the Transmit Clause.  *Aereo III*, 134 S. Ct. at 2504–07.

previously in response to Plaintiffs' motion for a preliminary injunction because the defense was

not available to Aereo under then-existing and then-controlling Second Circuit law.  Under

*Cablevision*, as both this Court and the Second Circuit held, ***Aereo did not engage in***

***transmissions to the public.***  As such it could not be a "cable system" under Section 111.[12]  But

because the Supreme Court has now ruled that Aereo's "Watch Now" technology is the

functional equivalent of a "cable system," Aereo may now assert that it is entitled to claim the

compulsory license that "cable systems" are entitled to under the Act.[13]

     Moreover, there is no surprise or prejudice to Plaintiffs.  Given their longstanding

position that Aereo's "Watch Now" functionality was like *Fortnightly* and *Teleprompter*, they

should have been on notice of Aereo's Section 111 defense if they won their point.  Further, in

its Answers, Aereo asserted the affirmative defense that "Plaintiffs' claims are barred due to an

express or implied license or consent."  *See* Answer, No. 12-Civ-1540, Dkt. No. 7 at Aff. Def.

No. 8; Answer, No. 12-Civ-1543, Dkt. No. 11 at Aff. Def. No. 9.  Under notice pleading

standards, this plainly asserts a license defense, and Plaintiffs were given fair warning.

## 2.  *WPIX V. IVI* IS NOT CONTROLLING PRECEDENT

     The question of whether a company transmitting over-the-air broadcasts over the Internet

qualifies for a Section 111 license was addressed once previously in this Circuit in *WPIX, Inc. v.*

*ivi, Inc.*, 765 F. Supp. 2d 594, 598 (S.D.N.Y. 2011), *aff'd*, 691 F.3d at 277.  *ivi* is not controlling

here.  First, the technology at issue in *ivi* involved geographically unbounded transmissions,

which the Second Circuit noted was "vastly different" from the technology in *Fortnightly* and

---

[12] Indeed, neither Plaintiffs nor Aereo urged the position that Aereo was a cable system prior to *Aereo III*.

[13] Plaintiffs' suggestion that this is a change in position, Mem. at 8, is disingenuous.  Aereo is merely reacting to and addressing a change in the governing law.  As the Court knows, Aereo has been deliberate in its efforts to comply with the law from the outset.  Previously, *Cablevision* governed Aereo's "Watch Now" function.  The Supreme Court has changed the governing law, which Aereo now asserts at its first available opportunity.

*Teleprompter*.  *See ivi II*, 691 F.3d at 283 (quoting Copyright Office).  By contrast, the Supreme

Court found that, with respect to "Watch Now," Aereo is "overwhelming[ly] like[]" and "highly

similar" to the technology in *Fortnightly* and *Teleprompter*.  *Aereo III*, 134 S. Ct. at 2501, 2507,

2511.  As a result, this case is factually distinguishable from *ivi* on the very point that drove the

Second Circuit's decision.  Indeed, the unrestricted nature of *ivi's* transmissions was the

determinative fact for the Second Circuit, which noted that Section 111's compulsory license

scheme was intended to support local market—rather than national market—systems.  *ivi II*, 691

F.3d at 282–83.  As a result, the court found that ivi's nationwide retransmission did not seek to

address the important issues of availability of local over-the-air television signals, and it was

therefore not the type of service Congress intended the compulsory license to cover.  *Id*.[14]

Because Aereo's "Watch Now" technology does ***not*** give its subscribers access to broadcasts

outside of their home DMA, and instead gives ***only*** geographically-restricted access (with and

through corresponding local physical antenna facilities), and because (as the Supreme Court

found) the technology is "virtually identical" to the technology Congress addressed in the 1976

Amendments, Aereo's "Watch Now" technology is not governed by *ivi*.

    Second, the Supreme Court has now found that Aereo is to be considered a cable system

under the 1976 Amendments.  As a result, any dicta or other comment in *ivi II* inconsistent with

that conclusion is no longer good law, at least as it relates to Aereo.[15]  For these reasons, Aereo is

---

[14] In so holding, the *ivi* court merely reiterated the Copyright Office's requirement that "a provider of broadcast signals be an inherently localized transmission media of limited availability to qualify as a cable system." *ivi II*, 691 F.3d at 283 (citing 56 FED. REG. 31595 (July 11, 1991), 62 FED. REG. 18705, 18706 (Apr. 17, 1997)).  And, as shown above, failure to recognize this critical difference between Aereo and ivi may explain the Copyright Office's initial comments concerning Aereo's eligibility for a Section 111 license.

