# EXHIBIT 1

# CONSTANTINE CANNON LLP

**Seth Greenstein**
202-204-3514
sgreenstein@constantinecannon.com

NEW YORK | WASHINGTON | LONDON

October 10, 2014

### VIA ELECTRONIC FILING

Ms. Marlene Dortch, Secretary
Federal Communications Commission
445 12th Street, S.W.
Washington, D.C. 20554

Re:   Ex Parte Presentation Notice, *Interpretation of the Terms "Multichannel Video Programming Distributor" and "Channel,"* MB Docket No. 12-83

Dear Ms. Dortch:

This letter is submitted pursuant to 47 C.F.R. § 1.1206.

On October 8, 2014, Chaitanya Kanojia, CEO, Brenda Cotter, General Counsel, and Virginia Lam, Senior Vice President for Communications and Government Affairs, of Aereo, Inc. and the undersigned met with the following persons:

- Chairman Tom Wheeler; Philip Verveer, Senior Counselor; Gigi B. Sohn, Special Counsel for External Affairs; Maria Kirby, Legal Advisor, Media, Consumer and Governmental Affairs, and Enforcement; Jonathan Sallet, FCC General Counsel
- Adonis Hoffman, Chief of Staff and Senior Legal Advisor, Media; Christine Sanquist, legal intern, for Commissioner Mignon Clyburn
- Clint Odom, Policy Director for Commissioner Jessica Rosenworcel
- Commissioner Ajit Pai and Matthew Berry, Chief of Staff
- Erin McGrath, Legal Advisor, Wireless, Public Safety and International, for Commissioner Michael O'Rielly
- William T. Lake, Chief of the Media Bureau; Michelle Carey, Deputy Chief; Nancy Murphy, Associate Chief; Alison Neplokh, Chief Engineer; Mary Beth Murphy, Chief of the Policy Division of the Media Bureau; Steven Broeckaert, Senior Deputy Division Chief; Brendan Murray, Assistant Division Chief; and Jennifer Tatel, Associate General Counsel

The purpose of the meetings was to update the Commission on the status of Aereo following the Supreme Court opinion in *American Broadcasting Cos., Inc. v. Aereo, Inc.*, 134 S.Ct. 2498 (2014), and to discuss the positive implications for video competition from including within the definition of "multichannel video program distributors" ("MVPDs") systems that

CONSTANTINE CANNON LLP

NEW YORK | WASHINGTON | LONDON

Ms. Marlene Dortch, Secretary
October 10, 2014
Page 2


provide, over the internet, linear channels of broadcast video programming for purchase by subscribers. More specifically, Aereo noted that, prior to the Supreme Court decision, it had established facilities in 14 metropolitan areas and had publicly announced plans to roll out its system in up to 50 cities within one year. With minimal marketing, Aereo signed up a large number of consumers for its low-price, technologically sophisticated streaming and recording product, and compiled a list of interested consumers nearly three times its member base. The Supreme Court determined under copyright law that Aereo's streaming operation effectively was a cable system and, had such a system existed in 1976, Congress would have intended to cover such streaming within the right of public performance. In response to the ruling, Aereo has paused its operations while seeking greater legal clarity for potential next steps. Aereo believes, in view of the Supreme Court opinion, that it qualifies for the cable system compulsory license under section 111 of the Copyright Act. That issue now is pending before the courts.

According to recent news reports, the FCC may be considering whether certain types of online video services are included within the contours of its definition of MVPDs. Aereo stated in the meetings its support for the issuance by the Commission of a Notice of Proposed Rulemaking to define or construe "MVPD" to include a narrow category of internet-based services whose facilities deliver to subscribers linear channels of video programming such as local, over-the-air broadcast programming. Aereo's experience in the market has demonstrated that consumers want and will subscribe to a service that provides convenient access to local broadcast television programs via the internet for a reasonable monthly fee. Such services appeal not only to so-called "cord-cutters" and "cord-never" consumers who cannot afford high-priced monthly bundled subscription packages, but also to consumers looking to add convenient mobile access to their existing MVPD subscriptions and personal recordings. Accordingly, characterizing linear streaming online video services as "MVPDs" would create regulatory parity among systems that provide access to the same linear channels to a similar subscriber base, increase investment and competition in the video programming market, and provide consumers with attractive competitive alternatives to existing MVPD services.

