UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
AMERICAN BROADCASTING COMPANIES,
INC., DISNEY ENTERPRISES, INC., CBS
BROADCASTING INC., CBS STUDIOS INC.,
NBCUNIVERSAL MEDIA, LLC, NBC
STUDIOS, LLC, UNIVERSAL NETWORK
TELEVISION, LLC, TELEMUNDO
NETWORK GROUP LLC, WNJU-TV
BROADCASTING LLC,

                 Plaintiffs,

                 v.

AEREO, INC.,

                 Defendant.
-------------------------------------------------------------- x
WNET, THIRTEEN, FOX TELEVISION
STATIONS, INC., TWENTIETH CENTURY
FOX FILM CORPORATION, WPIX, INC.,
UNIVISION TELEVISION GROUP, INC., THE
UNIVISION NETWORK LIMITED
PARTNERSHIP, and PUBLIC
BROADCASTING SERVICE,

                 Plaintiff,

                 v.

AEREO, INC. f/k/a BAMBOOM LABS, INC.,

                 Defendant.
-------------------------------------------------------------- x

Case No. 12-Civ-1540 (AJN)
(Consolidated)

**REPLY MEMORANDUM ON REMAND IN SUPPORT OF A PRELIMINARY INJUNCTION**

Richard L. Stone (*pro hac vice*)
Kenneth D. Klein (*pro hac vice*)
Julie A. Shepard (*pro hac vice*)
JENNER & BLOCK LLP
633 West Fifth Street
Los Angeles, CA 90071
Tel:   (213) 239-5100
Fax:  (213) 239-5199

*Counsel for the WNET Plaintiffs*

Dated:    September 5, 2014

Bruce P. Keller
Jeffrey P. Cunard
Matthew E. Fishbein
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel:   (212) 909-6000
Fax:  (212) 909-6836

*Counsel for the ABC Plaintiffs*

**TABLE OF CONTENTS**

I.    *AEREO III* DID NOT HOLD THAT AEREO QUALIFIED FOR A SECTION 111 LICENSE, AND AEREO IS NOT ELIGIBLE FOR SUCH A LICENSE. ..................................................................................................1

II.    AEREO IS NOT ELIGIBLE FOR THE DMCA SAFE HARBOR. ........................4

III.    AEREO CAUSED, AND CONTINUES TO THREATEN, IRREPARABLE HARM..................................................................................................................6

IV.    PLAINTIFFS ARE ENTITLED TO AN INJUNCTION THAT PROHIBITS AEREO FROM PUBLICLY PERFORMING THEIR COPYRIGHTED WORKS. ...............................................................................................................8

# TABLE OF AUTHORITIES

**CASES**

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
    414 F.3d 400 (2d Cir. 2004)..................................................................................................2

*Am. Broad. Co., Inc. v. Aereo, Inc.*,
    134 S. Ct. 2498 (2014)............................................................................................... *passim*

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
    874 F. Supp. 2d 373 (S.D.N.Y. 2012)..............................................................................6, 8, 9

*Cartoon Network LP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008)................................................................................................10

*Community Television of Utah, LLC v. Aereo, Inc.*,
    No. 2:13 CV 910 DAK, 2014 WL 642828 (D. Utah Feb. 19, 2014)..............................6

*Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*,
    915 F. Supp. 2d 1138 (C.D. Cal. 2012) ..............................................................................6

*Fox Television Stations, Inc. v. FilmOn X LLC*,
    966 F. Supp. 2d 30 (D.D.C. 2013) .....................................................................................6

*In re Charter Communications, Inc.*,
    393 F.3d 771 (8th Cir. 2005) ..............................................................................................4

*Mullins v. City of New York*,
    626 F.3d 47 (2d Cir. 2010)..................................................................................................8

*Nat'l Broad. Co., Inc. v. Satellite Broad. Networks, Inc.*,
    940 F.2d 1467 (11th Cir. 1991) ..........................................................................................4

*Pac. & So. Co. v. Satellite Broad. Networks, Inc.*,
    694 F. Supp. 1565 (N.D. Ga. 1998) ....................................................................................4

*Rangel v. United States*,
    155 F. Supp. 2d 949 (N.D. Ill. 2001) ...................................................................................1

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)..................................................................................................7

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)....................................................................................................7

2305551.2

*Satellite Broad. & Comms. Assn. of Am. v. Oman*,
    17 F.3d 344 (11th Cir. 1994) ...................................................................................4

