DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel 212 909 6000
Fax 212 909 6836
www.debevoise.com

November 12, 2014

VIA CM/ECF

Hon. Alison J. Nathan
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      **ABC, et al. v. Aereo, Inc., 12-cv-1540 (AJN)(HBP) (consolidated)**

Dear Judge Nathan:

  On October 23, 2014, the Court issued its opinion and order granting Plaintiffs' motion for a preliminary injunction. [Dkt. Nos. 341-42.] The Court subsequently granted the parties until November 12, 2014 [Dkt. Nos. 347-48] to submit a joint letter outlining their views on how this case should proceed expeditiously to the final merits stage. [Dkt. No. 341-42 at 16.]

  **The ABC Plaintiffs' Position**

  The ABC Plaintiffs believe this case can be resolved in its entirety and most expeditiously on a motion for summary adjudication focused on Aereo's liability for violating Plaintiffs' public performance rights. After the Supreme Court's opinion in *American Broadcasting Companies, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014) ("*Aereo III*"), there are no remaining disputes of material fact or issues of law that prevent such a resolution. Moreover, as explained below, granting the ABC Plaintiffs' motion for summary adjudication on the public performance claim will resolve all liability issues.

  First, no material issues of fact exist concerning how Aereo operates. The rationale of the Court's decision in *Aereo III* renders unlawful both its Watch Now and its Record for Later functions – regardless of when an Aereo subscriber decides to watch a performance. That is because, whether Aereo's retransmissions to its subscribers are made at the same time or at different times, they violate Plaintiffs' public performance rights. *Aereo III*, 134 S. Ct. at 2510 (that "Aereo's subscribers may receive the same programs at different times . . . does not help Aereo" because the Transmit Clause defines a performance "to the public" to include performances "at the same time or at different times"). Moreover, given that Aereo is a completely unauthorized retransmitter, no Aereo subscriber ever can have a ***prior***, lawful relationship with the programs recorded through Aereo's service. *Id.* at 2510 ("an entity that

Hon. Alison J. Nathan					2					November 12, 2014

transmits a performance to individuals in their capacities as owners or possessors does not perform to 'the public,' whereas an entity **like Aereo** that transmits to large numbers of paying subscribers who lack any prior relationship to the works does so perform") (emphasis added). Accordingly, the reasoning of *Aereo III*, as applied to the undisputed record, leaves Aereo liable regardless of when it performs to its subscribers.

Second, there are no new or disputed facts about the irreparable harm Aereo would have caused had it become successful in the marketplace, let alone had others also followed suit. The Second Circuit, in *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1585 (2013), ruled that unauthorized Internet retransmissions necessarily diminish the value of broadcast programming in ways that are not capable of calculation, cannot be compensated for in money damages and cause irreparable harm. Accordingly, the issue of whether Aereo's service causes multiple types of irreparable harm is now ripe for resolution as a matter of law. *See also Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. 12-CV-1540, 2014 WL 5393867, at *7 (S.D.N.Y. Oct. 23, 2014) (noting that Aereo "does not challenge any of the Court's other findings of irreparable harm to Plaintiffs based on loss of subscribers due to cord cutting, loss of control over copyrighted content, and damage to relationships with content providers, advertisers, or licensees" (citing *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 397-403 (S.D.N.Y. 2012); *WNET, Thirteen v. Aereo, Inc.*, 712 F.3d 676, 696 (2d Cir. 2013))).

Third, a decision finding that Aereo infringes the ABC Plaintiffs' public performance rights, regardless of when Aereo retransmits the ABC Plaintiffs' programs to its subscribers, provides a basis for complete relief. As a result, the ABC Plaintiffs believe that such a ruling would make it unnecessary to litigate the remaining reproduction right claims and will end the liability case. The only issue that would remain to be resolved would be the amount of statutory damages and attorneys' fees to award. Should Aereo be unwilling to negotiate the amount of an award, there are other ways to resolve the damages issue expeditiously. *See Agence France Presse v. Morel*, No. 10-CV-2730 AJN, 2014 WL 3963124, at *15 (S.D.N.Y. Aug. 13, 2014) (noting common practice in absence of jury demand for court to determine appropriate measure of statutory damages); *see also Yurman Studio, Inc. v. Castaneda*, No. 07 CIV. 1241 (SAS), 2008 WL 4949775, at *4 (S.D.N.Y. Nov. 19, 2008) (determining statutory damages on motion and briefing).