[15] The Second Circuit in *ivi II* premised its reasoning on the distinction that ivi's services were national rather than local (the same reasoning employed by the Copyright Office statements upon which the Second Circuit relied). However, the Second Circuit stated its conclusions more broadly when it wrote that "the statute's legislative history, development, and purpose indicate that Congress did not intend for § 111 licenses to extend to Internet

16

entitled to its Section 111 license, which negates Plaintiffs' claims for direct infringement of their claimed public performance rights.  As a result, Plaintiffs are not likely to succeed on the merits, and no preliminary injunction should issue.[16]

## II.   NO PRELIMINARY INJUNCTION SHOULD ISSUE BECAUSE AEREO'S "WATCH NOW" FUNCTION FALLS WITHIN A DMCA SAFE HARBOR

If the Court concludes that Aereo is not entitled to a Section 111 license, a preliminary injunction should still not enter because Aereo is entitled to the 17 U.S.C. § 512(a) safe harbor because its "Watch Now" function is a "transitory digital network communication."[17] Each of the Section 512(a) elements is satisfied and undisputed.  First, the transmissions of the material are initiated by or at the direction of a person other than Aereo.  17 U.S.C. § 512(a)(1); *Aereo III* at 2501 ("Aereo's system remains inert until a subscriber indicates that she wants to watch a program."). Second, the transmission, routing, and storage of material are carried out through an automatic process, without selection of the material by Aereo.  17 U.S.C. § 512(a)(2); *Aereo III* at 2507 ("in automatic response to the subscriber's request"); *id* (agreeing with dissent that

---

[16] Plaintiffs also rely heavily on Judge Buchwald's recent decision holding FilmOn in contempt for violating a previously-issued injunction, where she held that FilmOn was not automatically entitled to a Section 111 license. Mem. at 2-3, 11-12. However, Judge Buchwald's reference to Aereo is based on the incorrect factual assumption that Aereo is a "technological peer" of FilmOn.  In fact, like ivi, FilmOn was not a local-to-local provider.  *See CBS Broad. Inc. v. FilmOn.com, Inc.*, No. 10-Civ-7532 (S.D.N.Y.), Pls.' Mem. of Law in Support of TRO, Dkt. No. 11 (Nov. 23, 2010) at 3 (explaining that FilmOn's service was "freely available to anyone anywhere in the world").  Moreover, even if FilmOn may ultimately have been entitled to a license, Judge Buchwald's holding was that it still violated the injunction that had not been lifted or modified.  *FilmOn.com*, 2014 WL 3702568 at *1, 7.

[17] Aereo relied on this defense in its *Initial Pre-Hearing Memorandum*, No. 12-Civ-1540, Dkt. No. 30 (Apr. 4, 2012) at 13 n. 9 ("Notably, to the extent Plaintiffs contend that the 'watch now' RS-DVR process is legally distinguishable from *Cablevision* (it is not) Plaintiffs' claim runs headlong into the safe harbor provided to intermediaries in the Digital Millennium Copyright Act ("DMCA"). *See* 17 U.S.C. § 512. Section 512(a) of the DMCA limits the relief available against service providers that facilitate the consumer's actions over digital networks."). Now that the Supreme Court has concluded that the "Watch Now" function is legally distinguishable from *Cablevision*, this defense applies.

---

retransmissions." *ivi II*, 691 F.3d at 284.  To the extent that statement is not just dicta, such a broad statement can no longer be applied, because the Supreme Court ruled in *Aereo III* that the 1976 Amendments were intended to reach Aereo's "Watch Now" activities—even though the transmissions are made, in part, over the Internet.  In other words, by ruling that Aereo should be treated as a cable system under the Act, the Supreme Court implicitly overruled *ivi* to the extent it could over have applied to Aereo specifically.