Aereo emphasized that meaningful competition from such online services can only materialize and develop into a sustainable business in a stable and certain regulatory environment. Particularly in the wake of adverse judicial and agency decisions over the last several years, linear online streaming services likely cannot attract the level of investment necessary to create meaningful competition to incumbent business models without a clear path of regulatory certainty. The Commission could provide such assurance to new market entrants like Aereo by defining or construing "MVPDs" to include systems that transmit linear channels of video programming to consumers via the internet—thereby securing to all MVPDs, in a technology-neutral way, the right to engage in timely, good faith negotiations to license channels by retransmission consent.

CONSTANTINE CANNON LLP

NEW YORK | WASHINGTON | LONDON

Ms. Marlene Dortch, Secretary
October 10, 2014
Page 3

      Online linear channel streaming services have the ability to comply with the Commission's regulatory obligations imposed on MVPDs, such as program carriage, emergency alerts, equal opportunity employment, and closed captioning. With respect to program carriage obligations, Aereo noted that online video streaming systems do not face bandwidth constraints encountered by incumbent services, and that Aereo saw no impediment to carrying local stations that elect "must carry." Aereo's system had enabled consumers to receive programming from local television channels that could be received by antenna and was listed in the electronic program guide for that area, including public broadcasting and LPTV channels. For that reason, many local broadcasters had promoted Aereo on their websites and supported Aereo in the courts.

      One concern expressed in the meetings was that potential licensor insistence on taking a "bundle" of broadcast and cable channels in retransmission consent negotiations could harm the economic viability of online streaming services. Aereo stated its view that the good faith negotiation obligation for retransmission consent under Commission regulations should require the licensor to offer a license to only the broadcast channels subject to retransmission consent, without a license to other content or bundles. Aereo expressed its view that any licenses offered to online services should be in relative parity to licenses offered to other types of systems offering similar access to linear broadcast television channels.

      The Aereo representatives said that a proposed NPRM definition of "MVPD" need not and should not cover services that offer consumers access to video programming in an on-demand or non-linear channel format. Such services have successfully demonstrated their ability to operate and obtain necessary licenses without FCC regulatory intervention. By contrast, the proposed NPRM would merely allow linear online streaming systems to compete in parity with incumbent competitors under the existing regulatory framework, to the benefit of consumers.

      Finally, Aereo emphasized that timely Commission action is crucial to its ability to bring such a service to market. Issuing the proposed NPRM within the next several weeks, and adopting the proposed rule within several months thereafter, would support Aereo's re-launch as a viable and sustainable new entrant in competition with incumbent MVPDs.

      In accordance with Section 1.1206 of the Federal Communications Commission rules, this letter is being provided to your office. A copy of this notice has been delivered via email to the persons listed below.

      Respectfully submitted,

      */s/ Seth D. Greenstein*

      Seth D. Greenstein

CONSTANTINE CANNON LLP

NEW YORK | WASHINGTON | LONDON

Ms. Marlene Dortch, Secretary
October 10, 2014
Page 4


CC:    Chairman Tom Wheeler
       Commissioner Ajit Pai
       William T. Lake
       Philip Verveer
       Gigi B. Sohn
       Maria Kirby
       Jonathan Sallet
       Adonis Hoffman
       Clint Odom
       Matthew Berry
       Erin McGrath
       Michelle Carey
       Nancy Murphy
       Alison Neplokh
       Mary Beth Murphy
       Steven Broeckaert
       Brendan Murray
       Jennifer Tatel