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2013)......................................................................................4

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275 (2d Cir. 2012)............................................................................ *passim*

*WPIX, Inc. v. ivi, Inc.*,
    765 F. Supp. 2d 594 (S.D.N.Y. 2011)..................................................................3, 4

**STATUTES**

17 U.S.C. § 111............................................................................................... *passim*

17 U.S.C. § 119.............................................................................................................2

17 U.S.C. § 512...................................................................................................1, 4, 5

**OTHER AUTHORITIES**

57 Fed. Reg. 3284 (Jan. 29, 1992) ...............................................................................3, 4

62 Fed. Reg. 18705 (Apr. 17, 1997) ................................................................................2

H.R. Rep. No. 94-1476 (1976).........................................................................................4

H.R. Rep. No. 105-551(II) (1998) ...................................................................................5

S. Rep. No. 105-190 (1998)..........................................................................................4, 5

U.S. Copyright Office, *Satellite Home Viewer Extension and
    Reauthorization Act Section 109 Report* (June 2008).......................................3

Aereo's opposition to the injunction is meritless. Aereo is not entitled to a Section 111 license; the DMCA safe harbor does not apply because Aereo is not a passive conduit; the evidence fully supports the Court's findings on irreparable harm, which would continue 24 hours a day, 7 days a week absent an injunction; and its proposed relief would be ineffective in stopping infringing retransmissions.

**I.  *AEREO III* DID NOT HOLD THAT AEREO QUALIFIED FOR A SECTION 111 LICENSE, AND AEREO IS NOT ELIGIBLE FOR SUCH A LICENSE.**

The Supreme Court expressly held that Aereo infringes Plaintiffs' exclusive right of public performance when it retransmits their broadcast programming. *Am. Broad. Co., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2503 (2014) ("*Aereo III*"). That cannot be reconciled with Aereo's claim that the Court also held, without stating, that it is entitled to a Section 111 license. *See* Opp. 3-15; Pls. Mem. 8-11.[1] Nor did *Aereo III* "implicitly overrule[]" (Opp. 17 n.15) *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1585 (2013) ("*ivi II*"), which holds that Internet retransmission services (like Aereo's) are not cable systems entitled to the Section 111 license. *Aereo III* never mentioned, let alone disagreed with, *ivi II* or the repeated statements of the Copyright Office that such services fall outside Section 111.

Aereo's fallback position is that *ivi II* is "not controlling" because ivi's service was "nationwide" and Aereo uses a "fundamentally different" "in-market technology." Opp. 2, 15-17. Aereo is wrong. *ivi II* is dispositive because the Second Circuit rejected all of the Section 111 arguments Aereo now raises.

---

[1] Aereo's reliance on statements of individual Justices made during oral argument should not be credited. *See Rangel v. United States*, 155 F. Supp. 2d 949, 954 (N.D. Ill. 2001) ("questions and statements that justices . . . make at oral argument" are not "binding").

1

First, like Aereo, ivi also argued that it should be allowed to provide a local-into-local service; both the District Court and the Second Circuit rejected that argument.[2] As the Second Circuit stated, what matters is whether the provider is an "inherently localized transmission media of limited availability . . . ." *ivi II*, 691 F.3d at 284 (quoting 62 Fed. Reg. 18705, 18707 (Apr. 17, 1997) (citations omitted)). That does not describe Aereo. *ivi II* held the Internet is not "inherently localized." 691 F.3d at 280 (Internet is "a global network of millions of interconnected computers" (quoting *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 403 (2d Cir. 2004)).[3] The Second Circuit neither limited its decision to services retransmitting out-of-market signals nor excluded local-into-local service. Its holding was unequivocal: "Congress did not intend for § 111 licenses to extend to Internet retransmissions" and the Copyright Office's view that "Internet retransmission services do not constitute cable systems under § 111" requires deference from the courts. *Id.* at 284. Indeed, the Copyright Office has "consistently concluded" that Internet retransmission services do not qualify for the Section 111 license because they are "vastly different from other retransmission industries" that do qualify. *See id.* at 283 (citing Copyright Office reports and the views of the Register of Copyrights). Aereo also incorrectly states that the Copyright Office has not opined on "local-to-local Internet transmissions." Opp. 13. The Copyright Office in fact has determined that purely local-into-local Internet

---

[2] ivi specifically argued the injunction was "too broad in that it prevents ivi from making *any* transmissions whatsoever, including those that could be considered local" and sought to narrow it to "allow for localized transmissions." *See* Brief & Special Appendix for Defendants-Appellants at 25, *ivi II*, 691 F.3d 275 (2d Cir. 2012) (11-0788-cv), Docket No. 63.