Finally, during the discussions that led to submission of this joint letter, Aereo informed the Plaintiffs that it, too, intends to move for summary judgment and/or assert defenses to the Plaintiffs' motion based, at least in part, on a declaration of one of its experts that includes positions not previously set forth in any expert report. Based on Aereo's description, this declaration is apparently intended to support yet another new reading of *Aereo III*, namely, that Aereo has no public performance liability for its Record for Later function because its subscribers are making fair use recordings that they "own" and play back to themselves. There are multiple substantive flaws with that argument, including that those copies are the same copies the Supreme Court held did not "make a difference" with respect to Aereo's infringement of the public performance right, *Aereo III*, 134 S. Ct. at 2509, and, as discussed above, Aereo subscribers have no lawful relationship to those copies.

Hon. Alison J. Nathan					3					November 12, 2014

     Most importantly for present purposes, however, Aereo's argument does not rest on any new facts or create any factual disputes about how Aereo operates, and its merits can be decided as a matter of law.  In fact, based on the description Aereo provided, it does not appear that its proposed expert declaration would even be admissible evidence.  Instead, it seems to consist of disguised legal argument about how this Court should consider and weigh the opinions expressed by the expert in the wake of *Aereo III*.  Although the ABC Plaintiffs completely disagree that Aereo's proposed cross-motion or defense has any support in the law, that it intends to file its own motion for summary judgment confirms that there is no factual dispute that would preclude resolving the ABC Plaintiffs' public performance claim on the present record.  At this point, any proceedings other than by way of summary judgment seem unnecessary.

     Aereo also indicated that it believes expert depositions should occur before motions for summary adjudication are filed.  That will delay the filing of those motions by several months.  The ABC Plaintiffs submit that any such depositions can occur on a parallel track with briefing on the motion and, for present purposes, should be limited only to those expert witnesses on whose opinions the parties have relied in support of their motions.  Accordingly, should a party submit an expert declaration in support of, or in opposition to, a filed summary judgment motion, the opposing part(ies) may, at their election, take the deposition of that expert witness prior to filing their opposition or reply papers, but in accordance with the briefing schedule outlined below.

     The ABC Plaintiffs believe that all parties should file their summary judgment motions by December 15, 2014, with opposition and reply briefs due January 16 and January 30, 2015, respectively.  Oral argument could be held promptly thereafter, perhaps before the third week of February.  In the unlikely event the Court has concluded, after reviewing the motion submissions, that there are any disputed issues of material fact that preclude summary judgment, the ABC Plaintiffs would request that the Court set a prompt trial date in late March or as soon thereafter as counsel for the WNET Plaintiffs is available, if the Court's calendar permits, with allowance for any remaining depositions of the parties' experts.

     **WNET Plaintiffs' Position**

     Given that this will be a court trial, the WNET Plaintiffs believe that the most efficient and expeditious route to reaching the final merits stage of this case is to bypass the summary judgment process and to set this case for trial on January 28 through 30, 2015, if that is consistent with the Court's schedule.  Under this schedule, the WNET Plaintiffs propose that the parties submit pre-trial briefs outlining the issues in the case, the undisputed facts and the controlling law on January 15, 2015.  The WNET Plaintiffs propose that the Court require that, to the extent any party intends to offer expert witnesses at trial, then they must disclose such witnesses by November 21, 2014, and at that same time, provide any supplemental expert report and three dates that the expert is available for deposition that fall on or before December 19, 2014.

     The WNET Plaintiffs have the following alternative proposal if the Court would rather decide motions for summary adjudication prior to conducting a trial.  The WNET Plaintiffs suggest that the all parties' motions for summary adjudication be filed on November 26, 2014

Hon. Alison J. Nathan                               4                           November 12, 2014

with opposition papers due December 30, 2014, reply briefs due January 14, 2015, and a hearing on the motions on January 30, 2015 or as soon thereafter as the Court's schedule will permit. Should a party submit an expert declaration in support of, or in opposition to, a motion for summary adjudication, the WNET Plaintiffs propose that the Court require that party be prepared to offer their expert for deposition promptly and sufficiently in advance of the opposing side's due date for its response brief to enable the deposition to be used in connection with the response brief in accordance with the Court-ordered briefing schedule.

The WNET Plaintiffs request this summary adjudication schedule for multiple reasons. First, as indicated above, they seek to reach the final resolution of this case as soon as possible. This schedule would enable the Court to rule expeditiously and set the trial on any remaining issues in mid- April.  Second, any schedule that would lead to the motions being set for argument between mid-February to mid-March would lead to a conflict between the hearing date in this Court for the motions and a trial in federal court in California for the WNET Plaintiffs' lead counsel, Richard Stone, and other members of the Aereo team.  That trial is scheduled to start on February 24, 2015 and is expected to last three to four weeks.  The WNET Plaintiffs' schedule avoids any conflict and the potential for having the motion hearing delayed until the end of March.  Third, Aereo's proposed schedule creates excessive delay as Aereo suggests that its experts should have until mid-January 2015 to supplement their reports, with expert depositions to occur through February, and only at the end of March may the parties file their motions for summary adjudication.