Aereo does not "select" the content).  Third, Aereo does not select the recipients of the material,

except as an automated response to the user.  17 U.S.C. § 512(a)(3); *Aereo III* at 2508 ("When an

Aereo subscriber selects a program to watch, Aereo streams the program over the Internet to that

subscriber.").  Fourth, no copy of the material transmitted is made accessible to anyone but the

user who made it, and no "Watch Now" copy is kept for a longer period than is reasonably

necessary.  17 U.S.C. § 512(a)(4); *Aereo III* at 2508 ("It streams the content of the copy to the

same subscriber and to no one else."); *Aereo II* at 682 ("If the user does not press 'Record'

before the program ends, the copy of the program created for and used to transmit the program to

the user is automatically deleted when it has finished playing."); *Aereo I* at 379 ("The file saved

to the hard disk using the 'Watch [Now]' function is not automatically retained unless the user

clicks 'Record' while the show is still open on the user's web browser.").[18]  Fifth, the material is

transmitted without modification of its content.  17 U.S.C. § 512(a)(5); Kanojia Decl. at ¶ 2.[19]

As a result of satisfying this safe harbor provision, Aereo cannot be liable for the claimed

"public performance" of Plaintiffs' claimed copyrighted works.  And, Plaintiffs' requested

preliminary injunction cannot be entered because it is outside the scope of a permitted injunction

under the DMCA.  *See* 17 U.S.C. § 512(j)(1)(B).  For this alternative reason, Plaintiffs are not

likely to succeed on the merits.

---

[18] A user's "Watch Now" copies are automatically deleted two hours after the user completes the transmission session. *See* Declaration of Joseph Lipowski, No. 12-Civ-1543, Dkt. No. 99 at ¶ 53 (". . . [E]ach recording is maintained until the user has finished watching the program by pressing stop or the program has ended and no further recording is being made, or if the user pauses the program and takes no further action, the recording is maintained until 2 hours have elapsed since the end of the program, at which time the program is deleted."). This brief period is reasonably necessary to permit the user to choose to save the copy as a "time-shifted" copy for later viewing. *See Ellison v. Robertson*, 357 F.3d 1072, 1080–81 (9th Cir. 2004) (affirming finding that retention of transmission copy for **two weeks** satisfied DMCA's "transient" and "intermediate" requirement).

[19] In addition to satisfying the individual elements of the Section 512(a) safe harbor, Aereo qualifies as a "service provider" and accommodates technology as required.  *See* 17 U.S.C. §§ 512(k)(1)(A) and (i).

## III.     THERE IS NO PRESENT BASIS FOR A FINDING OF IRREPARABLE HARM

Plaintiffs' renewed motion should also be denied because Plaintiffs cannot prove a

"threat" of irreparable harm that is "imminent and non-speculative." *Aereo I*, 874 F. Supp. 2d at

399, 400.   This is perhaps the "single most important prerequisite for the issuance of a

preliminary injunction." *Id*. at 397 (citation and internal quotation marks omitted).[20]  And the

Court must make **current** findings on whether there is a **present** "threat" of "imminent and non-

speculative" irreparable harm sufficient to support a preliminary injunction.  *See*, *e.g.*,

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 707 F. Supp. 2d 520, 541 (D.N.J. 2010)

(reconsidering irreparable harm and other factors in light of changed circumstances since the

court's original preliminary injunction order, and in light of broad appellate mandate); *City of*

*Pontiac Retired Emps. Ass'n. v. Schimmel*, 751 F.3d 427, 432–33 (6th Cir. 2014) (reevaluating

preliminary injunction findings on remand and considering facts that changed during pendency

of appeal); *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (a court errs when it refuses to modify

an injunction  in light of changed circumstances); *Rufo v. Inmates of Suffolk County Jail*, 502

U.S. 367, 384 (1992) (appropriate for a party to seek relief from an injunction in light of

"significant change either in factual conditions or in law").

As the Court will recall, two years ago it found irreparable harm following the two-day

preliminary injunction hearing in May 2012 based largely on two asserted harms: (i) Aereo's

purported effect on retransmission negotiations; and (ii) the allegation that Aereo viewership was

not measured by Nielsen for purposes of advertising sales.  *Aereo I*, 874 F. Supp. 2d at 398–400.

Because Plaintiffs showed no likelihood of success on the merits, however, no injunction

entered, and Aereo continued to operate, expanding into more than a dozen additional markets.

---

[20] Notably, because Aereo is entitled to a Section 111 license, there can be no harm to Plaintiffs because the Congressionally-established royalty scheme compensates them for their complained-of copyright use.