[3] With respect to satellite, another non-localized medium that offers local-into-local transmissions, the Second Circuit noted that satellite carriers, which reach millions of households, do not qualify for the Section 111 license. *See ivi II*, 691 F.3d at 281-82 (satellite carriers have their own compulsory license, citing 17 U.S.C. § 119).

2

retransmission services do not qualify for Section 111,[4] a view it just reaffirmed in refusing to process Aereo's statements of account. Pls. Mem. 11-13 & Exs. C&D.

Second, Aereo also incorrectly contends that it "meets all the definitional requirements of a 'cable system' under Section 111" because it has a "facility" in Brooklyn that receives and transmits broadcast signals. Opp. 8-10. The Second Circuit rejected a similar argument made by ivi, which, like Aereo, used the Internet, and not just its own equipment, to retransmit programming. *See ivi II*, 691 F.3d at 282 (Internet retransmissions not covered by Section 111); *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 616-17 (S.D.N.Y. 2011) ("*ivi I*") (same). Were Aereo right, "anyone with a computer, Internet connection, and TV antenna can become a 'cable system,'" which "cannot be seriously argued" is "what Congress intended." *ivi I*, 765 F. Supp. 2d at 617.[5] *See also ivi II*, 691 F.3d at 284 (statutory definition "should not be read broadly to include 'future unknown services'" (quoting 57 Fed. Reg. 3284, 3293-96 & n.5 (Jan. 29, 1992))).

---

[4] The Copyright Office concluded that a local-into-local Internet retransmission service would not – and should not – qualify for the Section 111 license. U.S. Copyright Office, *Satellite Home Viewer Extension and Reauthorization Act Section 109 Report* 192-94 (June 2008). The provider's assertion that its retransmissions would be confined to in-market subscribers through a "triple-secured, fail-safe system" did not alter the Copyright Office's analysis. *Id.* (expressing concerns with Internet distribution, despite provider's "[m]assive signal security"). Aereo's system is far from being "massively" secure. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ All lettered exhibits are attached to the Shepard Declaration (other than Exhibit A to the Declaration of Bruce Keller).

[5] Aereo's assertion that the Supreme Court's statements that the Transmit Clause and Section 111 amendments to the 1976 Copyright Act are "inextricably intertwined" (Opp. 5-6) ignores that Section 111 is an *exception* to the exclusive grant of rights and must be construed narrowly. *See ivi II*, 691 F.3d at 281-82 ("compulsory licenses . . . act[] in derogation" of exclusive rights and must be construed "as narrowly as possible"). Indeed, satellite retransmission services fall within the Transmit Clause in the same sense, but are not entitled to the Section 111 license. *Id.*

Finally, Aereo argues that its Internet retransmissions are "permissible" under FCC regulations as required by Section 111. Opp. 11. As the Second Circuit held in *ivi II*, "the compulsory license applies only to localized retransmission services ***regulated*** as cable systems by the FCC." 691 F.3d at 284 (emphasis added) (quoting 57 Fed. Reg. at 3292); s*ee also Pac. & So. Co. v. Satellite Broad. Networks, Inc.*, 694 F. Supp. 1565, 1571 (N.D. Ga. 1998) (plain meaning of "permissible" is that carriage must be affirmatively authorized); H.R. Rep. No. 94-1476, at 89 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5704 (retransmissions must be "authorized" by FCC rules).[6] Aereo's contention that Internet retransmission services are not FCC regulated, Op. at 11, means it cannot then be eligible for the Section 111 license.[7]

## II. AEREO IS NOT ELIGIBLE FOR THE DMCA SAFE HARBOR.

Aereo misunderstands Section 512(a) of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(a). That safe harbor applies solely to "conduit only" providers, such as ISPs,[8] that facilitate third-party "transitory digital network communications" of infringing content. *See* S. Rep. No. 105-190, at 2 (1998) (DMCA designed to "clarif[y] the liability faced

---

[6] Aereo relies on *Nat'l Broad. Co., Inc. v. Satellite Broad. Networks, Inc.*, 940 F.2d 1467, 1468 (11th Cir. 1991), to argue otherwise. Opp. 12. The Eleventh Circuit, however, disavowed that decision (*see Satellite Broad. & Comms. Assn. of Am. v. Oman*, 17 F.3d 344, 346 (11th Cir. 1994)) after the Copyright Office had "roundly criticized" it in a "thorough, point-by-point refutation" expressly rejecting its prior analysis. *See ivi I*, 765 F. Supp. 2d at 607-08 & n.16 (rejecting ivi's citation to the Eleventh Circuit's 1991 decision for this point, quoting Copyright Office view that "the operation of Section 111 was 'hinged on the FCC rules regulating the cable industry'" and concluding "[s]ince satellite carriers were not regulated by the FCC, Congress did not intend for them to be covered" (quoting 57 Fed. Reg. 3284)).