If the Court determines that there should be motion practice, then WNET Plaintiffs will move for summary adjudication of Aereo's liability for violating their public performance rights. In addition, because Aereo's streaming service included an elaborate, behind-the-scenes monitoring process to improve customer satisfaction that involved the unauthorized copying of thousands of excerpts of Fox's programs, the Fox Plaintiffs intend to bring a motion for partial summary judgment based on this aspect of their reproduction claim against Aereo.  Aereo's monitoring copies are separate and distinct as they were made by Aereo's own employees in New York and Boston, plus Aereo's off-shore monitoring team in India.  Aereo cannot attempt to blame its subscribers for this separate copyright infringement because the monitoring copies were made without any subscriber involvement whatsoever.

**Defendant's Position**

Aereo's position is that what little expert discovery is left should be completed and then summary judgment motions can be filed on all claims.  Fact discovery has closed in this matter, and the only discovery that is remaining is related to the experts in this case.  The Supreme Court decision fundamentally changed the legal context in this case and the parties must have an opportunity to supplement expert reports to avoid substantial prejudice.[1] The parties can submit any supplemental expert reports in short order to address issues raised by the Supreme Court's decision in this case, and then depositions can be taken on an expedited basis to have this matter prepared for a full disposition on the merits of all issues.

---

[1]   If the Court wishes to have further briefing on why this is the case, Aereo will provide it on an expedited basis.

Hon. Alison J. Nathan                                           5                                    November 12, 2014

    Plaintiffs have not presented Aereo with a written proposal regarding the process they would prefer to follow, and it is not entirely clear from the parties' discussions which Plaintiffs are proposing what alternative.  It is Aereo's rough understanding, though, that the Fox Plaintiffs propose, in the first instance, that Aereo should not be permitted to take expert discovery, and that the matter should proceed to trial at the end of January.  To the extent this is the proposal made by the Fox Plaintiffs, Aereo opposes this procedure.  Compelling a trial without expert discovery is fundamentally unfair to a defendant, and runs counter to the purposes of Rule [26] of the Federal Rules of Civil Procedure, which contemplates expert discovery to avoid trial-by-surprise.  And, given the changes in the law resulting from the Supreme Court's decision, Aereo should be given an opportunity to supplement the expert reports exchanged thus far.  Such an exchange of supplemental reports and discovery process cannot take place within the two month period proposed by the Fox Plaintiffs.

    In the alternative, it is Aereo's understanding that Plaintiffs propose a schedule that would allow them to move for summary judgment on certain claims, for all practical purposes resulting in a bifurcated summary judgment process whereby the litigation will be delayed with respect to a final determination.  At the outset of this matter, Aereo proposed that all issues should be readied for a full determination on the merits on an expedited basis.  Plaintiffs opposed that proposal, and instead pursued a course that has already stretched the litigation process out for more than two and a half years.  Plaintiffs' current proposal would extend the litigation even further, and is nothing more than another attempt to continue bleeding Aereo, a start-up, with legal costs.

    Moreover, Aereo understands that Plaintiffs propose to move immediately for summary judgment on the play-back of time-shifted, remote-DVR copies on public performance and/or reproduction grounds.  Any response to that motion by Aereo necessarily implicates, among other things, the question of fair use, as well as volition issues.  The fourth fair use factor—the effect of the use on the marketplace for the copyrighted works—is the subject of the incomplete expert discovery.  Both parties have exchanged expert economist reports, but no depositions have been taken.  Moreover, the Supreme Court's decision is such a departure from the prior established law that both parties would benefit from a brief period to supplement their reports prior to the taking of depositions.  Aereo believes that Plaintiffs' proposal will delay resolution and prejudice Aereo's ability to assert its defenses.  This Court has already once concluded that summary judgment was filed prematurely; Plaintiffs' proposal amounts to the same.  As a result, Aereo proposes that the parties supplement any reports the parties feel necessary, complete expert depositions, and then the parties can move for summary judgment on a complete record.  Specifically, Aereo proposes the following schedule:

| | |
|:---:|:---:|
| Plaintiffs supplement expert reports | December 15, 2014 |
| Defendant supplements expert reports | January 15, 2015 |
| Complete expert depositions | February 27, 2015 |
| Deadline to file motions for summary judgment | March 18, 2015 |

Hon. Alison J. Nathan 6 November 12, 2014

                                        Respectfully submitted,

                                        /s/ Bruce P. Keller

                                        Bruce P. Keller

cc:    R. David Hosp, Esq.
         Richard L. Stone, Esq.