*See* Kanojia Decl. at ¶ 14.  Importantly, over those two years of unrestricted operation, ***none of the "imminent" and "non-speculative" irreparable harms claimed by Plaintiffs materialized.*** What better proof could there be that claimed harms are not imminent (and are instead speculative) than what actually happened when the complained-of actions went on for years?  In stark contrast, as the Court already found and as set forth more fully in the Declaration of Chaitanya Kanojia, Aereo would experience devastating and irreparable harm if an injunction were entered.  *See* Kanojia Decl. at ¶¶ 9–19.  As a result, the balance of hardships tips in favor of denying Plaintiffs' requested injunction.[21]

## A.  PLAINTIFFS CONCEDED DURING DISCOVERY THAT AEREO DID NOT HARM RETRANSMISSION CONSENT NEGOTIATIONS

This Court previously found irreparable harm because "the evidence shows that . . . Aereo's activities will damage Plaintiffs' ability to negotiate retransmission agreements, as these companies will demand concessions from Plaintiffs to make up for this decrease in viewership." *Aereo I*, 874 F. Supp. 2d at 399.  But within a month after the Court relied in part on the testimony of CBS executive Martin Franks to find that retransmission negotiations would imminently be affected, CBS CEO Leslie Moonves stated during an earnings call with investors that Aereo had not affected, and was not presently affecting, any of CBS's negotiations.[22]  Two years passed with Aereo operating and expanding, but Plaintiffs' alleged harm never occurred. During discovery, Plaintiffs conceded that they had negotiated "***hundreds***" of retransmission and

---

[21] The public interest also favors denying an injunction.

[22] Specifically, Mr. Moonves stated that Aereo: "[D]oes not affect any negotiations we have. It is hardly even brought up . . . It hasn't affected us in terms of one sub, one deal, one anything . . . [T]he people who have cried, 'Oh my god, this could hurt retransmission,' are really exaggerating greatly . . . It's not something I . . . lose sleep over for even 5 minutes." Exh. 2 (8/2/12 CBS Q2 2012 Earnings Call Tr.) at 11.  Mr. Moonves later repeated similar statements on April 30, 2013 and again on May 1, 2013; Exh. 4 (4/30/13 Hollywood Reporter article) ("We don't lose sleep over Aereo"; "I don't think they're going to hurt us . . . ."); Exh. 5 (5/1/13 CBS Q1 2013 Earnings Call Tr.) at 15, 16 ("It's sort of an insignificant player"; "it's not a major concern for us").

other agreements since Aereo's launch and ***Aereo was not a factor in even one of those***

***negotiations***.  *See*, *e.g.*, ABC Pls.' Obj. to J. Pitman's Ruling on Discovery Disputes, No. 12-

Civ-1540, Dkt. No. 252 at 12; *id.* at 2 (asserting that "[t]he ABC Plaintiffs have expressly

acknowledged that Aereo has not yet been a factor in the renegotiations of its retransmission

agreements and has not affected the terms of its agreements."); Exh. 6 (Ltr from ABC Pls.' to J.

Pitman) at 2 ("As the Court now knows, Aereo's lack of impact on renegotiated retransmission

agreements has not been in dispute for months.").  Thus, there is no basis to conclude that Aereo

now presents a threat of imminent harm to any retransmission negotiations.

### B.  NIELSEN CAN NOW MEASURE AEREO VIEWERSHIP

This Court also found irreparable harm arising from the alleged then-existing

technological inability to measure Aereo viewership and include it in Nielsen ratings.

Specifically, it found that "Aereo will damage Plaintiffs' ability to negotiate with advertisers by

siphoning viewers from traditional distribution channels, in which viewership is measured by

Nielsen ratings, into Aereo'[s] service ***which is not measured by Nielsen***, artificially lowering

these ratings." *Aereo I*, 874 F. Supp. 2d at 397 (emphasis added).  The intervening two years

changed the facts upon which the Court's finding is premised.  As Aereo predicted, Nielsen has

since developed the means to measure Aereo viewership.  As Aereo's damages expert opined:

> Nielsen . . . has already developed technology that will enable cross-platform
> viewing using Aereo's antenna/DVR technology to be measured and added to the
> established viewership currency. . . . [S]ome of this technology has been released
> already, and other technology has been trial-tested and they expect to release it
> soon. As a result, by the time Aereo usage is widespread, as anticipated by Aereo
> executives, it is highly likely that all viewership via a consumer's use of an Aereo
> antenna will be measured, if it is not already.