[7] *See also* 17 U.S.C. § 111(c)(1) (statutory licensing available to cable system where signal "carriage" is "permissible under the [FCC's] rules, regulations, or authorizations").

[8] *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 39 (2d Cir. 2013) ("structure of the statute distinguishes between so-called 'conduit only' functions under § 512(a)" and other safe harbors). *See also In re Charter Communications, Inc.*, 393 F.3d 771, 776 (8th Cir. 2005) (Section 512(a) service provider "merely acts as a conduit for infringing material without storing, caching, or providing links to copyrighted material"; data transferred between two Internet users).

by service providers who transmit potentially infringing material over their networks"). Such "conduits" simply route content between or among users. Aereo is not a passive conduit for the communications of others. *Aereo III,* 134 S. Ct. at 2507; S. Rep. 105-190, at 41 ("Subsections (a)(1) through (5) limit the range of activities that qualify under this subsection to ones in which a service provider plays the role of a 'conduit' for the communications of others."). As the originator of the transmissions to its subscribers and the source of the content it transmits, Aereo also does not satisfy the multiple eligibility criteria of the Section 512(a) safe harbor:

- Section 512(a)(1) requires that transmissions of material must be initiated by or at the direction of a person other than the defendant. Here, Aereo performs the work; a viewer's click does not make her the performer. *Aereo III*, 134 S. Ct. at 2507.

- Section 512(a)(2) prohibits a service provider from selecting the material. Here, Aereo itself determines the specific sources of material – all local broadcast television stations' programming – that it chooses to make available through its service.[9]

- Section 512(a)(3) prohibits a service provider from selecting the recipients of copyrighted material routed through its system. Aereo solicits subscribers to receive its transmissions and enters into agreements with them.

- Section 512(a)(4) mandates that a provider may not retain copies for a period longer "than is reasonably necessary for the transmission, routing, or provision of connections."[10] Aereo makes copies for other purposes (e.g., to enable pausing, fast-forwarding, and rewinding while watching) and retains them for potentially an unlimited time.[11]

---

[9] *See* H.R. Rep. No. 105-551(II), at 51 (1998) ("'[S]election of the material' in subsection (a)(2) means the editorial function of determining what material to send, or the specific sources of material to place on-line (e.g., a radio station), rather than 'an automatic technical process' of responding to a command or request, such as one from a user . . . ."). Aereo is performing the "editorial function," not the Aereo subscriber who selects a particular program to watch.

[10] *See* H.R. Rep. No. 105-551(II), at 51 (1998) (copies may be made only while material is "en route" to its destination, e.g., a router or mail server and other "transient copies"). *See also* S. Rep. 105-190, at 40 ("intermediate and transient" storage means copies "made and/or stored" in course of transmission, not stored at the point where the "transmission is initiated or received").

[11] Because Aereo's business is completely unlike those covered by the 512(a) safe harbor, it also cannot meet the threshold requirement, for all safe harbors, that it have a policy of terminating "repeat infringers." *See* 17 U.S.C. § 512(i)(1)(A). No such policy would be meaningful for Aereo because Aereo itself is the "repeat infringer."

5

### III. AEREO CAUSED, AND CONTINUES TO THREATEN, IRREPARABLE HARM

Aereo does not challenge in its Opposition this Court's findings about these multiple ways it threatens irreparable harm – loss of subscribers due to cord cutting, loss of control over copyrighted content, and damage to relationships with licensed content providers. *See generally* Opp. 19-22; *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 397-99 (S.D.N.Y. 2012) ("*Aereo I*"). Any one of these harms provides a continuing basis on which to enjoin Aereo. *ivi II*, 691 F.3d at 286 ("retransmitting plaintiffs' copyrighted programming without their consent" would adversely affect "[t]he quantity and quality of . . . television programming, retransmission and advertising revenues, distribution models and schedules" and would "threaten to destabilize the entire industry").