Exh. 8 (12/20/13 Expert Report of Dr. Tasneem Chipty) at ¶ 12(b); *see also id.* at ¶¶ 43–52;

Exh. 7 (Nielsen press releases concerning new cross-platform measurement services).[23]

This Court cannot rely on two-year old findings to support the entry of a preliminary injunction today, particularly where those findings have now been expressly contradicted.  And because Plaintiffs have offered no new evidence of imminent, non-speculative irreparable harm that will occur before a trial on the merits, the "most important prerequisite" for a preliminary injunction is not met, and no injunction order should enter.

## IV.   A PRELIMINARY INJUNCTION ON REMAND CANNOT APPLY TO AEREO'S "RECORD" FUNCTION

Even if Plaintiffs could succeed on their claims with respect to "Watch Now" and show irreparable harm, Plaintiffs' request on remand for an injunction on all aspects of Aereo's technology is unsupportable.  Plaintiffs' motion for a preliminary injunction was "limited in scope, challenging only the aspects of Aereo's service that allow subscribers to view Plaintiffs' copyrighted television programs contemporaneously with the over-the-air broadcast of these programs."  *Aereo I*, 874 F. Supp. 2d at 376.  Accordingly, the Supreme Court's decision was expressly limited to the question of whether transmissions contemporaneous with the underlying broadcast constituted a public performance.  *See Aereo III*, 134 S. Ct at 2503.  Despite this limited scope, Plaintiffs attempt to fundamentally change their claim for preliminary relief on remand, now requesting an injunction against both the contemporaneous playback of recordings ("Watch Now") *and* the "time-shifted" playback of recordings ("Record" or "Cloud DVR").

---

[23] Aereo's expert also provides numerous other bases why Aereo does not cause harm—irreparable or otherwise—to Plaintiffs.  *See generally* Exh. 8 (12/20/13 Expert Report of Dr. Tasneem Chipty).

The Supreme Court has now distinguished these functions and these new distinguishing points have never been briefed by the parties, or addressed by any Court.[24]

In any event, Plaintiffs' request is at odds with *Aereo III*, which identified two different analyses—one for simultaneous, cable-like retransmission, and another for time-shifted playback of user stored copies like *Cablevision*. 134 S. Ct. at 2506–11. The Supreme Court was careful to avoid overturning *Cablevision*, which is still the controlling law in this Circuit. *Id* at 2511. Because *Cablevision* remains good law, this Court is bound by its undisturbed findings that Aereo's time-shifted DVR is functionally identical to Cablevision's RS-DVR. This Court found that "the copies Aereo's system creates are not materially distinguishable from those in *Cablevision*." *Aereo I*, 874 F. Supp. 2d at 385. It likewise found that "on the key points on which *Cablevision* actually relied, Aereo's system is materially identical to that in *Cablevision*," and that "[t]he overall factual similarity of Aereo's service to *Cablevision* on these points suggests that Aereo's service falls within the core of what *Cablevision* held lawful." *Id*. at 386. Thus, for those aspects of Aereo's system that are functionally identical to *Cablevision's* time-shifting playback, this Court is bound by its prior analysis and the Second Circuit affirmance.[25]

In addition, under *Aereo III*, the question of whether an entity performs to the "public" turns in part on the relationship of the user to that which is transmitted. *See Aereo III*, 134 S. Ct. at 2502 ("This is relevant because when an entity performs to a set of people, whether they constitute 'the public' often depends upon their relationship to the underlying work."). The

---

[24] Plaintiffs should not be permitted extraordinary injunctive relief on a claim they previously declined to assert. *See Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299–300 (2d Cir. 1999) (vacating injunction extending beyond the scope of the issue tried in the case).

[25] The Court will recall that this distinction was **Plaintiffs' argument** during the preliminary injunction when they tried to distinguish Aereo's "Watch Now" function from the time-shifted copies at issue in *Cablevision*: "Primarily, Plaintiffs argue that the copies in this case are unlike those in *Cablevision* because *Cablevision* addressed only copies used for time-shifting—recording programs to view them at a later time—whereas Aereo's system allows users to view television programs close in time to their initial broadcast." *Aereo I*, 874 F. Supp. 2d at 387.