Aereo now only claims that "Plaintiffs conceded during discovery that Aereo did not harm retransmission consent negotiations," Opp. 20, and that, supposedly, Nielsen now measures Aereo. Opp. 21-22. Aereo misrepresents the record.

First, the discovery record shows Aereo had an adverse effect, post-hearing, on certain retransmission negotiations. *See* Shepard Decl. ¶¶ 4-5, Exs. C-E; Declaration of Bruce Keller, Ex. A. Aereo was used as leverage in the exact way courts considering the question have identified as a type of irreparable harm. *ivi II*, 691 F.3d at 286 (absence of preliminary injunction "would encourage" unauthorized Internet services, causing decline in "plaintiffs' negotiating platform and business model"); *Aereo I*, 874 F. Supp. 2d at 398; Pls. Mem. 6.[12] Despite Aereo's impact on those negotiations, it remains difficult to quantify given the multitude of factors involved in the negotiations. Ex. D; Keller Decl. Ex. A. That makes the harm irreparable. *See,*

---

[12] *Accord Community Television of Utah, LLC v. Aereo, Inc.*, No. 2:13 CV 910 DAK, 2014 WL 642828, at *9 (D. Utah Feb. 19, 2014); *Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30, 49-50 (D.D.C. 2013); *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1147 (C.D. Cal. 2012).

*e.g.*, *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (harm irremediable, including where loss is difficult to measure); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (irreparable harm found based on inability to quantify harm resulting from damage to business relationship).

Second, Aereo exacerbated the harm it created in the immediate wake of this Court's denial of a preliminary injunction ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Charlie Ergen, Chairman of Dish, publicly identified the leverage Aereo provided, stating: "obviously, we indirectly get a benefit because it's going to put some downward pressure on retransmission consent fees." Ex. J; *see also ivi II*, 691 F.3d at 286 (undermines "prospective retransmission fees, negotiations, and agreements").

Aereo deliberately ignores this concrete evidence and, instead, provides misleading snippets of statements by CBS President Les Moonves. Hosp Decl., Ex. 2, 4, 5. These, in context, show only that he was confident in Plaintiffs' legal position and that Aereo, with only a few thousand customers, had yet to become an attractive marketplace alternative. This is hardly an admission that a nationwide, unrestrained Aereo would not pose an imminent threat of irreparable harm. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Even

7

Aereo's own expert has admitted that Aereo will cause Plaintiffs' authorized distribution partners to lose subscribers due to cord cutting. Ex. M (¶¶ 102, 116). The threat of irreparable harm remains. *See Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010) (threat of harm sufficient for preliminary injunction).

Aereo also argues that Nielsen now measures Aereo. That is not true. The articles Aereo cites refer to pilot testing of Nielsen's SDK technology, which Nielsen hopes – one day – will be universally adopted as the accepted means of measuring viewership on the Internet. Declaration of Sherry Brennan, ¶ 4. That day has not come and is nowhere near. *Id*. at ¶ 4-5. If not enjoined, Aereo will continue to siphon off viewers to its unmeasured service, thereby causing the very harms this Court has already found. *Id.*; *Aereo I*, 874 F. Supp. 2d at 397-98.

Finally, irreparable harm exists because Aereo now admits that it will not be able to pay a substantial statutory damage award. *See* Kanojia Decl., ¶ 15 (discussing Aereo's dwindling resources); *ivi II*, 691 F.3d at 286 (inability to pay substantial damages award supports finding of irreparable harm).

## IV. PLAINTIFFS ARE ENTITLED TO AN INJUNCTION THAT PROHIBITS AEREO FROM PUBLICLY PERFORMING THEIR COPYRIGHTED WORKS.

Finally, Aereo would limit the injunction by excluding its so-called "Record" function. Aereo concedes, however, that it does not offer a stand-alone "Record function, only one integrated with and inseparable from its "Watch Now" function.[14] Moreover, the Supreme Court

---

[14] Aereo admits that both the "Record" and "Watch Now" functions involve Aereo sending retransmissions to subscribers concurrently with the broadcasts and they result in functionally identical copies. The only difference between the two is that Aereo does not automatically delete the "Record" copy after its infringing retransmission has concluded. *See* Pls. Mem. 4 n.1. Aereo's subscribers, using "Record," are just as capable of watching "live" television, "almost immediately," as those using "Watch Now." *See* 5/30/2012 Hr'g Tr. at 140:20-141:1 (Kanojia) (use of Record function allows joining broadcast of Nate Berkus Show in progress). *See also Aereo I*, 874 F. Supp. 2d at 377. The Kanojia Declaration says it best: "[T]he Aereo technology was not set up to distinguish between operation of the 'Watch Now' function and 'Record'