Supreme Court found that a simultaneous playback is, from the user's point of view, indistinguishable from a cable system, insofar as the user is agnostic about his or her possessory interest in the copy transmitted—the user merely intends to watch the show while it is being broadcast.  *Id.* at 2507.  In contrast, when Aereo users play back programs they previously recorded, they do so just as users of the Cablevision RS-DVR do.  *Id.* at 2510.  An Aereo subscriber who has made a time-shifted recording of a television program broadcast over the public airwaves on Aereo's servers is the "possessor" of that copy to the same degree as the Cablevision RS-DVR user.

The Supreme Court's holding that consumers have the right to record copyrighted programs for the purpose of time-shifting confirms that those consumers act "in their capacities as owners or possessors of the underlying works" when they play those recordings back.[26]  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984); *Aereo III*, 134 S. Ct. at 2510.  Justice Scalia's dissent identified this distinction and the majority's refusal to address "time-shifted" playback.  *Id.* at 2517 ("Today's decision addresses the legality of Aereo's '[W]atch [Now]' function, which provides nearly contemporaneous access to live broadcasts. On remand, one of the first questions the lower courts will face is whether Aereo's '[R]ecord' function, which allows subscribers to save a program while it is airing and watch it later, infringes the Networks' public-performance right. The volitional-conduct rule provides a clear answer to that question: Because Aereo does not select the programs viewed by its users, it does not perform.").

The dissent was correct.  In the context of "time-shifted" playback it is the user (not Aereo) who is the volitional actor making and playing back the copy.  *Cablevision* held that

---

[26] Plaintiffs ignore these distinctions and insist the Supreme Court found that ***any*** playback is a public performance, even where the playback is non-simultaneous or "time-shifted."  Mem. at 13-14. This is not correct.  Among other things, it would overrule *Cablevision*, which the Court expressly did not do.  *Aereo III*, 134 S. Ct. at 2512–13.  The Court was clear that it was only addressing simultaneous or near simultaneous playback. *See id.* at 2503.

when users "press the button" to make a recording, they are the volitional actors, and

Cablevision is not liable.  536 F.3d at 130-33.  The Supreme Court did not disturb *Cablevision*'s

holding; it only addressed the question of who is the volitional actor in the context of

simultaneous or near simultaneous playback, which it also made clear is subject to a different

analysis.  *Aereo III*, 134 S. Ct. at 2507, 2517. This must be the rule, or one cannot reconcile the

*Cablevision* volition analysis (which remains the law in this Circuit) and *Aereo III*.[27]

**CONCLUSION**

For these reasons, the Court should deny Plaintiffs' renewed motion for a preliminary

injunction.  Alternatively, if an injunction enters, it should be limited to only simultaneous

transmissions.  Aereo respectfully submits that oral argument will assist the Court in resolving

the issues raised in the parties' written submissions, and accordingly requests the opportunity to

present the Court with oral argument.

Dated: August 29, 2014

Respectfully submitted,

AEREO, INC.

By its attorneys,

__ */s/ R. David Hosp*_____
R. David Hosp  (RH 3344)
Mark S. Puzella (admitted *pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
617.542.5070 (tel)
617.542.8906 (fax)
hosp@fr.com
puzella@fr.com

---

[27] Plaintiffs' other argument, that the Supreme Court held that "Aereo's subscribers' copies are not lawfully acquired," Mem. at 14, is wrong.  The Court did not address reproduction at all and expressly limited its decision to the question of simultaneous or near simultaneous public performances.  Aereo's users are entitled to use a remote DVR to receive a broadcast signal and make a copy because they have an implied license to do so.  The only question addressed by the Court is whether a company publicly performs when its technology allows users to transmit those copies simultaneously or near simultaneously with the underlying broadcast.

25

Seth Greenstein (admitted *pro hac vice*)
CONSTANTINE | CANNON, LLP
One Franklin Square
1301 K Street, NW, Suite 1050 East
Washington, DC 20005
202.204.3514 (tel)
202.204.3500 (fax)
sgreenstein@constantinecannon.com

Michael S. Elkin
Thomas Patrick Lane
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
212.294.6700 (tel)
212.294.4700 (fax)
melkin@winston.com
tlane@winston.com

Jennifer A. Golinveaux (admitted *pro hac vice*)
WINSTON & STRAWN LLP
101 California Street
San Francisco, California 94111
415.591.1000 (tel)
jgolinveaux@winston.com

26

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2014, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_____/s/ R. David Hosp_____
R. David Hosp