8

did not limit Aereo's liability to transmissions received only at a particular time, whether nearly simultaneous with the original broadcast or not. To the contrary, as the Court noted, it "does not help Aereo" that "Aereo's subscribers may receive the same programs at different times and locations." *Aereo III*, 134 S. Ct. at 2510. When transmissions are received is immaterial because, for a performance to be to the public, "'the public' need not be situated together, spatially or *temporally*." *Id.* (emphasis added).

This Court's prior finding that Aereo's copies "'are not materially distinguishable from those in *Cablevision*'" cannot insulate Aereo from public performance liability when the copies are played back on a time-shifted basis. Opp. 23 (quoting *Aereo I*, 874 F. Supp. 2d at 385). That finding was made in the context of analyzing the relevance of *Cablevision* to Aereo's use of copies in its retransmission service. The Supreme Court has now unambiguously rejected this analysis in that context. *Aereo III*, 134 S. Ct. at 2509 ("whether Aereo transmits from the same or separate copies, it performs the same work"). *Aereo III* precludes Aereo's argument that it can continue to retransmit Plaintiffs' works so long as there are individual copies that subscribers "time shift." *See also Aereo I,* 874 F. Supp. 2d at 390 ("nothing in *Cablevision* suggests that whether a performance is public turns on the times at which individuals receive the transmission"); *id*. at 386 ("the Second Circuit's analysis . . . did not say one word to suggest that time-shifting played any part in its holding").

Aereo argues its transmissions are not "to the public" because its subscribers are somehow "possessors" of Plaintiffs' copyrighted works. Opp. 23-25. The Supreme Court held precisely to the contrary: Aereo "transmits to large numbers of paying subscribers who lack any

---

function . . . . As a result, Aereo [cannot] just 'turn off' the simultaneous or live viewing." Docket No. 326 at ¶ 7. As of today, Aereo offers only completely simultaneous retransmissions that enable a subscriber to record, for later viewing, the broadcast made available to them live.

prior relationship to the works." *Aereo III*, 134 S. Ct. at 2510. That forecloses this argument. Its argument that subscribers "are entitled to use a remote DVR to receive a broadcast signal and make a copy," Opp. 25 n.27, assumes it is uninvolved in its subscribers' activities. The Supreme Court again held to the contrary: Aereo is an infringing retransmission service, *i.e.*, it is the *source* of the transmissions that result in the copies. *Id*. at 2504 ("An entity that engages in activities like Aereo's *performs*." (emphasis added)); *id.* at 2507 ("Aereo is not just an equipment supplier"). In the context of its public performance analysis, the majority rejected the dissent's views on volition (button pushing), on which Aereo's argument ultimately depends. *Id*.

Finally, Aereo seeks to import *Cablevision*'s approach to volition, developed in the context of the reproduction right claim, into the public performance analysis. Opp. 23-25. *Cablevision* did not conclude that the person who "makes" the copy also "performs" the work. *Cartoon Network LP v. CSC Holdings, Inc.,* 536 F.3d 121, 134 (2d Cir. 2008). By contrast, the Supreme Court has now expressly held that Aereo itself performs.  *Aereo III*, 134 S. Ct. at 2507.

Plaintiffs request the preliminary injunction they submitted be entered.

| | |
|---|---|
| /s/ Richard L. Stone | /s/ Bruce P. Keller |
| Richard L. Stone (*pro hac vice*) | Bruce P. Keller |
| Kenneth D. Klein (*pro hac vice*) | Jeffrey P. Cunard |
| Julie A. Shepard (*pro hac vice*) | Matthew E. Fishbein |
| JENNER & BLOCK LLP | DEBEVOISE & PLIMPTON LLP |
| 633 West Fifth Street | 919 Third Avenue |
| Los Angeles, CA 90071 | New York, NY 10022 |
| Tel:   (213) 239-5100 | Tel:   (212) 909-6000 |
| Fax:   (212) 239-5199 | Fax:   (212) 909-6836 |
| *Counsel for the WNET Plaintiffs* | *Counsel for the ABC Plaintiffs* |

Dated:    September 5, 2014
              New York, New York